in that area by the police with the two female victims in their car. A cellular phone was recovered from the front seat of the car.

10. Later, a search was made of the basement apartment where the two female victims had been held. There, detectives recovered three more cellular telephones, and a loaded gun.

11. The victims were taken to a hospital where rape kits were prepared. Tests revealed the presence of semen in Liu Yan Wu's vagina and on her panties. Semen was also found on Jin Hao Liu's underwear.

12. Guo Bang Liu identified defendant in a line-up. In addition, defendant made a statement to the police corroborating the victim's accounts of what had happened at the airport, and admitted that he was the person who had made the ransom demands. Defendant denied raping the two female victims.

13. For these acts, defendant was charged with eight counts of Kidnapping in the First Degree (Penal Law § 135.25[1], [2][c]), four counts of Rape in the First Degree (Penal Law § 135.36[1]), one count of Kidnapping in the Second Degree (Penal Law § 135.20), eight counts of Sexual Abuse in the First Degree (Penal Law § 130.65[1]), and one count of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03) (Queens County Indictment Number 3282/95).[1]

_____

[1]On June 25, 1996, co-defendant Qin Guang Zhen pled guilty to two counts of first degree rape (Penal Law § 130.35 [1]). Co-defendant Zheng was sentenced to concurrent indeterminate prison terms of from eight and one-third to twenty-five years for each of the rape counts and from fifteen years to life on each of the kidnapping counts. These prison

14. Defendant proceeded to trial before Justice Katz and a jury. The jury convicted defendant of four counts of Kidnapping in the First Degree, two counts of Rape in the First Degree, one count of Kidnapping in the Second Degree, two counts of Sexual Abuse in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree.

15. On August 15, 1996, the court sentenced defendant to four indeterminate terms of imprisonment from twenty-five years to life for the first-degree kidnapping counts, two of which were to be served consecutively to the other two. Defendant was also sentenced to indeterminate prison terms of from eight and one-third to twenty-five years on each of the rape convictions, and eight and one-third to twenty-five years on the second-degree kidnapping conviction. Defendant was also sentenced to indeterminate prison terms of from two and one-third to seven years incarceration for each of the sexual abuse counts, and from five to fifteen years on the weapons conviction. These sentences were each to run consecutively to each other and to the sentence on the first-degree kidnapping counts, resulting in an aggregate sentence of from eighty-four years to life imprisonment (Katz, J).

16. On August 16, 1996, defendant filed a notice of appeal.

17. In July of 1999, defendant filled a brief in this Court. In that brief, defendant claimed that the trial court erred by refusing to charge the jury on the defense of duress and that his sentence was excessive.

_____

terms were each to run concurrently with one another.

5

18. On September 17, 1999, the People filed a respondent's brief. The People argued that the trial court correctly refused to charge the jury on the defense of duress because defendant had failed to show that he engaged in the kidnappings because he was coerced into doing so, that the threats used to coerce him were capable of immediate realization, and that he had not placed himself into the situation that allegedly created the duress. The People also argued that defendant's violent and depraved acts merited the maximum sentence.

19. On January 10, 2000, this Court modified the judgment by vacating the conviction of Sexual Abuse in the First Degree under the eleventh count of the indictment and vacating the sentence thereon, finding that no evidence pertaining to that count was adduced at trial, and, as so modified, the Court affirmed the judgment. People v. Hai Guang Zheng, 268 A.D.2d 443 (2d Dept. 2000).

20. On January 31, 2000, defendant appealed the judgment of this Court to the Court of Appeals. The People filed their letter in opposition in February, 2000.

21. On June 15, 2000, Justice Carmen Beauchamp Ciparick of the Court of Appeals denied defendant's leave application. People v. Hai Guang Zheng, 95 N.Y.2d 835 (2000).

22. On February 1, 2001, defendant filed a motion, through counsel, to vacate his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law. In that motion, defendant claimed that he was denied the effective assistance of counsel because his trial counsel failed to have the serological evidence tested for DNA after defendant

6

denied any involvement in the rape of the two victims and because counsel failed to move in writing to have the wiretap evidence suppressed.

23. On June 13, 2001, the People filed a response to defendant's motion. The People argued that defendant's claims were mandatorily procedurally barred pursuant to section 400.10 of the Criminal Procedure Law since an adequate record existed for the claims to have been raised on defendant's direct appeal. And to the extent that these claims were not procedurally barred, the People argued that the claims were without merit. See Exhibit A.

24. On June 18, 2001, the Supreme Court, Queens County, denied defendant's motion (Katz, J.). It found that defendant's motion was procedurally barred and was without merit. The court stated that the facts pertaining to defendant's claims were on the record and therefore could have been reviewed upon defendant's direct appeal, and, in any event, his motion was meritless. See Exhibit B.

25. By his current motion, dated July 17, 2001, defendant seeks leave to appeal that decision and order denying his motion to vacate judgment. Specifically, defendant claims that the trial court erred in ruling that defendant's trial counsel was not ineffective for his failure to request a DNA test of the serological evidence and for his failure to make a written motion to preclude the use of wiretap evidence. Alternatively, defendant claims that his appellate counsel was ineffective and seeks a writ of error coram nobis. He claims that his appellate counsel was ineffective because he failed to raise the above claims

7

on appeal, particularly since the lower court denied defendant's motion and ruled that the facts pertaining to defendant's claim are on the record.

24. The People oppose defendant's current application seeking leave to appeal the denial of his motion. The trial court correctly rejected defendant's claim because it is procedurally barred and without merit. Moreover, defendant's motion regarding the ineffectiveness of appellate counsel must be denied because it is meritless. Defendant's trial counsel was effective, and his appellate counsel reasonably chose not to raise a meritless claim regarding trial counsel's performance. Thus, because defendant raises no issues of law or fact meriting this Court's review, and for the reasons set forth above and in the People's response papers below, defendant's application for leave to appeal the denial of his motion pursuant to ... tion 440.10 of the Criminal Procedure Law should be summarily denied. C.P.L. § 460.15. Furt... the reasons set forth in the accompanying memorandum of law, defendant's motion for a writ of error <u>coram</u> <u>nobis</u> should be denied as well.

WHEREFORE, and for the reasons stated above and in the accompanying memorandum of law, the petition should be denied summarily.


Dated: Kew Gardens, New York
       August 20, 2001

                                                Ushir Pandit
                                                Assistant District Attorney


To: Paul A. Goldberger
    Attorney for Defendant
    401 Broadway, Suite 306
    New York, N.Y. 10013

9

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
------------------------------------------------------------------- X

THE PEOPLE OF THE STATE OF NEW YORK,                    :        Return Date:
                                                                August 24, 2001

                            Respondent,                 :

                                                                MEMORANDUM OF LAW
                                                        :       IN OPPOSITION TO
             -against-                                          DEFENDANT'S
                                                        :       APPLICATION FOR
                                                                A WRIT OF ERROR
                                                        :       CORAM NOBIS

HAI GUANG ZHENG,

                                                        :
                            Defendant.                  :       Queens County

                                                                Indictment
                                                        :       Number 3282/95
                                                                A.D. No. 94-7406
                                                        :
------------------------------------------------------------------- X


## ARGUMENT

## DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

Defendant received the able assistance of appellate counsel. Counsel submitted a well-reasoned brief to this Court in support of defendant's appeal, persuasively arguing that the trial court's refusal to submit defendant's duress defense to the jury deprived defendant of a fair trial and that the court abused its discretion in sentencing defendant to eighty-four and two thirds years to life imprisonment. The fact that this Court affirmed

10

defendant's conviction is not indicative of any shortcoming of appellate counsel. Rather, it indicates that the challenged errors were either insufficiently preserved for appellate review or without merit.

Yet, defendant now argues that he was denied the effective assistance of appellate counsel because counsel failed to argue that defendant received ineffective representation from his trial counsel because his trial attorney failed to have the serological evidence tested for DNA after defendant denied any involvement in the rape of the two victims and because trial counsel failed to move in writing to have the wiretap evidence suppressed. But defendant's claim is without merit. Thus, this Court should not find that appellate counsel was ineffective because he did not raise this baseless claim, and should deny defendant's motion for a writ of error <u>coram nobis</u>.

It is well-established that appellate counsel need not raise every non-frivolous issue urged by a defendant. <u>Jones v. Barnes,</u> 463 U.S. 745, 751-754 (1983); <u>People v. Settembre,</u> 152 A.D.2d 682 (2d Dept. 1989); <u>People v. Decker,</u> 134 A.D.2d 726 (3d Dept. 1987). This is in recognition of the "importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." <u>Jones v. Barnes,</u> 463 U.S. at 751-752. Furthermore, this Court has stated that it will not second-guess the reasonable professional judgment of counsel that colorable but nonetheless weak arguments should be omitted from an appellate brief. <u>People v. Davis,</u> 185 A.D.2d 989 (2d Dept. 1992); <u>See People v. Purcell,</u> 160 A.D.2d 900, 901 (2d Dept. 1990); <u>People v. Waters,</u> 123 A.D.2d 798 (2d Dept. 1986); <u>People v. Ramos,</u> 108 A.D.2d 209 (2d Dept. 1986). In

11

other words, a <u>coram nobis</u> application on the ground of ineffective assistance of counsel "may not be used simply to raise issues which, in hindsight, might arguably have had some merit." <u>People v. Decker</u>, 134 A.D.2d at 727.

It is a well-established principle of law that, in order to prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that counsel's representation was deficient and resulted in legal prejudice to him. <u>People v. De La Hoz</u>, 131 A.D.2d 154, 156 (1st Dept. 1987)(citing <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Counsel is "strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 157. As courts have steadfastly refused to second-guess the "reasonable professional judgment of [appellate] counsel" (<u>People v. Davis</u>, 185 A.D.2d 989, 990 [2d. Dept. 1992]), a defendant must show not only that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, but also that counsel's deficient performance actually prejudiced him. <u>People v. De La Hoz</u>, 131 A.D.2d at 156 (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 [1984]. Furthermore, the failure of appellate counsel to raise a particular claim does not render the representation constitutionally deficient. <u>People v. Ramos</u>, 108 A.D.2d 209, 213 (2d Dept. 1985)(citing <u>Jones v. Barnes</u>, 463 U.S. 745 [1983]). Defendant here has not overcome the presumption of adequate assistance as he failed to show how counsel's actions were deficient and prejudicial to him.

12

The thirty-page brief submitted by appellate counsel was sufficient in form and content. The brief was persuasive, competent, and adequately presented defendant's strongest claims to this Court. It raised two non-frivolous, colorable issues, relied on relevant case law, effectively summarized the record, and presented the trial proceedings in a light favorable to defendant. Although the claims were ultimately rejected by this Court, counsel reasonably exercised his professional judgment by including these well-researched claim in defendant's appellate brief. Appellate counsel therefore cannot be deemed ineffective.

Defendant nonetheless argues that his appellate counsel was ineffective for failing to raise a claim that the his trial counsel was ineffective because his trial attorney failed to have the serological evidence tested for DNA and failed to file a written motion to suppress wiretap evidence.

In this case, appellate counsel correctly omitted this argument because defendant was effectively represented by his trial counsel. The right to the effective assistance of counsel is guaranteed under both the Federal and State Constitutions. See U.S. Const., 6th Amend; N.Y. Const., art. I, § 6. Under the New York rule, what qualifies as effective assistance varies with the unique circumstances of each representation. People v. Benevento, 91 N.Y.2d 708, 712 (1998); People v. Baldi, 54 N.Y.2d 137 (1981). In order to succeed on a claim that trial counsel was ineffective under the state constitution, a defendant must demonstrate, viewing the totality of the evidence, the law, and the circumstances of that particular case, that counsel failed to provide "meaningful representation." People v.

Benevento, 91 N.Y.2d at 712 (quoting People v. Baldi, 54 N.Y.2d 137, 147 [1981]); People v. Jackson, 70 N.Y.2d 768, 769 (1987); People v. Satterfield, 66 N.Y.2d 796, 798-799 (1985). Meaningful representation "includes a prejudice component which focuses on 'the fairness of the process as a whole rather than [any] particular impact on the outcome of the case." People v. Henry, 95 N.Y.2d 563, 566 (2000), citing People v. Benevento, 91 N.Y.2d at 714.

Courts should apply a "'flexible approach'" when evaluating ineffective assistance of counsel claims. People v. Henry, 95 N.Y.2d at 565, citing People v. Benevento, 91 N.Y.2d at 712. The question is whether the attorney committed "'egregious and prejudicial'" error such that defendant did not receive a fair trial. See Benevento, 91 N.Y.2d at 713 (quoting People v. Flores, 84 N.Y.2d 184, 188-189 [1994]). What is guaranteed is a fair trial, "not necessarily a perfect one." Benevento, 91 N.Y.2d at 712; see Flores, 84 N.Y.2d at 187. A defendant's conviction may have had little, if nothing, to do with counsel's performance, and courts are properly skeptical when "'disappointed prisoners try their former lawyers on charges of incompetent representation.'" Benevento, 91 N.Y.2d at 712 (quoting People v. Brown, 7 N.Y.2d 359, 361 [1960]).

When applying this standard, however, courts must take care not to confuse true ineffectiveness of counsel with mere losing tactics and not accord "undue significance" to retrospective analysis. Benevento, 91 N.Y.2d at 712; Baldi, 54 N.Y.2d at 145. Thus, courts should neither second-guess the wisdom of counsel's strategy nor probe counsel's subjective reasons for choosing that strategy. So long as the defendant was afforded

14

"meaningful representation," it is irrelevant whether a course chosen by a defendant's counsel was the best trial strategy, or even a good one. Satterfield, 66 N.Y.2d at 799-800. Indeed, trial practice is "as much an art as a science," and trial lawyers must, given the unique attributes of each case, devise and execute appropriate strategy. People v. Ellis, 81 N.Y.2d 854, 856 (1993). The chosen strategy need be only "reasonable and legitimate" under the circumstances to prevent a finding of ineffective assistance. Benevento, 91 N.Y.2d at 713; see also People v. Lane, 60 N.Y.2d 748, 750 (1983). Unless a defendant can show that there was no "legitimate reason" to pursue a particular strategy, a defense attorney must be presumed to have rendered adequate assistance to a defendant. Benevento, 91 N.Y.2d at 712; Rivera, 71 N.Y.2d 705, 709 (1988). A "'simple disagreement'" with strategies, weighed long after the trial, is insufficient. Benevento, 91 N.Y.2d at 713 (quoting Flores, 84 N.Y.2d at 187).

In order to establish a claim of ineffectiveness under the Sixth Amendment to the United States Constitution, defendant must satisfy a similar, but somewhat different, test. Strickland v. Washington, 466 U.S.668 (1984). A defendant must demonstrate, first, that counsel's performance fell below an objective standard of reasonableness and, second, that the deficient performance deprived the defendant of a fair result. See Benevento, 91 N.Y.2d at 712-713; People v. Sullivan, 153 A.D.2d 223, 226-227 (2d Dept. 1990). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. And it is the defendant's burden not only to overcome the strong presumption of reasonable professional assistance, but also to

15

demonstrate a reasonable probability that, but for the substandard performance, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 689, 694; Sullivan, 153 A.D.2d at 226-227. Applying either of these standards to defendant's trial counsel's performance, defendant's appellate counsel correctly did not argue that defendant's trial counsel was ineffective.

As the record shows, defendant's trial counsel zealously and competently argued his client's interests. Trial counsel vigorously cross-examined all of the People's witnesses in an effort to undermine their credibility, made numerous motions and objections, and forcefully argued his client's cause in both his opening and closing statements. Nonetheless, defendant claims that his appellate counsel should have argued that he was denied the effective assistance of trial counsel. Defendant is wrong.

First, defendant claims that his trial counsel was ineffective because he failed to request a DNA exam for the serological evidence. But defendant's claim must fail because counsel's decision not to conduct DNA testing on the serology evidence was sound trial strategy that should not be second guessed by this Court. Here, the two victims were raped by both defendant and co-defendant Qui Guang Zheng. And although one victim's underwear and the other victim's vaginal swabs showed the presence of spermatozoa, it is conceivable that that spermatozoa was from both defendant and co-defendant. Therefore, it was possible that DNA testing would actually have incriminated defendant. Moreover, the lack of a DNA test allowed counsel to argue to the jury that the spermatozoa was that of his co-defendant and not defendant. Given these facts, the better trial strategy in this case was

16

the one chosen by trial counsel. His argument that the People's proof was insufficient because they failed to conduct a DNA test -- although unsuccessful -- was more persuasive than if he had requested DNA testing and the results were inconclusive or incriminating. Such a result would have precluded trial counsel from making any arguments with regard to the serology evidence and would have led to an argument by the prosecutor that, because the victims were raped by both defendant and the co-defendant, it was reasonable that the DNA testing was inconclusive. Thus, trial counsel was not ineffective because he failed to request DNA testing of the spermatozoa.

Second, defendant's claim that his trial counsel's failure to file a written motion to preclude the use of wiretap evidence constituted ineffectiveness assistance of counsel is also without merit. Here, although trial counsel did not file a written motion to suppress any evidence obtained after the eavesdropping warrant was issued, he did orally argue to the hearing court that any evidence obtained by the use of eavesdropping warrant should be suppressed because the People had failed to serve defendant with the eavesdropping documents within fifteen days of his arraignment as required by section 700.70 of the Criminal Procedure Law (April 24, 1996 Hearing: 8-13).[2] And defendant has failed to show how trial counsel was ineffective for failing to file a <u>written</u> motion to

---

[1] At the hearing, the prosecutor stated that this case began in Manhattan and that it had been transferred to Queens County because Queens had jurisdiction with regard to some of the crimes with which defendant was charged (April 24, 1996 Hearing: 2-3). The prosecutor also stated that defendant had been served with the eavesdropping warrant at his Manhattan arraignment and, therefore, the People did not have to serve defendant again in Queens County (April 24, 1996 Hearing: 7-8, 15-17).

suppress all the evidence obtained by an eavesdropping warrant because of the purported failure of the People to comply with Criminal Procedure Law section 700.70 when counsel vigorously argued the same claim orally. Therefore, this Court should reject defendant's meritless claim.

In sum, defendant received the effective assistance of trial counsel. As a result, even if this claim had been raised by appellate counsel, the outcome of his appeal would not have been different. This Court should, therefore deny defendant's motion for a writ of error <u>coram</u> <u>nobis</u> in its entirety.

## CONCLUSION

Defendant's motion for a writ of error <u>coram</u> <u>nobis</u> should be summarily denied.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
LISA DRURY
USHIR PANDIT

August 20, 2001

18

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-25

-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,

                Respondent,

          -against-

HAI GUANG ZHENG,

                Defendant.

-------------------------------------------------------------------x

Return Date:
June 15, 2001

RESPONDENT'S
AFFIRMATION IN
OPPOSITION TO
DEFENDANT'S
MOTION TO VACATE
JUDGMENT PURSUANT
TO C.P.L. § 440.10

Queens County
Indictment Number
3282/95

USHIR PANDIT, an attorney admitted to practice law in the State of New York, affirms the following statements to be true under the penalties of perjury:

1. I am an Assistant District Attorney, of counsel to Richard A. Brown, the District Attorney of Queens County. I am submitting this affirmation in opposition to defendant's May 14, 2001 motion pursuant to C.P.L. § 440.10 (1) (a) and (h) to vacate his August 15, 1996 judgment of conviction. I make the statements in this affirmation upon information and belief and based on my review of the records and files of the Queens County District Attorney's office.

2. In the evening of March 31, 1995, Jin Hao Liu went to the airport to meet her brother, Guo Bang Liu, and his wife, Liu Yan Wu. After meeting at the airport, the three got into a car-service automobile to leave the airport. Shortly after entering the car-service

automobile, the car was cut off by a second car driven by defendant, forcing the Liu's car to stop. A second man, known as Ak Guan, was in defendant's car in the passenger seat.

3. After defendant stopped the victims' car, Ak Guan and defendant got out of their car, went to the victims' car and, at gunpoint, ordered the victims to leave their car and get into the back seat of defendant's car. Ak Guan ordered the victims to produce their passports. After examining the passports, Ak Guan stated that the wrong people had been taken.

4. As a result, defendant stopped the car near the Brooklyn Bridge, and gave the man, Guo Bang Liu, one or two quarters and a piece of paper with telephone numbers written on it. Guo Bang Liu was then ordered to get out of the car, leaving his wife and sister with defendant and Ak Guan. Guo Bang Liu found a car to take him to his family's home in Chinatown. After he returned home, Guo Bang Liu went with one of his sisters to the 5th Police Precinct stationhouse to report the Kidnapping.

5. In the meantime, defendant and Ak Guan took Jin Hao Liu and Liu Yan Wu to a basement apartment in an unknown location. After some time, a third man, Qin Guang Zheng, arrived at the apartment. Shortly after co-defendant Zheng's arrival, Ak Guan left. The two women were forced to spend the night in the apartment with defendant and co-defendant Zheng. Defendant was in possession of a pistol, which he kept by his pillow when he slept. Neither woman was able to sleep.

6. The next morning, defendant took Liu Yan Wu into a separate room and began touching her breasts with his hands. He removed her clothing and put his penis into

2

her vagina while holding a gun to her head.  Defendant then brought Liu Yan Wu back into the first room and took Jin Haw Liu into the other room and raped her.  Co-defendant Zheng also raped both women.

7.  Jin Hao Liu was asked for her phone number, which she wrote down for her captors.  After receiving the telephone number, defendant left the apartment several times. Defendant also made and received several telephone calls in the presence of the women.  At one point, Jin Hau was permitted to speak with her family over the phone.  She asked her family to give the kidnappers the money.

8.  On April 1, 1995, Jun Hao and Guo Bang Kiu's sister Emily Liu, received a call demanding $20, 000 for the return of each woman.  Emily Liu received several more calls from the same man, which were monitored by the police.  Ultimately, defendant and his accomplices reduced their demands to $7500.00 for the return of each woman.  Emily Liu was told to bring the money in a bag of groceries to a location in Chinatown.

9.  The police determined that the ransom calls were being made from a cellular phone in the vicinity of 133-34 59th Avenue, in the Flushing area of Queens.  At approximately 12:05 a.m., on April 2, 1995, defendant and co-defendant Zheng were stopped in that area by the police with the two female victims in their car.  A cellular phone was recovered from the front seat of the car.

10.  Later, a search was made of the basement apartment where the two female victims had been held.  There, detectives recovered three more cellular telephones, and a loaded gun.

11.   The victims were taken to a hospital where rape kits were prepared.  Tests revealed the presence of semen in Liu Yan Wu's vagina and on her panties.  Semen was also found on Jin Hao Liu's underwear.

12.   Guo Bang Liu identified defendant in a line-up.  In addition, defendant made a statement to the police corroborating the victim's accounts of what had happened at the airport, and admitted that he was the person who had made the ransom demands. Defendant denied raping the two female victims.

13. For these acts, defendant was charged with eight counts of Kidnapping in the First Degree (Penal Law § 135.25[1], [2][c]), four counts of Rape in the First Degree (Penal Law § 135.36[1]), one count of Kidnapping in the Second Degree (Penal Law § 135.20), eight counts of Sexual Abuse in the First Degree (Penal Law § 130.65[1]), and one count of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03) (Queens County Indictment Number 3282/95).

14.   Defendant proceeded to trial before Justice Katz and a jury.  The jury convicted defendant of four counts of Kidnapping in the First Degree, two counts of Rape in the First Degree, one count of Kidnapping in the Second Degree, two counts of Sexual Abuse in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree.

15. On August 15, 1996, this Court sentenced defendant to four indeterminate terms of imprisonment from twenty-five years to life for the first-degree Kidnapping counts, two of which were to be served consecutively to the other two.  Defendant was also

4

sentenced to indeterminate prison terms of from eight and one-third to twenty-five years on

each of the rape convictions, and eight and one-third to twenty-five years on the second-

degree Kidnapping conviction. Defendant was also sentenced to indeterminate prison terms

of from two and one-third to seven years incarceration for each of the sexual abuse counts,

and from five to fifteen years on the weapons conviction. These sentences were each to run

consecutively to each other, and to the sentence on the first degree Kidnapping counts,

resulting in an aggregate sentence of from eighty-four years to life.

16. On August 16, 1996, defendant filed a notice of appeal.

17. In July of 1999, defendant filled a brief in the Appellate Division, Second

Department. In that brief, defendant claimed that this Court erred by refusing to charge the

jury on the defense of duress and that his sentence was excessive.

18. On September 17, 1999, the People filed a respondent's brief. The People

argued that the trial court correctly refused to charge the jury on the defense of duress

because defendant had failed to show that he engaged in the kidnappings because he was

coerced into doing so, that the threats used to coerce him were capable of immediate

realization, and that he had not placed himself into the situation that allegedly created the

duress. The People also argued that defendant's violent and depraved acts merited the

maximum sentence.

19. On January 10, 2000, the Appellate Division, Second Department,

modified the judgment by vacating the conviction of Sexual Abuse in the First Degree under

the eleventh count of the indictment and vacating the sentence thereon, finding that no

evidence pertaining to that count was adduced at trial, and, as so modified, the Court affirmed the judgment. People v. Hai Guang Zheng, 268 A.D.2d 443 (2d Dept. 2000).

20. On January 31, 2000, defendant appealed the judgment of the Appellate Division to the Court of Appeals. The People filed their letter in opposition in February, 2000.

21. On June 15, 2000, Justice Carmen Beauchamp Ciparick of the Court of Appeals denied defendant's leave application. People v. Hai Guang Zheng, 95 N.Y.2d 835 (2000).

22. By his current motion, dated February 1, 2001, defendant moves, through counsel, to vacate his judgment of conviction pursuant to Section 440.10 of the Criminal dure Law. Defendant claims that he was denied the effective assistance of counsel because his trial counsel failed to have the serological evidence tested for DNA after defendant denied any involvement in the rape of the two victims and because counsel failed to move in writing to have the wiretap evidence suppressed. But, defendant's claim is mandatorily procedurally barred pursuant to C.P.L. § 400.10 and, therefore, must be denied.

23. Defendant's claims are procedurally barred since an adequate record exists for the claims to have been raised on defendant's direct appeal. Moreover, to the extent that these claims are not procedurally barred, the claims are without merit.

6

WHEREFORE, defendant's motion to vacate the judgment of conviction should be summarily denied in its entirety.

Dated: Kew Gardens, New York
        June 13, 2001

                                        Ushir Pandit
                                        Assistant District Attorney

To: Paul A. Goldberger
    Attorney for Defendant
    401 Broadway, Suite 306
    New York, N.Y. 10013

7

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-25
-------------------------------------------------------------------x
:
THE PEOPLE OF THE STATE OF NEW YORK,
:
Respondent,
:
:
-against-                                           :       MEMORANDUM OF LAW
:
:
:
HAI GUANG ZHENG,                                    :
:
Defendant.                        :
-------------------------------------------------------------------x

## ARGUMENT

**DEFENDANT'S CLAIM IS PROCEDURALLY BARRED BECAUSE A SUFFICIENT RECORD EXISTED FOR REVIEW UPON DEFENDANT'S DIRECT APPEAL AND IN ANY EVENT, HIS CLAIM IS WITHOUT MERIT.**

Defendant's claim is procedurally barred because a sufficient record existed for review of defendant's claim upon defendant's direct appeal. Defendant nevertheless claims that his counsel was ineffective because he failed to have the serological evidence tested for DNA and failed to have the wiretap evidence suppressed when the prosecutor purportedly failed to follow the notice requirements of the Criminal Procedure Law. But defendant's claim is based on matters that are on the record that should have been reviewed on defendant's direct appeal.

8

A motion to vacate a judgment of conviction must be denied if, at the time of the motion, sufficient facts appeared on the record that would have allowed the appellate court to review the claim raised in the motion, but the appellate court did not review the claim because the defendant unjustifiably failed to raise it. C.P.L. § 440.10 (2)(c). As the ground for defendant's claims clearly appear on the record, such claims are procedurally barred from this Court's review. In fact, defendant refers to the trial testimony to support his current claim. Thus, it is apparent that defendant is now positing on-the-record claims.

Defendant's ineffective assistance of counsel claims should have been raised on appeal. When the record is sufficient to review a claim of ineffective assistance of counsel, then direct appeal is the proper remedy. People v. Crump, 53 N.Y.2d 824 (1981). And here, it is apparent that defendant's claims based on his attorney's performance appear on the record. Indeed, his attorney's purported failure to request DNA exam for the serological evidence obtained from the rape victims as well as his attorney's purported failure to move to suppress all the evidence obtained from the wiretaps because the People had not complied with the notice requirement of the Criminal Procedure Law are matters that are part of the record on appeal. As discussed below, defendant's claims of defense counsel's purported failures could have been reviewed on direct appeal and, therefore, are procedurally barred from review by this Court.

First, defendant's claim that his attorney failed to request a DNA test is clearly an on-the-record claim. The People's proof at trial showed that one of the victim's panties, and another victim's vaginal swabs tested positive for spermatozoa (Hickey: T-220-239).

9

And in his closing argument, defense counsel argued that the People's proof, as to the rape counts, was insufficient because they had failed to conduct a DNA test (Defense Summation: 1025-1026). Moreover, defendant testified at the trial and denied raping the two women, but stated that he participated in the kidnapping because his family was threatened (Zheng: T-904-917). Furthermore, a review of the court documents would reveal if defense counsel made a written motion for a DNA test. Therefore, sufficient facts appear on the record -- with regard to the fact that a DNA test was not conducted on the serology evidence obtained from the victims and that defendant denied raping the two women -- for an appellate review of any purported ineffectiveness of trial counsel claim on this ground.

Second, defendant's claim that his attorney failed to request in writing that an eavesdropping warrant, and any evidence obtained via that warrant, be suppressed because People failed to meet the notice requirement of the Criminal Procedure Law is also an on-the-record claim. Indeed, a review of the court documents would reveal whether defense counsel made a written motion to suppress evidence obtained vie the eavesdropping warrant. Thus, sufficient facts appear on the record for an appellate review with regard to defendant's claim of any purported ineffectiveness by his trial counsel on this ground as well.

And, at the hearing held on April 19, 1996, when counsel discovered that Detective Green had applied for an eavesdropping warrant, he immediately stated for the record that he had not been provided with an eavesdropping warrant or any paperwork related to that warrant (Green: April 19, 1996 Hearing: 26). Thereafter, at the end of the People's case at the hearing, defense counsel argued that any eavesdropping warrant in the

10

case may result in the suppression of all the evidence obtained after the warrant was issued

in the event that the People had failed to comply with the statutory requirements of the

Criminal Procedure Law (Proceedings: April 19, 1996 Hearing: 72). In fact, counsel refused

to rest until he had been provided with the appropriate documents so that he could make the

appropriate arguments to the Court (Proceedings: April 19, 1996 Hearing: 73). Therefore,

any purported ineffectiveness of trial counsel for failing to file a written motion could have

been reviewed on defendant's direct appeal. Thus, this Court should reject defendant's claim

as it is procedurally barred.

    In any event, defendant's claim that he did not receive effective assistance of

counsel is meritless. In reviewing a claim of ineffective assistance of counsel, "a court must

indulge a strong presumption that counsel's conduct fell within the wide range of reasonable,

professional assistance." Strickland v. Washington, 466 U.S. 668, 669 (1984). "The phrase

'effective assistance' is not, however, amenable to precise demarcation applicable in all

cases." People v. Benevento, 91 N.Y.2d 708, 712 (1998); People v. Baldi, 54 N.Y.2d 137

(1981). To determine whether defendant's counsel provided "meaningful representation"

(see People v. Jackson, 70 N.Y.2d 768 [1987]; People v. Noble, 231 A.D.2d 800 [3d Dept.

1996]), counsel's actions must be evaluated in terms of "the evidence, the law, and the

circumstances of a particular case, viewed in totality, as of the time of the representation."

People v. Wiggins, 89 N.Y. 2d 87 (1996); People v. Boodhoo, 191 A.D.2d 448 (2d Dept.

1993).

11

Here, defendant was not denied effective assistance of counsel. Indeed, defendant concedes that there were numerous instances in which his counsel effectively represented his interests at the trial (Defendant's Motion ¶ 14). Moreover, the jury verdict indicates that defendant received more than adequate representation of counsel. Although defendant was charged with eight counts of kidnapping in the First Degree, at the close of the evidence, only six counts of first degree kidnapping charges were submitted for the jury's consideration. And defendant was acquitted of two of those first-degree kidnapping counts (Proceedings: 1150-1153). The results of the trial reflect that defendant received meaningful representation. Thus, defendant's claim that his trial counsel was ineffective should be rejected.

Moreover, as the two specific instances of trial counsel's alleged shortcomings are without merit, defendant's ineffective assistance-of-counsel claim must fail. Indeed, counsel's decision not to conduct DNA testing on the serology evidence was sound trial strategy that should not be second guessed by this Court. Here, the two victims were raped by both defendant and co-defendant Qui Guang Zheng. And although one victim's underwear and the other victim's vaginal swabs showed the presence of spermatozoa, it is conceivable that that spermatozoa was from both defendant and co-defendant. Therefore, it was possible that DNA testing would actually have incriminated defendant. Moreover, the lack of a DNA test allowed counsel to argue to the jury that the spermatozoa was that of his co-defendant's and not defendant's. Given these facts, the better trial strategy in this case was the one chosen by trial counsel. His argument that the People's proof was insufficient

because they failed to conduct a DNA test -- although unsuccessful -- was more persuasive than if he had requested DNA testing and the results were inconclusive or incriminating. Such a result would have precluded trial counsel from making any arguments with regard to the serology evidence and would have led to an argument by the prosecutor that because the victims were raped by both defendant and the co-defendant, it was reasonable that the DNA testing was inconclusive. Thus, trial counsel was not ineffective because he failed to request DNA testing of the spermatozoa.

Defendant relies on many cases to support his claim that counsel was ineffective because he failed to have a DNA test conducted on the serology evidence (Defendant's Motion ¶ ¶ 18, 19, 20, 21, 22, 23, 24). But all of these cases are inapplicable to this case. Indeed, these cases hold that a counsel's failure to request a scientific test -- such as a DNA test -- would render him ineffective only in the event that the scientific test would exonerate the defendant or would be exculpatory. By contrast, in this case, DNA testing of the serology evidence would not have exonerated defendant of the crimes of raping the two women. In fact, although a test result identifying defendant as the source of the sperm found in the victims would conclusively establish his guilt, a negative result could establish only that the victim had intercourse with a male other than defendant -- the co-defendant. A DNA test in this case, therefore would have been of little probative value. Thus, theses cases are inapplicable.

In addition, defendant's claim that his trial counsel's failure to file a written motion to preclude the use of wiretap evidence constituted ineffectiveness assistance of

13

counsel is also without merit. Here, although trial counsel did not file a written motion to

suppress any evidence obtained after the eavesdropping warrant was issued, he did orally

argue to the hearing court that any evidence obtained by the use of eavesdropping warrant

should be suppressed because the People had failed to serve defendant with the

eavesdropping documents withing fifteen days of his arraignment as required by section

700.70 of the Criminal Procedure Law (Proceedings: April 24, 1996 Hearing: 8-13).[1] And

defendant has failed to show how trial counsel was ineffective for failing to file a written

motion to suppress all the evidence obtained by an eavesdropping warrant because of the

purported failure of the People to comply with Criminal Procedure Law § 700.70 when

counsel vigorously argued the same claim orally. Therefore, this Court should reject

defendant's meritless claim.

---

[1]At the hearing, the prosecutor stated that this case began in Manhattan and that it had
been transferred to Queens County because Queens had jurisdiction with regard to some of
the crimes with which defendant was charged (Proceedings: April 24, 1996 Hearing: 2-3).
The prosecutor also stated that defendant had been served with the eavesdropping warrant
at his Manhattan arraignment and, therefore, the People did not have to serve defendant again
in Queens County (Proceedings: April 24, 1996 Hearing: 7-8, 15-17).

In sum, this Court should deny defendant's claims because they are procedurally barred pursuant to C.P.L. § 440.30(4)(a).  In any event, defendant's claims are meritless and should be denied in its entirety.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
LISA DRURY
USHIR PANDIT

　　　Assistant District Attorneys
　　　　Counsel

June 13, 2001

15

# *EXHIBIT B*

*F, 6*

Short Form Order

## SUPREME COURT - STATE OF NEW YORK
## CRIMINAL TERM, PART K-25, QUEENS COUNTY
125-01A Queens Blvd., Kew Gardens, N.Y. 11415

P R E S E N T :     HON. STANLEY B. KATZ
_____
Justice

----------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK  :  IND. NO: 3282/95 _____
                                     :  Motion: C.P.L. §440.10
            -against-                :  For New Trial _____
                                     :  _____ _____
                                     :  _____ _____
                                     :  Submitted _____
HAI GUANG ZHENG                      :  Argued    _____
----------------------------------------x  Hearing _____

The following papers numbered
1 to _____ submitted on this motion.

Paul A. Goldberger, Esq. _____
For the Motion

Urshir Pandit, Esq. _____
Opposed

Papers Numbered

Notice of Motion and Affidavits Annexed  ..................

Answering and Reply Affidavits  ..........................

Exhibits  ................................................

Minutes - Other  .........................................

Upon a review of the papers submitted, and in the opinion of
the Court, the defendant's motion is decided as indicated in the
accompanying memorandum of this date.

Date: June 18, 2001     ................................
                        STANLEY B. KATZ, J.S.C.

## M E M O R A N D U M

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS:CRIMINAL TERM: PART K-25

```
----------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK    :   BY:    KATZ, J.
                                       :
                                       :
              -against-                :   DATED: June 18, 2001
                                       :
                                       :
HAI GUANG ZHENG                        :   IND. No.: 3282/95
----------------------------------------x
```

The defendant, convicted after trial of Kidnapping in the first degree (4 counts), Rape in the first degree (2 counts), Kidnapping in the second degree, Sex Abuse in the first degree (2 counts) and Criminal Possession of a Weapon in the second degree, moves for a new trial pursuant to C.P.L. §440.10.

The defendant contends as follows:

(1) The defendant was denied a fair trial because his attorney failed to request DNA testing which would have shown that the defendant did not commit rape;

(2) The defendant was denied effective assistance of counsel when his attorney failed to make a written motion to preclude use of wiretap evidence, and the fruits thereof.

The motion of the defendant is denied for the following reasons:

(1) The claims of the defendant are procedurally barred pursuant to C.P.L. §440.10(2)(c). Facts pertaining to these allegations are in the record, and could have been reviewed on defendant's direct appeal.

(2) The claims of the defendant are without merit.

Order entered accordingly.

The Clerk of the Court is directed to forward copies of this decision to the office of the District Attorney and to the attorney for the defendant.

STANLEY B. KATZ, J.S.C.

**SUPREME COURT OF THE STATE OF NEW YORK**
**APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT**



1072J
K/cf

STEPHEN G. CRANE, J.

2001-06594

The People, etc., plaintiff,                    DECISION & ORDER ON MOTION
v Hai Guang Zheng, defendant.
(Ind. No. 3282/95)

Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate granting leave to appeal to this court from an order of the Supreme Court, Queens County, dated June 18, 2001, which has been referred to me for determination.

Upon the papers filed in support of the application and the papers filed in opposition thereto, it is

ORDERED that the application is denied.

STEPHEN G. CRANE
Associate Justice

October 9, 2001

PEOPLE v HAI GUANG ZHENG

SUPREME COURT OF THE STATE OF NEW YORK

APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT

7136B
K/hu

_____ AD2d _____

CORNELIUS J. O'BRIEN, J.P.
SONDRA MILLER
LEO F. McGINITY
NANCY E. SMITH, JJ.

———————————————————

1996-07827

The People, etc., respondent,                                    DECISION & ORDER
v Hai Guang Zheng, appellant.
(Ind. No. 3282/95)

———————————————————

      Goldberger & Dubin, P.C., New York, N.Y. (Paul A. Goldberger of counsel), for appellant.

      Richard A. Brown, District Attorney, Kew Gardens, N.Y. (John M. Castellano, Lisa Drury, and Ushir Pandit of counsel), for respondent.

      Application by the appellant for a writ of error coram nobis to vacate, on the ground of ineffective assistance of appellate counsel, a decision and order of this court dated January 10, 2000 (*People v Hai Guang Zheng*, 268 AD2d 443), modifying a judgment of the Supreme Court, Queens County, rendered August 15, 1996.

      ORDERED that the application is denied.

      The appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see, Jones v Barnes,* 463 US 745).

O'BRIEN, J.P., S. MILLER, McGINITY, and SMITH, JJ., concur.

ENTER:

James Edward Pelzer
Clerk

October 9, 2001

PEOPLE v HAI GUANG ZHENG

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

---

PEOPLE OF THE STATE OF NEW YORK
                    Respondent

           -against-

HAI GUANG ZHENG

               Defendant.

**NOTICE OF MOTION TO VACATE JUDGMENT PURSUANT TO CPL 440.10 AND CPL 440.30(1-a)**

**IND. NO. #3282/95**

---

      **PLEASE TAKE NOTICE** that upon the annexed affidavit of Hai Guang Zheng, duly sworn to the 24 day of April 2007, and upon all the proceedings previously had herein, a motion will be made in the Supreme Court, County of Queens, located at 125-01 Queens Blvd., Kew Gardens, New York, on ___ day of _____ 2007, at 9:00 o'clock in the forenoon of that day, or soon thereafter as the matter can be heard, for: (1) an order pursuant to N.Y. Crim. Pro. Law 440.30(1-a), directing that forensic Deoxyribonucleic Acid (DNA) testing be performed on evidence specified in the annexed affidavit, (2) an order vacating the judgment heretofore entered against Hai Guang Zheng on July 8, 1996, and (3) an order pursuant to CPL 440.30(5), to produce Hai Guang Zheng at any hearing to be conducted for the purpose of determing this motion, and for such other and further relief as the Court may deem just and proper.

Dated: <u>April 24, 2007</u>
       Comstock, N.Y.

TO: Richard A. Brown
    District Attorney

                                   Respectfully Submitted,

                                   Hai Guang Zheng, Pro Se

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

PEOPLE OF THE STATE OF NEW YORK

              Respondent

        -against-

HAI GUANG ZHENG

              Defendant.

**AFFIDAVIT IN SUPPORT**
**OF MOTION TO VACATE**
**JUDGMENT PURSUANT**
**TO CPL 440.30(1-a)**

**IND. NO. #3283/95**

**STATE OF NEW YORK** )
**COUNTY OF WASHINGTON )ss.:**

      Hai Guang Zheng, being duly sworn, deposes and says:

      1. I am the defendant in the above entitled action, and as such, I am familiar with the facts and circumstances stated herein. This affidavit is submitted in support of the defendant's motion requesting Deoxyribonucleic Acid (DNA) testing on evidence gathered by the state in its investigation of the crimes which cumulated in defendant's conviction.

      2. Defendant's jury selection commenced on June 26, 1996, and a verdict having been reached on July 8, 1996. Defendant was convicted of the crimes of Kidnaping in the first degree (four counts), Rape in the first degree (two counts), Kidnaping in the second degree, Sexual Abuse in the first degree (two counts), and Criminal Possession of a Weapon in the second degree.

      3. Defendant was sentenced on August 15, 1996 before the Hon. Stanley Katz, to four 25 years to life terms on each of the four counts of first degree Kidnaping charges, two of the counts ran concurrent with each other but consecutive to the other two counts for a total of 50 years to life; 8 1/3 to 25 years on each of the two first degree Rape and second degree Kidnaping count; 2 1/3 to 7 years on each of the two first degree Sexual Abuse counts, and 5 to 15 years on the

second degree Weapon Possession count, all to run consecutively with each other for a total of 84 2/3 years to life.

4. On August 16, 1996, a timely notice of appeal was filed in Supreme Court of Queens County. In July of 1999, appellate counsel submitted two issues on appeal, arguing that the trial court erred by not charging the jury on the defense of duress, and that defendant's sentence was excessive.

5. On January 10, 2000, the Appellate Division, Second Department, modified the judgment of conviction on the 11th count of the indictment by vacating the conviction of Sexual Abuse in the first degree, finding that no evidence pertaining to that count was adduced at trial. **People v. Hai Guang Zheng**, 268 A.D.2d 443, 701 N.Y.S.2d 617.

6. On June 15, 2000, the Hon. Carmen Beauchamp Ciparick of the Court of Appeals denied defendant's leave application. **People v. Hai Guang Zheng**, 95 N.Y.2d 835.

7. In February of 2001, defendant filed a motion to vacate the judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law. Defendant raised the issue of ineffective assistance of trial counsel because counsel failed to have the serological evidence tested for DNA after defendant vehemently denied involvement in the rape of the two victims and because counsel failed to move in writing to have the wiretap evidence suppressed.

## ARREST

8. On March 31, 1995, Jin Hao Liu was waiting for the arrival of her brother Guo Bang Liu, and his wife Liu Yan Wu at Kennedy Airport. Upon their arrival, she had Lincoln Car Service waiting to take them into Manhattan. After placing all the luggage in the trunk of the Lincoln, they headed toward Manhattan.

-2-

9. At some point during the trip to Manhattan, the car was cut off by two unknown perpetrators driving a dark colored car. Bang Liu, his wife Liu Yan Wu, and his sister Jin Hao Liu were all taken out of the Lincoln at gun point, and placed in the perpetrators' car. After driving for awhile, and approaching the Brooklyn Bridge, Bang Liu was given two quarters and the perpetrator's phone number and released near the Brooklyn Bridge by the June Wah apartment building. (TT. 352: line 9-11). **(Numbers preceding the letters "TT" refer to the trial transcripts)**

10. The two female victims were taken to a basement apartment in the County of Queens where they were held over-nignt. The perpetrator sitting on the passenger side accompanied them to the basement apartment and left, and was replaced by another Asian male. Phone calls were made to the family of the female victims requesting a ransom be paid for their release. It was later revealed that the phone calls were being intercepted pursuant to an interception order signed by a Justice of the Supreme Court, New York County.

11. The police department were able to trace the phone calls to a location in Queens County. Police surveillance of the location ultimately led to the arrest of defendant and another Asian male, and the rescued of the two female victims.

## TRIAL

### Testimony of Jin Hao Liu

12. Jin Hao Liu's trial testimony revealed that after the police arrested defendant, she was taken to the police precinct where a disposition was taken from her. Thereafter, she was taken to New York Downtown Hospital for a physical examination, and a rape kit was prepared (TT. 416: line 11). Jin Hao Liu stated that the "Doctors and Nurses examined me and took cotton

-3-

swap to wipe me" (TT. 416, line 14 -15). Certified copies of the medical record of Liu were turned over to defense counsel and entered into evidence as People's Exhibit "1".

13. Jin Hao Liu, described defendant as the "tall one," she identified defendant in open court (TT. 401), as the person who after coming out of the room with her sister-in-law, "the tall one" asked me to go to another room with him (TT. 407), "he asked me to go into the other room and asked me to take my clothes off, he asked me so I took my clothes off (TT. 407). Then the same thing, he took his clothes off and he did the same thing as the other person, he put his penis into my vagina (TT. 407).

14. During cross-examination Jin Hao Liu admitted that the last time she had sexual intercourse was in January of 1995 (TT. 444 - 445).

## Testimony of Liu Yan Wu

15. Liu Yan Wu's trial testimony revealed that after landing at Kennedy Airport she meet with her husband's sister Jin Hao Liu, who had Lincoln Car Service waiting to take them to Manhattan. After securing the luggage in the trunk of the Lincoln they headed for Manhattan. They were only a few block away from the airport when suddenly, another car block their path and two assailants with guns drawn, approached their car and took them out at gun point. (TT. 451: line 22-23)

16. While approaching the Brooklyn Bridge, the two assailants ordered my husband out of the car, gave him two quarters, a phone number and instructions. (TT. 453: line 24)

17. Once we arrived at the basement apartment, another Asian male took the place of the perpetrator who set on the passenger side of the car. Liu Yan Wu described the third perpetrator as shorter than the driver (TT. 455: line 5).

-4-

18. Liu Yan Wu, described how the "tall one" told me to go to his bed. She further testified that he kept touching her breasts and lower parts with his hands (TT. 459: line 22). When the District Attorney asked Liu Yan Wu to look around the court room from this wall to that wall and see if she could identify any of the people who were in the apartment, she stated, "he's not here" (TT. 459: line 22).

19. Liu Yan Wu further testified that after the "tall one" raped her, he used a cloth to wipe himself, and then gave her the cloth to wipe herself. She testified that the perpetrator ejaculated but didn't remember if it was inside of her or not (TT. 463).

20. Afterward, she was taken back into the room where her sister-in-law was being detained. The tall one then told her to go to the "short one's" bed and lie down (TT. 464), the short one repeated the exact same acts as the tall one did. The short one pulled my pants down, he put his penis into my vagina (TT. 646), after a short while the short one ejaculated (TT. 465).

21. The tall one then announced that he was taking us some place to be released (TT. 469). After driving a few block, we were stopped by a group of people, who turned out to be the police. The "tall one" and the "short one" were arrested and taken away. (TT. 472).

22. The police officers who were in charge of the arrest transported us back to the basement apartment where we had been held. (TT.474). After a search of the premises, "we were taken to the precinct. We were next taken to the hospital where I was seen by the doctor who took my panties and he wipe my vagina. The doctor used something that can preserve what he's looking for the object that he used was used internally." (TT. 475: line 22)

23. On cross examination, Liu Yan Wu, testified that the last time she had sexual intercourse with her husband was the evening of March 29, 1995 (TT. 500-01)

## Testimony of Dr. Howard Kurtz

24. Dr. Howard Kurtz, called by the People, testified that his job description included Obstetrics, Gynecology, and covering everything including the emergency room (TT. 537-38). Dr. Kurtz stated that he was on duty April 2, 1995, and examined Liu Yan Wu and Jin Hao Liu.

25. Dr. Kurtz testified that the examinations that he performed were essentially the same for both victims, which included having the women stand up on a little piece of paper that was used for collecting debris; that he took that paper and put it in a sealed envelope and placed it back in the rape kit. (TT. 540). Dr. Kurtz also collected fingernail scrapings, vaginal swabs, rectal swabs, blood samples, hair from the victims' heads, and pubic hair. He testified further that he put all of the evidence in an envelope, signed his name and handed it over to the police officer (TT. 541).

26. Dr. Kurtz testified that he took panties from both victims to examine them for the presence of semen (TT. 542).

## Testimony of Thomas Hickey

27. The People called Mr. Thomas Hickey, a Chemist currently employed by the New York Police Department who testified to the follow events.

28. Mr. Hickey testified that he was currently assigned to the Serology Section; that his duty and responsibility included the examination of evidence for the presence of assorted body fluids (TT. 545).

29. Mr. Hickey, further testified that he performed an examination on a rape kit received by the lab on April 2, 1995, and given lab number 95-1251, under voucher number 548064, belonging to the victim Liu Yan Wu, and entered into evidence by the People as Exhibit "3". (TT. 552 - 553)

30. On April 11, 1995, Mr. Hickey completed the examination on Liu Yan Wu's rape kit. After examining the vaginal swabs and smears, and a pair of panties, Mr. Hickey determined that they each tested positive for the presence of spermatozoa (TT. 557, 558).

31. Mr. Hickey, next examined the rape kit of Jin Hao Liu. After examining the envelope labeled vaginal swabs and smears, he found no evidence of the presence of sperm cells (TT. 559). The panties in the rape kit belonging to Jin Hao Liu tested positive for the presence of sperm cells (TT. 580).

32. Mr. Hickey's testimony ultimately revealed that he was unable to determine which of the two perpetrators the sperm cells belonged to (TT. 562). Mr. Hickey, further testified that vaginal spermatozoa can stay in a female for up to 72 hours after having sex; and on a pair of panties, if dried, for years. (TT. 563)

## REASONABLE PROBABILITY OF
## A MORE FAVORABLE VERDICT

33. The court must grant a defendant's CPL 440.30(1)(a) DNA testing motion upon specified evidence when there is a "reasonable probability" that a more favorable verdict would have resulted if the results had been admitted at trial. **People v. Barnwell**, 4 N.Y.3d 303; See also **People v. Keene**, 4 A.D.3d 536; **People v. Pugh**, 288 A.D.2d 634 (3er Dept. 2001).

34. In Mr. Zheng's case, as in Barnwell, supra, the identity of the male assailant was the main issue. There is no doubt that Mr. Zheng readily admitted to authority that he committed the Kidnapping charge "under duress", but vehemently denied that he raped either of the two female victims. Mr. Zheng took the witness stand and testified on his own behalf. He admitted to participating in the Kidnapping charges because "AK Guan" a member of "Snakehead"[1] threaten

---

[1] A snakehead is an individual who illegally smuggles Chinese immigrants into the United States for a fee.

to kill his parent back in China (TT. 905) but otherwise denied participating in the rape, and thereby placing in issue his identity as the rapist (TT. 914, 916).

35. Had there been DNA testing of the serological evidence submitted at trial it would have been abundantly clear that Mr. Zheng was innocent of the rape charges. In addition, this evidence would have served to impeach the testimony of the two women. Ms. Wu who spent more than 48 hours in the presence of her kidnaper was unable to identify defendant in open court as the perpetrator who kidnaped and raped her. When asked by the district attorney to look around the courtroom and see if any of the people from the apartment were in the courtroom, Ms. Wu stated "he is not here" (TT. 459, line 22)

36. The evidence offered at trial from the rape kit belonging to Ms. Wu demonstrated that vaginal swabs and panties tested positive for the presence of sperm cells. Ms. Wu testified that the last time she had sexual intercourse with her husband was the evening of March 29, 1995, and rescued by the police on April 2, 1995. By the time Ms. Wu was examine by Dr. Kurtz, who prepared the rape kit, more than 72 hours had elapsed since the last time she had sexual intercourse with her husband. The semen found in her vagina and on her panties could only have come from her attacker.

37. Ms. Liu's rape kit showed that the vaginal swabs, anal swabs, and oral swabs tested negative for the presence of semen, but her underwear tested positive for the presence of sperm cells. Ms. Liu testified that the last time she had sexual intercourse was in January of 1995. She was abducted on March 31, 1995, and rescued by the police on April 2, 1995; well over two and half months since the last time she had consensual sexual intercourse. Any serological evidence found on Ms. Liu, and tested positive for the presence of sperm cells could only have come from her attacker.

-8-

38. According to the Police chemist, called on behalf of the People, evidence of semen can last in a woman's vagina for at least 72 hours after intercourse and the underwear will show evidence of semen for months or even years after intercourse if the semen is dried. Under the circumstances of this case, exclusion by DNA test results of Mr. Zheng as the depositor of the semen, would have strongly impeached the credibility of the victims' identification of Mr. Zheng as their attacker. The jury was left with no alternative but to conclude that Mr. Zheng was the source of the semen found on Ms. Wu and Ms. Liu. The District Attorney in his opening and closing statement to the jury, urged the jury to consider the fact that defendant ejaculated on the victims in their determination in reaching a verdict.

WHEREFORE, Mr. Zheng respectfully requests that this court grant this motion for DNA testing of all the serological evidence collected and tested positive for the presence of sperm cells pursuant to CPL 440.30(1)(a).

Respectfully Submitted

Hai Guang Zheng

Sworn to before me this

24 day of April, 2007.

NOTARY PUBLIC

DENNIS E. BARDEN
Notary Public, State of New York
No. 01BA6052723
Qualified in Warren County
Commission Expires Dec. 26, 20..10

Hai Guang Zheng #96-A-5674
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York 12821

Ms. Gloria D'Amico,
County Clerk and Clerk of the Supreme Court
Criminal Term
125-01 Queens Blvd.,
Kew Gardens, New York 11415

**RE: People v. Hai Guang Zheng**
**Ind. No. #3282/95**

April 25, 2007

Dear Ms. D'Amico:

Please find enclosed a motion pursuant to CPL 440.30(1)(a), please file this motion with the court and provide me with the name of the judge and the date this matter may be heard. If there is additional papers I must file with the court please notify me at the above address.

Thanking you in advance for your time and consideration in this matter.

Hai Guang Zheng
Great Meadow Corr. Fac.
P.O. Box 51
Comstock, New York 12821

Cc: file

# AFFIDAVIT OF SERVICE

**STATE OF NEW YORK**     )
**COUNTY OF WASHINGTON ) ss.:**

I, Hai Guang Zheng, being duly sworn, deposes and say that on the 24 day of April, 2007,

I served upon the respondent a copy of my CPL 440.30(1)(a) motion for Deoxyribonucleic Acid

(DNA) testing, at his normal place of business located at:

> **Richard A. Brown,**
> **District Attorney**
> **District Attorney's Office**
> **Queens County**
> **125-01 Queens Boulevard**
> **Kew Gardens, New York 11415**

By placing the above mentioned document in the mailbox at the Great Meadow

Correctional Facility, under the exclusive care and custody of the United States Postal Service, by

certified mail return receipt requested.

Hai Guang Zheng
Great Meadow Corr. Fac.
P.O. Box 51
Comstock, New York 12821

Sworn to before me this

24 day of April, 2007

Notary Public
DENNIS E. BARDEN
Notary Public, State of New York
No. 01BA6052723
Qualified in Warren County
Commission Expires Dec. 26, 20__

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-7
-------------------------------------------------------------------x
                                             :    Return Date:
THE PEOPLE OF THE STATE OF NEW YORK,         :    June 25, 2007
                                             :
          Respondent,                        :    RESPONDENT'S
                                             :    AFFIRMATION IN
                                             :    OPPOSITION TO
    -against-                                :    DEFENDANT'S
                                             :    MOTION FOR POST-
                                             :    CONVICTION DNA
                                             :    TESTING AND TO VACATE
                                             :    JUDGMENT PURSUANT
                                             :    TO C.P.L. § 440.10
                                             :
                                             :    Queens County
HAI GUANG ZHENG,                             :    Indictment Number
                                             :    3282/95
          Defendant.                         :
-------------------------------------------------------------------x

          USHIR PANDIT, an attorney admitted to practice law in the State of New

York, affirms the following statements to be true under the penalties of perjury:

          1.      I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County. I am submitting this affirmation in opposition to

defendant's April 24, 2007 motion post-conviction DNA testing pursuant to C.P.L. § 440.30

(1-a). I make the statements in this affirmation upon information and belief and based on my

review of the records and files of the Queens County District Attorney's office.

### FACTUAL AND LEGAL BACKGROUND

          2.      In the evening of March 31, 1995, Jin Hao Liu went to the airport to

meet her brother, Guo Bang Liu, and his wife, Liu Yan Wu. After meeting at the airport, the

three got into a car-service automobile to leave the airport. Shortly after entering the car-service automobile, the car was cut off by a second car driven by defendant, forcing the Liu's car to stop. A second man, known as Ak Guan, was in defendant's car in the passenger seat.

      3.     After defendant stopped the victims' car, Ak Guan and defendant got out of their car, went to the victims' car and, at gunpoint, ordered the victims to leave their car and get into the back seat of defendant's car. Ak Guan ordered the victims to produce their passports. After examining the passports, Ak Guan stated that the wrong people had been taken.

      4.     As a result, defendant stopped the car near the Brooklyn Bridge, and gave the man, Guo Bang Liu, one or two quarters and a piece of paper with telephone numbers written on it. Guo Bang Liu was then ordered to get out of the car, leaving his wife and sister with defendant and Ak Guan. Guo Bang Liu found a car to take him to his family's home in Chinatown. After he returned home, Guo Bang Liu went with one of his sisters to the 5th Police Precinct station house to report the kidnapping.

      5.     In the meantime, defendant and Ak Guan took Jin Hao Liu and Liu Yan Wu to a basement apartment in an unknown location. After some time, a third man, Qin Guang Zheng, arrived at the apartment. Shortly after co-defendant Zheng's arrival, Ak Guan left. The two women were forced to spend the night in the apartment with defendant and co-defendant Zheng. Defendant was in possession of a pistol, which he kept by his pillow when he slept. Neither woman was able to sleep.

6. The next morning, defendant took Liu Yan Wu into a separate room and began touching her breasts with his hands. He removed her clothing and put his penis into her vagina while holding a gun to her head. Defendant then brought Liu Yan Wu back into the first room and took Jin Haw Liu into the other room and raped her. Co-defendant Zheng also raped both women.

7. Jin Hao Liu was asked for her phone number, which she wrote down for her captors. After receiving the telephone number, defendant left the apartment several times. Defendant also made and received several telephone calls in the presence of the women. At one point, Jin Hau was permitted to speak with her family over the phone. She asked her family to give the kidnappers the money.

8. On April 1, 1995, Jun Hao and Guo Bang Kiu's sister Emily Liu, received a call demanding $20, 000 for the return of each woman. Emily Liu received several more calls from the same man, which were monitored by the police. Ultimately, defendant and his accomplices reduced their demands to $7500.00 for the return of each woman. Emily Liu was told to bring the money in a bag of groceries to a location in Chinatown.

9. The police determined that the ransom calls were being made from a cellular phone in the vicinity of 133-34 59th Avenue, in the Flushing area of Queens. At approximately 12:05 a.m., on April 2, 1995, defendant and co-defendant Zheng were stopped in that area by the police with the two female victims in their car. A cellular phone was recovered from the front seat of the car.

3

10. Later, a search was made of the basement apartment where the two female victims had been held. There, detectives recovered three more cellular telephones, and a loaded gun.

11. The victims were taken to a hospital where rape kits were prepared. Tests revealed the presence of semen in Liu Yan Wu's vagina and on her panties. Semen was also found on Jin Hao Liu's underwear.

12. Guo Bang Liu identified defendant in a line-up. In addition, defendant made a statement to the police corroborating the victim's accounts of what had happened at the airport, and admitted that he was the person who had made the ransom demands. Defendant denied raping the two female victims.

13. For these acts, defendant was charged with eight counts of Kidnapping in the First Degree (Penal Law § 135.25[1], [2][c]), four counts of Rape in the First Degree (Penal Law § 135.36[1]), one count of Kidnapping in the Second Degree (Penal Law § 135.20), eight counts of Sexual Abuse in the First Degree (Penal Law § 130.65[1]), and one count of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03) (Queens County Indictment Number 3282/95).

14. Defendant proceeded to trial before Justice Katz and a jury. The jury convicted defendant of four counts of Kidnapping in the First Degree, two counts of Rape in the First Degree, one count of Kidnapping in the Second Degree, two counts of Sexual Abuse in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree.

4

15.     On August 15, 1996, the Court sentenced defendant to four indeterminate terms of imprisonment from twenty-five years to life for the first-degree kidnapping counts, two of which were to be served consecutively to the other two. Defendant was also sentenced to indeterminate prison terms of from eight and one-third to twenty-five years on each of the rape convictions, and eight and one-third to twenty-five years on the second-degree kidnapping conviction. Defendant was also sentenced to indeterminate prison terms of from two and one-third to seven years incarceration for each of the sexual abuse counts, and from five to fifteen years on the weapons conviction. These sentences were each to run consecutively to each other, and to the sentence on the first-degree kidnapping counts, resulting in an aggregate sentence of from eighty-four years to life (Katz, J).

16.     On August 16, 1996, defendant filed a notice of appeal.

17.     In July of 1999, defendant filled a brief in the Appellate Division, Second Department. In that brief, defendant claimed that this Court erred by refusing to charge the jury on the defense of duress and that his sentence was excessive.

18.     On September 17, 1999, the People filed a respondent's brief. The People argued that the trial court correctly refused to charge the jury on the defense of duress because defendant had failed to show that he engaged in the kidnappings because he was coerced into doing so, that the threats used to coerce him were capable of immediate realization, and that he had not placed himself into the situation that allegedly created the

duress. The People also argued that defendant's violent and depraved acts merited the maximum sentence.

19. On January 10, 2000, the Appellate Division modified the judgment by vacating the conviction of Sexual Abuse in the First Degree under the eleventh count of the indictment and vacating the sentence thereon, finding that no evidence pertaining to that count was adduced at trial, and, as so modified, the Appellate Division affirmed the judgment. *People v. Hai Guang Zheng*, 268 A.D.2d 443 (2d Dept. 2000).

20. On January 31, 2000, defendant appealed the judgment of the Appellate Division to the Court of Appeals. The People filed their letter in opposition in February, 2000.

21. On June 15, 2000, Justice Carmen Beauchamp Ciparick of the Court of Appeals denied defendant's leave application. *People v. Hai Guang Zheng*, 95 N.Y.2d 835 (2000).

22. On February 1, 2001, defendant moved, through counsel, to vacate his judgment of conviction pursuant to Section 440.10 of the Criminal Procedure Law. Defendant claimed that he was denied the effective assistance of counsel because his trial counsel failed to have the serological evidence tested for DNA after defendant denied any involvement in the rape of the two victims and because counsel failed to move in writing to have the wiretap evidence suppressed.

23. On June 13, 2001, the People filed an affirmation and a memorandum of law in opposition to defendant's motion. The People argued that defendant's claim was mandatorily procedurally barred since an adequate record existed for the claims to have been

6

raised on defendant's direct appeal. *See* C.P.L. § 400.10. The People also argued that to the extent these claims were not procedurally barred, the claims were without merit.

24.     On June 18, 2001, this Court denied defendant's motion (Katz, J.). It found that defendant's motion was procedurally barred and was without merit. The Court stated that the facts pertaining to defendant's claims were on the record and therefore could have been reviewed upon defendant's direct appeal, and, in any event, his motion was meritless.

25.     On July 17, 2001, defendant sought leave to appeal the Court's decision and order denying his motion to vacate judgment. In the same motion, defendant alternatively claimed that his appellate counsel was ineffective and sought a writ of error *coram nobis*. He claimed that his appellate counsel was ineffective because counsel failed to raise on appeal the claims defendant raised in his section 440.10 motion, particularly since the Court denied defendant's motion and ruled that the facts pertaining to defendant's claim were on the record.

26.     On August 20, 2001, the People filed an affirmation and a memorandum of law in opposition to defendant's application for leave to appeal and his *coram nobis* application. The People argued that this Court correctly rejected defendant's claim because it was procedurally barred and without merit. The People also argued that defendant's motion regarding the ineffectiveness of appellate counsel should be denied because defendant's trial counsel was effective, and his appellate counsel reasonably chose not to raise a meritless claim regarding trial counsel's performance.

7

27.   On October 9, 2001, the Appellate Division denied defendant's application for leave to appeal and his application for writ of error *coram nobis*. *People v. Hai Guang Zheng*, 287 A.D.2d 520 (2d Dept. 2001).

## Defendant's C.P.L. § 440.30(1-a) Motion

28.   By his current motion, dated April 24, 2007, defendant moves this Court for an order granting post-conviction DNA testing under section 440.30(1-a) of the Criminal Procedure Law. Specifically, defendant argues that identity was the main issue in this case because although he admitted to the kidnapping counts, he denied raping either of the two female victims (Defendant's Motion at ¶ 34). Defendant also states that the rape kits of the two victims indicated presence of sperm cells and that had a DNA test been conducted of this evidence, his innocence would have been established (Defendant's Motion at ¶ 35-37). Defendant also move to vacate his judgment of conviction under section 440.10 of the Criminal Procedure Law.

29.   This Court should deny defendant's motion because defendant cannot establish that any DNA testing could have produced a verdict more favorable to him. This Court should also deny defendant's motion to vacate his judgment of conviction because defendant has failed to provide any basis for doing so.

30.   The DNA testing statute authorizes a court to order post-conviction DNA testing "upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting from the judgment, there exists a reasonable probability that the verdict would have been more favorable to the

8

defendant." C.P.L. § 440.30(1-a). Defendant now moves pursuant to this statute for DNA testing of the evidence collected in the rape kits of the two victims in this case. But defendant is not entitled to DNA testing because DNA testing could not exonerate defendant.

31.     Here, there is no possibility – much less a "reasonable probability" – that DNA testing could exonerate defendant. Indeed, although C.P.L. § 440.30 (1-a) provides a mechanism for a defendant to obtain an order for DNA testing in support of a post-conviction motion to vacate judgment on the ground of newly discovered evidence, it does not guarantee a defendant an absolute right to such testing upon request. The defendant has the burden of showing (1) the likelihood that DNA testing would exclude the defendant as the source of the evidence tested, and (2) if the defendant is excluded as the source of the evidence, that there exists a reasonable probability that the outcome of a trial would have been more favorable to the defendant if this test result had been introduced. C.P.L. § 440.30 (1-a).

32.     Defendant is unable to sustain that burden. Indeed, the evidence in this case established that the two victims were raped by both defendant and co-defendant Qui Guang Zheng. And although one victim's underwear and the other victim's vaginal swabs showed the presence of spermatozoa, it is conceivable that that spermatozoa was from both defendant and co-defendant. In fact, although a test result identifying defendant as the source of the sperm found in the victims would conclusively establish his guilt, a negative result could establish only that the victim had intercourse with a male other than defendant – the co-defendant. *See People v. Smith*, 245 A.D.2d 79 (1st Dept. 1997) (even if defendant were excluded as source of semen, victim had testified that she had had intercourse with her

9

boyfriend shortly before the rape and she did not know if rapist had ejaculated); *People v. Kellar*, 218 A.D.2d 406 (2d Dept. 1996) (negative result would be probative of little more than the victim's prior sexual activity). A DNA test in this case, therefore would have been of little probative value. Accordingly, defendant has failed to establish with reasonable probability that the verdict would have been more favorable to defendant.

33. Consequently, defendant cannot establish a "reasonable probability" that DNA testing would exonerate him, and his motion should therefore be denied summarily. *See* C.P.L. § 440.30(1-a).

### The Information in the People's Possession About
### The Current Whereabouts of the Rape Kits[1]

34. In any event, defendant's motion should also be denied because the current whereabouts of the rape kits are not known.

35. The amended statute provides that, in connection with a defendant's motion for post-conviction DNA testing, the court may direct the People to provide the defendant with information in their possession concerning the current physical location of specified evidence. If the specified evidence no longer exists or its physical location is unknown, the court may direct that the People make a representation to that effect and provide information and documentary evidence in the People's possession concerning the last known physical location of the evidence. C.P.L. § 440.30(1-a). In this regard, the court

---

[1] Although defendant is not entitled to DNA testing because he has failed to establish a "reasonable probability" that he would be exonerated, the People have attempted to ascertain the current location of the rape kits.

should take steps to obtain from the People reliable information as to whether or not the sought evidence exists and the source of that information. Information that would be adequate might include an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating whether the evidence exists or does not exist. *People v. Pitts*, 4 N.Y.3d 303 (2005).

36. But if the court finds that the specified evidence no longer exists or the physical location of this evidence is unknown, the statute makes clear that such a finding shall not be a factor from which any unfavorable inference to the People may be drawn. C.P.L. § 440.30(1-a). Thus, although the amended statute does not impose a "due diligence" requirement on a defendant[2] *(People v. Pitts*, 4 N.Y.3d at 311), the statute recognizes that evidence cannot be maintained indefinitely. *See generally People v. Callace*, 151 Misc. 2d 464, 467 (Nassau Co. Ct. 1991)(no authority requiring prosecution to preserve evidence indefinitely after conviction affirmed). Indeed, there is no requirement that the People preserve crime scene items for future forensic testing after appeals are exhausted. *See e.g. People v. Brown*, 196 A.D.2d 465 (1st Dept. 1993). Nor does section 440.30(1-a) impose such an obligation. *See People v. Barnwell*, 6 A.D.3d 1147-48 (3d Dept. 2004) (no need for hearing to inquire into destruction of evidence because People were under no obligation to preserve evidence after defendant's direct appeals were exhausted in 1990, more that ten years before section 440.30(1-a) motion), *rev'd on other grounds, People v. Pitts*, 4 N.Y.3d

---

[2]This is contrast to a motion to vacate judgment based on newly-discovered evidence pursuant to section 440.10(1)(g) of the Criminal Procedure Law -- a provision that requires a defendant to bring his motion with due diligence after discovery of the new evidence.

303; *People v. Ahlers*, 285 A.D.2d 664, 665 (3d Dept. 2001); *People v. Trama*, 167 Misc. 2d 93, 95 (County Ct. Westchester Co. 1995).

37.  Here, the People have complied with their obligations under the statute by providing the Court with reliable information in their possession that current whereabouts of the two rape kits are unknown, and that the last known location of these items is in this Court at the time of trial.

38.  First, according to the Police Department representatives and Police Department records, neither of the rape kits were ever returned to Pearsons Place Warehouse, where such evidence is stored.[3] Indeed, these items were removed by Detective Michael Green on June 27, 1996, when they were transported to Assistant District Attorney Scott Kessler for trial. Thereafter, the last physical location of rape kits that can be identified is during the trial when the rape kits were marked, but not received in evidence (*see* T: Hickey: 543-566).[4]

39.  According to the Bridge sheet, all the evidence that was marked for identification and admitted into evidence at the trial was returned to the trial prosecutor, Assistant District Attorney Scott Kessler. (*See* Copy of the Bridge Sheet, Exhibit A).

---

[3]The People are in the process of obtaining an affidavit from a police representative at the Pearson Place Warehouse indicating their efforts to locate the rape kits in question.

[4]Although defendant states in his motion that the rape kits were introduced into evidence, according to the Index sheet prepared by the court reporter, the rape kits were marked for identification, but not received in evidence (T: 566). The portion of the chemist's testimony relating to the rape kits is missing from the copy of the transcript in the People's possession.

12

40.    As indicated by the trial prosecutor, Scott Kessler's affirmation, he does

not have any recollection of what became of the rape kits after the trial. (*See* Affirmation of

Scott Kessler, Exhibit B).   Moreover, the evidence cannot be located in the District

Attorney's Office. The District Attorney's files were searched, but the rape kits were not in

the files.  A search of the safes within the District Attorney's Office has not yet resulted in

locating the rape kits.[5]  The offices of the Special Victims Bureau were also searched with

no avail. (*See* Affidavit of Kathleen Moran, Exhibit C).

41.    In short, in light of all this, the People have discharged their obligation

under the statute by providing the Court with reliable information in their possession to

demonstrate that the current physical location of the rape kits are unknown, and that the last

known location of these items is this Court during trial.

42.    The People's inability to locate these items can not serve as an

unfavorable inference. *See* C.P.L. § 440.30(1-a); *People v. Barnwell*, 6 A.D.3d at 1147-48.

And this is particularly so given that there is little, if any, likelihood that locating the rape kits

would result in exonerating defendant.  After all, the evidence in this case established that

the two victims were raped by both defendant and co-defendant Qui Guang Zheng. Thus,

although a test result identifying defendant as the source of the sperm found in the victims

would conclusively establish his guilt, a negative result could establish only that the victim

had intercourse with a male other than defendant – the co-defendant.  Accordingly, there is

---

[5]As soon as a complete search of the office safe is conducted, an affidavit will be submitted
with a supplemental response outlining the results of the search.

13

no evidence in this case from which to infer that finding the rape kits would exonerate defendant.

WHEREFORE, defendant's motion for an order granting post-conviction DNA testing and his motion to vacate his judgment of conviction should be summarily denied in its entirety.

Dated:        Kew Gardens, New York
              June 25, 2007

Ushir Pandit
Assistant District Attorney
(718)286-5928

To:    Hai Guang Zheng, 96A5674
       Great Meadow Correctional Facility
       Post Box 51
       Comstock, New York 12821

14

# *EXHIBIT A*

SUPREME COURT QUEENS COUNTY          PART K- 20          IND. # 3280

JUSTICE _S. KATZ_

DATES _06 2 96_

NY vs _HAI EUANG ZHENG_

(TRIAL) (JURY)   NON-JURY

HEARING   MAPP   WADE   HUNTLEY

DUNAWAY   other _____

CHARGES 1. _KIDNAPPING 1_ 4. ___
        2. _____ 5. ___
        3. _____ 6. ___

APPEARANCES:
    PSNY: ADA _SCOTT KESSLER_         PHONE _286 6606_
    DEFENDANT: _DON SCHECTER (HAI)_   PHONE _279 2131_
                                      PHONE ___
                                      PHONE ___

CLERK _R. CHIN_        BRIDGE OFFICER(S) _J PUMA  7/1 AGUINR_

REPORTER(S) _D. RAIL /MIKE BERNARD    /CATHY PARKER  7/1-DUNNE_

SERGEANT(S) _CEDISCHI  7/1 HOLMES_    OFFICERS _2 EARDON / AGUILERA_

PAGE 1 OF 1

| Date Time | # | ID | Ev | Π Exh | | Date Time | # | ID | EV | Δ Exh |
|---|---|---|---|---|---|---|---|---|---|---|
| 7-1-96 | 11 | ✓ | ✓ | 3-CELL DRIVE (IN ART) | | A | | | | |
| 7-1-96 | 12 | ✓ | ✓ | COPY OF MIRANDA WARNINGS (4-PAGES) | | B | | | | |
| | 3 | | | | | C | | | | |
| | 4 | | | | | D | | | | |
| | 5 | | | | | E | | | | |
| | 6 | | | | | F | | | | |
| | 7 | | | | | G | | | | |
| | 8 | | | | | H | | | | |
| | 9 | | | | | I | | | | |
| | 10 | | | | | J | | | | |

Π evidence returned:
    Date: _7-8-96_
    Time: _1740 hrS_
    ADA: _S. KESSLER_

contraband in safe □

Δ evidence returned:
    Date: ___
    Time: ___
    Atty: ___

Signature X _____        Signature ___

| Date Time | Π Witnesses | Date Time | Δ Witnesses |
|---|---|---|---|
| 1. | | 1. | |
| 2. | | 2. | |
| 3. | | 3. | |
| 4. | | 4. | |
| 5. | | 5. | |
| 6. | | 6. | |
| 7. | | 7. | |
| 8. | | 8. | |
| 9. | | 9. | |
| 10. | | 10. | |

Selecting a Jury _____   Openings _____ Trial _____ 7-2
9:30 7/8 (CHARGE CONFERENCE 7-9-96)   Summations _7/8_   Charge
Deliberations _7/8_   Hearing Adj _____ 1
VERDICT ___ NOT GUILTY/GUILTY OF ___

| Date Time | # | ID | Ev | Π Exh | Date Time | # | ID | EV | Δ Exh |
|---|---|---|---|---|---|---|---|---|---|
| 3:30 PM | | | | (JIN HAO LIU) | 12:44 | | | | COPY OF |
| 6-27-96 | 1 | | ✓ | 1 PGS: NY DOWNTOWN HOSP. RCRD | 7-1-96 | A | ✓ | | RAVESBROOM WARRANT |
| 12:45 PM | | | | (LIU YAN WU) | 12:48 | | | | COPY OF |
| 6-28-96 | 2 | | ✓ | 12 PGS. NY DOWNTOWN HOSP. RCRD | 7-1-96 | B | ✓ | | CRIM. COMPLAINT |
| 3:30 PM | | | | | | | | | |
| 6-28-96 | 3 | ✓ | | RAPE KIT (WU YAN LIU) | | C | | | |
| 3:35 PM | | | | | | | | | |
| 6-28-96 | 4 | ✓ | | RAPE KIT (LIU JIN HAO) | | D | | | |
| 10:44 | | | | | | | | | |
| 7-1-96 | 5 | ✓ | ✓ | LINEUP PHOTO (GROUP) | | E | | | |
| 10:44 | | | | | | | | | |
| 7-1-96 | 6 | ✓ | ✓ | LINEUP PHOTO (GROUP) | | F | | | |
| 10:48 | | | | | | | | | |
| 7-1-96 | 7 | ✓ | ✓ | " " (INDIVIDUAL) HAI ZHENG | | G | | | |
| 10:48 | | | | | | | | | |
| 7-1-96 | 8 | ✓ | ✓ | " " (INDIVIDUAL) QIN ZHENG CO-DEF | | H | | | |
| 11:30 | | | | | | | | | |
| 7-1-96 | 9 | ✓ | ✓ | CELL PHONE (IN CAR) | | I | | | |
| 11:40 | | | | | | | | | |
| 7-1-96 | 10 | ✓ | | HAND GUN CLIP + 6 ROUNDS | | J | | | |

**Π evidence returned:**

Date: _____
Time: _____
ADA: _____

Signature _____

| contraband in safe ☑ |
|---|

**Δ evidence returned:**

Date: _____
Time: _____
Atty: _____

Signature _____

| Date Time | Π Witnesses | | Date Time | Δ Witnesses |
|---|---|---|---|---|
| 12 PM 6-27-96 | 1. GUO BANG LIU | WAYNE CNTY. MI. | 1. _____ | |
| 2:40 PM 6-27-96 | 2. JIN HAO LIU | K-CNY | 2. _____ | |
| 9:30 AM 6-28-96 | 3. LIU YAN WU | LOS ANG. CNTY | 3. _____ | |
| 12:15 PM 6-28-96 | 4. JIN ZHU LIU | K-CNY | 4. _____ | |
| 2:15 PM 6-28-96 | 5. HOWARD KURTZ (DR) | K-CNY | 5. _____ | |
| 3:00 PM 6-28-96 | 6. THOMAS HICKEY | K-CNY | 6. _____ | |
| 10:04, 10:37, 15:30 DET. 7-1-96 | 7. MICHAEL GREENE #2826 | MAJOR CASE SQ. NYPD | 7. _____ | |
| 15:42 DET. 7-1-96 | 8. KEITH NG #4480 | B. ROBERY SQ. | 8. _____ | |
| 11:34 DET. 7-1-96 | 9. STEVEN BANKS #4184 | MAJOR CASE SQ. NYPD | 9. _____ | |
| 14:33 DET. 7-1-96 | 10. KEVIN STREING #3667 | BALLISTICS NYPD | 10. _____ | |

Selecting a Jury 6-25-96 6-26 _____ Openings 6-27 Trial 6-28 7-1 7-2

9:30  7/8 (CHARGE CONFERENCE) _____  Summations 7/8 _____ Charge _____

7-3-96 _____

Deliberations 7/8 _____  Hearing-Adj _____ 4 _____

VERDICT _____ NOT GUILTY/GUILTY OF _____

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS: CRIMINAL TERM: PART K-7
-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,   :    AFFIRMATION

                  Respondent,    :

                                Queens County
         -against-          :      Indictment Number
                                3282/95

                                :

                                :

HAI GUANG ZHENG,

                                :

             Defendant-Appellant.

                                :
-------------------------------------------------------------------x

          SCOTT KESSLER, an attorney admitted to practice law in the State of New

York, affirms the following statements to be true under the penalties of perjury:

          1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affirmation at the request of

Assistant District Attorney Ushir Pandit.

          2.     I was the trial assistant district attorney who prosecuted this case. I had

instructed Detective Michael Green to obtain two rape kits relating to this case during the

pendency of the case in June of 1996.

          3.     During the trial, the two rape kits were marked for identification, but

were not offered into evidence.

4.      I do not know the current whereabouts of these rape kits.  I also do not

have any independent recollection of what became of that evidence after the trial concluded.


Dated:        June 22, 2007
              Kew Gardens, New York



SCOTT KESSLER

# *EXHIBIT C*

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-7

-------------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,

                    Respondent,

                                 :     **AFFIDAVIT**

            -against-

                                 :     Queens County
HAI GUANG ZHENG,                      Indictment No.
                                 :     3282/95

                  Defendant.     :

-------------------------------------------------------------------------x

STATE OF NEW YORK     )
                        )  ss.
COUNTY OF QUEENS    )

      KATHLEEN MORAN, being duly sworn, deposes and says:

      1.    I am a paralegal assigned to the Queens County District Attorney's Office, Special Victims Bureau. I submit this affidavit at the request of Assistant District Attorney Ushir Pandit.

      2.    I personally searched the Special Victims Bureau of the Queens County District Attorney's Office for evidence (rape kits) in this case, which was vouchered under numbers F548064 and F548065.

3.   The results of my search were negative.


_Kathleen Moran_
Kathleen Moran


Sworn to before me this 22nd
day of June, 2007

_Michelle Kaszuba_
Notary Public


MICHELLE KASZUBA
Notary Public - State of New York
No. 01KA6137117
Qualified in Nassau County
My Comm. Expires Nov. 14, 2009

Hai Guang Zheng #96-A-5674
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York 12821

Ms. Gloria D'Amico,
Clerk of the Court
125-01 Queens Blvd.
Kew Gardens, New York 11415

July 17, 2007

RE: **People v. Hai Guang Zheng**
    **Ind. No. #3283/95**

Dear Ms. D'Amico:

Here within please find one original copy of my Reply
to the District Attorney's Affirmation in Opposition to my
motion pursuant to CPL §440.30 (1-a).

Please file these papers with the court, and notify me
of the possible date the court will reasonable render a decision
in this matter.

In addition, if theres any additional papers I must file
with the court, please notify me at the above address.

Thanking you in advance for your time and consideration
in this matter.

Respectfully Submitted

Hai Guang Zheng

cc: file

# **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK          )
COUNTY OF WASHINGTON ) ss.:

I, Hai Guang Zheng, being duly sworn, deposes and say that on the 17 day of July, 2007, I served upon the Respondent a copy of my Reply to his Affirmation in Opposition to defendant's CPL 440.30(1)(a) motion for Deoxyribonucleic Acid (DNA) testing, at his normal place of business located at:

> **Richard A. Brown,**
> **District Attorney**
> **District Attorney's Office**
> **Queens County**
> **125-01 Queens Boulevard**
> **Kew Gardens, New York 11415**

By placing the above mentioned document in the mailbox at the Great Meadow Correctional Facility, under the exclusive care and custody of the United States Postal Service, by certified mail return receipt requested.

Hai Guang Zheng
Great Meadow Corr. Fac.
P.O. Box 51
Comstock, New York 12821

Sworn to before me this

17 day of _Duly_, 2007

Notary Public

WESLEY E. PERRY
Notary Public, State of New York
Qualified in Wash. Co. No. 01PE6026485
My Commission Expires June 14, 20 11

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

PEOPLE OF THE STATE OF NEW YORK
Respondent

**REPLY**

-against-

**IND. NO. #3283/95**

HAI GUANG ZHENG
Defendant.

**STATE OF NEW YORK        )**
**COUNTY OF WASHINGTON )ss.:**

I, Hai Guang Zheng, being duly sworn, deposes and say:

1. I am the defendant in the above entitled action, and as such, I am familiar with the facts and circumstances stated herein.  This affidavit is submitted in support of my reply to the People's Affirmation in Opposition  to defendant's motion pursuant to CPL 440.30(1-a).

2. Defendant admits to the truth of the allegation set forth in paragraph 1-27, as they are a true reflection of the court record and the criminal history and the procedures of this case, but otherwise deny that defendant is not entitled to DNA testing of the serological evidence, and a "reasonable probability" does in fact exist if the test result of DNA evidence would had been introduced at the defendant's trial.

1

3. As for the allegations set forth in paragraph 29, that "defendant cannot establish that any DNA testing could have produced a verdict more favorable to him."

Defendant denies these allegations and submits that had the biological evidence been tested and the test result introduced at his trial, it would have been a great source of valuable evidence to impeach the People's main witnesses, and prove his innocence of the rape charges alleged in the indictment. And,

Defendant further denies the allegations that: "The court should deny defendant's motion to vacate his judgment of conviction because defendant has failed to provide any basis for doing so,"

Defendant submits that in his moving papers the notice of motion clearly set forth the action defendant sought. The notice of motion made it quick clear that the defendant was seeking to vacate his judgment of conviction pursuant to CPL 440.10 and CPL 440.30(1-a). However, defendant did not enumerate any subdivision section, but its quick obvious that defendant was proceeding under subdivision 1(g).

\

4. Defendant denies each and every allegation set forth within paragraphs 30-33, and states that: The evidence at trial was unequivocal, and leaving no doubt in the mind of the member of the jury that defendant was the depositor of the semen found in the underwear of both victim and in the vagina of the other one. After hearing the testimony of Mr. Hickey, the chemist, who was employed by the police department at the time of trial, testified that he performed examination on two rape kit and they each tested positive for the presence of spermatozoa, and since no DNA testing was performed it was hard to determine which of the two defendants the semen belong to. In addition, Mr. Hickey's testimony also reveal that spermatozoa can stay in a

2

female vagina for up to 72 hours after having sex, and can last on a pair of panties for years if left dried. Each victim testified at trial that the last time they had consensual sex was well beyond the 72 hour period, leaving the jury with the inescapable conclusion that the sperm cells found on the victims came from their attacker. If this was not enough proof that defendant was considered the depositor of the semen, than the district attorney summation was the "cream de la creme," the district attorney stated during summation that: "He raped them. there is semen in their underwear, one of the women still has semen in her vagina" (TT. 1044).

After the jury heard the testimony of the witnesses, and listening to the summation of district attorney, they were left with the one and only conclusion there is, that defendant was the source of the semen found in the victims' underwear and other victim vagina.

Had there been DNA testing of the this serological evidence, and the test result introduced at defendant's trial, there exist a "reasonable probability" that the out come would had been more favorable to the defendant.

5. Defendant took the witness stand in his own behalf, admitted to participating in the Kidnapping charges under "duress", but vehemently denied raping the two victim. Defendant was not charged in the indictment with acting in concert in relation to the two rape charges, so it is highly probability that the jury would had returned a verdict of not guilty on the rape charges if DNA evidence favorable to the defendant was introduced at his trial.

6. DNA evidence has been considered by many to be the foremost forensic technique for identifying perpetrators, and eliminating suspects when biological tissues such as semen is left at the crime scene. Had this evidence been tested, and the test result introduced at defendant's trial,

3

this would had been a great source of evidence to impeach the People's main witnesses on the rape charges, help bolstered defendant's credibility on the witness stand when he vehemently denied participating in the rape, and admitted to participating in the Kidnapping charges under "duress." There exists a reasonable probability that the verdict would have been more favorable to the defendant CPL 440.30(1-a).

7. As for the People's allegations set forth under the subtitle "The Information in The People's Possession about the Current Whereabouts of the Rape Kit," Defendant denies each and every allegation contained within paragraph 34-42, and states that: the People has not shown with sufficient clarity that their perfunctory investigation into the whereabouts of the rape kits to be adequate to meet their burden of establishing the existence or nonexistence of the evident.

8. The People submitted two affidavit in support of their obligation as the gatekeeper of the evidence, to show this court that a thorough investigation into the whereabouts of the rape kit was conducted. However, the two affidavit submitted on the People's behalf are conclusory in nature, there is no indication in either affidavit that the author have direct knowledge of the status of the evidence nor do the People submits an official record indicating its existence or nonexistence. The People have not executed their obligation as a matter of law under CPL 440.30(1-a).

9. The People will have this court believe that the rape kits where left in the middle of the courtroom after the jury rendered a verdict in this case. Each rape kit has their own voucher number at the police department property clerk, it stands to reason that if the evidence was stored

4

at the police department property clerk for safe keeping, than it would be only reasonable to assume that this evidence was returned to the property clerk for safe keeping. The People's moving papers does not states or alleges that a thorough search of the Police Property Clerk's Office was conducted. The last known place where the rape kits were kept for safe keeping.

Wherefore, Mr. Zheng respectfully prays that this court grant this motion for DNA testing of serological evidence because a "reasonable probability" exists that the out come of Mr. Zheng's trial would have been more favorable to him or in the alternative order a hearing to determine the whereabouts of the rape kits in question.

Respectfully Submitted

Hai Guang Zheng

Sworn to before me this

17 day of July , 2007

NOTARY PUBLIC

WESLEY C. PERRY
Notary Public, State of New York
Qualified in Wash. Co. No. 01PE6026485
My Commission Expires June 14, 20 _11_

5

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-7

-------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, | : | Return Date: |
|  | : | August 22, 2007 |
|  | : |  |
| Respondent, | : | RESPONDENT'S |
|  | : | SUPPLEMENTAL |
|  | : | AFFIRMATION IN |
|  | : | OPPOSITION TO |
| -against- | : | DEFENDANT'S |
|  | : | MOTION FOR POST- |
|  | : | CONVICTION DNA |
|  | : | TESTING AND TO |
|  | : | VACATE |
|  | : | JUDGMENT PURSUANT |
|  | : | TO C.P.L. § 440.10 |
|  | : |  |
|  | : | Queens County |
| HAI GUANG ZHENG, | : | Indictment Number |
|  | : | 3282/95 |
| Defendant. | : |  |

-------------------------------------------------------------------x

USHIR PANDIT, an attorney admitted to practice law in the State of New York, affirms the following statements to be true under the penalties of perjury:

1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the District Attorney of Queens County. I am submitting this supplemental affirmation in opposition to defendant's April 24, 2007 motion post-conviction DNA testing pursuant to C.P.L. § 440.30 (1-a). I make the statements in this affirmation upon information and belief and based on my review of the records and files of the Queens County District Attorney's Office.

2. The People rely on the procedural history outlined in Respondent's Affirmation in opposition to defendant's motion to vacate judgment dated June 25, 2007.

3. Additionally, as indicted in footnote 3 of People's June 25, 2007 affirmation, the People now provide the attached affidavit of Evidence Property Control Specialist Geraldine Kiely, in further support of the opposition to defendant's motion for post-conviction DNA testing.

4. Property Control Specialist Kiely states in her affidavit that she searched the records and inventory of the Pearsons Place Warehouse for two rape kits, voucher numbers F540864 and F548065, which were assigned storage numbers 95M19524 and 95M107919, respectively. Ms. Kiely further states that upon personally searching for these two rape kits, she discovered that the two rape kits were signed out into the custody of a detective on June 27, 1996 pursuant to a subpoena from Assistant District Attorney Scott Kessler.[1] Finally, Ms. Kiely states that her search of the records of the warehouse revealed that the two rape kits are not in Pearsons Place Warehouse.

5. In addition, according to A.D.A. Kessler, who was assigned to the Special Victims Bureau at the time this case was tried, the likely areas where the rape kits could be – the area where the Special Victims Bureau is located – was searched by Kathleen

---

[1]Initially, I was informed that the rape kits were signed out into Detective Green's custody. A copy of the receipt, however, indicates a different shield number then that of Detective Green's and the signature of the detective on the receipt is illegible. In any event, as indicated by A.D.A. Scott Kessler's affidavit, the rape kits were brought to Court and marked for identification, but not admitted into evidence. Thus, although it is not clear who brought them to Court, the rape kits were in the court room during the pendency of the trial.

Moran, a paralegal, with negative results (*See* Affirmation of Scott Kessler and Affidavit of Kathleen Moran).[2]

6.    Thus, the People have complied with their obligations under the statute by providing the Court with reliable information in their possession that current whereabouts of the two rape kits are unknown, and that the last known location of these items is in this Court at the time of trial.

7.    Moreover, it is unlikely that locating the rape kits would result in exonerating defendant because the evidence in this case established that the two victims were raped by both defendant and co-defendant Qui Guang Zheng. Thus, although a test result identifying defendant as the source of the sperm found in the victims would conclusively establish his guilt, a negative result could establish only that the victim had intercourse with a male other than defendant – the co-defendant. Accordingly, there is no evidence in this case from which to infer that finding the rape kits would exonerate defendant.

---

[2]A.D.A. Kessler's affirmation and Paralegal Moran's affidavit were attached as exhibit to People's June 25, 2007 response.

3

WHEREFORE, defendant's motion  for an order granting post-conviction

DNA testing and his motion to vacate his judgment of conviction should be summarily

denied in its entirety.

Dated: Kew Gardens, New York
        August 21, 2007

Ushir Pandit
Assistant District Attorney
(718)286-5928

To:    Hai Guang Zheng, 96A5674
       Great Meadow Correctional Facility
       Post Box 51
       Comstock, New York 12821

4

# *EXHIBIT*

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-7

----------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,              :

                                                  :     AFFIDAVIT

                              Respondent,

                                                  :
            -against-                                   Queens County
                                                  :     Indictment No.
HAI GUANG ZHENG,                                        3282/95

                                                  :

                              Defendant.          :

----------------------------------------------------------------x


STATE OF NEW YORK          )
                           )    S.S.:
COUNTY OF QUEENS           )

          Geraldine Kiely, an Evidence Property Control Specialist, Tax # 302638,

being duly sworn, deposes and says:

          1.     I am an Evidence Property Control Specialist at Pearsons Place

Property Warehouse. I am submitting this affidavit at the request of Assistant District

Attorney Ushir Pandit.

          2.     I searched the records and inventory of the warehouse to

determine whether property received, specifically two rape kits, voucher numbers

F540864 and F548065, Storage Numbers 95M19524 and 95M107919, in the above-

captioned case, were still being held in storage, or if that property had been destroyed.

I personally searched our records and log books at the storage facility, located at 47-

15 Pearsons Place, Long Island City, New York, and I determined that the rape kits under voucher numbers F548064 and F548065 were signed out into the custody of a detective on June 27, 1996, pursuant to a subpoena from Assistant District Attorney Scott Kessler. The kits were then brought to Supreme Court, Queens County for trial. (*See* Property Receipt, attached hereto).

3.    I personally checked our records and determined that the property is not in the possession of the Pearsons Place Warehouse.

Geraldine Kiely
Geraldine Kiely

Sworn to before me this 30th day of
July , 2007
Richard M Wierzbicki
Notary Public

RICHARD M. WIERZBICKI
Notary Public, State of New York
No. 41-4873029
Qualified in Queens County
Commission Expires November 24, 2010

2

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-7

---

THE PEOPLE OF THE STATE OF NEW YORK

                    Respondent

        -against-

HAI GUANG ZHENG
                Defendant.

**REPLY IN OPPOSITION
TO RESPONDENT'S
SUPPLEMENTAL
AFFIRMATION IN
OPPOSITION**

**IND. NO. #3282/95**

---

**STATE OF NEW YORK**    )
**COUNTY OF WASHINGTON** )ss.:

      I, Hai Guang Zheng, being duly sworn, deposes and says:

      I am the defendant in the above entitled action, and I states the following in opposition to Respondent's Supplemental Affirmation in Opposition to Defendant's Motion Pursuant to CPL 440.10 and 440.30(1-a).

      1. Defendant's trial transcripts clearly indicated that Detective Michael Greene, obtained the rape kits from Downtown New York Hospital, delivered them directly to the Police Lab, voucher them in, received a police code number, and turned them over to the lab technician for testing. The rape kits received by the lab were given lab number 95-1251, and voucher number 548064, belonging to Ms. Wu, as for the rape kit belonging to Ms. Liu, the trial records does not indicate the presence of a police code number or voucher number assigned to Ms. Liu's rape kit.

      2. Mr. Thomas Hickey, who at the time of defendant's trial worked at the Police Department assigned to the serology section, one of his duty was to test evidence for the presence of body fluids (TT.545). Mr. Hickey performed tests on both rape kits, after he

completed the testing he sealed the rape kits with tape and returned them back to evidence desk for safe keeping.  Assuming the rape kits remained at this location until the start of trial, the voucher numbers submitted by Property Control specialist Kiely (#F540864 and F548065) are not compatible with the voucher number originally given the rape kits back on April 2, 1995, when Detective Michael Green initially delivered the rape kits to the police property lab.

3.  Mr. Hickey completed his examination on the rape kits on April 11, 1995. There is absolutely no indication in the trial records are in any of the documents defendant possess that these rape kits where every signed out of the police evidence property lab before the start of trial.

4.  The affidavit submitted by the Property Control Specialist Kiely does not states with any degree of certainty  the last known person with knowledge of the whereabouts of the rape kits.  The affidavit submitted by Ms. Kiely states that she discovered that the two rape kits were signed out into the custody of a detective on June 27, 1996 pursuant to a subpoena from Assistant District Attorney Scott Kessler.  In footnote number #1 of Ms. Kiely's affidavit, she acknowledged that the name of the detective is unknown because the signature on the receipt is illegible.  However, Ms. Kiely also indicated a different shield number then that of detective Green's, which also infers that the detective who  removed the rape kits can be identified through his shield number.

5.  The People are now conveniently alleging that the two rape kits mysteriously appeared in court the day of trial by an unknown detective whose name cannot be decipher from the property custody receipt, and then all of a sudden mysteriously vanished the day after trial was completed without a trace.

6. The People have not satisfied their obligation as the gate keeper of the evidence by not identifying the unknown detective who signed the two rape kits out of Pearson Place Warehouse and determine exactly what position he played in returning the rape kits after trial was completed.

7. It may well be possible that this unknown detective retrieved the rape kits from the courthouse after the trial was completed, and vouched them in some other undisclosed location in the city.

8. The Court of Appeals established in People v. Barnwell, 4 N.Y.3D 303, 311, that the people has the burden of establishing with sufficient specificity whether the evidence existed and could be tested. The People have not sufficiently executed they obligation under Barnwell, by not identifying the unknown detective, and determine whether or not he retrieved the rape kits from the courthouse after trial was completed, and if so, what steps where taken to secure this evidence.

9. Defendant have sufficiently shown that had this evidence been tested and the test result introduced at his trial, there exist a "reasonable probability" that the outcome would have been more favorable to defendant. Both victim testified that the last time they had consensual sexual intercourse were well beyond the 72 hour period. The semen Mr. Hickey testified were present in the vagina of one victim and the panties of the other could only have come from their attacker. A negative result in this "case" would establish defendant's innocent, and strongly impeached the credibility of the victim's identification of the defendant as they attacker. (see Dabbs v. Vergari, 149 Misc.2d 844, 849, 570 N.Y.S.2d 765)

3

WHEREFORE, defendant respectfully prays that this court will take the proper steps to obtain reliable information from the People to determine whether or not the evidence sought still exist.

Respectfully Submitted

Hai Guang Zheng

Sworn to before me this

18 day of September 2007

NOTARY PUBLIC

WESLEY E. PERRY
Notary Public, State of New York
Qualified in Wash. Co. No. 01PE6026485
My Commission Expires June 14, 20 11

4

Short Form Order

SUPREME COURT - STATE OF NEW YORK
CRIMINAL TERM - PART K-7- QUEENS COUNTY
125-01 QUEENS BLVD. KEW GARDENS, NY 11415

P R E S E N T:

HON. ROBERT CHARLES KOHM, J.S.C.
Justice

---

THE PEOPLE OF THE STATE OF NEW YORK :

              -against- :

HAI GUANG ZHENG,
              Defendant. :

Ind. No. 3282/95

Motion Vacate Judgment

---

The following papers numbered
1 to 5 submitted in this motion.

HAI GUANG ZHENG, PRO SE
For the Motion

Hon. RICHARD A. BROWN, D.A.
BY: USHIR PANDIT, ESQ.
Opposed

|  | Papers Numbered |
|---|---|
| Notice of Motion and Affidavit _____ | 1-2 |
| Affirmation in Opposition _____ | 3 |
| Supplemental Affirmation in Opposition _____ | 4 |
| Reply _____ | 5 |

Upon the foregoing papers, defendant's motion is denied in all respects. See accompanying memorandum.

GLORIA D'AMICO
    Clerk

Date: September 21, 2007

_____
ROBERT CHARLES KOHM, J.S.C.

MEMORANDUM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CRIMINAL TERM : PART K-7

---

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK : | BY: ROBERT CHARLES KOHM, J. |
| : | |
| -against- : | DATE: SEPTEMBER 21, 2007 |
| : | |
| HAI GUANG ZHENG, : | IND. NO. 3282/95 |
| Defendant. : | |

---

Defendant, pro se, makes this motion for an order directing that forensic Deoxyribonucleic Acid (DNA) testing be performed on specific evidence; for an order vacating the judgment of conviction, and to have defendant produced at any hearing.

Defendant was indicted by a Queens Grand Jury for kidnapping in the first (eight counts) and second degrees, rape in the first degree (two counts), sexual abuse in the first degree (two counts), and criminal possession of a weapon in the second degree.

After a jury trial defendant was convicted of kidnapping in the first degree (four counts), rape in the first degree (two counts), kidnapping in the second degree, sexual abuse in the first degree (two counts), and criminal possession of a weapon in the second degree.  On August 15, 1996, defendant was sentenced.

The judgment of conviction was appealed and defendant argued that the Court erred by refusing to charge the jury as to the defense of duress and his sentence was excessive.

The Appellate Division, Second Department modified the judgment by vacating the conviction of one count of sexual abuse,

finding that no evidence pertaining to that count was adduced at trial. Other than that the Appellate Division affirmed the judgment (see, People v Zheng, 268 AD2d 443). Defendant sought leave to appeal to the Court of Appeals and the application for leave was denied (see, People v Zheng, 95 NY2d 835).

Defendant then moved to vacate his judgment of conviction and argued that he was denied effective assistance of counsel, inter alia, because his trial counsel failed to have the serological evidence tested for DNA after defendant denied any involvement in the rape. On June 18, 2001, Justice Katz denied defendant's motion and found that defendant's claims were procedurally barred pursuant to CPL § 440.10 based on the fact that the allegations were in the record, and could have been reviewed on defendant's direct appeal. Also, defendant's claims are without merit.

Defendant sought leave to appeal the denial of his motion to vacate judgment and sought a writ of error coram nobis claiming that appellate counsel was ineffective because counsel failed to raise on appeal the claims defendant raised in his motion to vacate. The Appellate Division denied both defendant's application for leave to appeal and his application for a writ of error coram nobis.

In support of the current motion for an order granting post-conviction DNA testing, defendant argues that identity was the main issue in this case. He admitted to the kidnapping,

3

however, he denied raping either of the two victims. Because the rape kits of the two victims indicated presence of sperm cells and had a DNA test been conducted of this evidence, his innocence would have been established.

The People argue that the motion should be denied because defendant cannot establish that DNA testing could have produced a verdict more favorable to him, and also, the current whereabouts of the rape kits are not known.

There is no merit to defendant's argument.

Criminal Procedure Law § 440.30 (1-a) provides that a court is authorized to grant the application for forensic DNA testing if the court determines that "if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant."

In conjunction with the filing of a motion for post-conviction DNA testing, the court may direct the People to provide the defendant with information in their possession concerning the current physical location of specified evidence. If the evidence no longer exists or the physical location is unknown, the court may direct that the People make a representation to that effect, and provide information and documentary evidence concerning the last known location of the evidence (CPL § 440.30[1-a][b]).

The court must determine if the DNA evidence exits. In

4

order to do this, the court should take steps to obtain reliable information from the People as to whether or not the evidence sought exists and the source of such information. It is sufficient for the People to submit an affidavit from an individual with direct knowledge of the status or the evidence or an official record indicating its existence or nonexistence (People v Pitts, 4 NY3d 303).

According to the Police Department representatives and Police Department records, neither of the rape kits was ever returned to the warehouse where such evidence is stored. The items were transported to the court from the District Attorney's office. The rape kits were marked for identification at the trial and were returned to the trial prosecutor Scott Kessler. A search of the District Attorney's office was of no avail. In support of the above, the People submitted the Bridge Sheet from the court, and affidavits from Scott Kessler, ADA and Kathleen Moran, a papalegal assigned to the Special Victims Bureau.[1]

The People also submitted an affidavit from Property Control Specialist Geraldine Kiely, stating that she searched the records and inventory of the Pearsons Place Warehouse for the two rape kits and the kits are not there.[2]

The evidence at the trial established that the incident started with a kidnapping of the two victims on March 31, 2007,

[1]People's Affirmation in Opposition dated 6/25/07

[2]People's Supplemental Affirmation dated 8/22/07

5

and lasted until early morning of April 2, 2007; both victims were raped, and defendant admitted to the kidnapping.  If a DNA test resulted in identifying the defendant as the source of the sperm, it would conclusively establish his guilt.  However, if the DNA test did not result in identifying the defendant as the source of the sperm, it could establish that the victim had intercourse with the codefendant.  Even if the rape kits were located and tested, it would not establish that defendant is innocent of the rape. The defendant has not shown that if the results of a DNA test were admitted in the trial, there is a reasonable probability that the verdict would have been more favorable to the defendant  (see, People v Smith, 245 AD2d 79; People v De Oliveira, 223 AD2d 766; People v Kellar, 218 AD2d 410).

Based on the foregoing, the motion to vacate the judgment of conviction is denied in all respects.

Order entered accordingly.

The Clerk of the Court is directed to mail a copy of this memorandum and order to the attorney for defendant and to the District Attorney.

_____
ROBERT CHARLES KOHM, J.S.C.



*To be argued by*
**AMY DONNER**
(12 Minutes)

# NEW YORK SUPREME COURT

## APPELLATE DIVISION — SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

## HAI GUANG ZHENG,

Defendant-Appellant.

**TO BE HEARD ON THE
ORIGINAL RECORD**

**Queens County**

**Ind. No. 3282/95**

**A.D. No. 2007-10080**

## BRIEF FOR DEFENDANT-APPELLANT

**STEVEN BANKS**
Attorney for Defendant-
Appellant
THE LEGAL AID SOCIETY
Criminal Appeals Bureau
199 Water Street, 5th Floor
New York, New York 10038
(212) 577-3300

**AMY DONNER**
**Of Counsel**
**April, 2009**

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 5531 .................................................. 1

PRELIMINARY STATEMENT .................................................................. 2

QUESTION PRESENTED ........................................................................ 2

STATEMENT OF FACTS ........................................................................ 3

    Procedural History ........................................................................... 3

    Trial Evidence ................................................................................. 5

    Motion Practice on  Appellant's Pro Se C.P.L. §440.30 Motion ....... 10

    The Court's Decision ....................................................................... 20

ARGUMENT

        POINT
        IN LIGHT OF THE   STATED PURPOSE OF C.P.L.
        §440.30(1), THE COURT BELOW ERRED IN
        SUMMARILY DENYING APPELLANT'S PRO SE
        MOTION FOR DNA TESTING. C.P.L. §440.30(1) ............... 22

CONCLUSION ....................................................................................... 32

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT

----------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,    :

                Respondent,    :

              -against-    :

HAI GUANG ZHENG,    :

            Defendant-Appellant.    :

----------------------------------------------------------------------X

## STATEMENT PURSUANT TO RULE 5531

1. The indictment number in the court below was 3282/95.

2. The full names of the original parties were People of the State of New York against Hai Guang Zheng and Qin Guang Zheng. This appeal is brought on behalf of only Hai Guang Zheng.

3. This action was commenced in Supreme Court, Queens County.

4. This action was commenced by the filing of a motion.

5. This appeal is from an order denying appellant's motion for DNA testing under C.P.L. §440.30.

6. This is an appeal from an order dated September 21, 2007 (Kohm, J.).

1

7. Appellant has been granted permission to appeal as a poor person on the original record. The appendix method is not being used.

## PRELIMINARY STATEMENT

This is an appeal from an order issued, September 21, 2007, in Supreme Court, Queens County, denying appellant's request for DNA testing under C.P.L. §440.30 (Kohm, J.).

Timely notice of appeal was filed. On March 28, 2008, this Court granted appellant leave to appeal as a poor person and assigned Steven Banks as counsel on appeal.

Appellant is currently incarcerated.

Appellant had Qin Guang Zheng as a co-defendant on the indictment. Prior to trial, Qin Guang Zheng pled guilty to the first-degree kidnapping counts and two counts of first-degree rape and was sentenced to concurrent terms totaling 15 years to life.

## QUESTION PRESENTED

Whether in light of the stated purpose of C.P.L. §440.30(1), the court below erred in summarily denying appellant's pro se motion for DNA testing. C.P.L. §440.30(1).

2

# STATEMENT OF FACTS

## Procedural History

Under Queens County indictment # 3282/95, appellant and Qin Guang Zheng were accused of first and second-degree kidnapping, first-degree rape and sexual abuse and weapon possession arising from a March 31, 1995, incident in which appellant and two others allegedly abducted two women and one man. Following trial, appellant was convicted of four counts of first-degree kidnapping rape [P.L. §135.25(1), (2), (c), two counts of first-degree rape [P.L. §130.20]; one count of second-degree kidnapping [P.L. §130.20]; two counts of sexual abuse in the first degree [P.L. §130.65[1]); and one count of second-degree criminal possession of a weapon [P.L. §265.03]. Neither the rape nor the sexual abuse counts were charged on an acting in concert theory. On August 15, 1996, appellant was sentenced to four 25 year-to-life terms on each of the four first-degree kidnapping convictions, each to run consecutively and concurrently for a total of 50 years to life; 8 1/3 to 25 years on each of the two first-degree rape and second-degree kidnapping counts; 2 1/3 to 7 years on each of the two first-degree sexual abuse counts; and 5 to 15 years on the second-degree weapon possession

3

count, all to run consecutively with each other for a total of 84 2/3 years to life (Katz, J., at trial and sentence).[1]

Appellant appealed on the grounds that the trial court erred in refusing to charge the jury as to the defense of duress and that his sentences were excessive. On January 10, 2000, this Court vacated one first-degree sexual abuse conviction, finding that no evidence pertaining to that count was adduced at trial, and otherwise affirmed the judgment of conviction. People v. Zheng, 268 A.D.2d 443 (2d Dept. 2000). On June 15, 2000, the Court of Appeals  denied appellant's application for leave to appeal to that Court. People v. Zheng, 95 N.Y.2d 835 (2000)(Ciparick, J.).

In February 2001, appellant filed a C.P.L.§ 440.10 motion on the ground that he was denied effective assistance of trial counsel because counsel, inter alia, failed to have the serological evidence tested for DNA after appellant denied any involvement in the rape. On June 13, 2001, the trial court denied the motion, holding that appellant's claims were procedurally barred because, according to the court, the allegations were on the record and could have been raised on direct appeal. On July 17, 2001,

---

[1]    Codefendant Qin Guang Zheng pleaded guilty to first-degree rape on June 25, 1996, and was sentenced on August 15, 1996, to an indeterminate prison term of 8 1/3 to 25 years (CRIMS).

4

appellant brought an application in this Court to either appeal the denial of the C.P.L. §440.10 motion or for a writ of coram nobis on the ground that appellate counsel was ineffective, inter alia, for failing to raise on appeal the arguments made by appellant in his C.P.L. §440.10 motion. On October 9, 2001, this Court denied the coram nobis motion.

Trial Evidence

On the evening of March 31, 1995, Jin Hao Liu, her brother, Guo Bang Liu, and his wife, Liu Yan Wu, were abducted as they left JFK Airport in a limousine service car that was suddenly cut off and stopped by a vehicle occupied by appellant and another man, one or both of whom were carrying guns (Trial Transcript: 394-95, 348-49, 450-51).[2] At trial, Liu

---

[2]   Numbers in parentheses without prefix refer to the pages of the trial transcript, as referenced in Defendant-Appellant's Appellate Division brief on direct appeal or in the motion papers. Appellate counsel does not have a copy of the trial transcript.

Parenthetical references preceded by "M" refer to pages of appellant's pro se motion; those preceded by "P" refer to pages of the People's response; those preceded by "R" refer to pages of appellant's pro se reply; those preceded by "PSA" refer to the People's Supplemental Affirmation in Opposition to Defendant's Motion for Post-Conviction DNA Testing; those preceded by "RII." refer to appellant's reply in Opposition to Respondent's Supplemental Affirmation and those preceded by "D" refer to pages of the court below's decision on appellant's motion.

identified appellant as the driver, but Wu was unable to make an identification (427).[3]

After driving for awhile, the gunmen freed the male complainant and drove off with the women (386, 398). The male complainant and his family in Manhattan went to the police precinct and, the following day, Detective Michael Greene and another detective placed tracing devices on his family's telephone (304, 701, 704, 826). The family received telephone calls that night and the following morning demanding ransom for the female complainants (497, 523,526-27,535,867).

The gunmen brought the female complainants to an apartment (349, 385-86,395, 427-28, 434-45, 492, 460). At some point, a third man arrived and one of the other two men left (400, 455). On the following morning, the third man and the abductor who had remained in the apartment each raped and touched the breasts of each female complainant, respectively (405-07, 460-61, 464). While Liu identified appellant as one of the rapists, Wu could not make an identification (401, 459).

---

[3] At a line-up held after appellant's arrest, the male complainant identified appellant (356, 752). It is unclear from the motion papers whether the male complainant also made an in-court identification.

6

Detective Greene traced the ransom calls to a cellular phone in the vicinity of 133-34 59th Avenue, in Flushing Queens (706). At approximately 9:00 p.m. on April 1st, the police began surveillance at that address (706, 726).

Shortly after midnight on April 2, 1995, a detective saw two Asian men and women leave a house near that location and get into a nearby car (728). He and his partner followed the car and stopped it at a light (728). Appellant was the driver. Recognizing the women as resembling photographs of the female complainants that had been given to the police by the complainants' families, the detectives arrested appellant and the other man (729-30, 763). The detectives later found cell phones and a loaded pistol in the house from which the men and complaints had emerged (735, 737, 744).

At the hospital that day, a doctor took oral, vaginal and rectal swabs from each woman and placed these items, as well as the complainants' underwear, into a Vitulo kit, which were examined by a police serologist on April 11, 1995 (341,710). Wu's vaginal swab and underwear tested positive for the presence of semen (557-58). Liu's vaginal swab did not test positive for sperm, although her underwear did (559-60). The serologist testified that

7

semen could remain in a vaginal canal for 72 hours and on clothing for months or years (563). Liu had last had sexual intercourse about two months before the incident, whereas Wu had had sexual intercourse with her husband on the evening of March 29, 1995, two days before the incident and over three days before the preparation of the vaginal swab (444, 501).

At approximately 6:15 a.m., on the morning following his arrest, appellant waived Miranda warnings he received in Chinese and made a statement in Chinese, to a detective who transcribed it in English and signed the statement along with appellant (People's Exhibit 12). In the statement, appellant acknowledged that, under orders from a Yee Kong, he drove Kong to the airport and, on the way back, cut off a car containing the complainants (People's Trial Exhibit 12). He explained that Kong subsequently freed the man and he and appellant brought the women to an apartment, which, according to the statement, was appellant's residence (Id.). Appellant said Kong then gave him a gun and ordered him to guard the women in the apartment (Id.). Then Kong left and co-defendant Qin Guang subsequently came to the apartment (Id.). Appellant acknowledged calling the complainants' family and demanding ransom (Id.).

8

At trial, appellant took the stand on his own behalf and explained that he had paid $30,000 to an Ak Guan[4] to take him to America illegally and that, at the time of the incident, he still owed Guan $12,000 (898-99). He acknowledged assisting Guan in abducting the complainants, and explained that Guan, whom he feared, ordered him to do so and threatened to kill appellant's family in China if appellant did not obey him (900-906, 931, 960, 965). He denied, however, that the apartment to which the women were brought was his residence (904-05). Appellant noted that, after Ak Guan left the apartment, co-defendant Qin Guang arrived and told appellant that he was watching appellant on Ak Guan's behalf and that Ak Guan would kill appellant if appellant did not follow Ak Guan's orders (904, 938). Appellant, however, denied raping or sexually abusing the female complainants (909, 914).

Following deliberations, the jury acquitted appellant of the two first-degree kidnapping counts that were on the theory that he intended to sexually abuse the complainants, but convicted him of the other counts of the indictment (1150-52).

---

[4]     As explained in Respondent's Appellate Division brief, Ak Guan is the person referred to as Yee Kong in appellant's statement (Respondent's Brief, p.2 n,2).

Motion Practice on  Appellant's Pro Se C.P.L. §440.30 Motion

On April 24, 2007, appellant filed a pro se motion pursuant to C.P.L. §440.30 seeking an order to obtain DNA testing in an effort to vindicate himself in this case. Appellant asserted that the DNA testing would prove that he did not rape either female complainant in this case (Defendant's Affidavit in Support of C.P.L. §440.30 Motion).

Appellant noted that one of the complainants, Ms. Wu, was unable to make an in-court identification of appellant as the kidnapper or rapist and stated that the perpetrator was not in the courtroom (M.8, paragraph 35). He further noted that, at trial, Ms. Wu had stated that she last had sexual intercourse with her husband on the evening of March 29, 1995, and that the trial testimony indicated that the rape kit was prepared on April 2, 1995 -- over 72 hours after that (M.8, paragraph 36). Additionally, appellant noted that the trial testimony showed that Ms. Liu's underwear, but not her vaginal, anal and oral swabs, tested positive for the presence of sperm (Id. at paragraph 37). He stated that, at trial, Ms. Liu explained that, prior to the crime, she last had had sexual intercourse in January of 1995, over two and one-half months prior to the preparation of the rape kit (Id.).

10

Appellant contended that the semen found in Ms. Wu's vagina and in her panties and on Ms. Liu's panties could only have come from the attacker (Id. at paragraphs 36-37). Appellant noted that, at trial, the Police Department chemist stated that evidence of semen can last in a woman's vagina for 72 hours after intercourse and that, in underwear, evidence of dried semen can last for months or even years after intercourse (M. 9, paragraph 38). He contended that exclusion by DNA test results of appellant as the depositor of the semen would have significantly weakened the prosecution's claim that appellant was the rapist of these women (Id.). Appellant noted that, in the prosecutor's opening statement and summation, he emphasized that the perpetrator had ejaculated on the female complainants (Id.).

On June 25, 2007, Respondent filed an Affirmation in Opposition to Defendant's Motion for Post-Conviction DNA Testing and to Vacate Judgment Pursuant to C.P.L. §440.10, the prosecutor claimed that it was possible that the sperm in both female complainants' underwear and Wu's vaginal swabs were from both appellant and the co-defendant (P.9, paragraph 32). The prosecutor argued that there is little if any likelihood that the rape kits, if found, would result in an exoneration of appellant (P.13,

11

paragraph 42). Noting that the evidence established that the two complainants were raped by two perpetrators, he claimed that a negative test result "could establish only that the victim had intercourse with a male other than defendant – the co-defendant" (Id; see P.9, paragraph 32). The prosecutor asserted that, if appellant was not the source of the semen, then the source was the co-defendant (Id., citing People v. Smith, 245 A.D.2d 79 (1st Dept. 1997); People v. Kellar, 219 A.D.2d 406 (2d Dept. 1996)). Based on these claims, the prosecutor argued that a DNA test would have been of little probative value and asserted that appellant had failed to establish with reasonable probability that the verdict would have been more favorable to appellant (P. 9-10, paragraph 32).

Additionally, the prosecutor claimed that the current whereabouts of the two rape kits were unknown (P.10, paragraph 34). According to the prosecutor, the People attempted to ascertain the current location of the rape kits (R.10, n.1). The prosecutor affirmed: "these items were removed by Detective Michael Green on June 27, 1996, when they were transported to Assistant District Attorney Scott Kessler for trial. Thereafter, the last physical location of rape kits that can be identified is during the trial when the rape kits were marked, but not received in evidence" (P.12, paragraph

12

, 38; see also P.12, paragraph 37). The affirmation does not state from where the rape kits were removed. Attached to the prosecutor's affirmation was a document which the prosecutor described as a "Bridge sheet," indicating that the rape kits were marked for identification as People's Exhibits 3 and 4 on June 28, 1996, but were not entered in evidence (Exhibit A to Respondent's Affirmation). Also attached to Respondent's Affirmation was an Affirmation by Assistant District Attorney Scott Kessler, the trial assistant who prosecuted appellant's case (Affirmation of Scott Kessler, attached as Exhibit B, paragraphs 1-2). In it, ADA Kessler stated, "I do not know the current whereabouts of these rape kits. I also do not have any independent recollection of what became of that evidence after the trial concluded" (Id. at p.2, paragraph 4; see P.13, paragraph 40).

The prosecutor further stated that such evidence is customarily stored at the Pearson Place Warehouse, but that neither of the rape kits was returned there (P.12). He stated that he was in the process of obtaining an affidavit from a police representative at the warehouse (P.12 n.3).

The prosecutor further affirmed:

> Moreover, the evidence cannot be located in the District Attorney's Office. The District Attorney's files were searched, but the rape kits were not in the files. A search of the safes within the District

13

> Attorney's Office has not resulted in locating the
> rape kits.

(P.13, paragraph 40). Also attached to Respondent's affirmation as Exhibit

C was the affidavit of a Kathleen Moran, a paralegal assigned to the Queens

County District Attorney's Office, Special Victims Bureau, stating that she

personally searched "the Special Victims Bureau of the Queens County

District Attorney's Office" for the rape kits in this case, which she noted

were vouchered under numbers F548064 and F548065 (Affidavit of

Kathleen Moran, dated June 22, 2007, attached as Exhibit C, paragraphs 1-

2). She stated that the result of her search were negative (Id. at paragraph 3).

Additionally, the prosecutor stated that a complete search of the office safe

would be conducted as soon as possible and that an affidavit outlining the

results of the search would be submitted along with a supplemental response

(P.13 n.3).

The prosecution argued that the foregoing allegations showed that it

had discharged its statutory obligation of providing the Court with reliable

information in its possession to demonstrate that the current physical

location of the rape kits was unknown and that the last known location of the

items was in the court during trial (P.13, paragraph 31). It claimed that the

People's inability to locate these items should not "serve as an unfavorable

14

inference" (P.13, paragraph 42, citing <u>People v. Barnwell</u>, 6 A.D.3d 1147, 1147-48 (3d Dept. 2004)).

On July 17, 2007, appellant filed a reply affirmation. In it, appellant reiterated many of the allegations in his original motion and, for example, disputed the People's claim that there was not a "reasonable probability" that the result would have been different had the DNA been tested and the result introduced at appellant's trial (R. 1-4; <u>see also</u> R.1, paragraph 2; R.3, section 4).[5] He added that, at trial, the chemist testified that, although each rape kit tested positive for the presence of spermatozoa, it was difficult to determine which of the two defendants was the source of the sperm, given the lack of DNA testing (R.2, section 4). Appellant also noted that, in summation, the prosecutor stated that appellant raped the women and was the source of the semen in their underwear and in Wu's vagina (<u>Id.</u>, citing trial transcript, at p. 1044). Appellant further alleged that, at trial, he took the witness stand in his own behalf and admitted to participating in the kidnapping under duress, but denied raping the complainants (R.3,

---

[5]     Some of appellant's numbered subsections in the reply affidavit consist of more than one paragraph.

        Appellant noted that his motion was based on C.P.L. §440.30(1)(g), although he had cited C.P.L. Sections §440.10 and §440.30 (1-a) (Reply, p.2, section 3).

paragraph 5). He noted that, because he was not charged on an acting in concert theory in relation to the two rape charges, the introduction of DNA evidence favorable to him would have created a high probability that the jury would have returned a not guilty verdict on the rape charges (Id.).

Additionally, appellant stated that "the People [have] not shown with sufficient clarity that their perfunctory investigation into the whereabouts of the rape kits [was] adequate to meet their burden of establishing the existence or nonexistence of the eviden[ce]" (R.4, paragraph 7). He noted that the People's affidavits were conclusory in nature and that neither indicated that the affiant had direct knowledge of the status of the evidence (R.4, paragraph 8). Appellant further noted that the People had not submitted an official record indicating the existence or nonexistence of the rape kits (Id.). Additionally, appellant noted the improbability that the rape kits were left in the courtroom following the jury's verdict (R.4, section 9). He noted that the reasonable assumption was that the evidence was returned to the Police Department property clerk for safekeeping, inasmuch as each kit had its own voucher number (R.4-5, section 9). He noted that the People's Response did not allege that a thorough search of the Police Property Clerk's Office was conducted (R.5, section 9). Based on the foregoing, he contended

16

that the People had not executed their obligations under C.P.L. §440.30(1-a) (R.4, section 8). He requested that the court grant the motion for DNA testing of the serological evidence or in the alternative, order a hearing to determine the whereabouts of the rape kits (R.5, section 9).

On August 21, 2007, the prosecutor filed a Supplemental Affirmation in Opposition to Defendant's Motion for Post-Conviction DNA Testing (hereinafter "PSA"). Attached to the Affirmation was an Affidavit of Geraldine Kiely, an Evidence Property Control Specialist at the Police Department's Pearson Place Property Warehouse. In the affidavit, Ms. Kiely stated that she searched the warehouse's records and log books and determined that the rape kits were signed out into the custody of a detective on June 27, 1996 pursuant to a subpoena from Assistant District Attorney Scott Kessler (Affidavit Attached to PSA, pp.1-2 paragraph 2). She further stated that a property receipt indicated that the kits were brought to the Supreme Court, Queens County, for trial (Id.). Additionally, Ms. Kiely added that she checked "our records" and determined that the property was not in the possession of the Pearson Place Warehouse (Id. at paragraph 3, p.2).

17

Assistant District Attorney Ushir Pandit, who prepared the Supplemental Affirmation, stated that, according to Assistant District Attorney Kessler, the likely location of rape kits would be in the Special Victims Bureau (PSA. 2-3, paragraph 5). Pointing to the affidavit of Moran, which was attached to Respondent's previous Affirmation, ADA Pandit noted that Moran had searched the Special Victims Bureau with negative results (PSA.2-3, paragraph 5). In a footnote to her affirmation, ADA Pandit noted that, although she had initially been informed that the rape kits were signed out into a Detective Green's custody, a copy of the receipt[6] indicated a different shield number than that of Detective Green" (PSA.2,n.2). She stated that the signature of the detective on the sheet was illegible (PSA.2, n.2).

Respondent claimed that the forgoing established that the current whereabouts of the two rape kits were unknown and that the last known location was in the court at the time of trial (PSA, p.3, paragraph 6). The People reasserted its claim that it was unlikely that the rape kits would result in exonerating the defendant (PSA.3 paragraph 7). It asserted that a test

---

[6]    Although Ms. Kiely's affidavit states that a Property receipt is attached, no legible receipt is contained in the Supreme Court file. Thus, appellate counsel has not seen the receipt.

18

result indicating that appellant was not the source of the sperm would not exonerate him because the complainants could have had sexual intercourse with the co-defendant (Id.).

On September 18, 2007, appellant filed a Reply in Opposition to Respondent's Supplemental Affirmation ("RII"). In it, appellant contended that the prosecution had not met its burden under People v. Barnwell, 4 N.Y.3d 303, 311 (2005) of establishing with sufficient specificity whether evidence existed and could be tested (RII.3, paragraph 8). He noted that the prosecution did not identify the detective who signed the rape kits out of the Pearson Place Warehouse or determine the detective's role in returning the rape kits after the completion of the trial or the location where the rape kits were brought after the trial's completion or what steps, if any, that were taken to secure the rape kits after the trial ended (DRII, p.3, paragraphs 6-8). Thus, he contended that the People had not satisfied their obligation as the gatekeeper of the evidence (RSA.3, paragraphs 6-8). Appellant further contended that that there was a "reasonable probability" that the trial's outcome would have been more favorable to him had the evidence been tested and the test result introduced at his trial because the semen in one victim's vagina and the panties of the other could only have come from their

19

attacker since they both testified they last had consensual intercourse well beyond 72 hours before the incident (RII.3, paragraph 9, citing Dabbs v. Vergari, 149 Misc.2d 844 (Westchester Co. 1990)). Appellant requested that the court "take the proper steps to obtain reliable information from the People to determine whether or not the evidence sought still exist[ed]" (RII.4).

### The Court's Decision

In a written decision, dated September 21, 2007, the court denied appellant's pro se motion (D1-6). No evidentiary hearing was held in this case.

The court reasoned that, in determining whether or not the DNA evidence sought exists and the source of such information, it is sufficient for the People to submit an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating its existence or nonexistence (D.5, citing People v. Pitts, 4 N.Y.3d 303 [2005]). It further reasoned that Police Department representatives and records indicated that neither of the rape kits were ever returned to the warehouse where such evidence is stored (D.5). It found that the rape kits were transported to the court from the District Attorney's office, although the court did not state

20

who transported them (D.5). The court further stated that, at the trial, the rape kits were marked for identification and, after the trial, returned to the trial prosecutor, ADA Scott Kessler (D.5). It found that a search of the District Attorney's Office was of no avail (D.5, citing to the Bridge Sheet and affidavits from ADA Scott Kessler and paralegal Kathleen Moran and affidavit of Property Control Specialist Geraldine Kiely). It noted that an affidavit from Property Control Specialist Geraldine Kiely stated that she had searched the records and inventory of the Pearson Place Warehouse for the two rape kits and that the rape kits were not there (D.5).

The court further held that appellant had not shown that there was a reasonable probability that the verdict would have been more favorable to appellant if the results of the DNA test were admitted at trial (D.6). It reasoned that a DNA test that did not result in identifying appellant as the source of the sperm found in both female complainants would not establish that appellant was innocent of the rapes (D.6). According to the court, a DNA test showing that appellant was not the source of the sperm could establish that the complainant had intercourse with the codefendant (D.6). The court did not allow for the possibility that a DNA test result which demonstrated that appellant was not the source of the sperm might indicate

21

, that one or more people other than appellant or the codefendant was the source of the sperm.

## ARGUMENT

### POINT I

IN LIGHT OF THE STATED PURPOSE OF C.P.L. §440.30(1), THE COURT BELOW ERRED IN SUMMARILY DENYING APPELLANT'S PRO SE MOTION FOR DNA TESTING. C.P.L. §440.30(1).

While appellant candidly acknowledged that he participated in the kidnapping of the complainants under duress, he vehemently denied having raped either complainant. He maintained this account both in his statement to a police detective shortly after his arrest – which was introduced by the People at his trial – and in his trial testimony when he took the stand on his own defense. The only evidence contradicting his account that he was guilty only of the kidnapping but not of the sexual crimes came from one of the female complainants who identified him as one of the two men who raped her. Certainly, in the extreme stress of the incident, she could have confused him with another kidnapping participant. Moreover, mistaken identification "probably accounts for more miscarriages of justice than any other single factor . . . perhaps it is responsible for more such errors than all other factors

22

combined." United States v. Wade, 388 U.S.218, 229 (1966). Recognizing the reality of people being convicted of crimes of which they are innocent based on mistaken identification, the State Legislature created a statute, C.P.L. §440.30(1), to address this problem.[7] That statute provides a mechanism for defendants to seek and obtain DNA testing of evidence that could exonerate them. If the People claim that the testable material no longer exists, the statute requires them to provide representation to that effect and information and documentary evidence concerning the last known physical location of such evidence. Here, appellant attempted to avail himself of this option, but his efforts were stymied by a court which summarily denied his C.P.L. §440.30(1) motion on the grounds that the People had shown that the rape kits prepared at the time of the crime no longer existed notwithstanding the People's presentation of only conclusory affidavits regarding their efforts to locate the testable material. Furthermore, the court also erroneously concluded that there was no reasonable probability that if DNA material was found and tested and the result introduced at trial, the verdict would have been more favorable to appellant. Accordingly, this Court should now

---

[7]     The consequences of a wrongful conviction of a sexual crime has consequences beyond those experienced by a defendant convicted of a non-sexual crime. It renders him eligible for registration as a sexual offender under SORA.

23

reverse the order of the court below and direct the DNA testing that appellant sought.

Under C.P.L. §440.30, a court must grant a criminal defendant's request for DNA testing if (1) evidence containing DNA materials was collected in connection with the case and (2) there is a reasonable probability that the scientific testing would have exonerated him. Moreover, the 2004 amendments to C.P.L. §440.30 dramatically lessen appellant's burden in this regard. See C.P.L. §440.30(1-b). Prior to this amendment, it was "incumbent upon a defendant to show the evidence to be tested still exists and is available in quantities sufficient to make testing feasible" People v. Ahlers, 285 A.D.2d 664 (3d Dept. 2001). C.P.L. §440.30(1-b) eased a defendant's burden by authorizing the court to direct the People to provide the defendant with information in its possession regarding the location or disposition of the evidence in question and to issue a subpoena for the production of the evidence.

Here, neither the prosecutor nor the court claimed that appellant did not meet his statutory burden. Instead, the court based its summary denial of appellant's C.P.L. §440.30 motion on two grounds – that the People had shown that the rape kits no longer existed and that there was no reasonable

24

probability, even if the rape kits could be found and submitted for DNA testing and the result introduced at trial, that the verdict would have been more favorable to appellant. The court's ruling on both of these grounds was erroneous.

First, the court erred in holding that the People made an adequate showing that the rape kits did not exist. The court's decision implies that that the prosecutor did a thorough chain of custody search, which is not the case. Tellingly, the People neither asserted nor established that they made a diligent effort to locate the testable material. Indeed, the People never submitted a detailed affidavit that set forth a thorough chain of custody search.

Here, the court conclusion that "a search of the District Attorney's office was of no avail" (D.4) was based on insufficient evidence. The court relied in part on an affidavit from Assistant District Attorney Kessler, who tried the case for the People, stating that he did not have any independent recollection of what became of the evidence after the trial concluded or know the rape kits' current whereabouts. ADA Kessler, however, did not state whether he searched for the rape kits anywhere at all.

25

Nor was the affidavit of Kathleen Moran, a paralegal in the Special Victims Bureau of the District Attorney's Office, adequate. Moran stated merely that she "personally searched the Special Victims Bureau" and her search "was negative." Moran's affidavit was conclusory at best. Moran never described the activities that constituted her "search." She did not state where specifically in the Special Victims Bureau she searched. Indeed, she did not state whether she limited her search to ADA Kessler's office, whether she searched every file cabinet in any records room, whether she looked on top of and inside the desks of every Bureau employee who could conceivably have handled the case and whether she checked whether the file could have been sent to archives. Thus, she offered absolutely no indication as to the extent of her search. Moreover, even by her own claim, Moran searched only the Special Victims Bureau. Since this trial involved not only rape and sexual abuse but also kidnapping, the prosecutor should have had a District Attorney's Office employee conduct a thorough search of the general bureau of the District Attorney's office that would prosecute kidnapping crimes, rather than have limited itself to the Special Victims Bureau. The prosecutor should have had such an employee submit a detailed affidavit setting forth exactly where he or she searched in the District

26

Attorney's office. Nor did the prosecutor investigate whether the material was returned to the co-defendant's files. Certainly there were multiple locations where the material could have been placed.

Moreover, appellant's case was handled by several assistant district attorneys in the Queens District Attorney's Office. ADA Joan Yang wrote the brief on direct appeal and ADA Usher Pandit wrote the affirmations in the coram nobis and the C.P.L. §440.10 motion. The prosecutor should have submitted an affidavit from ADA Yang regarding her recollection of the handling of the rape kits and her involvement if any and any searches she conducted. Similarly, ADA Pandit's affidavit should have included the same such information regarding her personal recollection of the handling of the rape kits, her involvement if any with the rape kits in this case and detailing the extent of searches, if any, she personally conducted for the rape kits as well as the location of the case file between the 440 motion and the coram nobis such as whether it remained in her office or was returned to an archives or the trial bureau. Nor did the prosecutor submit an affidavit from a Detective Michel Green who is mentioned in the DA response to the 440.30 motion.

27

Significantly, the prosecutor did not set forth the usual protocol as to how rape kits usually are handled after being in the courtroom. The prosecutor stated only that such items usually are stored at the Police Department's Pearsons Place Warehouse. There is no affidavit from a member of the District Attorney's Office, court personnel or the Police Department as to which actors perform which function regarding such evidence as matter of protocol. Such an affidavit should indicate, for example, whose job it would be to bring the evidence from the courtroom to archives. All the people whose job function indicated that they might have been involved in the protocol should have submitted affidavits regarding their recollection of the handling of the rape kits in this case.

As the foregoing shows, the People failed to submit a detailed affidavit and the ones they produced were conclusory in nature regarding the extent of their search. Thus, while there is a possibility that the rape kits are lost, the prosecutor's affidavits were not sufficient to meet its burden of establishing this. Hence, contrary to the court's conclusion, the People's response was insufficient to establish that the rape kits were lost. Therefore, at a bare minimum, this Court should reverse the decision of the court below and then remand this case for further proceedings, directing respondent to

28

search for the evidence in question, set forth the protocol for handling such evidence and provide detailed affidavits from every person who potentially handled the testimony describing his recollection as to his role in the handling of the rape kits and search if any for this evidence.

Furthermore, contrary to the court's decision, the DNA testing requested has the reasonable probability to exonerate appellant. Although this case involved multiple assailants, that fact alone does not lead inexorably to the conclusion that the testing could not exonerate appellant. Here, the victim contended that two separate men sexually assaulted her during the incident in question. Although the mere absence of appellant's DNA would not exonerate him, that absence in conjunction with the presence of the DNA of multiple men who did not engage in consensual sex with the complainants would exonerate him. Thus, appellant satisfies the second prong of the statute as well. See People v. Hayes, 284 A.D.2d 1008 (4th Dept. 2001). Indeed, the requested testing may actually identify who sexually assaulted the complainant since the DNA of the rapists could be compared to any recovered DNA evidence in the State's DNA database. In light of this State's desire to identify sexual predators, there are valid reasons besides appellant's request to search for and test this material.

29

Moreover, in concluding that there was not a reasonable probability that a negative result would not necessarily lead to appellant's exoneration, the court identified only two of the possibilities of what DNA evidence could show – one, that the rapist was appellant or two, that the rapist was the co-defendant. The court did not consider the third possibility -- that the DNA would show that the rapists were the co-defendant and a third person or, an as of yet unidentified third and fourth person (2 people) other than appellant.[8]

As of now, we only know the presence of sperm. We do know the number of donors. Only DNA testing can determine the number of donors, as well as their identities. Finally, appellant took the stand on his own behalf and acknowledged that he committed the kidnapping under duress and that he did not participate in any sexual attacks on the complainants. This is consistent with the remarks in appellant's statement to the police shortly after his arrest, which was introduced in evidence as part of the People's case. The presence of only the co-defendant's DNA in the testable material

---

[8]     It should also be noted that the cases cited by the prosecution in support of its claim that no reasonable probability existed were decided under the former old statute where the burdens were less lenient toward the defendant. People v. Smith, 245 A.D.2d 79 (1st Dept. 1997); People v. Kellar, 219 A.D.2d 406 (2d Dept. 1996).

(along with the absence of appellant's DNA) would substantially corroborate appellant's present version of the events, thereby exonerating him. Moreover, because he was not charged on an acting in concert theory in relation to the two rape charges, the introduction of DNA evidence favorable to appellant would have created a high probability that the jury would have returned a not guilty verdict on the rape charges.

Therefore, this Court should reverse the decision of the court below, remand this case for further proceedings and direct respondent to search for the testable material and, if that material is then located, order respondent to have that material scientifically tested for the DNA evidence that would exonerate appellant.

31

## CONCLUSION

FOR THE ABOVE STATED REASONS, THIS COURT SHOULD REVERSE THE ORDER OF THE COURT BELOW AND ORDER THE REQUESTED DNA TESTING.

Respectfully submitted,


STEVEN BANKS
Attorney for Defendant-Appellant

AMY DONNER
Of Counsel
April 2009

32

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO 22 NYCRR §670.10.3(F)

The foregoing brief was prepared on a computer. The word processing system used to prepare this brief and to calculate the word count was Word 2003. A proportionally spaced typeface was used, as follows:

> Name of typeface: Times New Roman
> Point size:    14
> Line spacing: Double

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules regulations, etc., is approximately 6,109.

*To be argued by*
USHIR PANDIT
(TIME REQUESTED: 10 MINUTES)

# New York Supreme Court

## Appellate Division--Second Department

AD No. 07-10080

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

*against*

HAI GUANG ZHENG,

*Defendant-Appellant.*

## BRIEF FOR RESPONDENT

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-5928

JOHN M. CASTELLANO
NICOLETTA J.CAFERRI
USHIR PANDIT
  Assistant District Attorneys
    *Of Counsel*

JUNE 29, 2009

Queens County
Indictment Number 3282/95

# **TABLE OF CONTENTS**

**Page No.**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND LEGAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S SECTION 440.30(1-A) MOTION . . . . . . . . . . . . . . . . . 6

      The Court's Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT

      THE COURT CORRECTLY DENIED DEFENDANT'S
      SECTION § 440.30(1-A) MOTION FOR DNA TESTING . . . . . . 11

      A.    The People's Submissions in the Lower Court Established
            that the Rape Kits Could No Longer Be Located. . . . . . . . . 11

      B.    The Lower Court Properly Denied Defendant's Motion for
            DNA Testing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,          :

                    Respondent,          :

            -against-          :

HAI GUANG ZHENG,          :

            Defendant-Appellant.          :

------------------------------------------------------------------- x

## **BRIEF FOR RESPONDENT**

## **PRELIMINARY STATEMENT**

Defendant Hai Guang Zheng appeals from a September 21, 2007, order of the Supreme Court, Queens County (Kohm, J.). By that order, the court denied defendant's motion for DNA testing, pursuant to section 440.30(1-a) of the Criminal Procedure Law.

## **FACTUAL AND LEGAL BACKGROUND**

In the evening of March 31, 1995, Jin Hao Liu went to the airport to meet her brother, Guo Bang Liu, and his wife, Liu Yan Wu. After meeting at the airport, the three got into a car-service automobile to leave the airport. Shortly after entering the car-service automobile, the victims' car was cut off

by the car being driven by defendant. A second man, known as Ak Guan,[1] was in defendant's car in the passenger seat.

As a result, defendant stopped the car near the Brooklyn Bridge, and gave the man, Guo Bang Liu, one or two quarters and a piece of paper with telephone numbers written on it. Guo Bang Liu was then ordered to get out of the car, leaving his wife and sister with defendant and Ak Guan. Guo Bang Liu found a car to take him to his family's home in Chinatown. After he returned home, Guo Bang Liu went with one of his sisters to the 5th Precinct to report the kidnapping.

In the meantime, defendant and Ak Guan took Jin Hao Liu and Liu Yan Wu to a basement apartment in an unknown location. After some time, a third man, Qin Guang Zheng, arrived at the apartment. Shortly after co-defendant Zheng's arrival, Ak Guan left. The two women were forced to spend the night in the apartment with defendant and co-defendant Zheng. Defendant was in possession of a pistol, which he kept by his pillow when he slept. Neither woman was able to sleep.

---

[1]This man is also known as Yee Kong in defendant's written statement to the police, and Acwan in the pre-sentence report from the Department of Probation.

2

The next morning, defendant took Liu Yan Wu into a separate room and began touching her breasts with his hands. He removed her clothing and put his penis into her vagina while holding a gun to her head. Defendant then brought Liu Yan Wu back into the first room and took Jin Hao Liu into the other room and raped her. Co-defendant Zheng also raped both women. Jin Hao Liu was asked for her phone number, which she wrote down for her captors. After receiving the telephone number, defendant left the apartment several times. Defendant also made and received several telephone calls in the presence of the women. At one point, Jin Hao Liu was permitted to speak with her family over the phone. She asked her family to give the kidnappers the money.

On April 1, 1995, Jin Hao and Guo Bang Liu's sister, Emily Liu, received a call demanding $20,000 for the return of each woman. Emily Liu received several more calls from the same man, which were monitored by the police, during which the demands ultimately went down to $7,500.00 for the return of each woman. Emily Liu was told to bring the money in a bag of groceries to a location in Chinatown.

The police determined that the ransom calls were being made from a cellular phone in the vicinity of 133-34 59th Avenue, in the Flushing area of

3

Queens. At approximately 12:05 a.m., on April 2, 1995, defendant and co-defendant Zheng were stopped in that area by the police with the two female victims in their car. A cellular phone was recovered from the front seat of the car.

Later, a search was made of the basement apartment where the two female victims had been held. There, detectives recovered three more cellular telephones, and a loaded gun.

The victims were taken to a hospital where rape kits were prepared. Tests revealed the presence of semen in Liu Yan Wu's vagina and on her panties. Semen was also found on Jin Hao Liu's underwear.

Guo Bang Liu identified defendant in a line-up. In addition, defendant made a statement to the police corroborating the victim's accounts of what had happened at the airport, and admitted that he was the person who had called making the ransom demands. Defendant denied raping the two female victims.

Defendant and co-defendant Qin Guan Zheng were subsequently charged with eight counts of Kidnapping in the First Degree, four counts of Rape in the First Degree, one count of Kidnapping in the Second Degree, eight counts of Sexual Abuse in the First Degree, and one count of Criminal

4