Possession of a Weapon in the Second Degree (Queens County Indictment Number 3282/95).[2]

Defendant proceeded to trial before Justice Katz and a jury. The jury convicted defendant of four counts of Kidnapping in the First Degree, two counts of Rape in the First Degree, one count of Kidnapping in the Second Degree, two counts of Sexual Abuse in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree.

On August 15, 1996, defendant was sentenced to four indeterminate terms of twenty-five to life for the first-degree kidnapping counts, of which two terms were to be served consecutively to the other two. Defendant was also sentenced to indeterminate prison terms of from eight and one-third to twenty-five years on each of the rape convictions, and eight and one-third to twenty-five years on the second-degree kidnapping conviction. Defendant was also sentenced to indeterminate prison terms of from two and one-third to seven years incarceration for each of the sexual abuse counts, and from five to fifteen years on the weapon possessions conviction. These

---

[2]On June 25, 1996, co-defendant Qin Guang Zheng pled guilty to two counts of first degree rape (Penal Law § 130.35 [1]), and two counts of first degree kidnapping (Penal Law § 130.25[1]). Co-defendant Zheng was sentenced to concurrent indeterminate prison terms of from eight and one-third to twenty-five years for each of the rape counts and from fifteen years to life on each of the kidnapping counts. These prison terms were each to run concurrently with one another.

sentences were each to run consecutively to each other, and to the sentences on the first-degree kidnapping counts (Katz, J.).

In July of 1999, defendant appealed his conviction to this Court. On January 10, 2000, this Court modified the judgment by vacating the conviction of Sexual Abuse in the First Degree under the eleventh count of the indictment and vacating the sentence thereon, finding that no evidence pertaining to that count was adduced at trial, and, as so modified, this Court affirmed the judgment. *People v. Hai Guang Zheng*, 268 A.D.2d 443 (2d Dept. 2000). On January 31, 2000, defendant appealed the judgment of this Court's order to the Court of Appeals, which denied defendant's application on June 15, 2000. *People v. Hai Guang Zheng*, 95 N.Y.2d 835 (2000).

## DEFENDANT'S SECTION 440.30(1-A) MOTION

In April 2007, defendant moved in the Supreme Court for an order, pursuant to section 440.30 (1-a) of the Criminal Procedure Law, for a DNA test to be conducted on the sperm cells recovered from the rape kits of the two victims. Defendant argued that identity was the main issue in this case because although he admitted to the kidnapping counts, he had denied raping either of the two female victims. Defendant also stated that the rape kits of the

6

two victims indicated presence of sperm cells and that had a DNA test been conducted of this evidence, his innocence would have been established.

On June 25, 2007, the People opposed defendant's section 440.30(1-a) motion, arguing that defendant's motion should be denied because defendant failed to meet his statutory burdens to entitle him to DNA testing post-conviction. The People argued that, defendant could not establish that any DNA testing would have produced a verdict more favorable to him (June 25, 2007, Affirmation of Ushir Pandit ["Pandit Aff'm"] at ¶¶ 31,32).

The People, relying on *People v. Smith*, 245 A.D.2d 79 (1st Dept. 1997) and *People v. Kellar*, 218 A.D.2d 406 (3d Dept. 1996), argued that defendant had failed to establish that there was a reasonable probability that the verdict would have been more favorable to him if such further testing was performed and admitted at trial. The People pointed out that, the evidence in this case established that the two victims were raped by both defendant and co-defendant Qui Guang Zheng. And although one victim's underwear and the other victim's vaginal swabs showed the presence of spermatozoa, it is conceivable that that spermatozoa was from both defendant and co-defendant. As such, the People argued, although a test result identifying defendant as the source of the sperm found in the victims would conclusively establish his guilt,

7

a negative result could establish only that the victim had intercourse with a male other than defendant – the co-defendant.   A DNA test in this case, therefore would have been of little probative value.   Accordingly, the People argued, defendant had failed to establish with reasonable probability that the verdict would have been more favorable to defendant.

Moreover, the People also asserted that, even though defendant had failed to establish that a DNA testing would have resulted in a verdict more favorable to defendant, the People had attempted to ascertain the whereabouts of the rape evidence kits.  In that regard, the People submitted affidavits from various individuals regarding their knowledge of the whereabouts of the rape evidence kits or the efforts they made to ascertain the whereabouts of the rape evidence kits.  In this case, the People asserted that the current whereabouts of the two rape kits are unknown.

### The Court's Decision

In a written September 21, 2007 decision, the court denied defendant's section 440-30(1-a) motion for additional DNA testing (Kohm, J.). Initially, the court noted that the People could rely on an affidavit from an individual with direct knowledge of the existence or the nonexistence of the evidence to provide the court with reliable information to determine whether

8

evidence exists. In this case, the court noted, the People had submitted affidavits from the trial prosecutor, a paralegal from the bureau in which the trial prosecutor was assigned at the time of defendant's trial, and a representative from the warehouse where such evidence is normally stored. The court noted that these affidavits established that the rape kits were not located at the warehouse or the district attorney's office.

Next, citing *People v. Smith*, 245 A.D.2d 79, *People v. DeOliveira*, 223 A.D.2d 766 (3d Dept. 1996); and *People v. Kellar*, 218 A.D.2d 406, the court held that defendant had not met his burden under section 440.30(1-a) to demonstrate that the results of further DNA would alter the verdict favorably. In this regard, the court noted that the trial evidence indicated that both victims were raped and that defendant had admitted to the kidnapping but denied raping the victims. The court held that a DNA test could result in identifying defendant as the source of sperm, but that, if the test did not identify defendant as the source of the sperm, it would not exonerate him because the testing might instead establish that the co-defendant had had intercourse with the victims. Accordingly, the court held, defendant had failed to show that had the results of a DNA test been admitted at trial, there was a

reasonable probability that the verdict would have been more favorable to defendant. For these reasons, the court denied defendant's motion.

On appeal, defendant argues that the court was wrong to deny his section 440.30(1-a) motion. Specifically, he first claims that the court erred when it ruled that the People had shown that the rape kits no longer existed. But defendant is wrong. Here, the People provided the court with reliable information showing that the current whereabouts of the two rape kits are unknown. Accordingly, the People met their statutory burden in this regard. Second, he argues that the court incorrectly concluded that there was no reasonable probability that the verdict would be more favorable to defendant even if the rape kits could be found. The court, however, correctly determined that any DNA testing would not prove defendant's innocence, particularly since in this case, both defendant and the co-defendant had raped the two victims.

10

## ARGUMENT

### THE COURT CORRECTLY DENIED DEFENDANT'S SECTION § 440.30(1-A) MOTION FOR DNA TESTING.

The court correctly denied defendant's request for DNA testing of the rape kits obtained from the two rape victims because the People established that the current whereabouts of the rape kits are unknown. Moreover, the court also correctly held that defendant had failed to establish, as required by the statute, that there was a reasonable probability of a more favorable verdict in the event DNA testing was conducted on the rape kits. As such, the court correctly denied defendant's motion for further DNA testing, pursuant to section 440.30(1-a) of the Criminal Procedural Law.

**A.    The People's Submissions in the Lower Court Established that the Rape Kits Could No Longer Be Located.**

In this case, the People complied with their obligations under the statute by providing the court with reliable information showing that the current whereabouts of the two rape kits are unknown, and that the last known location of the two rape kits was the court, during defendant's trial. Defendant nevertheless argues that the court erred in ruling that the People had made an adequate showing that the rape kits no longer existed. Defendant is wrong.

11

In *People v. Pitts,* 4 N.Y.3d 303, 311 (2005), the Court of Appeals held that when a defendant files a motion for post-conviction DNA testing pursuant to section 440.30 of the Criminal Procedure Law, the People must show what evidence exists and whether that evidence is available for testing. It is proper for a court to deny a defendant's motion for post-conviction DNA testing when the People are able to demonstrate that the evidence sought to be tested is no longer available. *People v. Velez,* 53 A.D.3d 509 (2nd Dept. 2008). In this regard, mere conclusory assertions that the evidence no longer exists is not sufficient. Rather, the People should present reliable information as to whether the evidence exists. Affidavits from individuals with knowledge of the evidence are sufficient to meet the People's burden. *People v. Pitts,* 4 N.Y.2d at 311-312.

Here, the People provided the court with reliable information that established that the current whereabouts of the two rape kits is unknown. First, the People submitted an affidavit from Property Control Specialist Geraldine Kiely which established that the records and inventory of the Pearsons Place Warehouse revealed that the two rape kits relating to the victims in this case were not in the Pearsons Place Warehouse. Ms. Kiely's affidavit also showed that the two rape kits were signed out into the custody of a detective on June

27, 1996, pursuant to a subpoena issued by the trial prosecutor, Assistant District Attorney Scott Kessler and that there was no record of the return of the evidence.

Next, the People submitted an official court record, the Bridge Sheet, to establish that the two rape kits were in fact in the court room during the trial. In that regard, the Bridge Sheet indicates that the rape kit evidence obtained from victim Wu was marked for identification as "People's 3"on June 28, 1996. And, the rape kit evidence obtained from victim Liu was marked for identification as "People's 4" on June 28, 1996. The Bridge Sheet also has a pre-printed section titled "evidence returned," which indicates the date and time when the evidence was returned to the trial prosecutor. Thus, according to the Bridge Sheet, on July 8, 1996, at 1740 hrs., all the evidence in the court's possession during the trial was returned to the trial prosecutor, "ADA, S. Kessler."

What happened to the rape kits after July 8, 1996, however, is not known. Indeed, in an effort to locate the rape kits, or at the very least, provide the court with reliable information as to their whereabouts, the People in the court below submitted affidavits from Assistant District Attorney Scott Kessler and a paralegal who searched for the rape kits.

13

In this regard, ADA Kessler stated in his affidavit that he had no recollection of what became of the rape kits after the trial. Moreover, Paralegal Kathleen Moran stated in her affidavit that she searched the offices of the Special Victims Bureau, the bureau which prosecuted this case, for the two rape kits, but that the kits could not be found.

Accordingly, the People submitted reliable information to the court below showing that the current whereabouts of the two rape kits was unknown. *See* 440.30 (1-a); *People v. Pitts*, 4 N.Y.3d 303. Indeed, in addition to submitting official court records, the People submitted affidavits from individuals who personally conducted a search to locate the rape kits. Thus, the People provided more than ample reliable information showing that the two rape kits secured in connection with this case cannot be located, and the court below correctly concluded so.

Defendant nevertheless argues that the People's submissions were insufficient. Defendant asserts that the affidavits of Paralegal Moran should have included the locations she searched, including whether she searched only ADA Kessler's desk or whether she also searched every assistant district attorney's desk and file cabinets. Defendant suggests that the People should have also searched the bureau that was responsible for prosecuting kidnapping

14

charges since the charges against defendant included kidnapping and rape. Defendant further insists that an affidavit from every prosecutor, even the appellate prosecutors, should have been submitted describing their knowledge of the location of the rape kits (Defendant's Brief at 26-27).

But defendant's claims about the adequacy of the People's efforts to provide information as to the current whereabouts of the rape kits are without merit.    Initially, defendant offers no support for his claims that information such as he outlines in his brief is necessary before a court can rule that the prosecutor's submissions were reliable as to the whereabouts of the evidence to be tested. To the contrary, the Court in *Pitts* ruled that the People should provide "reliable information as to whether or not the evidence sought exists and the source of such information" *People v. Pitts*, 3 N.Y.3d at 312. The Court further stated that such reliable information may be provided in the form of affidavits. Indeed, other than requiring that the individual supplying the affidavit have "direct knowledge of the status of the evidence," the Court did not require that the affiant describe every single room, desk, of file cabinet he or she may have searched.

And here, contrary to defendant's claim, the People submitted reliable information, in affidavit form, to establish that the current whereabouts

15

of the rape kits is unknown. Moreover, the fact that ADA Kessler did not state that he personally conducted a search is irrelevant. What is relevant is that the offices of the bureau responsible for this prosecution were searched and the person with direct knowledge of the results of that search submitted an affidavit of that result.

Additionally, defendant's claim that an affidavit from every prosecutor who ever had any dealings with this case is required is based on pure speculation (Defendant's Brief at 27). Indeed, there is no evidence that the prosecutor who prepared the brief on defendant's direct appeal or the prosecutor who responded to defendant's *coram nobis* or the section 440.10 motion ever saw, touched, or was aware of the location of the rape kits. In fact, since no issues relating to the rape kits was raised on defendant's direct appeal nor were the rape kits admitted into evidence, the prosecutor who prepared the respondent's brief would have had no reason to know the location of the rape kits. Similarly, the prosecutor who prepared a response to *coram nobis* petition also had no reason to know the location of the rape kits as the issue on this petition was whether appellate counsel had rendered ineffective assistance for failing to raise an ineffective-assistance-of-trial counsel claim because defendant's trial counsel had not requested a DNA testing of evidence

16

contained in the rape kits. And when the location of the rape kits was relevant to respond to defendant's section 440.10 motion, the prosecutor preparing a response to the section 440 motion submitted affidavits from individuals who had personal knowledge concerning their efforts to determine the current whereabouts of the rape kits. Thus, defendant's claim is meritless.

Likewise, an affidavit from Detective Michael Green was also not necessary because, although Detective Green or someone else transported the rape kits from the NYPD property clerk's office to the courtroom, there is no indication that after the rape kits were turned over to ADA Kessler at the end of the trial, Detective Michael Green or the person who transported the rape kits had possession of them. Moreover, it is evidence from the affidavit of the Property Control Specialist at the NYPD Pearsons Place Warehouse that no police personnel ever returned the evidence after signing it out for trial. Thus, defendant's claim regarding the failure to submit an affidavit for Detective Michael Green is without merit.

Defendant's claim that information regarding the "usual protocol" of the manner in which the rape kits are handled after being in the courtroom should have been submitted by the People (Defendant's Brief at 28) is also without merit. Indeed, no such requirement is imposed on the People by

17

statute or case law. In any event, as demonstrated by the Bridge Sheet, the "usual protocol" for any evidence in the court's possession at the end of the trial is to return it to the party that offered the evidence for admission. And here, the People have established that after the rape kits were turned over to ADA Kessler, he does not have any further recollection of what became of the rape kits. Thus, defendant's claim does not require this Court to remand this case to the lower court for any further proceedings.

**B.** **The Lower Court Properly Denied Defendant's Motion for DNA Testing.**

A defendant can request performance of a post-conviction DNA test on specified evidence pursuant to section 440.30(1-a) of the Criminal Procedure Law. While the statute sets forth a procedure for a defendant to obtain an order for DNA testing, it does not guarantee a defendant an absolute right to testing. The court may only grant such a request when it determines that evidence containing DNA was secured and that, if a DNA test had been conducted, and the results were admitted at trial, there exists a reasonable probability that the verdict would have been more favorable to defendant. C.P.L. § 440.30 (1-a); *see also People v. Pitts*, 4 N.Y.3d 303, 310 (2005). Indeed, "the Legislature intended that DNA testing be ordered only upon a

18

court's threshold determination, in the context of the trial evidence, that testing results carry a reasonable potential for exculpation." *People v. Tookes*, 167 Misc.2d 601, 603 (Sup. Ct. N.Y. Co. 1996). And, as the movant, a defendant has the burden to establish the existence of the "reasonable probability" of a more favorable verdict. C.P.L. § 440.30 (1-a); *see People v. Pitts*, 4 N.Y.3d 303, 310 (2005).

In this case, the trial court properly determined that defendant failed to establish that there was no reasonable probability that the verdict would have been more favorable to defendant if the DNA testing was performed and the results of this test had been admitted at the trial because the results could not exculpate defendant.

The lower court properly held that the DNA analysis of the evidence contained in the two rape kits would not have created a reasonable probability of a more favorable verdict. Indeed, the evidence in this case established that the two victims were raped by both defendant and co-defendant Qui Guang Zheng. And although one victim's underwear and the other victim's vaginal swabs showed the presence of spermatozoa, it is conceivable that that spermatozoa was from both defendant and co-defendant. In fact, although a test result identifying defendant as the source of the sperm

19

found in the victims would conclusively establish his guilt, a negative result could establish only that the victim had intercourse with a male other than defendant – the co-defendant. *See People v. Smith*, 245 A.D.2d 79 (1st Dept. 1997) (even if defendant were excluded as source of semen, victim had testified that she had had intercourse with her boyfriend shortly before the rape and she did not know if rapist had ejaculated); *People v. Kellar*, 218 A.D.2d 406 (2d Dept. 1996) (negative result would be probative of little more than the victim's prior sexual activity). A DNA test in this case, therefore would have been of little probative value. Accordingly, the court properly held that defendant had failed to establish with reasonable probability that the verdict would have been more favorable to defendant.

Moreover, contrary to defendant's claim, the applicability of *People v. Smith* and *People v. Kellar*, to this case is not lessened even though these cases were decided before section 440.30 was amended (Defendant's Brief at 30, n.8). Indeed, the amendment of the statute lessened the defendant's burden as it related to whether the defendant or the People had the burden of showing that the evidence still existed for any testing to be feasible. And although the amendment imposed the burden on the People to show whether the evidence existed or not, the amendment did not reduce defendant's

20

obligation to establish with reasonable probability that the verdict would have been more favorable to defendant. In both *Smith* and *Kellar*, the court denied the defendant's motion for DNA testing because it held that the defendant had failed to meet his burden to establish with reasonable probability that the verdict would have been more favorable to defendant. Thus, defendant's claim is meritless.

*   *   *

In sum, the court's decision denying further DNA testing to defendant was correct, and should be affirmed.

## **CONCLUSION**

For the reasons set forth above, the court's order denying DNA

testing should be affirmed.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
NICOLETTA J. CAFERRI
USHIR PANDIT

Assistant District Attorneys
of Counsel

June 29, 2009

22

## CERTIFICATE OF COMPLIANCE

I certify the following in compliance with section 670.10.3 of the Rules of this Court:

1. The foregoing brief was prepared on a computer.

2. The typeface used is Times New Roman.

3. The point size of the text is 14 point, except for footnotes, which are 12 point.

4. The brief is double spaced, except for the Table of Contents, point headings, footnotes, and block quotes.

5. The brief contains 4,404 words, exclusive of the Table of Contents, proof of service, and the certificate of compliance, based on the word count of the word-processing system used to prepare this brief.

Dated:      Kew Gardens, New York
            June 29, 2009

_____
Assistant District Attorney

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D25769
C/hu

____AD3d____

Argued - December 10, 2009

REINALDO E. RIVERA, J.P.
JOHN M. LEVENTHAL
ARIEL E. BELEN
LEONARD B. AUSTIN, JJ.

2007-10080

DECISION & ORDER

The People, etc., respondent,
v Hai Guang Zheng, appellant.

(Ind. No. 3282/95)

Steven Banks, New York, N.Y. (Amy Donner of counsel), for appellant.

Richard A. Brown, District Attorney, Kew Gardens, N.Y. (John M. Castellano, Nicoletta J. Caferri, and Ushir Pandit of counsel), for respondent.

Appeal by the defendant from so much of an order of the Supreme Court, Queens County (Kohm, J.), dated September 21, 2007, as denied, without a hearing, that branch of his motion which was pursuant to CPL 440.30(1-a) for DNA testing.

ORDERED that the order is affirmed insofar as appealed from.

The Supreme Court properly denied, without a hearing, that branch of the defendant's motion which was pursuant to CPL 440.30(1-a) for DNA testing since the defendant failed to show that there was a reasonable probability that the verdict would have been more favorable to him had DNA tests been performed (see CPL 440.30[1-a]; *People v Weay,* 54 AD3d 695; *People v Brown,* 36 AD3d 961; *People v Shenouda,* 307 AD2d 938; *People v Pugh,* 288 AD2d 634; *People v De Oliveira,* 223 AD2d 766).

RIVERA, J.P., LEVENTHAL, BELEN and AUSTIN, JJ., concur.

ENTER:

James Edward Pelzer
Clerk of the Court

January 19, 2010

PEOPLE v HAI GUANG ZHENG



**THE
LEGAL
AID
SOCIETY**

Criminal Appeals Bureau
199 Water Street
New York, NY 10038

Tel: 212-577-3688
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

February 15, 2011

Hon. Carmen Beauchamp Ciparick
Judge of the Court of Appeals
Court of Appeals Hall, 20 Eagle Street
Albany, New York 12207-1095

3282/95

Re: <u>People v. Hai Guang Zheng</u>

Your Honor:

I submit this letter in further support of defendant-appellant's application of leave to appeal to the Court of Appeals in this case. The primary arguments are contained in full detail in Defendant-Appellant's supplemental brief. Additional facts are set forth in Defendant-Appellant's motion for an extension of time within which to apply for permission to appeal, which was granted by the Court and treated as a timely criminal leave application. <u>See</u> Letter of Andrew W. Klein, Clerk of the Court, dated January 18, 2011. On February 8, 2011, appellant's time in which to file a supplemental leave letter was extended to February 18, 2011.

Appellant's case would present the Court with the opportunity to give standards for what constitutes appropriate review the circumstances under which a summary denial is appropriate in a C.P.L. §440.30(1) for DNA testing. C.P.L. §440.30(1). Under C.P.L. §440.30, a court must grant a criminal defendant's request for DNA testing if it determines that (1) evidence containing DNA materials was collected in connection with the trial resulting in the judgment and (2) there is a reasonable probability that the verdict would have been more favorable to the defendant had a DNA test been conducted on such evidence and if the results had been admitted in the trial resulting in the judgment. Since the law permitting motions for DNA testing was enacted, there has been little case law from the Court of Appeals and no case setting

forth a standard for application of the statute.[1] The few decisions from the Appellate Division do not contain a comprehensive standard and are fact specific. Many contain merely conclusory language, as in appellant's case, on the meaning of either prong.

Here, following a jury trial, appellant was convicted of four counts of first-degree kidnapping [P.L. §135.25(1), (2), (c)], two counts of first-degree rape [P.L. §130.20], one count of second-degree kidnapping [P.L. §130.20]; two counts of sexual abuse in the first degree [P.L. §130.65[1]); and one count of second-degree criminal possession of a weapon [P.L. §265.03], pertaining to an incident in which appellant and two others allegedly abducted two women and one man. He was sentenced to four 25 year-to-life terms on each of the four first-degree kidnapping convictions, some of which were set to run consecutively, for a total of 50 years to life; 8 1/3 to 25 years on each of the two first-degree rape and second-degree kidnapping counts; 2 1/3 to 7 years on each of the two first-degree sexual abuse counts; and 5 to 15 years on the second-degree weapon possession count, all to run consecutively with each other for a total of 84 2/3 years to life (Katz, J., at trial and sentence). While appellant candidly acknowledged that he participated in the kidnapping of the complainants under duress, he vehemently denied having raped either complainant, both on the stand in his trial testimony and in a statement to a police detective shortly after his arrest, which was introduced by the People at his trial. Only one of the female complainants identified him as one of the two men who raped her and she clearly was under extreme stress at the time of the incident and could have been mistaken. Thus, had DNA testing of semen been performed and the results admitted at trial, there is a significant probability that the verdict would have been more favorable to appellant regarding the rape counts.

Appellant filed a C.P.L. Section 440.30(1) motion. The lower court, however, summarily denied the motion on the grounds that the People had shown that the rape kits prepared at the time of the crime no longer existed, notwithstanding the People's presentation of only conclusory affidavits

---

[1]      In the major case interpreting this statute, People v. Pittman, 4 N.Y.3d 303 (2005), this Court held, inter alia, that the defendant does not bear the burden of showing that the specified DNA evidence exists and is available for testing. Id. at 305. While the Court addressed the propriety of summary denial in the two cases consolidated in that appeal, the opinion did not set forth a comprehensive standard.

regarding their efforts to locate the testable material. The Appellate Division, Second Department, affirmed the summary denial of the motion, and held, without any analysis, that appellant failed to show that there was a reasonable probability that the verdict would have been more favorable to him had DNA tests been performed. People v. Zheng, 69 A.D.3d 878 (2d Dept. 2010). The court offered no factual basis for its conclusion, but cited a number of cases, many of which contain the same conclusory reasoning as here. E.g., People v. Shenouda,  307 A.D.3d 938.  (2d Dept. 2003).[2]

By not providing any analysis as to how it reached its conclusion that there was no reasonable probability that the verdict would have been more favorable to appellant had DNA testing been done and the results entered at trial, the Appellate Division ignored the two scenarios in which DNA testing could have made a difference, both of which were pointed out in defendant-appellant's Appellate Division brief.  First, the presence of multiple assailants does not inexorably to the conclusion that the testing could not exonerate appellant. Although the mere absence of appellant's DNA would not exonerate him, that absence in conjunction with the presence of the DNA of multiple men who did not engage in consensual sex with the complainants would exonerate him.  Indeed, the requested testing may actually identify who sexually assaulted the complainant since the DNA of the rapists could be compared to any recovered DNA evidence in the State's DNA database.  In light of this State's desire to identify sexual predators, there are valid reasons besides appellant's request to search for and test this material.

Second, the lower court identified only two of the possibilities of what DNA evidence could show – one, that the rapist was appellant or two, that the rapist was the co-defendant. The court did not consider the third possibility -- that the DNA would show that the rapists were the co-defendant and a third person or, an as of yet unidentified third and fourth person (2 people) other than appellant.

Furthermore, both the lower the court and the Appellate Division misunderstood the meaning of what constitutes making a reasonable probability

_____

[2]     Some of the other cases cited by the Second Department were decided under an earlier version of the DNA testing law, under which the movant (i.e., the defendant) had the burden of demonstrating that there was a reasonable probability that the test results would have resulted in a verdict that was more favorable to the defendant. See People v. Pugh, 288 A.D.3d 634 (3d Dept. 2001).

that the verdict would have been more favorable to the defendant. Here, appellant was convicted of both kidnapping and rape. He never disputed that he committed the kidnapping, but always maintained his innocence of rape. Thus the admission of DNA tests showing that the sperm was not his would have created a substantial probability that the verdict would have differed from the one here in that appellant would have been acquitted of rape, albeit convicted of kidnapping.

The presence of only the co-defendant's DNA in the testable material (along with the absence of appellant's DNA) would substantially corroborate appellant's present version of the events. Appellant took the stand on his own behalf and acknowledged that he committed the kidnapping under duress and that he did not participate in any sexual attacks on the complainants. This is consistent with the remarks in appellant's statement to the police shortly after his arrest, which was introduced in evidence as part of the People's case. Moreover, because he was not charged on an acting in concert theory in relation to the two rape charges, the introduction of DNA evidence favorable to appellant would have created a high probability that the jury would have returned a not guilty verdict on the rape charges.

Finally, the case would permit this Court to provide guidance on another area in which there is a paucity of caselaw—the standard for determining whether the People have made an adequate showing of whether DNA evidence was secured in connection with the trial. Here, the Appellate Division did not address this issue, but the trial court held that the People made an adequate showing that the rape kits did not exist. The lower court's decision implies that that the prosecutor did a thorough chain of custody search, which is not the case. Tellingly, the People neither asserted nor established that they made a diligent effort to locate the testable material. Indeed, the People never submitted a detailed affidavit that set forth a thorough chain of custody search.

The court concluded that "a search of the District Attorney's office was of no avail" (D.4), relying in part on an affidavit from Assistant District Attorney Kessler, who tried the case for the People, stating that he did not have any independent recollection of what became of the evidence after the trial concluded or know the rape kits' current whereabouts. ADA Kessler, however, did not state whether he searched for the rape kits anywhere at all.

Nor was the affidavit of Kathleen Moran, a paralegal in the Special Victims Bureau of the District Attorney's Office, adequate. Moran stated

4

merely that she "personally searched the Special Victims Bureau" and her search "was negative." Moran's affidavit was conclusory at best. Moran never described the activities that constituted her "search." She did not state where specifically in the Special Victims Bureau she searched. Indeed, she did not state whether she limited her search to ADA Kessler's office, whether she searched every file cabinet in any records room, whether she looked on top of and inside the desks of every Bureau employee who could conceivably have handled the case and whether she checked whether the file could have been sent to archives. Thus, she offered absolutely no indication as to the extent of her search. Moreover, even by her own claim, Moran searched only the Special Victims Bureau. Since this trial involved not only rape and sexual abuse but also kidnapping, the prosecutor should have had a District Attorney's Office employee conduct a thorough search of the general bureau of the District Attorney's office that would prosecute kidnapping crimes, rather than have limited itself to the Special Victims Bureau. The prosecutor should have had such an employee submit a detailed affidavit setting forth exactly where he or she searched in the District Attorney's office. Nor did the prosecutor investigate whether the material was returned to the co-defendant's files. Certainly there were multiple locations where the material could have been placed.

Moreover, appellant's case was handled by several assistant district attorneys in the Queens District Attorney's Office. ADA Joan Yang wrote the brief on direct appeal and ADA Usher Pandit wrote the affirmations in the coram nobis and the C.P.L. §440.10 motion. The prosecutor should have submitted an affidavit from ADA Yang regarding her recollection of the handling of the rape kits and her involvement if any and any searches she conducted. Similarly, ADA Pandit's affidavit should have included the same such information regarding her personal recollection of the handling of the rape kits, her involvement if any with the rape kits in this case and detailing the extent of searches, if any, she personally conducted for the rape kits as well as the location of the case file between the 440 motion and the coram nobis such as whether it remained in her office or was returned to an archives or the trial bureau. Nor did the prosecutor submit an affidavit from a Detective Michel Green who is mentioned in the DA response to the 440.30 motion.

Significantly, the prosecutor did not set forth the usual protocol as to how rape kits usually are handled after being in the courtroom. The prosecutor stated only that such items usually are stored at the Police Department's Pearson Place Warehouse. There is no affidavit from a member of the District Attorney's Office, court personnel or the Police Department as to which actors perform

5

which function regarding such evidence as matter of protocol. Such an affidavit should indicate, for example, whose job it would be to bring the evidence from the courtroom to archives. All the people whose job function indicated that they might have been involved in the protocol should have submitted affidavits regarding their recollection of the handling of the rape kits in this case. See People v. Pittman, 4 N.Y.3d 303, 312 (2005)(People must produce reliable information as such as an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating the evidence's existence or nonexistence).

As the foregoing shows, the People failed to submit a detailed affidavit and the ones they produced were conclusory in nature regarding the extent of their search. Thus, while there is a possibility that the rape kits are lost, the prosecutor's affidavits were not sufficient to meet its burden of establishing this. Hence, contrary to the court's conclusion, the People's response was insufficient to establish that the rape kits were lost. Thus, appellant's case would provide an opportunity for this Court to set forth minimum protocols for deciding whether the prosecutor has met its burden of showing that DNA material does not exist.

* * *

In sum, appellant's case would enable the Court of Appeals to clarify the law in two areas of the law regarding C.P.L. §440.30 motions involving DNA. For all of these reasons, we urge Your Honor to grant leave to appeal in this case. I can be reached at (212) 577-3487 if Your Honor has any questions, desires further materials or wishes to arrange a hearing.

Respectfully,

AMY DONNER
Associate Appellate Counsel

cc: Ushir Pandit, Esq.
    Assistant District Attorney
    Queens County District Attorney's Office - Appeals
    125-01 Queens Boulevard
    Kew Gardens, New York 11415



**DISTRICT ATTORNEY**
**QUEENS COUNTY**
**125-01 QUEENS BOULEVARD**
**KEW GARDENS, NEW YORK 11415-1568**
**(718) 286-6000**

RICHARD A. BROWN
DISTRICT ATTORNEY

March 4, 2011

The Honorable Carmen Beauchamp Ciparick
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

   Re: *People v. Hai Guang Zheng*
   Queens County Indictment No. 3282/95

Dear Judge Ciparick:

   The People oppose defendant's application for leave to appeal the January 19, 2010, order of the Appellate Division, Second Department, which affirmed the lower court's denial of defendant's motion for DNA testing. *See* Criminal Procedure Law section 440.30 (1-a). *People v. Hai Guang Zheng*, 69 A.D.3d 878 (2d Dept. 2010). In 1996, defendant was convicted of four counts of first-degree kidnapping, two counts of first-degree rape, one count of second-degree kidnapping, two counts of first-degree sexual abuse, and one count of second-degree weapon possession. Eleven years later, defendant moved for DNA testing of evidence contained in the two rape kits prepared after an examination of the two victims. The Appellate Division correctly ruled that DNA testing was properly denied because defendant had failed to show that there was a reasonable probability that the verdict would have been different had DNA testing been performed. Thus, defendant's claims do not present any leave-worthy question for this Court to review, and his application should be denied.

   Defendant nevertheless asks this Court for leave to appeal the Appellate Division's order affirming the lower court's denial of his motion. First, defendant contends that the Appellate Division failed to provide any analysis for its conclusion that there was no

reasonable probability that the verdict would have been different had DNA testing been performed. Defendant contends that this failure by the Appellate Division shows that the Appellate Division did not consider that although the absence of defendant's DNA would not exonerate defendant, the presence of the DNA of multiple men who did not engage in consensual sex with the victims would exonerate defendant. Defendant also contends that the lower court did not consider the possibility that DNA could show that rapists were the co-defendant and some other unidentified person. But defendant's claim is meritless. *See* Defendant's February 15, 2011 Letter at 3-4.

The Appellate Division's failure to specifically note the two scenarios defendant contends the court ignored in its decision does not show that that court did not consider them. To the contrary, since defendant had raised these same arguments in his brief to the Appellate Division, it is reasonable to assume that the Appellate Division considered defendant's arguments and rejected them. Moreover, the Appellate Division's rejection of defendant's contention – that DNA testing could have shown the presence of other unidentified person or persons who had had engaged in non-consensual sex with the victims – was correct because it is based on speculation and defendant's own self-serving statements. Indeed, the trial evidence does not support defendant's speculation that DNA testing could have revealed the DNA presence of other unidentified person. To the contrary, at trial, both victims testified that they were each raped by both defendant and the co-defendant and one of the victims identified defendant in a line-up. Furthermore, the jury rejected defendant's self-serving testimony that although he participated in the kidnapping, he did so because he was forced to do so to pay back a debt and that he did not rape the two women. Thus, contrary to defendant's claim, the Appellate Division correctly ruled that defendant had failed to show that there was a reasonable probability that the verdict would have been different.

Defendant next claims that a review is warranted in this case because it would permit this Court to set forth the standards for determining whether the People had made an adequate showing of the existence of the DNA evidence. *See* Defendant's February 15, 2011 Letter at 4-6. But in *People v. Pitts*, 4 N.Y.3d 303 (2005) this Court held that the People must produce "reliable information" to show whether or not the evidence exists. Indeed, this Court specifically held that a conclusory statement that the evidence no longer existed, based on a phone conversation with a property clerk was insufficient. Rather, this Court held, affidavits from individuals with direct knowledge of the existence or non-existence of the evidence would be adequate for the People to meet their burden. *Id.* at 312.

In this case, the People presented reliable information showing that the current whereabouts of the two rape kits was unknown. As fully discussed in Respondent's Appellate Division brief, pages 12-14, the People submitted affidavits from the trial

*People v. Zheng*, Ind. No. 3282/95                                                Page 3
March 4, 2011

prosecutor, a paralegal who searched the offices for the rape kits, and an employee of the
New York City Police Department who searched the property storage area for the rape kits,
to show that the whereabouts of the evidence defendant sought to test was unknown. And,
contrary to defendant's contentions, and as discussed in Respondent's Appellate Division
brief, pages 14-18, the People were not required to submit anything additional. Thus, there
is no leaveworthy issue for this Court's review because this Court has sent forth sufficient
standards for determining whether the People had adequately established the existence or
non-existence of the evidence.

In sum, the Appellate Division correctly affirmed the denial of defendant's motion for
DNA testing. Thus, this application should be denied because it does not present a leave-
worthy issue for this Court's review.

Sincerely,

Ushir Pandit
Assistant District Attorney
(718) 286-5928

cc:    Amy Donner, Esq.
       The Legal Aid Society
       Criminal Appeals Bureau
       199 Water Street
       New York, New York 10038

# State of New York
# Court of Appeals

BEFORE: HON. CARMEN BEAUCHAMP CIPARICK,
Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

HAI GUANG ZHENG,  $3\lambda\{a\-95$

Appellant.

**CERTIFICATE
DENYING
LEAVE**

I, CARMEN BEAUCHAMP CIPARICK, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission is hereby denied.

Dated: April 19, 2011
at New York, New York

Associate Judge

\* **Description of Order:** Order of the Appellate Division, Second Judicial Department, entered January 19, 2010 affirming insofar as appealed from an order of the Supreme Court, Queens County, dated September 21, 2007.