65

1      Det. Banks-For the People-Cross(Schechter)

2  the technical people who were following the c  :,

3  following the phone, I should say.

4      Q    Do you know how they ascertained where that

5  phone was in that car?

6            MR. KESSLER:  Objection.

7            THE COURT:  Sustained.

8      Q    Do you know if any eavesdropping warrants had

9  been obtained prior to them locating the vehicle that the

10  phone was coming from?

11            MR. KESSLER:  Objection.

12            THE COURT:  Sustained.

13      Q    Now, at the time that you went back to the

14  location on 59th Avenue, the location was on 59th Avenue

15  or 134th Street?

16      A    59th Avenue.

17      Q    Were the two individuals that you had

18  apprehended, were they in the vehicle also?

19      A    They were in two separate vehicles.

20      Q    Were they brought back into the location?

21      A    I believe they were.

22      Q    And when you had your conversation with the

23  landlord -- well, withdrawn.

24            Did you find any keys on either of the two

25  individuals for that apartment in the basement?

66

1     Det. Banks-For the People-Cross(Schechter)

2     A     Did I; no.

3     Q     Did you find any keys on either individual?

4     A     Did I find any; no.

5     Q     Do you know if anyone else, your partner or

6     anyone else, found any keys for that?

7     A     No, I don't know if they did or not.

8     Q     When you entered, then, how many different ways

9     were there to get into the basement apartment?

10    A     Two.  That way and there was a stairway that

11    led to a door inside the house.

12    Q     If you know, when you saw the four people exit

13    the house, did they exit from the front door or from the

14    basement?

15    A     I didn't see the four people until they reached

16    the sidewalk so I didn't know if they exited -- it

17    appeared to me they were coming out of the driveway

18    between two houses.  I don't know where they came out of.

19    Q     On that appearance would they then have come

20    out of the side entrance?

21    A     Yes, they would have.

22    Q     Now, when you went was the basement door

23    locked?

24    A     Yes, it was.

25    Q     And do you know if any keys to that apartment

1      Det. Banks-For the People-Cross(Schechter)

2  were found on either of those two individuals?

3                 MR. KESSLER:  Objection.  Asked and

4           answered.

5                 THE COURT:  Sustained.

6      Q    When you spoke to the landlord and he told you

7  that two Asians had rented the apartment, was he asked to

8  look at these two individuals to see if they were either

9  of the individuals that rented the apartment?

10     A    No, he was not.

11     Q    Did you ask him if there was any lease for the

12 apartment?

13     A    No, I did not.

14     Q    Now, to get into the apartment did you go down

15 the steps or did you walk around to the side entrance

16 from the street?

17     A    The side door entrance is right on the same

18 level as the driveway.  You just walk up the driveway to

19 the side door.

20     Q    Was that door opened or was it locked?

21     A    It was locked.

22     Q    Were you the first one to go in or did your

23 partner go in?

24     A    I was.

25     Q    And the first thing you did was go in to see if

Case 1:16-cv-01168-RJD Document 8-4 Filed 11/30/16 Page 4 of 157 PageID #: 584

1          Det. Banks-For the People-Cross(Schechter)

2     there were any other individuals in the apartment?

3          A     That's correct.

4          Q     And how long did it take you to ascertain that

5     no one else was in the apartment?

6          A     A few seconds.

7          Q     And then did you go back in to look for

8     contraband?

9          A     No, I did not.  Well, I saw contraband when I

10    was looking through the apartment.  After I secured the

11    apartment I went back and recovered the contraband.

12         Q     During your time at Police Plaza did you know

13    how many people had been kidnapped?

14         A     Yes, I did.

15         Q     How many people had been kidnapped?

16         A     Two.

17         Q     And you knew, and you had a picture of both of

18    those?

19         A     That's correct.

20         Q     And am I correct in saying, then, that when you

21    went back into the apartment you were not looking for any

22    other victim of this particular crime?

23         A     No, that would be incorrect.  The crime of

24    kidnapping, I was looking for more victims.

25         Q     That were taken as part of that investigation?

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 5 of 157 PageID #: 585

1             Det. Banks-For the People-Cross(Schechter)

2       A     No.

3       Q     Well, were you looking for any other victims

4  that had been kidnapped in the kidnapping in the vicinity

5  of Kennedy Airport of the two females?

6       A     No, I wasn't.

7       Q     Did either of the two females, prior to going

8  back into the apartment, ever tell you that they had seen

9  any other kidnap victims?

10      A     No.  I asked them if they saw or heard

11  anything.  They said they heard other vices in the

12  apartment but they didn't see anyone.

13      Q     And prior to going into the apartment had you

14  spoken to the landlord who lived in a different part of

15  the house?

16      A     He lived in the main part of the house, that's

17  correct.

18      Q     Prior to going back into the apartment did you

19  you ever attempt to get a search warrant?

20      A     I'm sorry.  The only time, you mean, I went

21  back into the apartment.  I only went in once.

22      Q     Going into the apartment did you ever attempt

23  to get a search warrant?

24      A     No, I did not.

25             THE COURT:  Did you ever get a search

1            Det. Banks-For the People-Cross(Schechter)

2                warrant?

3                        THE WITNESS:  No, your Honor.

4       Q     When you looked at the cellular phones, were

5    you able to ascertain that they had ever been used as

6    part of that kidnapping?

7                        MR. KESSLER:  Objection as to form.

8                        THE COURT:  Sustained.

9       Q     Well, officer, were the cellular phones that

10   you saw, per se, contraband?

11                       MR. KESSLER:  Objection, again, as to

12               form.

13                       THE COURT:  Sustained.

14      Q     Is there any violation in the Penal Law to

15   having a cellular phone?

16      A     Not to my knowledge.

17      Q     And you still took those cellular phones

18   without having a warrant?

19      A     Well at that point I didn't know if it was --

20      Q     Well, yes or no did you?  You took them without

21   having a warrant?

22      A     That's correct.

23      Q     And the landlord had told you he had rented the

24   basement apartment to two Asian males?

25                       MR. KESSLER:  Objection.  Asked and

71

1    Det. Banks-For the People-Cross(Schechter)

2    answered.

3            THE COURT:  That's so.

4            MR. SCHECHTER:  I have nothing further,

5    your Honor.

6            THE COURT:  Thank you.  Any questions?

7            MR. KESSLER:  No.

8            THE COURT:  Any questions, Ms. Pelosi?

9            MS. PELOSI:  No, your Honor.

10           THE COURT:  Thank you very much,

11   Detective Banks.

12           Were the minutes procured by you on the

13   other hearing?

14           MR. SCHECHTER:  Yes.

15           THE COURT:  Do we have a copy?

16           LAW CLERK:  I don't have them.  It's just

17   the testimony of Keith Ng, which was the first,

18   and I don't have that.

19           MR. SCHECHTER:  Do you want the name of

20   the reporter and the date?

21           THE COURT:  We'll get a copy of the

22   hearing today.

23           THE CLERK:  It was Nancy Samms,

24   S-A-M-M-S.

25           MR. SCHECHTER:  They would have already

72

1   Proceedings

2   been typed.

3           THE COURT:  What was the date?

4           THE CLERK:  February 8th and 9th.

5           THE COURT:  We can have a decision on

6   this in about a week if we get the minutes.

7           MR. SCHECHTER:  Your Honor, you have not

8   asked us if we're resting.

9           THE COURT:  I'm going to ask now.  Do you

10  rest?

11          MS. PELOSI:  Judge, I talked to my client

12  and we rest.  Qin Guang Zheng rests.

13          MR. SCHECHTER:  Your Honor, my client

14  will not testify at the hearing but prior to

15  anything I cannot rest until, one, if there's

16  an eavesdropping warrant which can directly

17  affect everything that occurred thereafter and

18  if I have not been provided with that, as

19  according to statute, it could be that

20  everything that occurred, including the lineups

21  or the phone conversations, the locations are

22  suppressible because of the district attorney

23  not complying with the language of the

24  eavesdropping statute of the Criminal Procedure

25  Law.

1    Proceedings

2         Now, I cannot rest at this stage until

3    I'm, one, provided with a copy of the

4    eavesdropping warrant and see exactly what that

5    states.

6         MR. KESSLER:  I believe I turned over all

7    the paperwork from Manhattan, including the

8    eavesdropping warrant, as part of the Rosario

9    material in the case.  I have another copy that

10   I can make and show defense counsel.

11        MR. SCHECHTER:  I don't remember getting

12   that, your Honor.  I don't remember seeing

13   that.  I'm not going to say I did or did not

14   get it at this stage but I don't remember.

15        MR. KESSLER:  It's only three pages.  If

16   I could get a copy machine I could get another

17   copy.

18        THE COURT:  Are you saying it was already

19   served?

20        MR. KESSLER:  Judge, I turned over about

21   close to 130 pages of Rosario material,

22   including the Manhattan paperwork.  I also

23   believe the paperwork in Manhattan had been

24   turned over to other counsels that had

25   previously been on the case before we got it

74

Proceedings

here in Queens.

It was initially in Manhattan for months and then came here to Queens on this particular case. So with regards to it, as I said, I have another. It's about three pages. I could make another copy and turn it over to both defense counsel if there's a machine right nearby and if you want to look at it.

MR. SCHECHTER: Your Honor, I looked through the entire file. I did not receive the eavesdropping file which, under the statute, must be served within 15 days of the arraignment.

The Manhattan arrest, to my understanding, was dismissed and it was not done according to statute, your Honor. I would like an opportunity to view the eavesdropping warrant, as such, your Honor.

As I will not be able to do it right now, your Honor, I would have no objection, if you want, to put the case on for a day next week and by that time I could have viewed the search warrant and will make any appropriate observations.

75

Proceedings

1                            Proceedings

2          MS. PELOSI:  Your Honor, may I be heard.

3    I'd just like to amend my last statement.  I'm

4    not going to rest at this point.  I discussed

5    with my client about testifying.  He is not

6    going to testify and I'll join in his

7    application so I can see the warrant.

8          THE COURT:  I think we ought to tie down

9    -- I think it's a multi-faceted issue, whether

10   or not you need an eavesdropping warrant to do

11   a cellular search in moving vehicles but that

12   is aside from recording conversations and that

13   sort of thing.

14        So, I think there may be some different

15   issues.  So, I think we'll put it on for the DA

16   to get together whatever his background on

17   Rosario material concerning warrants that have

18   been given to defense counsel and who gave

19   them, when they were given.

20        THE CLERK:  The 24th, your Honor?

21        THE COURT:  Mr. Kessler, is that good for

22   you.

23        MR. KESSLER:  The 24th of April?

24        MS. PELOSI:  At 9:30.

25        MR. SCHECHTER:  First thing in the

76

1                        Proceedings

2        morning?

3             THE CLERK:  I don't know if the

4        defendants are going to be produced.

5             MR. SCHECHTER:  This is going to be more

6        argument, oral.  I'll waive his appearance.

7             THE COURT:  You'll waive your argument

8        until that day?

9             MS. PELOSI:  Yes.

10            THE CLERK:  April 24th.  Same bail

11       conditions?

12            THE COURT:  Same bail.

13            (Whereupon, the case was adjourned until

14       April 24, 1996.)

15

16

17                       CERTIFICATION

18  CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE
    TRANSCRIPT OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS
19  CASE.

20

21                            Alan H. Kimbarow
                              Senior Court Reporter

22

23

24

25

CATT
319196
COPY

1

1

2   SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF QUEENS : CRIMINAL TERM: PART K-11

3   ------------------------------------X
      THE PEOPLE OF THE STATE OF NEW YORK  : Indictment No.

4                               3282/95
                -against-        :

5

6   HAI GUANG ZHENG and QIN GUANG ZHENG,  :

                       Defendants.  : Hearing Arguments

7   ------------------------------------X and Decision
                  125-01 Queens Boulevard

8                  Kew Gardens, New York 11415

9                  April 24, 1996

10  B E F O R E:

11             HONORABLE JOHN J. CLABBY

12                  Justice

13  A p p e a r a n c e s:

14         HONORABLE RICHARD A. BROWN
             District Attorney - Queens County

15             125-01 Queens Boulevard
             Kew Gardens, New York 11415

16             BY: SCOTT KESSLER, ESQ.
             Assistant District Attorney

17

18         DONALD SCHECTER, ESQ.
              Attorney for the Defendant Hai Guang Zheng

19

          LISA PELOSI, ESQ.

20              Attorney for the Defendant Qin Guang Zheng

21   ALSO PRESENT:
          Yi Wan, Mandarin Interpreter

22

            *       *       *

23

               KARYN S. GUTKIN

24              Senior Court Reporter

25

1          Proceedings

2          COURT CLERK: This is case number eight on

3      the calendar, Indictment 3282 of '95,

4      Hai Guang Zheng and Qin Guang Zheng.

5          THE COURT: Last time we left off there was

6      an open matter for an order for a wire

7      tapping, as to what that was about and whether

8      it was served on the defense counsel within 15

9      days of the order being secured.

10          What do you have to say on that,

11      Mr. Kessler?

12          MR. KESSLER: Judge, I turned over to your

13      law secretary and each of the defense counsels

14      a copy of the notice that was served on April

15      27, 1995 to both defendants when they were

16      arraigned in Manhattan on this case.

17          If your Honor remembers, this case began

18      in Manhattan, it was transferred jurisdiction

19      to Queens based upon the fact of the rapes.

20          THE COURT: I recall that.

21          MR. KESSLER: So based upon the fact that

22      defendants had actual knowledge, the notice

23      being everything required under 750, based

24      upon the fact that defendants had actual

25      knowledge of the wire tap-- I'm sorry,

kg

1          Proceedings

2     eavesdropping warrants, the People turned over

3     copies of that to defense counsel, and we will

4     rely on the notices.  And copy to the Court.

5        . THE COURT: What was the scenario so far as

6     the alleged abduction at the airport and

7     letting off of one defendant, can you give us

8     background on that?

9        MR. KESSLER: What happened is the women

10    were kidnapped, leaving off one man.  That man

11    later went to the police.  He was told to

12    call-- he would be receiving a call, call this

13    number regarding ransom demands.

14       The police did a dump on the phone; a

15    dump, meaning they were able to-- when the

16    defendants called from the cell phone they

17    were able to know the number that they were

18    calling from.

19       At that point in time they were able to

20    get, based upon the fact that there were two

21    women presently held in custody and kidnapping

22    demands were made, an eavesdropping warrant

23    from a justice in Manhattan, to just be able

24    to trace that cell phone if it became on the

25    air.

kg

4

Proceedings

After that cell phone was used, they have
monitoring devices, they were able to pinpoint
an area where this cell phone was being used
for the kidnapping demands. That area was
located in Flushing. And then with equipment,
going to Flushing, they were able to pinpoint
a particular car.

Remember the testimony from
Detective Banks, he sat on that car, the
defendants then came out with the women.
Police Officer Banks had pictures of the
women, compared the pictures to the women that
were in the car, recognized they were the same
ones. He recognized they were the same, he
stopped the car, the defendants were
arrested.

At that point in time they weren't sure if
there were any other victims regarding the
case. The women knew the home, not the
address.

The police went back to the home, got
permission from the landlord to go into the
apartment, and recovered cell phones and a gun
inside the apartment. A cell phone was

kg

5

Proceedings

1

2      recovered from the car and I think a couple of

3      beepers were also recovered from the car.

4      That's pretty much it.

5          THE COURT: Okay. Now that we have some

6      information on the warrant, Mr. Schecter, is

7      there any argument that you wish to make?

8          MR. SCHECTER: Yes, your Honor. Your

9      Honor, first, I never rested on the hearing

10     last-- on the 19th, because that's when it

11     came out about the eavesdropping warrant, and

12     both myself and Ms. Pelosi wanted time to

13     review the documentation.

14         Your Honor, I would normally at this time

15     want to re-call the police officer just to ask

16     him the number of the cellular phone that was

17     used, because we never got into the actual

18     number at that time, your Honor.

19         But I believe I spoke to Mr. Kessler and

20     he stated that the cellular phone that was

21     used during this incident and that was used to

22     pinpoint the location was (919) 230-0724.

23         Mr. Kessler, will you stipulate to that?

24         MR. KESSLER: Yes, Judge. As a matter of

25     fact, Judge, why don't we make the record. I

6

1                           Proceedings

2          handed the Court a document that indicates the

3          phone, the extent of the permission of the

4          police to use it, and the number.

5              It is a cloned phone from a North Carolina

6          man, and that is, in fact, the number the

7          police cloned and traced in order to find the

8          defendants in Flushing.

9              MR. SCHECTER: I have no objection to that,

10         so the record would be complete, your Honor.

11             MS. PELOSI: Nor do I, your Honor.

12             THE COURT: Okay.

13             MR. SCHECTER: Your Honor, what

14         Mr. Kessler is saying then--

15             THE COURT: Are you resting on the

16         hearing?

17             MR. KESSLER: Yes, I am.

18             MR. SCHECTER: I believe he had already

19         rested, your Honor, but obviously he wants to

20         open up for this limited purpose, I have no

21         objection.

22             THE COURT: What does the defendant

23         Qin Guang Zheng wish to do?

24             MS. PELOSI: Judge, at this point he rests.

25             THE COURT: Mr. Hai Guang Zheng?

kg

7

Proceedings

1

2      MR. SCHECTER: Well, your Honor, he would

3 now rest. And now I would like to make

4 argument on the motions.

5      If your Honor pleases-- well, before I--

6 Mr. Kessler is saying that this was served on

7 April 27th, I believe, at the time of the

8 Supreme Court arraignment.

9      Your Honor, I have not spoken to whoever

10 Hai Guang Zheng's attorney is in Manhattan,

11 your Honor, to ascertain whether it was

12 actually served. But if Mr. Kessler will make

13 the representation that he spoke to the

14 assistant and they said that it was served at

15 the arraignment, then I will take that

16 representation.

17      THE COURT: Is that correct?

18      MR. KESSLER: Yes, I spoke to

19 Miss Carla Friedman, I believe is the name on

20 the notice, and she indicated to me that the

21 paperwork connected with the names on the

22 notices were served at the defendants'

23 arraignment in Manhattan.

24      And I spoke to the ADA who actually typed

25 up the notice and gave to Miss Friedman to

kg

8

<table>
<tr><td>1</td><td>Proceedings</td></tr>
<tr><td>2</td><td>serve at the arraignment, so I have been in</td></tr>
<tr><td>3</td><td>contact with Manhattan, as well.</td></tr>
<tr><td>4</td><td>MR. SCHECTER: When I did speak to my</td></tr>
<tr><td>5</td><td>client, he advised me that obviously a lot</td></tr>
<tr><td>6</td><td>happened at the arraignment but he was not</td></tr>
<tr><td>7</td><td>aware of any eavesdropping warrant being</td></tr>
<tr><td>8</td><td>served or not.  But, obviously, I don't know</td></tr>
<tr><td>9</td><td>how sophisticated he would be to really know</td></tr>
<tr><td>10</td><td>whether these papers were served or not, your</td></tr>
<tr><td>11</td><td>Honor.</td></tr>
<tr><td>12</td><td>But my argument now is the case in</td></tr>
<tr><td>13</td><td>Manhattan was dismissed, Mr. Hai Guang Zheng</td></tr>
<tr><td>14</td><td>does not have the same attorney, a new</td></tr>
<tr><td>15</td><td>indictment was procured in Queens, and he was</td></tr>
<tr><td>16</td><td>arraigned on August 4, 1995 in Part AA-1</td></tr>
<tr><td>17</td><td>before Judge Naro, your Honor.</td></tr>
<tr><td>18</td><td>And that was the date that I was assigned,</td></tr>
<tr><td>19</td><td>and I believe that was the first date that</td></tr>
<tr><td>20</td><td>these proceedings were in Queens.  As I</td></tr>
<tr><td>21</td><td>believe the two defendants were indicted and</td></tr>
<tr><td>22</td><td>then the case in Manhattan was dismissed, and</td></tr>
<tr><td>23</td><td>thereafter they were brought to Queens where</td></tr>
<tr><td>24</td><td>they were arraigned in Queens and had an</td></tr>
<tr><td>25</td><td>indictment.</td></tr>
</table>

kg

1    Proceedings

2        This case did not come through the

3    Criminal Court System in Queens, your Honor.

4    At that time I was never served with any

5    papers about there being an eavesdropping

6    warrant, your Honor, and I didn't--

7        THE COURT: Before we get into that, was

8    there any action after the arraignment here in

9    Queens County, any action on the eavesdropping

10   warrant?

11       MR. KESSLER: No.

12       THE COURT: In other words, the

13   eavesdropping warrant was strictly a New York

14   County proposition having to do with something

15   of the arrest of these defendants in New York

16   County.

17       MR. KESSLER: Correct.

18       MR. SCHECTER: Your Honor, they were both

19   arrested in Queens. But it's part and

20   parcel--

21       Your Honor, what I'm saying is this, I was

22   never served with the eavesdropping warrant,

23   have never been served with any of the

24   conversations that were on that warrant, and I

25   don't know-- well, I know it would be Rosario

kg

10

1          Proceedings

2      material and obviously may be Brady, it may be

3      Brady information on the tape.

4          But what I am claiming, your Honor, is

5      when they were arraigned on August 4th, that

6      in and of itself was a complete new matter,

7      your Honor, and as such the statute says they

8      have to inform us within 15 days of

9      arraignment, your Honor.

10         And since this is a new matter, was not in

11     Manhattan, it's a different county, the

12     district attorney's office knew that there

13     were different attorneys being assigned or

14     retained on this matter, their obligation was

15     at that time within 15 days of the Supreme

16     Court arraignment to let us know that an

17     eavesdropping warrant had been obtained.

18         It was used between-- I believe, looking

19     at the papers, was issued on April 1st and it

20     was used on April 3rd, if I'm not mistaken,

21     that's when the warrant was returned and all

22     the conversations or whatever were filed in

23     court, your Honor.

24         But what I am stating here, under statute

25     700.70, that they must serve it at the

kg

12

Proceedings

That from that warrant they were able to
pinpoint who it was. And this would all be
fruits of the poisonous tree by them not
serving the warrant on counsel as required,
your Honor.

The statements that were made, the lineup
and all of the property recovered, your Honor,
it is my position, I believe our position - I
would hate to speak for co-counsel but I think
she may adopt the same argument - that as such
everything that occurred by us not being
served must be suppressed as fruits of a
poisonous tree, your Honor.

Which means statements that were made, the
lineup, your Honor, which was gleaned on-- no
one suppressed the arrest, your Honor, because
that was all gotten from this warrant, plus
all the property, your Honor.

And I submit because they did not serve
it, your Honor, everything that occurred at
the hearing and-- the Wade, Mapp and Huntley
hearing, the Wade, the lineup, the evidence
plus the statements, all must be suppressed,
your Honor.

kg

1               Proceedings

2               And I would cite the case of People versus

3      Barn, 110 Appellate Division 2d 1079, which

4      held that where the Appellate Division

5      suppressed evidence seized because no notice

6      was ever given of warrant intercepting as is

7      required by statute, your Honor.

8               And I will submit to the Court that

9      because of what happened here, your Honor must

10     suppress everything that was recovered, plus

11     the lineup, plus the statements.

12              THE COURT: Do you want to add anything to

13     the argument, Ms. Pelosi?

14              MS. PELOSI: Judge, in terms of the warrant

15     issue, no, Mr. Schecter and I conferenced this

16     issue before this oral argument and I join in

17     his statements as to that.

18              I just have one further thing to state

19     pertaining to my client, Qin Zheng.  That's

20     regarding the statement, if I may just do that

21     now.

22              Based on the record in this case, it's my

23     recollection that the detective, prior to

24     giving my client his Miranda warnings, said to

25     my client, come with me, come with me, you

kg

14

Proceedings

1
2      give me your side of the story, you tell me
3      what happened.
4           And I would submit that that statement put
5      my client, someone who doesn't speak English,
6      who is not accustomed to methods in our
7      country, put my client in a situation which he
8      thought that he had to talk to the detective.
9           And based on that, I would ask the Court
10     to suppress the statement that my client made.
11          MR. SCHECTER: Your Honor, I believe my
12     client would be in the same position, I would
13     join in that.
14          THE COURT: Do you wish to be heard?
15          MR. KESSLER: Yes, Judge, briefly. Judge,
16     first, I think so it's clear, an eavesdropping
17     warrant-- there is no recorded conversations
18     from the eavesdropping warrant. What
19     basically happened was they were using a
20     device able to track the cellular phone.
21          The phone call conversations that were
22     recorded in this case were just from the phone
23     of the complainant, such as a suction cup on
24     the phone the police had monitered with
25     permission of the family regarding the

kg

15

1                     Proceedings

2       conversation that took place between the

3       kidnappers and them.

4              THE COURT: So they had the consent of one

5       of the parties.

6              MR. KESSLER: Right.

7              MR. SCHECTER: Objection, your Honor, that

8       did not come out at the hearing, there was no

9       testimony that there was consent from one of

10      the parties.  The record will speak for itself

11      as to that.

12             MR. KESSLER: I'm just talking about

13      Rosario issues with regard to the hearings.

14      But what I'm saying, the phone calls they were

15      tracing, they did not record the phone calls

16      with the devices that they had.

17             It was more of a sort of an antenna trying

18      to locate where the phone call was.  And the

19      officers were using this-- actually didn't

20      know what was being said because the phone

21      calls were in Chinese.  And they were using it

22      to try to locate where the voices were coming

23      from.

24             With regard to the issue of the notice

25      served to the defendants regarding the

kg

16

Proceedings

1
2      utilization of the eavesdropping warrant and
3      the investigation of the case, if your Honor
4      looked at the notice itself, that is the exact
5      language that was served on the defendants in
6      Manhattan.
7         And I will just rely on four or five cases
8      that will say that actual notice constitutes
9      good cause for dispensing with statutory
10     notice requirements, such as if defense
11     attorney is aware or defendants are aware of
12     it there is no need to serve notice:
13        People versus Maldonado, 144 Miscellaneous
14     2d 338. People versus Michel, 56 New York 2d
15     1014. And People versus Ocasio, 552 New York
16     Supp. 2d 514.
17        Basically indicating that there is no need
18     to give another statutory notice when they're
19     on actual notice. And the actual notice being
20     that we served the defendants copies of the
21     date of the issuance of the warrant, the date
22     it was terminated, the judge that issued it,
23     everything that was required under the notice
24     section.
25        Lastly, I would argue to the Court that

17

Proceedings

1

2       even if this Court were to consider that isn't

3       actual notice of them being actually served

4       with it in Manhattan, there is good cause why

5       we did not have to serve it, and the statute

6       allows us good cause reasons why we didn't

7       have to serve it.

8            In this case the good cause being the fact

9       that we served it in Manhattan.  They were

10      given actual notice of it regarding the case

11      in Manhattan, and that is good cause why we

12      didn't serve it here in Queens.

13           I would ask you that the People be allowed

14      to introduce on their direct case the

15      discovery and the recovery of the property,

16      along with the evidence of the lineup.

17           THE COURT: The Court, having heard the

18      hearing testimony by Detective Keith Ng and

19      Detective Michael Green, and finding their

20      testimony to be credible, finds that the

21      motion to suppress the statements is denied.

22           The identification, the Court finds they

23      have been properly made.  And the seizure was

24      seized based upon reasonable probable cause to

25      arrest, and the seizure thereafter was

kg

18

1              Proceedings

2      material following the arrest.  And motions

3      are denied and an opinion will follow.

4            And we are going to set this down for

5      trial on May 13th.  Same bail conditions, May

6      13th.

7            COURT CLERK: 5/13.

8            MR. SCHECTER: Your Honor, before-- I would

9      ask for copies of all the case tapes of

10     whatever was intercepted, your Honor - and

11     it's my understanding they're in Chinese -

12     either for translation of them or when I get

13     them, your Honor will sign an order and I will

14     get an interpreter to--

15           THE COURT: Do you have anything that was

16     transmitted in Queens?

17           MR. KESSLER: Judge, I have copies of the

18     recorded ransom demands.  And if defense

19     counsel will give me some blank tapes, I will

20     make them.  I just warn him, they are all in

21     Chinese.

22           THE COURT: He said he will do that.

23           MR. KESSLER: Okay, so if I get blank

24     tapes, I will make copies.

25           MS. PELOSI: There are no transcripts

kg

19

1                    Proceedings

2          regarding those tapes?

3               MR. KESSLER: I don't have any transcripts,

4          no.

5               THE COURT: Supply counsel with a copy of a

6          blank tape.

7               MR. SCHECTER: And then you will sign an

8          order?

9               THE COURT: Yes.

10

            *    *    *    *    *    *    *
11     CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE
       ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS PROCEEDING.

12

13          _____
                 KARYN S. GUTKIN
14               Senior Court Reporter

15

16

17

18

19

20

21

22

23

24

25

kg

1

2  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF QUEENS: PART K-25
3  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
   THE PEOPLE OF THE STATE OF NEW YORK    Indict. N3282/95
4                                         TRIAL

5             -against-

   ZHENG GUANG HAI,
6
                              Defendant.
7  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

8                              125-01 Queens Boulevard
                               Kew Gardens, New York
9                              June 25, 1996

10

   B e f o r e:
11
              HON. STANLEY B. KATZ
12

13
   A p p e a r a n c e s:
14

15            RICHARD A. BROWN, ESQ.
              District Attorney, Queens County
16            BY:  SCOTT KESSLER, ESQ.
                   Assistant District Attorney
17

18            DONALD SCHECHTER, ESQ.
              Attorney for Defendant
19

20

21            YI WAN, Official Interpreter of Mandarin

22

23   CA 319/96

24
                          Debra Rael
25                    Senior Court Reporter

1          PROCEEDINGS

2          THE CLERK: Case on trial, People

3     versus Guang Hai Zheng. The record should

4     reflect the presence of the official

5     Mandarin interpreter.

6          THE COURT: At the outset, go over --

7     there is no Sandoval implication; isn't that

8     correct?

9          MR. SCHECHTER: That's correct.

10         MR. KESSLER: That's correct.

11         THE COURT: And your client has

12    previously waived his Antommarchi rights?

13         MR. SCHECHTER: That's correct.

14         THE COURT: That continues?

15         MR. SCHECHTER: Yes.

16         THE COURT: And you want me to instruct

17    the jury if he doesn't take the stand no

18    inference is to be drawn?

19         MR. SCHECHTER: Yes.

20         THE COURT: Any applications anybody

21    has?

22         MR. KESSLER: Judge, just based upon

23    the fact there were two defendants before

24    this Court, can the indictment read with

25    both defendants, I would move to amend the

Case 1:16-cv-01106-RJD   Document 8-4   Filed 11/30/16   Page 33 of 157 PageID #: 613

1                    PROCEEDINGS

2         indictment on the first count, starting with

3         the first count to read, "The defendant," in

4         the singular rather than "the defendants,"

5         "the defendant, being aided by another,"

6         instead of "each aiding the other and acting

7         in concert."

8               THE COURT:  How do you want it to read.

9               MR. KESSLER:  "The defendant, being

10        aided by another" and continuing on by

11        saying "on or about."

12              THE COURT:  Take out the "S" in

13        defendants?

14              MR. KESSLER:  Right and ending --

15              THE COURT:  Take out the word "each"?

16              MR. KESSLER:  And that whole phrase

17        "each aiding the other and acting in

18        concert," change it to "being aided."

19              THE COURT:  You want it to read "The

20        defendant" singular, "on or about and

21        between March 31"?

22              MR. KESSLER:  There's a phrase, Judge,

23        the phrase in place of that phrase being

24        "aided by another."

25              THE COURT:  "The defendant, being aided

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | by another."  Do you have any objection? |
| 3 | MR. SCHECHTER:  After what has |
| 4 | happened, no.  No objection. |
| 5 | THE COURT:  Okay.  So it's so amended. |
| 6 | MR. KESSLER:  That would apply for the |
| 7 | first count, to the second count, to the |
| 8 | third count, fourth count, fifth count, |
| 9 | sixth count, seventh count, eighth count, |
| 10 | the ninth count reads as it is. |
| 11 | MR. SCHECHTER:  As to the new count, |
| 12 | your Honor, since all the other counts -- |
| 13 | each count will say from reading the eighth |
| 14 | count, "The Grand Jury of the County of |
| 15 | Queens accuse the defendant of the crime of |
| 16 | kidnapping in the first degree. |
| 17 | I ask that the sentence "in defendants" |
| 18 | be deleted and over here would not, and then |
| 19 | all of a sudden to mention his name, on all |
| 20 | the other counts his name is not mentioned. |
| 21 | I would like it to be consistent in that |
| 22 | part of the body. |
| 23 | THE COURT:  You have no objection? |
| 24 | MR. KESSLER:  Just crossing out, |
| 25 | instead of accusing the defendant, Hai |

1              PROCEEDINGS

2       Guang.

3              THE COURT:  Just accuse the defendant

4       of the crime of rape.

5              MR. KESSLER:  That's fine.

6              THE COURT:  There being no objection,

7       that's granted.

8              MR. SCHECHTER:  Same thing about the

9       tenth count.

10             THE COURT:  Okay.

11             MR. SCHECHTER:  Twelfth count.

12             MR. KESSLER:  The eleventh and twelfth

13      counts are dismissed, as they pertain only

14      to the other defendant who previously pled

15      guilty today.

16             THE COURT:  All right.

17             MR. SCHECHTER:  As to the fourteenth

18      and fifteenth counts, I ask that his name be

19      deleted from the top part of it.

20             THE COURT:  Granted.

21             MR. KESSLER:  And, Judge, the only

22      phrase that would be changed would be "The

23      defendant, being aided by another" instead

24      of "acting in concert with other persons,"

25      the thirteenth count.  And the fourteenth

1                    PROCEEDINGS

2    count, cross out the defendant's name.  Same

3    with the fifteenth count, sixteenth and

4    seventeenth.

5        One count I'll move to dismiss, the

6    nineteenth, twentieth and twenty first

7    count, as those are sexual abuse as pertains

8    to the co-defendant who previously pled

9    guilty, so those are now out.

10       THE COURT:  Granted.

11       MR. KESSLER:  As an alternate to the

12   twenty second count, instead of "the

13   defendants" change it to the singular,

14   "defendant," again, "The defendant, being

15   aided by another" instead of "each aiding

16   the other, acting in concert."

17       Those are the only amendments.

18       THE COURT:  Okay.  Application for both

19   counts are granted.  The eleventh and

20   twelfth counts are dismissed, and eighteen,

21   nineteen, twenty and twenty one we'll

22   renumber.

23           (Jurors escorted into the courtroom.)

24           (The prospective jurors were sworn.)

25       THE CLERK:  Jose Camacho.  Raymond

7

```
1                    PROCEEDINGS

2       Duryea, seat number three.  Vincent

3       Delegatte.  Zulma Ortiz-Rosenbaum, O-R-T-I-Z

4       - R-O-S-E-N-B-A-U-M, first name, Z-U-L-M-A.

5       Selina Alvarado.  Eileen San Felice, S-A-N,

6       F-E-L-I-C-E.  E-I-L-E-E-N.  Richard Barrett,

7       B-A-R-R-E-T-T.  John Bohlig, B-O-H-L-I-G.

8       Donna Weinstock.  Harry Siegel, S-I-E-G-E-L.

9       Marios, M-I-C-A-L-E-V.  Dennis Crotty,

10      C-R-O-T-T-Y.  Robert Hubert.  Roseanne

11      Arena.  Giovanni Urena, G-I-O-V-A-N-N-I.

12      Ann Fittinger, F-I-T-T-I-N-G-E-R.

13              THE COURT:  Good afternoon, ladies and

14      gentlemen.  My name is Stanley B. Katz.  I'm

15      the presiding judge assigned to the trial of

16      this case.  I intend to make a statement to

17      you, a short statement to ask you certain

18      questions.  I'd be very grateful if everyone

19      in the courtroom would pay very careful

20      attention to what I say.  You may be seated,

21      because those of you in the back may be

22      called upon to sit in the jury box during

23      the course of jury selection.

24              The purpose of my questions is to

25      choose twelve citizens to serve as jurors at
```

1           PROCEEDINGS

2    this trial who will act fairly, without

3    prejudice of any kind. There is a grave

4    obligation on your part to respond to the

5    questions that are asked of you, to answer

6    them fully, candidly and truthfully. There

7    are no right or wrong answers to any of the

8    questions, only truthful answers.

9           This is the trial of a criminal case.

10   Every person appearing before this Court is

11   entitled to and must receive a fair trial

12   and an impartial trial. This fairness and

13   impartiality, this lack of bias, must be

14   accorded in equal measure both to the People

15   and the defendant.

16          This case involves the trial of

17   criminal charges brought by the People of

18   the State of New York against the defendant

19   Guang Hai Zheng. The charges against the

20   defendant are contained in an indictment

21   which alleges that the defendant committed

22   certain criminal acts. They are four counts

23   of kidnapping in the first degree, two

24   counts of rape in the first degree, one

25   count of kidnapping in the second degree,

1       PROCEEDINGS

2       three counts of sexual abuse in the first

3       degree and one count of criminal possession

4       of a weapon in the second degree.

5           The indictment, ladies and gentlemen,

6       is merely the instrument by which the State

7       of New York brings into court individuals it

8       claims to have violated the law.   The

9       prosecution conducted against the defendant

10      for the alleged commission of crimes is

11      brought in the name of the People of the

12      State of New York.

13          The indictment is not evidence of the

14      guilt or innocence of the defendant.

15      Indeed, the defendant is presumed to be

16      innocent and this presumption of innocence

17      remains with and continues with the

18      defendant throughout the trial unless and

19      until the jury, having considered all of the

20      evidence, shall find the defendant is guilty

21      beyond a reasonable doubt of the charges

22      made against him.

23          The jury decides questions of fact, the

24      jury listens to the testimony of the

25      witnesses, examines the evidence which is

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 40 of 157 PageID #: 620

1                              PROCEEDINGS

2          received during the course of the trial, and

3          at the conclusion of the trial it's my

4          province as a judge to instruct the jury as

5          to the law which is applicable to this case.

6              The jury is bound to follow my

7          instructions as to the law whether you agree

8          with the law or not.  The jury is the

9          exclusive judges of the facts and it alone

10         determines whether the People have proved

11         the charges with respect to this defendant

12         beyond a reasonable doubt.

13             So, it will be the duty of the jury to

14         weigh the evidence calmly, dispassionately,

15         without any sympathy or prejudice

16         whatsoever.  And should the jury convict the

17         defendant, you would have nothing to do with

18         any sentence or punishment to be imposed

19         upon the defendant.

20             Now, you just heard me use the words

21         "beyond a reasonable doubt."  Now, there

22         must come to your mind the question of what

23         do we mean when we use the term "reasonable

24         doubt."

25             There is nothing mysterious about these

Case 1:16-cv-01106-RJD   Document 8-4   Filed 11/30/16   Page 41 of 157 PageID #: 621

1                         PROCEEDINGS

2          words because implicit within them is their

3          very meaning.  It means exactly what the

4          words themselves imply.  A reasonable doubt

5          is a doubt based upon reason.  It's a doubt

6          for which a juror can give a reason if he or

7          she is called upon to do so in the jury

8          room.  It's a doubt based upon the evidence

9          or lack of evidence in the case.

10             A reasonable doubt is defined as an

11         actual doubt, a doubt that you are conscious

12         of having after going over in your mind the

13         entire case and given consideration to all

14         of the testimony and every part of it.

15             If you then feel uncertain and not

16         fully convinced that the defendant is

17         guilty, and you believe as a reasonable

18         person who hesitates to act because of such

19         a reasonable doubt, then that is a

20         reasonable doubt and this defendant is

21         entitled to its benefit, a verdict of not

22         guilty with respect to the crime or crimes

23         that you have been deliberating on.

24             This does not mean that a reasonable

25         doubt may be predicated upon some type of

1                          PROCEEDINGS

2          whim, or surmise, or guess or conjecture on

3          the part of a juror, nor should it be

4          considered or used for some type of a shield

5          behind which a juror might hide in order to

6          avoid doing what he or she may feel is a

7          disagreeable duty.

8               Now, there is no obligation on the part

9          of the People to establish the element of a

10         crime with which the defendant may be

11         charged beyond any or all doubt to a

12         mathematical certainty because you can't get

13         such a degree of proof in human affairs.

14              Now, I also call to your attention

15         under the law a defendant is presumed to be

16         innocent.  That presumption remains with him

17         throughout the trial.  He's cloaked with the

18         protection of this presumption, even when

19         you go into the jury room to commence

20         deliberations.  It remains with him until

21         that moment arrives when you as jurors are

22         convinced from the proof submitted by the

23         People that he is guilty of the crime or

24         crimes with which he is charged beyond a

25         reasonable doubt.  When that point is

1                          PROCEEDINGS

2            reached, the presumption of innocence is

3            voided and no longer exists.

4                  This necessarily places upon the People

5            the burden of adducing such proof.  It means

6            also that the People must establish every

7            element of the crime or crimes with which

8            the defendant is charged to your

9            satisfaction and beyond a reasonable doubt.

10                 The defendant is entitled to the

11           benefit of every reasonable doubt arising

12           out of the evidence or lack of evidence in

13           the case.  The defendant does not to have

14           prove anything.  He's not required to take

15           the witness stand and testify in his own

16           defense.  If he does not take the witness

17           stand, his not doing so does not create any

18           presumption or inference that may be used

19           against him.  Further, the defendant does

20           not have to call any witnesses.

21                 As to those of you who may be

22           challenged by counsel for either of the

23           parties, please be advised that counsel for

24           the respective parties have a right to

25           challenge prospective jurors for cause.

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | That is, either counsel may have the opinion |
| 3 | that a particular prospective juror is not |
| 4 | qualified for or disqualified from service |
| 5 | here by reason of some fact which may effect |
| 6 | his or her impartiality as a juror. |
| 7 | In addition, the attorneys for the |
| 8 | respective parties have an absolute right to |
| 9 | excuse a number of jurors for arbitrary |
| 10 | reasons without assigning any ground |
| 11 | theretofore. That is called a peremptory |
| 12 | challenge. |
| 13 | From time to time during the course of |
| 14 | the trial, counsel will interrupt, and that |
| 15 | is perfectly proper because there are |
| 16 | matters to be discussed between counsel and |
| 17 | the Court which should not be heard within |
| 18 | the hearing of the jury. When that happens |
| 19 | we have what we call a sidebar, that we will |
| 20 | step up to the bench here, and when that |
| 21 | perhaps happens you will know we are |
| 22 | discussing legal matters which should not be |
| 23 | properly discussed before the jury. |
| 24 | Now, a fair trial must start with a |
| 25 | fair jury. And to be fair, you must come to |

PROCEEDINGS

1

2      this jury box without any preconceived

3      reservations or notions. This examination

4      may bring back to your mind some experience

5      or relationships that may effect your fair

6      determination of this case. A fair

7      determination is one based upon all of the

8      evidence, free of bias, prejudice or

9      sympathy and in accordance with the outcome

10     of the law as I will give it to you.

11         At this point, before counsel and I ask

12     you some questions I would like to read

13     Section 260.30 of the Criminal Procedure Law

14     so as to familiarize you with the procedure,

15     order of procedure in a criminal trial, and

16     Section 26.30 states that the conduct of a

17     jury trial is as follows: One, the jury

18     must selected and sworn; two, the Court must

19     deliver preliminary instructions to the

20     jury; three, the People must deliver an

21     opening address to the jury; four, the

22     defendant may deliver an opening address to

23     the jury; five, the People must offer

24     evidence in support of the indictment; 6,

25     the defendant may offer evidence in his

1                    PROCEEDINGS

2          defense; seven, the People may offer

3          evidence in rebuttal of the defense evidence

4          and -- the People may offer evidence in

5          rebuttal of defense evidence and the

6          defendant may then offer evidence in

7          rebuttal of the People's rebuttal evidence.

8                 The Court may in its discretion permit

9          the parties to offer further rebuttal or

10         surrebuttal evidence in this pattern.    In

11         the interest of justice, the Court may

12         permit either party to offer evidence upon

13         rebuttal which is not technically of a

14         rebuttal nature but more properly a part of

15         the overall case; eight, at the conclusion

16         of the evidence the defendant may deliver a

17         summation to the jury; nine, the People may

18         then deliver a summation to the jury; ten,

19         the Court must deliver a charge to the jury;

20         eleven, the jury must then retire and

21         deliberate and, if possible, render a

22         verdict.

23                 Please, therefore, answer the following

24         questions fully, candidly and directly.   Do

25         any of you, ladies and gentlemen, have any

1          PROCEEDINGS

2     reservations about being able to follow

3     these principles that I've just enunciated

4     to you?

5          It doesn't appear anyone has.

6          I mentioned to you that the defendant

7     in this case is Guang Hai Zheng.

8          Mr. Zheng, would you please stand up

9     and face the prospective jurors in the jury

10    box, and the prospective jurors in the back

11    of the courtroom.

12         Do any of you, ladies and gentlemen,

13    know, have you ever seen or ever heard of

14    Mr. Zheng before?

15         It doesn't appear anyone has.

16         Now, the defendant's lawyer in this

17    case, Mr. Donald Schechter, also face the

18    prospective jurors.

19         MR. SCHECHTER:  Good afternoon.

20         THE COURT:  Have any of you have heard

21    or seen Mr. Schechter before?

22         It doesn't appear anyone has.

23         Now, the District Attorney of this

24    county is Richard A. Brown.  I imagine many

25    of you have read about or heard about or

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 48 of 157 PageID #: 628

```
 1              PROCEEDINGS
 2       seen him on television or seen his picture
 3       in the newspaper, but have any of you had
 4       any social or personal or business dealings
 5       at all with Mr. Brown?
 6            It doesn't appear anyone has.
 7            The Assistant District Attorney who
 8       will actually try this case for the People
 9       is Mr. Scott Kessler.
10            Would you please face the prospective
11       jurors.
12            MR. KESSLER:  Good afternoon.
13            THE COURT:  Now, do any of you, ladies
14       and gentlemen, know of, ever heard or seen
15       Mr. Kessler?
16            It doesn't appear anyone has.
17            I'm going to read the name of some
18       prospective witnesses.  Please listen to
19       them and see if you recognize any of these
20       names:  Guo Bang Liu, Jin Hao Liu, Liu Yan
21       Wu, Jin Zho Liu, Detective Henry Lee,
22       Detective Keith Ng, Detective Keith Banks,
23       Detective Michael Greene, chemist Tom
24       Hickey, Police Officer Kevin Streine,
25       Dr. John Kurtz, and Dr. Matt Murphy.
```

1                        PROCEEDINGS

2              Any of you think you've heard of those

3          people, perhaps know them?

4              It doesn't appear anyone has.

5              I should note that the fact that this

6          action is brought in the name of the People

7          of the State of New York or that the

8          evidence is presented by a public official

9          does not necessarily indicate in any way

10         that the people of this state want a

11         specific verdict.  The people of this state

12         are served by whatever verdict is justified

13         by the evidence.

14             Now, the court officer will hand out

15         questionnaires to you.  As soon as you have

16         them I'll explain to you how to answer them

17         familiarize yourself with the questionnaires

18         and answer them in a expeditious manner.

19             (Handing out questionnaires.)

20             THE COURT:  I have a copy of the

21         questionnaire, so does the District

22         Attorney, so does the defense counsel, we

23         know what the questions are.  What I'm

24         asking you to do is give us the number of

25         the question.  If you'd please pay

1                  PROCEEDINGS

2    attention, give me the number of the

3    question that you are answering, and the

4    answer to the question.

5        The first six questions require a

6    specific answer, the others you just answer

7    yes or no.  We'll start with you.

8        PROSPECTIVE JUROR:  Okay.  Question

9    number one 61.  Question number two, Ozone

10    Park.  Three, retired postal supervisor.

11    Number four, I am married.  Five, I have

12    high school.  Six, my wife is a housewife,

13    doesn't work.

14        THE COURT:  That's work.

15        PROSPECTIVE JUROR:  Any children.  They

16    all already grown up.  Work for the post

17    office, Transit, for the city.

18        THE COURT:  What kind of work do they

19    do for the city?

20        PROSPECTIVE JUROR:  My son works for

21    the Transit, actually that's the state, New

22    York City Transit.

23        THE COURT:  All right.  Any of them

24    police officers?

25        PROSPECTIVE JUROR:  No.

1                      PROCEEDINGS

2              THE COURT:  Okay.

3              PROSPECTIVE JUROR:  Number seven, yes.

4         I have served on civil and criminal cases.

5         Number eight, not that I can think of right

6         now.  Nine, I don't.  I know a retired

7         judge, Judge Quinones.

8              THE COURT:  He's not retired.  He's on

9         the New York Court of law.

10             PROSPECTIVE JUROR:  Okay.  Number ten,

11        no.  Eleven, yes, New York.  Number twelve,

12        no.  Thirteen, no.  Fourteen, no.  Fifteen,

13        no.  Sixteen, yes.

14             THE COURT:  Thank you.

15             PROSPECTIVE JUROR:  Question one, fifty

16        seven.  Two, Maspeth, Queens.  Three, work

17        for the Department of Environmental

18        Protection.  Four, married.  Five, high

19        school grad.  My wife is an account

20        executive for Lincoln Center, my daughter a

21        hairdresser and my son is a police officer.

22             THE COURT:  That's question six?

23             PROSPECTIVE JUROR:  Yes.  Seven, yes.

24        Criminal case.  Eight --

25             THE COURT:  When was that?

```
1                    PROCEEDINGS
2            PROSPECTIVE JUROR:  About three, four
3       years ago.
4            THE COURT:  Thank you.
5            PROSPECTIVE JUROR:  Nine, no.  Ten, no.
6       Eleven, yes.  Twelve, no.  Thirteen, no.
7       Fourteen, yes.  I was in the military,
8       United States Marine Corps.  Fifteen, no.
9       Sixteen, yes.
10           THE COURT:  Thank you.  Next.
11           PROSPECTIVE JUROR:  Number one, 47.
12      Number two, Whitestone.  Number three, I
13      drive for Getty Oil Company, I'm a truck
14      driver.  Four, divorced.  Five, twelve
15      years, high school.  Six, I have a spouse
16      who works as bookkeeper, I have a daughter
17      in school, and I have a son who works for a
18      car dealership.  Number seven, no.  Eight,
19      no.  Nine, no.  Ten, no.  Eleven, no.
20      Twelve, no.  Thirteen, I don't think so.
21      Fourteen, I was in the U.S. Army, I was an
22      MP.  Fifteen, just my hearing in my right
23      ear is not so good as my left.  Sixteen, I
24      guess not, I don't think so.
25           THE COURT:  Next.
```

1          PROCEEDINGS

2          PROSPECTIVE JUROR:  One, thirty seven.

3     Two, Richmond Hill.  Three, manager at a

4     bank.  Four, married.  Five, I have a

5     bachelor's degree.  Six, husband works for

6     the New York Stock Exchange.  My oldest

7     daughter is in college.  Seven, no.  Eight,

8     yes.  Nine, no.  Ten, yes.  Eleven, yes.

9     Twelve, no.  Thirteen, no.  Fourteen, no.

10    Fifteen, no.  Sixteen, no.

11         THE COURT:  Thank you.

12         PROSPECTIVE JUROR:  Sixteen was yes.

13         THE COURT:  Yes?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Thank you.

16         PROSPECTIVE JUROR:  54.

17         THE COURT:  Give us the number of the

18    question.

19         PROSPECTIVE JUROR:  One fifty four.

20    Number two, Queens.  Three, I don't know.

21    Number four, I am married.  Five, I don't

22    understand the words.  Six, my son, he's

23    seventeen.  Seven, no.  Eight, no.  Nine,

24    no.  Ten, no.  Eleven, no.  Twelve, no.

25    Thirteen, no.  Fourteen, no.  Fifteen, no.

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 54 of 157 PageID #: 634

1                   PROCEEDINGS

2      Sixteen, no.

3           THE COURT:  Thank you.

4           PROSPECTIVE JUROR:  Number one, sixty

5      four.  Number two, Forest Hills.  Three,

6      administrative assistant.  Four, widow.

7      Five, two years college.  Six, one son is an

8      accountant, one is on disability.  Yes, I

9      served on a jury, it was a rape case, about

10     ten years ago.  Number eight, no.  Nine,

11     yes.  Ten, no.  Eleven, no.  Number ten is

12     yes.  My son was accused of harassment.

13     Eleven, no.  Twelve, no.  Thirteen, no.

14     Fourteen, no.  Fifteen, no.  Sixteen, yes.

15          THE COURT:  Thank you.

16          PROSPECTIVE JUROR:  One, twenty four.

17     Two, I live in Astoria, Queens.  Three, bus

18     operator for Transit Authority in Manhattan.

19     Four, single.  Five, I have a bachelor's

20     degree.  Six, doesn't apply.  Never served

21     on a jury.  I have relatives in law

22     enforcement.

23          THE COURT:  Give us the number of the

24     question.  That's for the record.

25          PROSPECTIVE JUROR:  Number six didn't

1          PROCEEDINGS

2     apply, I'm single.  Number seven, no.

3     Number eight, yes.  Nine, yes.  Ten, no.

4     Eleven, no.  Twelve, no.  Thirteen, no.

5     Fourteen, no.  Fifteen, no.  Sixteen, yes.

6          PROSPECTIVE JUROR:  Number one, 31.

7     Two, Rego Park.  Three, sheet metal worker.

8     Number four, I'm single.  Five, two years

9     college.  Number six, does not apply.  Seven

10    is no.  Number eight, yes.  My uncle was a

11    police officer.  My cousin was in a military

12    policeman.  Number nine, yes.  I have a

13    number of lawyers in my family and friends

14    and the girls I've dated.  Ten, no.  Eleven,

15    yes.  If my car was stolen does that count?

16          THE COURT:  Yes, sir.

17          PROSPECTIVE JUROR:  Then I'm a victim.

18    Twelve, no.  Thirteen, no.  Fourteen no.

19    Fifteen, no.  Sixteen, no.

20          THE COURT:  Thank you.  Next.

21          PROSPECTIVE JUROR:  Number one, twenty

22    eight.  Number two Bayside.  Number three,

23    teacher.  Number four, single.  Five,

24    college grad, I'm in grad school.  Number

25    six, does not apply.  Seven, no.  Eight,

```
 1                    PROCEEDINGS
 2    yes.  Next door neighbor is a policeman.
 3    Number nine, yes.  My brother is a lawyer
 4    and I have a family friend that is a judge
 5    in court, Criminal Court.  Number ten, no.
 6    Eleven, yes.  My car was stolen twice last
 7    month, it was broken into.  My sister's
 8    house was broken into.  Twelve, no.  13, no.
 9    Fourteen, no.  Fifteen, no.  16, I guess
10    not.
11          THE COURT:  Thank you.  Next.
12          PROSPECTIVE JUROR:  One, seventy.
13    Number two, Flushing.  Number three,
14    insurance company.  Four, married.  Five, a
15    couple of years of college.  Number six, my
16    wife is a housewife.  Seven, yes.  Many
17    years ago.  Number eight, yes.  I have a few
18    friends that are policemen.  Number nine,
19    yes.  I have a few friends that are lawyers.
20    Ten, no.  Eleven, yes.  Number twelve, no.
21    Thirteen, no.  Fourteen, yes, infantry.
22    Number fifteen, no.  Sixteen, yes.
23          THE COURT:  Thank you.
24          PROSPECTIVE JUROR:  Number one, forty
25    four.  Queens.
```

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 57 of 157 PageID #: 637

1              PROCEEDINGS

2           THE COURT:  Give us the number.

3           PROSPECTIVE JUROR:  I'm sorry.  Number

4      two, Queens.  Number three, limo driver.

5      Number four, yes.  Five, high school.

6      Number six, housewife, two kids in school.

7      Seven, no.  Eight, my landlord is a

8      policeman.  Nine, no.  Ten, no.  Eleven,

9      yes.  Twelve, no.  Thirteen, yes.  Fourteen,

10     no.  Fifteen, no.  Sixteen, yes.

11          THE COURT:  Thank you.

12          PROSPECTIVE JUROR:  One, forty.  Number

13     two, Rego Park.  Number three, drive a

14     truck.  Four, single.  Five, high school.

15     Six, does not apply.  Seven, no.  Number

16     eight, no.  Nine, no.  Ten, no.  Eleven,

17     yes.  Twelve, no.  Thirteen, no.  Fourteen,

18     no.  Fifteen no.  Sixteen, no.

19          THE COURT:  Thank you.

20          PROSPECTIVE JUROR:  Number one, forty.

21     Number two, Middle Village.  Three, Brooklyn

22     Union Gas Company.  Four, divorced.  Number

23     five, high school.  Six, no spouse.  Number

24     seven, served on a jury eight months ago, it

25     was a murder case.

1                           PROCEEDINGS

2               THE COURT:  Eight months ago?

3               PROSPECTIVE JUROR:  Yes, approximately

4      eight months ago.

5               THE COURT:  Go ahead.

6               PROSPECTIVE JUROR:  Number eight, yes.

7      Number nine, no.  Number ten, yes.  Number

8      eleven, yes.  Number twelve, no.  Thirteen,

9      no.  Fourteen, no.  Fifteen, no.  Sixteen,

10     no.

11              THE COURT:  Thank you.

12              PROSPECTIVE JUROR:  I don't have a

13     speech, you know, I have a speech

14     impediment.

15              THE COURT:  Speech impediment?

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  All right.  Let's go to the

18     next two.  Is that all right with you,

19     counsel?

20              MR. SCHECHTER:  No problem.

21              MR. KESSLER:  No problem.

22              PROSPECTIVE JUROR:  One, twenty eight.

23     Two, Borough of Queens.  Paralegal, three.

24     Four, divorced.  Five, four years college,

25     no degree.  Six, not applicable.  Seven, no.

1          PROCEEDINGS

2      Eight, yes.  Nine, yes.  Ten, yes.  Eleven,

3      yes.  Twelve, yes.  Thirteen, no.  Fourteen,

4      no.  Fifteen, no.  Sixteen, yes.

5          THE COURT:  Thank you.

6          MR. SCHECHTER:  Number one, fifty five.

7      Number two, Astoria.  Number three, work for

8      a doctor.  Number four, marred.  Five, high

9      school.  Six, spouse is retired.  I have a

10     daughter in high school.  Number seven, no.

11     Number eight, yes.  Number nine, no.  Number

12     ten, no.  Number eleven, yes.  Number

13     twelve, no.  Number thirteen, no, number

14     fourteen, no.  Fifteen, no.  16, no.

15         THE COURT:  Thank you.  Counsel, you

16     may inquire.

17         MR. KESSLER:  Okay.

18         Good afternoon my name is Scott

19     Kessler.  I'm an Assistant District

20     Attorney.  I want to welcome come you to the

21     American court of law.  This is the place

22     where as the judge has told you, we are

23     seeking twelve fair and impartial jurors.  A

24     number of people have already said based on

25     the questionnaire that they couldn't be fair

1                    PROCEEDINGS

2          and impartial one way or the other.

3               Miss Weinstock, you were one of those

4          people?

5               PROSPECTIVE JUROR:  Yes.

6               MR. KESSLER:  You were a teacher?

7               PROSPECTIVE JUROR:  Yes.

8               MR. KESSLER:  And you have a college

9          degree?

10              PROSPECTIVE JUROR:  Yes.

11              MR. KESSLER:  Is there anything in a

12         criminal case that you say you couldn't be

13         fair or just something about this case?

14              PROSPECTIVE JUROR:  The rape portion.

15              MR. KESSLER:  You don't like to hear

16         about those things?

17              PROSPECTIVE JUROR:  No.

18              MR. KESSLER:  Do you think there are

19         twelve people who want to hear about rape?

20              PROSPECTIVE JUROR:  No.

21              MR. KESSLER:  I hope not.  The question

22         is simply, obviously, no one likes to hear

23         about it, it affects everyone one way or the

24         other.  We are trying to find twelve people

25         who will say to themselves, I'll decide this

1       PROCEEDINGS

2       case on the facts, not upon what I feel

3       about rape or don't feel about rape.

4           For example, if I find that these women

5       were raped and kidnapped, and this defendant

6       was responsible, I'll find him guilty.  If I

7       find that he was not responsible or if they

8       were not raped and kidnapped, I'll find him

9       not guilty.  Let the cards fall where they

10      may.

11          PROSPECTIVE JUROR:  Yes.

12          MR. KESSLER:  Just based on the fact

13      he's charge with rape do you automatically

14      assume, therefore, that even if I don't

15      prove his guilt to you, you are still going

16      to find him guilty anyway?

17          PROSPECTIVE JUROR:  Well --

18          THE COURT:  Is this the man who

19      bothered you on a train?

20          PROSPECTIVE JUROR:  No.

21          MR. KESSLER:  You seem like an

22      intelligent woman.  If I don't prove to you

23      his guilt beyond a reasonable doubt, you

24      don't think he's guilty of this crime, you

25      still are going to walk into the courtroom

1                    PROCEEDINGS

2        and say you're guilty because --

3              PROSPECTIVE JUROR:  I guess not, okay.

4              MR. KESSLER:  If I prove to you beyond

5        a reasonable doubt that he is guilty, can

6        you stand up in this courtroom and find him

7        guilty?

8              PROSPECTIVE JUROR:  I guess I could.

9              MR. KESSLER:  Okay.  You understand?

10             PROSPECTIVE JUROR:  Yeah.

11             MR. KESSLER:  Do you think you could be

12       fair and impartial, decide this case on the

13       evidence you hear and not to decide it on

14       what anyone looks like, their race, creed,

15       whatever; you understand how that works

16       right.

17             PROSPECTIVE JUROR:  Yeah.

18             MR. KESSLER:  Okay.  Do you think you

19       do that?

20             PROSPECTIVE JUROR:  I think so.

21             MR. KESSLER:  Mr. Siegel is it?

22       Obviously, you understand this case.  One of

23       the charges, there are sixteen separate

24       charges, one is rape.  Have you ever spoken

25       to a woman who told you at one point she was

```
1                    PROCEEDINGS
2        a victim of rape?
3             PROSPECTIVE JUROR:  My daughter.
4             MR. KESSLER:  Okay.
5             You understand that this case has to be
6        decided on the facts here?  You were a juror
7        before?
8             PROSPECTIVE JUROR:  Yes.
9             MR. KESSLER:  Okay.  And you understand
10       that you have to decide the facts, what
11       occurred here, is the person responsible,
12       let the cards fall where they may?
13            PROSPECTIVE JUROR:  I can.
14            MR. KESSLER:  Terrific.
15            Mr. Micalev, okay, any problem with one
16       of the charges on this case being rape?
17            PROSPECTIVE JUROR:  Well, I can't judge
18       anybody.  According to the Bible that I
19       read, I can't Judge.
20            MR. KESSLER:  Okay.  I'll move on.
21            Mr. Crotty.
22            PROSPECTIVE JUROR:  Yes.
23            MR. KESSLER:  You indicated that you
24       couldn't be a fair and impartial juror, is
25       that right?
```

Case 1:16-cv-01166-PJD  Document 8-4  Filed 11/30/16  Page 64 of 157 PageID #: 644

1           PROCEEDINGS

2           PROSPECTIVE JUROR:  Yes.

3           MR. KESSLER:  Okay.  Is that based upon

4     criminal cases in general or just this case?

5           PROSPECTIVE JUROR:  I don't know,

6     that's why I said that.

7           MR. KESSLER:  You don't know if you

8     would.  Let me ask you the key question.  At

9     the end this of case, I fail to prove to you

10    this man's guilty of what he's charged with,

11    can you come into the courtroom and say not

12    guilty or are you going to find him guilty

13    even though I --

14          PROSPECTIVE JUROR:  If you don't prove

15    it not guilty?

16          MR. KESSLER:  Not guilty.

17          PROSPECTIVE JUROR:  Right.

18          MR. KESSLER:  At the end of this case,

19    you listen to the evidence, and you find

20    that he did what he's charged with by

21    kidnapping and raping these women, do you

22    have any problem walking into the courtroom

23    and finding him guilty?

24          PROSPECTIVE JUROR:  No.

25          MR. KESSLER:  So, when you say you're

1          PROCEEDINGS

2          not sure you could be fair and impartial,

3          would you agree, based upon those two simple

4          questions, you think you would be a fair and

5          impartial juror?

6                    PROSPECTIVE JUROR:  Yeah.

7                    MR. KESSLER:  Anything that is holding

8          you back one way or the other?

9                    PROSPECTIVE JUROR:  No.

10                   MR. KESSLER:  Okay.  Anything his

11         defense counsel should know about?

12                   PROSPECTIVE JUROR:  No.

13                   MR. KESSLER:  Okay.  Terrific.  Thanks.

14                   Pretty simple, right, when you think

15         about it?  How about you, Miss Ortiz-Rosa?

16                   PROSPECTIVE JUROR:  Rosenbaum.

17                   MR. KESSLER:  I'm sorry.  You had

18         indicated that you couldn't be a fair and

19         impartial juror, someone from your family

20         had been accused of a crime?

21                   PROSPECTIVE JUROR:  Yes.

22                   MR. KESSLER:  You want to talk about

23         that in public or would you prefer, if you

24         want, at sidebar?

25                   PROSPECTIVE JUROR:  No, I don't have a

1                  PROCEEDINGS

2      problem.  I have could two cousins, one is

3      serving time, the other has served time,

4      both for drugs.

5           MR. KESSLER:  Okay.  Did you follow

6      those cases?

7           PROSPECTIVE JUROR:  No.

8           MR. KESSLER:  Did they occur here in

9      Queens?

10          PROSPECTIVE JUROR:  No.

11          MR. KESSLER:  Did you ever speak to

12     your cousins about those cases, or family

13     members?

14          PROSPECTIVE JUROR:  No.

15          MR. KESSLER:  Do you have any problem

16     the way the prosecution handled the cases?

17          PROSPECTIVE JUROR:  I wasn't involved.

18          MR. KESSLER:  Okay.  So you have no

19     grudges against the prosecution or defense

20     counsel?

21          PROSPECTIVE JUROR:  No.

22          MR. KESSLER:  Some people may.  Any

23     reason you can think of you couldn't be a

24     fair and impartial juror?

25          PROSPECTIVE JUROR:  I may have a

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 67 of 157 PageID #: 647

1                    PROCEEDINGS

2           problem.

3                   MR. KESSLER:  You may have a problem?

4                   MR. SCHECHTER:  Maybe.

5                   MR. KESSLER:  Let me ask you something,

6           have you spoken to anyone who told you they

7           had been a victim of a crime?

8                   PROSPECTIVE JUROR:  Yeah.

9                   MR. KESSLER:  And, during that

10          conversation that you had with them, was it

11          an easy thing for them to tell you about or

12          difficult?

13                  PROSPECTIVE JUROR:  Difficult.

14                  MR. KESSLER:  Okay.  Do you think in

15          this case, for example, if a person came in

16          here and told you they were a victim of a

17          rape, do you think that would be an easy

18          thing for them to do or tough thing to do in

19          the courtroom?

20                  MR. SCHECHTER:  Objection.

21                  MR. KESSLER:  Can you promise if you're

22          chosen as a juror in this case, you would

23          take this woman on the stand, and judge her

24          credibility, or there's if more than one

25          woman, their credibility, using the same

1           PROCEEDINGS

2      common sentence that you judge anyone else?

3      Can you do that?

4           PROSPECTIVE JUROR:   Yes.

5           MR. KESSLER:   Okay.   Can you promise me

6      that you'll put aside the feelings you had

7      about the persons who told you they were

8      raped and decide this case based upon the

9      law and the evidence that applies here?   You

10     can't decide it based upon other things that

11     have happened to you or bad feelings you

12     have one way or another?   You understand

13     that?

14          PROSPECTIVE JUROR:   Yes.

15          MR. KESSLER:   Do you think you can do

16     that in this case?

17          PROSPECTIVE JUROR:   Yes.

18          MR. KESSLER:   If at the end of the case

19     I prove to you the defendant's guilt of

20     these charges beyond a reasonable doubt,

21     what's your verdict?

22          PROSPECTIVE JUROR:   Guilty.

23          MR. KESSLER:   Okay.   If I fail to prove

24     his guilt beyond a reasonable doubt?

25          PROSPECTIVE JUROR:   Not guilty.

1               PROCEEDINGS

2               MR. KESSLER:  Can you let the cards

3        fall where they may?

4               PROSPECTIVE JUROR:  Yes.

5               MR. KESSLER:  Do you consider yourself

6        a pretty fair person?

7               PROSPECTIVE JUROR:  Yes.

8               MR. KESSLER:  That's all I ask, thank

9        you.

10              Mr Camacho, how are you?

11              THE COURT:  By the way, what judge did

12       you say you knew that's retired?

13              PROSPECTIVE JUROR:  Quinones.

14              THE COURT:  He is retired.

15              MR. KESSLER:  Mr. Camacho, you and

16       another person indicated you didn't think

17       you could be fair and impartial in this

18       case?

19              PROSPECTIVE JUROR:  I said that?

20              MR. KESSLER:  Maybe I got it wrong.

21       Can you be?

22              THE COURT:  He didn't say that.

23              MR. KESSLER:  I'm sorry, I'm looking at

24       it backwards.

25              THE COURT:  I don't have notes and I

1          PROCEEDINGS

2          know what people say.

3                MR. KESSLER: Any reason why you can't

4          be fair and impartial?

5                PROSPECTIVE JUROR: No.

6                MR. KESSLER: If I prove to you the

7          defendant's guilt beyond a reasonable doubt,

8          at the end of this case what would be your

9          verdict?

10               PROSPECTIVE JUROR: When it comes up,

11         there and then I'll judge whatever I see.

12               MR. KESSLER: Okay. Let's say at the

13         end of this case you find that I have proven

14         to you the defendant's guilt, beyond a

15         reasonable doubt, as the Judge defines that,

16         your verdict?

17               PROSPECTIVE JUROR: Guilty.

18               MR. KESSLER: If I fail?

19               PROSPECTIVE JUROR: Not guilty.

20               MR. KESSLER: Any problems deciding

21         this case on the law and the evidence, using

22         your common sense?

23               PROSPECTIVE JUROR: No.

24               MR. KESSLER: Mr. Duryea, how are you?

25         Any problem sitting on this type of case?

41

1                          PROCEEDINGS

2              PROSPECTIVE JUROR:   No.

3              MR. KESSLER:   Ever spoken to anyone who

4     was a victim of a rape?

5              PROSPECTIVE JUROR:   No.

6              MR. KESSLER:   Any preconceived notions

7     on what people who are victims of rape are

8     supposed to look or sound like when they are

9     on the stand?

10             PROSPECTIVE JUROR:   Not at all.

11             MR. KESSLER:   What do you think, if

12    you're chosen as a juror, the most important

13    attribute a juror has?

14             PROSPECTIVE JUROR:   I guess to weigh

15    all the evidence, come out with whatever the

16    facts prove.

17             MR. KESSLER:   If the facts prove to you

18    the defendant's are guilty -- the defendant

19    is guilty of this crime as charged, what

20    would your verdict can?

21             PROSPECTIVE JUROR:   Guilty.

22             MR. KESSLER:   If you found I haven't

23    proven his guilt?

24             PROSPECTIVE JUROR:   Innocent.

25             MR. KESSLER:   Not guilty?   Do you have

42

```
 1              PROCEEDINGS
 2      any problem following the Judge's
 3      instructions on the law as he gives it to
 4      you?
 5          PROSPECTIVE JUROR:  No.
 6          MR. KESSLER:  Do you promise me you'll
 7      hold me to that standard?
 8          PROSPECTIVE JUROR:  Definitely.
 9          MR. KESSLER:  Okay.  You understand
10      that, you told me that it's not, you know,
11      beyond all doubt or shadow of a doubt but
12      reasonable doubt; you understand that?
13          PROSPECTIVE JUROR:  Yes.
14          MR. KESSLER:  It's not mathematical
15      certainty.  For example, you're not a
16      hundred percent sure, but you're sure beyond
17      a reasonable doubt, your verdict would have
18      to be?
19          PROSPECTIVE JUROR:  Guilty.
20          MR. KESSLER:  Any problem with that at
21      all?
22          PROSPECTIVE JUROR:  Not at all.
23          MR. KESSLER:  Okay.  Mr. Barrett, how
24      are you?
25          PROSPECTIVE JUROR:  Fine.
```

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 73 of 157 PageID #: 653

1              PROCEEDINGS

2              MR. KESSLER:  You can be fair and

3         impartial?

4              PROSPECTIVE JUROR:  Yes.

5              MR. KESSLER:  How about that concept

6         about, you know, nothing in this courtroom

7         is required to be proven to a mathematical

8         certainty, I have to prove the defendant's

9         guilt beyond a reasonable doubt.  Do you

10        have a problem what that standard of proof?

11             PROSPECTIVE JUROR:  No, I don't.

12             MR. KESSLER:  What about the

13        presumption of innocence, do you believe in

14        that?

15             PROSPECTIVE JUROR:  Yes.

16             MR. KESSLER:  For example, if I were

17        to, you know, all of a sudden take out a gun

18        and shoot the court reporter in front of you

19        twelve, if I went to trial what would be the

20        presumption?

21             PROSPECTIVE JUROR:  Presumed innocent.

22        It's your job to --

23             MR. KESSLER:  With the facts and

24        evidence?

25             PROSPECTIVE JUROR:  Right.

1                    PROCEEDINGS

2             MR. KESSLER:  What do you think about

3     presumption of innocence, do you think it's

4     important?

5             PROSPECTIVE JUROR:  Yes.

6             MR. KESSLER:  You think it's probably

7     the most important right?

8             PROSPECTIVE JUROR:  Yes.

9             MR. KESSLER:  Great.  Ever hear that

10    saying, don't look too closely into the

11    trees, you may not see the forest?

12            PROSPECTIVE JUROR:  I've heard it.

13            MR. KESSLER:  Are you one of those

14    people who step back, take a look at this,

15    what happened here and decide using your

16    common sense, taking a look to see whether

17    or not there are forests in front of you?

18            PROSPECTIVE JUROR:  I think so, yeah.

19            MR. KESSLER:  You agree some people

20    look too closely at the trees?

21            PROSPECTIVE JUROR:  Yes.

22            MR. KESSLER:  Great.

23            Miss Urena, could you be a fair and

24    impartial juror?

25            PROSPECTIVE JUROR:  Yes.

1    PROCEEDINGS

2         MR. KESSLER:  Anything about the

3    charges themselves that cause you to think

4    you wouldn't be fair and impartial?

5         PROSPECTIVE JUROR:  No.

6         MR. KESSLER:  You believe in the

7    presumption of innocence?

8         PROSPECTIVE JUROR:  Yeah.

9         MR. KESSLER:  Do you have any problem

10   then in case I prove to you the defendant's

11   guilt beyond a reasonable doubt, what would

12   your verdict be?

13        PROSPECTIVE JUROR:  Guilty.

14        MR. KESSLER:  Any problem standing up

15   in this courtroom, looking at him in the

16   eye, saying he's guilty?

17        PROSPECTIVE JUROR:  No.

18        MR. KESSLER:  Suppose at the end of

19   this case, you're chosen as a juror, one of

20   the jurors comes up to you and says, you

21   know what?  The DA proved his case beyond a

22   reasonable doubt, I believe the defendant

23   did everything he's charged with.  But I

24   look over there and he doesn't look like a

25   person who would do something like that.

1               PROCEEDINGS

2          What, if anything, would you say to that

3     juror?

4          PROSPECTIVE JUROR:  You got to weigh

5     the facts, not his looks.  It's not his

6     appearance that matters, it's what he did,

7     what the facts were.

8          MR. KESSLER:  Do you have any ideas

9     what a person who commits rape?

10          PROSPECTIVE JUROR:  It could be the

11     most innocent-looking person with a baby

12     face, sitting anywhere in the audience.  It

13     could be anyone.  They don't look like

14     anyone particular.

15          MR. KESSLER:  Do you think looks or

16     religion or race has anything to do with

17     your deliberations at all?

18          PROSPECTIVE JUROR:  No.

19          MR. KESSLER:  Can you promise me you'll

20     keep them out and decide this case on the

21     facts and the law?

22          PROSPECTIVE JUROR:  Yes.

23          MR. KESSLER:  Great.

24          Mr. Crotty, you indicated you couldn't

25     be a fair and impartial juror on this case?

47

1          PROCEEDINGS

2          PROSPECTIVE JUROR:  No.

3          What name did you call me?

4          MR. KESSLER:  I'm sorry, Mr. Hubert.

5          PROSPECTIVE JUROR:  I'm sorry.

6          MR. KESSLER:  You can't be a fair and

7     impartial juror on this case?

8          PROSPECTIVE JUROR:  Well, I tell you

9     the truth, I really don't know if I can be

10    fair --

11         MR. KESSLER:  Okay.

12         PROSPECTIVE JUROR:  -- right now.

13         MR. KESSLER:  That's all we ask.  Thank

14    you very much.

15         Mr. Delegatte, how are you?

16         PROSPECTIVE JUROR:  Fine.

17         MR. KESSLER:  I want to ask you about

18    being on a jury before.  You've never been?

19         PROSPECTIVE JUROR:  No.

20         MR. KESSLER:  Ever seen a trial?

21         PROSPECTIVE JUROR:  Just on the TV.

22         MR. KESSLER:  You know, the witnesses

23    here aren't going to be actors or actresses

24    but real people, and there is going to be no

25    director to say cut, we'll to have refilm

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | that.  Can you appreciate the people who |
| 3 | will come in here aren't trained actors and |
| 4 | actresses? |
| 5 | PROSPECTIVE JUROR:  Yeah. |
| 6 | MR. KESSLER:  Do you have any |
| 7 | preconceived notions on what people who are |
| 8 | victims of rape should appear like or act |
| 9 | like or sound like when they testify? |
| 10 | PROSPECTIVE JUROR:  Better not act. |
| 11 | MR. KESSLER:  Okay, but they can come |
| 12 | in a variety of emotions. |
| 13 | PROSPECTIVE JUROR:  Sure. |
| 14 | MR. KESSLER:  Ever been to a funeral, |
| 15 | seeing three sisters all grieving, over this |
| 16 | person who died, one may be crying, one may |
| 17 | be suffering in silence, one may not be |
| 18 | speaking at all? |
| 19 | PROSPECTIVE JUROR:  Sure. |
| 20 | MR. KESSLER:  Okay.  Doesn't mean |
| 21 | anyone is grieving any more than another, |
| 22 | right? |
| 23 | PROSPECTIVE JUROR:  Sure. |
| 24 | MR. KESSLER:  Okay. |
| 25 | Miss Weinstock, would you agree with |

49

1                     PROCEEDINGS

2       that?

3               PROSPECTIVE JUROR:  Yes.

4               MR. KESSLER:  Unfortunately, in this

5       courtroom we have court reporters, we have

6       to get everything down.

7               Miss Fittinger, you said, you indicated

8       that you can't be a fair and impartial juror

9       in this case?

10              PROSPECTIVE JUROR:  I don't think so,

11      no.

12              MR. KESSLER:  Okay, based upon your

13      religion?

14              PROSPECTIVE JUROR:  No.

15              MR. KESSLER:  Philosophical views?

16              PROSPECTIVE JUROR:  A teenage daughter

17      that travels back and forth by herself,

18      that's what it's based on.  This is a rape

19      case.  I feel very uncomfortable.

20              MR. KESSLER:  Right, I understand that.

21      You have to -- you know, my position is I

22      can't get twelve people who do feel

23      comfortable about rape, otherwise it

24      wouldn't be fair to me, right?

25              So, my question is certainly, I

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 80 of 157 PageID #: 660

1       PROCEEDINGS

2       understand, no one hopefully in the jury is

3       going to like rape or hearing about it, but

4       unfortunately, people are raped and jurors

5       to have been picked to decide.

6           PROSPECTIVE JUROR:  Yes.

7           MR. KESSLER:  My question to you is

8       simply at the end of this case, if I do not

9       prove this defendant is guilty of the crime

10      of rape, are you going to come into the

11      courtroom and find him guilty based upon

12      your daughter's travelling back and forth?

13          PROSPECTIVE JUROR:  I don't know.

14          MR. KESSLER:  Really?

15          PROSPECTIVE JUROR:  I honestly don't

16      know.

17          MR. KESSLER:  Mr. Bohlig, how are you?

18          PROSPECTIVE JUROR:  Fine.

19          MR. KESSLER:  Another person who said

20      he couldn't be fair.

21          PROSPECTIVE JUROR:  Yes.  I'm not sure

22      if I could be.  I am really not.

23          MR. KESSLER:  Ever been on a jury

24      before?

25          PROSPECTIVE JUROR:  No, sir, I have

1                        PROCEEDINGS

2        not.

3                MR. KESSLER:  What do you to?

4                PROSPECTIVE JUROR:  Sheet metal worker.

5                MR. KESSLER:  I guess the question is

6        this.  I've been talking to other jury

7        members, prospective jury members, I've been

8        asking them.  The Judge is going to tell you

9        what the law is.  Really your job as a juror

10       is very simple if you think about it.  You

11       just decide the facts, what occurred, okay?

12       If you determine in this case, for example,

13       a kidnapping occurred and a rape occurred,

14       and the Judge tells you this is the law on

15       those case, you apply the facts as a juror

16       because you determine it according to the

17       law, come up with a verdict one way or

18       another.  Do you understand that?

19               PROSPECTIVE JUROR:  Yes, sir, I

20       certainly do.

21               MR. KESSLER:  So, if at the end of this

22       case I don't prove to you the defendant's

23       guilt beyond a reasonable doubt, can you

24       assure me that you would stand up in this

25       courtroom and say not guilty?

1               PROCEEDINGS

2          PROSPECTIVE JUROR:  I guess so.  I'm

3     not sure, but I guess so.

4          MR. KESSLER:  Okay.  If I don't prove

5     that he's responsible you're not going to

6     shoot him?

7          PROSPECTIVE JUROR:  No.

8          MR. KESSLER:  You seem like a fair

9     person.

10         PROSPECTIVE JUROR:  I think I am.

11         MR. KESSLER:  All I'm looking for, on

12    the other hand, is some fairness.  You know,

13    at the end of this case, based upon all the

14    evidence that you hear you find this

15    defendant is responsible for kidnapping and

16    rape and I proved to you his guilt beyond a

17    reasonable doubt, can you assure me you can

18    look him in the eye and say he's guilty?

19         PROSPECTIVE JUROR:  Yes, sir.

20         MR. KESSLER:  Anything particular what

21    makes you uncomfortable saying you're not

22    sure?

23         PROSPECTIVE JUROR:  Many things, my

24    background.  I had a girlfriend, we had a

25    short relationship, she was a victim at one

53

1                    PROCEEDINGS

2       time.  I'm not sure if would I stop thinking

3       about her during the course of this case,

4       I'm not sure if I can turn that off.  You

5       know, I'm not being a wise guy, I'm really

6       not trying to get out of it or anything, I'm

7       just being honest, sir.

8               MR. KESSLER:  That's all we ask.

9               PROSPECTIVE JUROR:  Okay.

10              MR. KESSLER:  When you spoke to her she

11      was a victim of some type of rape?

12              PROSPECTIVE JUROR:  Yeah, kind of.  By

13      her husband.

14              MR. KESSLER:  You're saying based upon

15      that, there may be bad feelings for?

16              PROSPECTIVE JUROR:  Yes, sir, I'm

17      pretty sure it would be.

18              MR. KESSLER:  Okay.  Thanks very much.

19              Miss San Felice, your son has been

20      accused of a crime of harassment?

21              PROSPECTIVE JUROR:  The landlord.  Loud

22      in the hall, tenants had an order of

23      protection against him and he got arrested.

24      He had an ACD.

25              MR. KESSLER:  Here in Queens?

1               PROCEEDINGS

2          PROSPECTIVE JUROR:  Yes, it is.

3          MR. KESSLER:  My concern is, don't tell

4     me the exact details, my only question is,

5     do you have any hard feelings about the way

6     he was treated by Queens District Attorney's

7     Office?

8          PROSPECTIVE JUROR:  I didn't like the

9     fact he had to be in a holding cell all that

10    time.

11         MR. KESSLER:  That's for the police.

12         PROSPECTIVE JUROR:  Yeah.

13         MR. KESSLER:  I'll get to them in a

14    second.  I'm talking about the District

15    Attorney's Office themselves.

16         PROSPECTIVE JUROR:  No.

17         MR. KESSLER:  Any problem with the way

18    they treated him?

19         PROSPECTIVE JUROR:  No.

20         MR. KESSLER:  Now I'll go to the

21    police.  There are going to be police

22    officers who are going to testify in this

23    case and they are going to be major

24    witnesses in this case.  It doesn't deal

25    with harassment but they're still police

1               PROCEEDINGS

2          officers, okay?  Can you promise me that if

3          you're chosen whatever happened to your son,

4          if you didn't like the way the police

5          handled him, you can put that idea away?

6                    PROSPECTIVE JUROR:  Yes.

7                    MR. KESSLER:  And decide this case

8          based upon the facts and law?

9                    PROSPECTIVE JUROR:  Yes.

10                   MR. KESSLER:  Okay.  So if at the end

11         of the case I prove to you the defendant's

12         guilt beyond a reasonable doubt, your

13         verdict would be what?

14                   PROSPECTIVE JUROR:  Guilty.

15                   MR. KESSLER:  If I fail to prove it?

16                   MR. SCHECHTER:  Not guilty.

17                   MR. KESSLER:  Can you hold me to that

18         standard that the Judge told you about?  Any

19         reason why you can't be fair and impartial?

20                   PROSPECTIVE JUROR:  No.

21                   MR. KESSLER:  Let the cards fall where

22         they may?

23                   PROSPECTIVE JUROR:  Yes.

24                   MR. KESSLER:  Seem fair?

25                   PROSPECTIVE JUROR:  Yeah.

<pre>
 1                    PROCEEDINGS
 2          MR. KESSLER:  Great.
 3          Miss Alvarado, you had indicated that
 4     you couldn't be, based upon what you heard,
 5     a fair and impartial juror?
 6          PROSPECTIVE JUROR:  I don't think so.
 7          MR. KESSLER:  You said, the question
 8     the Judge asked you, number six, can you be
 9     a fair and impartial juror, you said no?
10          PROSPECTIVE JUROR:  But I think yes.
11          MR. KESSLER:  You can?
12          PROSPECTIVE JUROR:  Yeah.
13          MR. KESSLER:  Do you have any problem
14     understanding anything I've said or the
15     Judge has said?
16          PROSPECTIVE JUROR:  Yeah, a little, not
17     too much.
18          MR. KESSLER:  Was it because we were
19     talking quickly?
20          PROSPECTIVE JUROR:  I have no idea.  I
21     don't understand.
22          MR. KESSLER:  You don't understand.
23          PROSPECTIVE JUROR:  Not so much.
24          MR. KESSLER:  Okay, thanks very much.
25          I guess Miss Hubert -- it's Miss Arena.
</pre>

57

1              PROCEEDINGS

2       Okay, I guess there is a problem.  I guess

3    one question, you don't have to answer all

4    of them.

5             Can you be fair and impartial?  You

6    understand if you're chosen as a juror you

7    have to deliberate with some of the other

8    jurors and decide what you heard here?  Any

9    problem with that at all?

10            PROSPECTIVE JUROR:  No.  If they can

11   wait until I answer.

12            MR. KESSLER:  I'm sure they would.

13            PROSPECTIVE JUROR:  Okay.

14            MR. KESSLER:  My question is simply,

15   I'm looking for twelve people to decide this

16   case fairly, let the cards fall where they

17   may.  If I prove to you the defendant's

18   guilt beyond a reasonable doubt, what would

19   your verdict be?

20            PROSPECTIVE JUROR:  Guilty.

21            MR. KESSLER:  If I fail to prove it?

22            PROSPECTIVE JUROR:  Not guilty.

23            MR. KESSLER:  You could be fair about

24   that?

25            PROSPECTIVE JUROR:  Yes.

1       PROCEEDINGS

2           MR. KESSLER:  Okay.  Have you ever

3       spoken to anyone who was a victim of a rape

4       before?

5           PROSPECTIVE JUROR:  No.

6           MR. KESSLER:  Do you have any

7       preconceived notions what they should look

8       like or appear like on the stand?

9           PROSPECTIVE JUROR:  No.

10          MR. KESSLER:  Great.  I have nothing

11      further, thanks very much, everyone, for

12      their honesty and candor.  I'm just asking

13      everyone here if they are chosen as jurors,

14      on this case, just be fair and impartial.

15      That means fair and impartial to the People

16      and fair and impartial to defense.

17          If I prove the defendant's guilt beyond

18      a reasonable doubt as the Judge defines

19      that, you'd be able to stand up and find him

20      guilty?  If I fail to prove his guilt to say

21      not guilty, but decide this case without

22      prejudice for or prejudice against?  Can

23      everyone assure me of that?  Okay.

24          Terrific, thanks very much.

25          THE COURT:  Mr. Schechter.

1                    PROCEEDINGS

2             MR. SCHECHTER:  Thank you.

3             Good afternoon, everyone.  My name is

4        Donald Schechter.  I represent Guang Hai

5        Zheng, who is accused of these crimes.  Let

6        me start off by telling you, there are

7        accusations.  You have not heard anything at

8        this point to say that he is guilty of

9        anything.  Was indicted, that was a few

10      months ago.  It's nothing more than an

11      accusation, how we get here, but that is not

12      evidence and you know not to consider it as

13      such.

14           Anyone have any problem with that

15      concept, just don't feel just because he has

16      been indicted that he must have done

17      something?

18           Mr. Barrett, do you have any problem

19      with that?

20           PROSPECTIVE JUROR:  No.

21           MR. SCHECHTER:  Anyone feel where

22      there's smoke there must be fire?

23           PROSPECTIVE JUROR:  Could be.  That's

24      what I think, could be.

25           MR. SCHECHTER:  Well, Mr. Delegatte,

Case 1:16-cv-01186-RJD Document 8-4 Filed 11/08/16 Page 90 of 157 PageID #: 670

1               PROCEEDINGS

2        let me ask you this.  In that jury room, you

3        start deliberating now.  What would your

4        verdict be, at this instant, right now?  The

5        Judge sends you into the jury room and you

6        deliberate.  You're heard the verdict must

7        be guilty or not guilty.  Would you going

8        with the presumption of his innocence?

9               PROSPECTIVE JUROR:  At this point, I

10        guess so.

11               MR. SCHECHTER:  You haven't heard any

12        evidence, the burden is on the People to

13        prove my client guilty beyond a reasonable

14        doubt.  Have they done it at this moment?

15               PROSPECTIVE JUROR:  No.

16               MR. SCHECHTER:  Okay.  Does everyone

17        realize that the defendant doesn't to have,

18        doesn't have any burden whatsoever in this

19        case, the burden is on the People to prove

20        him guilty?  That means that you don't have

21        to put on any witness, the defendant does

22        not have to testify.

23               Miss Ortiz-Rosenbaum, do you have any

24        problems if my client does not take the

25        witness stand?

```
 1                    PROCEEDINGS
 2            PROSPECTIVE JUROR:  No.
 3            MR. SCHECHTER:  Would you hold that
 4       against him?
 5            PROSPECTIVE JUROR:  No.
 6            MR. SCHECHTER:  We don't put on any
 7       witnesses, would you hold that against the
 8       defendant?
 9            PROSPECTIVE JUROR:  No.
10            MR. SCHECHTER:  Will you make your
11       decision based on what you hear on the
12       evidence or the lack of evidence?
13            PROSPECTIVE JUROR:  Yes.
14            MR. SCHECHTER:  Do you have any problem
15       with that?
16            PROSPECTIVE JUROR:  No.
17            MR. SCHECHTER:  Do you have a problem
18       with that type of crime, a rape?
19            PROSPECTIVE JUROR:  Maybe rape.
20            MR. SCHECHTER:  When someone takes the
21       stand and said she was raped, you know,
22       would you have more sympathy for her and may
23       give the People more credit than the defense
24       because she said she was raped?
25            PROSPECTIVE JUROR:  No.
```

1                          PROCEEDINGS

2                  MR. SCHECHTER:  Would you listen to her

3          and make a decision based on what you hear

4          or don't hear?

5                  PROSPECTIVE JUROR:  Yes.

6                  MR. SCHECHTER:  Miss Weinstock, I know

7          you said you'd have problem.  Would you be

8          more sympathetic to a person who said she

9          was raped?

10                 PROSPECTIVE JUROR:  No.

11                 MR. SCHECHTER:  The type of crime,

12         would you be fair and impartial, give my

13         client a fair trial?

14                 PROSPECTIVE JUROR:  Once I heard the

15         evidence.

16                 MR. SCHECHTER:  Well, nobody is telling

17         you to leave your common sense out the door.

18         When you come in here, you come in with

19         everything that you've had up to your twenty

20         eight years of age, okay?  And everyone

21         comes in here with certain preconceived

22         ideas and notions, and we are not asking you

23         to leave that outside.  You said that you

24         couldn't be fair and impartial because of

25         the type of crime it is, hearing evidence

1                    PROCEEDINGS

2          everything.  You teach what grade?

3               PROSPECTIVE JUROR:  Kindergarten.

4               MR. SCHECHTER:  Do you think that in

5          and of itself would make you feel a little

6          bit more sympathetic for the DA or for the

7          victim?

8               PROSPECTIVE JUROR:  Maybe.

9               MR. SCHECHTER:  Thank you for your

10         honesty.

11              PROSPECTIVE JUROR:  Okay.

12              MR. SCHECHTER:  Mr. Siegel, your

13         daughter had very unfortunate incident.  Can

14         you tell me approximately how long that was?

15              PROSPECTIVE JUROR:  '81 or '82.

16              MR. SCHECHTER:  Okay.  Was the person

17         ever arrested?

18              PROSPECTIVE JUROR:  No.

19              MR. SCHECHTER:  The victim comes in

20         here, someone comes in here and says that

21         she was molested.  Would you then think back

22         to what happened to your daughter?

23              PROSPECTIVE JUROR:  Well, I hope not.

24              MR. SCHECHTER:  Well, do you think,

25         that incident with your daughter, you could

1       PROCEEDINGS

2           put that aside and give my client a fair and

3           impartial trial?

4               PROSPECTIVE JUROR:  Hopefully.

5               MR. SCHECHTER:  Well, hopefully.

6           Unfortunately, in this particular situation

7           it may not be good enough.  You know, I know

8           unfortunately you had that experience with

9           your daughter, but can I have your

10          cooperation?

11              PROSPECTIVE JUROR:  All right, yes.

12              MR. SCHECHTER:  Okay.

13              You also had relatives in the law.

14              PROSPECTIVE JUROR:  No, I had friends.

15              MR. SCHECHTER:  Friends.

16              PROSPECTIVE JUROR:  Police officers.

17              MR. SCHECHTER:  Do they ever discuss

18          with you their work?

19              PROSPECTIVE JUROR:  Not really.

20              MR. SCHECHTER:  That's not going to

21          affect you one way or another?

22              PROSPECTIVE JUROR:  No.

23              MR. SCHECHTER:  You have friends or

24          relatives that are lawyers?

25              PROSPECTIVE JUROR:  Yes.

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 95 of 157 PageID #: 675

1          PROCEEDINGS

2          MR. SCHECHTER: Anyone do criminal

3     work?

4          PROSPECTIVE JUROR: Yes, both.

5          MR. SCHECHTER: Friends or relatives?

6          PROSPECTIVE JUROR: Friends.

7          MR. SCHECHTER: Do they ever discuss

8     with you their work?

9          PROSPECTIVE JUROR: Yeah, at times they

10    do.

11         MR. SCHECHTER: Well, obviously, if you

12    are chosen as a juror, you are not going to

13    call one of them up and tell them this is

14    what the case is about?

15         PROSPECTIVE JUROR: No.

16         MR. SCHECHTER: That is not going to

17    affect you in this particular matter, is it?

18         PROSPECTIVE JUROR: No.

19         MR. SCHECHTER: Besides the incident

20    with your daughter, have you been the victim

21    of any other crimes?

22         PROSPECTIVE JUROR: Automobile thefts.

23         MR. SCHECHTER: That's not -- you're

24    not going to hold that against my client?

25         PROSPECTIVE JUROR: No.

1    PROCEEDINGS

2         MR. SCHECHTER:  Thank you.

3         Mr. Micalev, did you say you know

4    someone was a police officer, your

5    granddaughter?

6         PROSPECTIVE JUROR:  No, my landlord.

7         MR. SCHECHTER:  Does he ever talk to

8    you about his work?

9         PROSPECTIVE JUROR:  Yeah, she does.

10        MR. SCHECHTER:  She talks to you about

11   what happens?

12        PROSPECTIVE JUROR:  Sometimes, when

13   she's out at the house.

14        MR. SCHECHTER:  Okay.  Would that

15   affect you -- is she a police officer in

16   Queens?

17        PROSPECTIVE JUROR:  I don't know.

18        MR. SCHECHTER:  Would relationship with

19   your landlord have any effect on you in this

20   particular matter?

21        PROSPECTIVE JUROR:  Like I said

22   earlier, I can't judge anybody.

23        MR. SCHECHTER:  Okay.  Thank you.

24        PROSPECTIVE JUROR:  I do swear I don't,

25   Judge.

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 97 of 157 PageID #: 677

1                    PROCEEDINGS

2              MR. SCHECHTER:  Okay.  That's fine.

3              Mr. Delegatte, your son is a police

4         officer?

5              PROSPECTIVE JUROR:  That's correct.

6              MR. SCHECHTER:  Does he live at home?

7              PROSPECTIVE JUROR:  No.

8              MR. SCHECHTER:  Do you discuss with him

9         his work or does he discuss his work with

10        you?

11             PROSPECTIVE JUROR:  Maybe on some

12        occasions.

13             MR. SCHECHTER:  Would that have any

14        effect on you one way or other?  Would you

15        feel more precaution because of your son?

16             PROSPECTIVE JUROR:  No.

17             MR. SCHECHTER:  You could give my

18        client a fair and impartial trial?

19             PROSPECTIVE JUROR:  Yes.

20             MR. SCHECHTER:  If the DA doesn't prove

21        his case, do you have any problems standing

22        up and saying not guilty?

23             PROSPECTIVE JUROR:  No.

24             MR. SCHECHTER:  You said you were a

25        juror a few years ago?

1                    PROCEEDINGS

2                    PROSPECTIVE JUROR:  Yes.

3                    MR. SCHECHTER:  That was a criminal

4          case?

5                    PROSPECTIVE JUROR:  Yes.

6                    MR. SCHECHTER:  What was the charge?

7                    PROSPECTIVE JUROR:  Murder.

8                    MR. SCHECHTER:  Did you deliberate?

9                    PROSPECTIVE JUROR:  Yes.

10                   MR. SCHECHTER:  Anything happen in the

11         jury room that would make you not want to go

12         back in there?

13                   PROSPECTIVE JUROR:  There was smoking

14         at the time.  One woman kept complaining

15         about smoking.

16                   MR. SCHECHTER:  There is no smoking

17         here.

18                   PROSPECTIVE JUROR:  I don't smoke

19         anymore.

20                   THE COURT:  You're smart.

21                   MR. SCHECHTER:  Besides for that?

22                   PROSPECTIVE JUROR:  No, not really.

23                   MR. SCHECHTER:  Anyone else have a

24         problem?

25                   PROSPECTIVE JUROR:  My landlady is a

```
 1                        PROCEEDINGS
 2      police officer.
 3              MR. SCHECHTER:  Do you discuss her work
 4      with her at all?
 5              PROSPECTIVE JUROR:  Not at all.
 6              MR. SCHECHTER:  And, some member of
 7      your family has been the victim of a crime?
 8              PROSPECTIVE JUROR:  I have.
 9              MR. SCHECHTER:  What crime?
10              PROSPECTIVE JUROR:  Five stolen
11      vehicles, and burglarized house twice.
12              MR. SCHECHTER:  Anyone arrested?
13              PROSPECTIVE JUROR:  One kid was.
14              MR. SCHECHTER:  Of the vehicles or the
15      burglary?
16              PROSPECTIVE JUROR:  The burglary.
17              MR. SCHECHTER:  Okay.  Did you have to
18      testify in court?
19              PROSPECTIVE JUROR:  No, they dropped
20      that charge because the kid was wanted for
21      murder, so they just dropped the robbery and
22      went with the murder.
23              MR. SCHECHTER:  Do you have any
24      problems with them doing that?
25              PROSPECTIVE JUROR:  No.
```

1                    PROCEEDINGS

2              MR. SCHECHTER:  I believe a few of you

3    have said that you have watched TV, some of

4    the programs that -- anyone watch Court TV?

5    Anyone here ever testify in court?

6              Miss Arena, you are a paralegal?

7              PROSPECTIVE JUROR:  Yes.

8              MR. SCHECHTER:  Where are you employed?

9              PROSPECTIVE JUROR:  Citibank.  I'm a

10   municipal funds paralegal.

11             MR. SCHECHTER:  During your training

12   have you ever worked for any attorney who

13   practiced criminal law?

14             PROSPECTIVE JUROR:  No.

15             MR. SCHECHTER:  During your paralegal

16   course were you given any instructions in

17   criminal law?

18             PROSPECTIVE JUROR:  Yes.

19             MR. SCHECHTER:  Now, I don't know

20   exactly what you were told or not, whatever

21   you were told, can you put that aside

22   because what you were told, I don't know how

23   long ago that was, could have been a few

24   years ago?  The law may change.

25             PROSPECTIVE JUROR:  I forget.  It was a

Case 1:16-cv-01166-BJD Document 8-4 Filed 11/30/16 Page 101 of 157 PageID #: 681

1        PROCEEDINGS

2    long time ago.

3         MR. SCHECHTER:  Okay, then you'll put

4    that aside even though you don't remember?

5         PROSPECTIVE JUROR:  Right.

6         MR. SCHECHTER:  You'll listen to what

7    Judge Katz tells you and you'll make your

8    decision based on that?

9         PROSPECTIVE JUROR:  Yes.

10         MR. SCHECHTER:  Does anyone here feel

11    that they have to hear two sides of a story?

12         Mr. Bohlig, you feel you have to hear

13    both sides?

14         PROSPECTIVE JUROR:  Yes, I need to be

15    fair.

16         MR. SCHECHTER:  Under our law,

17    though -- you know, everyone would like to

18    hear both sides, but under our law I don't

19    have any burden with my client, you may not

20    hear one side, you may only hear witnesses

21    called by the District Attorney.  Can you

22    make a decision based on that?

23         PROSPECTIVE JUROR:  I guess so, I would

24    use the facts and evidence.

25         MR. SCHECHTER:  Or lack?

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 102 of 157 PageID #: 682

1               PROCEEDINGS

2               PROSPECTIVE JUROR:  Or lack.

3          MR. SCHECHTER:  If my client doesn't

4     testify or call witnesses, would you hold

5     that against him?

6          PROSPECTIVE JUROR:  I don't think so,

7     no.

8          MR. SCHECHTER:  Do you think even if we

9     do call any witnesses or he doesn't testify,

10    you can vote not guilty?

11         PROSPECTIVE JUROR:  I guess so.

12         MR. SCHECHTER:  Now, I believe your

13    uncle is a police officer?

14         PROSPECTIVE JUROR:  Yes.

15         MR. SCHECHTER:  Does he discuss his

16    work with you?

17         PROSPECTIVE JUROR:  Only when he

18    drinks.

19         MR. SCHECHTER:  I'm not going to go

20    near that one.

21         PROSPECTIVE JUROR:  Only, like, police

22    officers and attorneys should not discuss

23    what they do, there's a certain

24    confidentiality, but every once in a while

25    you read something in the newspaper and they

1                          PROCEEDINGS

2          will comment on it, or I have cousins who

3          are attorneys and friends who are attorneys,

4          and we talk about cases and in the

5          newspaper, and I get to hear their opinions

6          on it.  That is what they voice to me,

7          that's what I hear.

8                    MR. SCHECHTER:  Do they practice

9          criminal law?

10                   PROSPECTIVE JUROR:  My could you tell

11         us N Marie, not -- know, she works for bank,

12         also.

13                   MR. SCHECHTER:  Well, the attorneys who

14         have commented on cases in the newspapers or

15         who were on the TV, most of the time the

16         sensational cases that are in the newspaper

17         or on the TV are basically criminal cases.

18         Are those the type cases that you said they

19         commented on?

20                   PROSPECTIVE JUROR:  Sometimes.

21                   THE COURT:  Could that effect you in

22         this case, whatever they told you?

23                   PROSPECTIVE JUROR:  I don't think so.

24                   MR. SCHECHTER:  Now, I believe you have

25         also said that you and a member of your

1               PROCEEDINGS

2         family were victims of a crime?

3               PROSPECTIVE JUROR:  A girl I used to

4         date.

5               MR. SCHECHTER:  Is that the rape case?

6               PROSPECTIVE JUROR:  Yeah.  It was by

7         her husband, she was married to him at the

8         time.

9               MR. SCHECHTER:  And, he was prosecuted?

10              PROSPECTIVE JUROR:  No, she never

11        raised the charges.

12              MR. SCHECHTER:  Were you going to be a

13        witness for that?

14              PROSPECTIVE JUROR:  No, I did not say

15        that.

16              MR. SCHECHTER:  Okay.  Miss Arena, what

17        do you do for a living?

18              PROSPECTIVE JUROR:  I work for the

19        board.  Metropolitan.

20              MR. SCHECHTER:  Do you have any friends

21        or relatives who are police officers?

22              PROSPECTIVE JUROR:  No.

23              MR. SCHECHTER:  Have you ever been the

24        victim of crime?

25              PROSPECTIVE JUROR:  Yes.

75

1          PROCEEDINGS

2          MR. SCHECHTER:  What type of crime?

3          PROSPECTIVE JUROR:  Mugging.

4          MR. SCHECHTER:  Was that perpetrator

5     ever arrested?

6          PROSPECTIVE JUROR:  No.

7          MR. SCHECHTER:  You won't hold that

8     against my client?

9          PROSPECTIVE JUROR:  No.

10          MR. SCHECHTER:  You'll be fair and

11     impartial?

12          PROSPECTIVE JUROR:  Yes.

13          MR. SCHECHTER:  Anything about the type

14     crime of rape that would make you feel you

15     wouldn't want to deliberate on this case?

16          PROSPECTIVE JUROR:  No.

17          MR. SCHECHTER:  Okay.  Miss San Felice,

18     you were a juror on a rape case?

19          PROSPECTIVE JUROR:  I was.

20          MR. SCHECHTER:  You never deliberated?

21          PROSPECTIVE JUROR:  No.

22          MR. SCHECHTER:  You listened to

23     everything but you never got to go into the

24     jury room?

25          PROSPECTIVE JUROR:  It was hard.

1                    PROCEEDINGS

2            MR. SCHECHTER:  Was the victim of that

3      a young child?

4            PROSPECTIVE JUROR:  No, it was not.

5            MR. SCHECHTER:  It was someone, you

6      know, someone over 21 or over eighteen?

7            PROSPECTIVE JUROR:  Yes.

8            MR. SCHECHTER:  Anything about that

9      experience that would make you feel

10     uncomfortable about sitting on this case?

11           PROSPECTIVE JUROR:  No.

12           MR. SCHECHTER:  You know judges and

13     attorneys?

14           PROSPECTIVE JUROR:  I know some

15     attorneys, yes.

16           MR. SCHECHTER:  You're not going to

17     call them up during the trial and ask them

18     what they think?

19           PROSPECTIVE JUROR:  No.

20           MR. SCHECHTER:  They would have no

21     bearing on this case, whatever your

22     knowledge?

23           PROSPECTIVE JUROR:  No.

24           MR. SCHECHTER:  Mr. Camacho, you know

25     Judge Quinones?

1           PROCEEDINGS

2           PROSPECTIVE JUROR:  Yeah.

3           MR. SCHECHTER:  Who is retired?

4           PROSPECTIVE JUROR:  Yeah.

5           MR. SCHECHTER:  Has he ever discussed

6   with you any of his cases?

7           PROSPECTIVE JUROR:  No, not really.

8           MR. SCHECHTER:  Did he ever give you --

9   I believe he sat on criminal at one time.

10          PROSPECTIVE JUROR:  Yeah, criminal.

11          MR. SCHECHTER:  Did he ever discuss

12  with you his feelings about the Criminal

13  Justice system?

14          PROSPECTIVE JUROR:  Not really.  We

15  discussed law a few times, you know.

16          MR. SCHECHTER:  You knowing him or

17  whatever he told you, that's not going to

18  affect you in this matter?

19          PROSPECTIVE JUROR:  No.

20          MR. SCHECHTER:  Now, I have been

21  speaking too long.  Hopefully Mr. Kessler

22  won't be speaking too long.  I just asked

23  you certain questions.  My feeling always is

24  if someone wants to sit on a jury, they give

25  all the right answers, or if they don't want

PROCEEDINGS

to sit they can give all the quote, wrong,
answers, and many people feel they can be
fair and impartial.  Many people come in
with certain prejudices or biases.

I'd just like each one of you to take a
moment and think of something that you think
we should know about you that hasn't come
out that may affect our decision about
selecting you or not selecting you as a
juror.  If it's personal we can go to the
sidebar if you don't want everyone to hear
or whatever.  Anyone have anything?

PROSPECTIVE JUROR:  I don't think it
will affect me.  My brother is a police
officer in the NYPD.

MR. SCHECHTER:  Somehow I must have
missed that.  Does he discuss with you his
work?

PROSPECTIVE JUROR:  No.

MR. SCHECHTER:  Do you have any
problems at the end of the entire case?  If
the People have failed to sustain their
burden, could you find my client innocent
because the People have failed to prove him

1          PROCEEDINGS

2     guilty?  Would you have any problem with

3     that?

4          PROSPECTIVE JUROR:  No problem.

5          MR. SCHECHTER:  Look him in the eye,

6     correct?

7          PROSPECTIVE JUROR:  Yes.

8          MR. SCHECHTER:  He's a police officer

9     in Queens?

10         PROSPECTIVE JUROR:  No, Bronx.

11         MR. SCHECHTER:  Is he assigned to a

12    special bureau or just --

13         PROSPECTIVE JUROR:  No.  I have friends

14    in special bureaus but not -- he's just

15    regular.

16         MR. SCHECHTER:  You have police

17    officers who are friends?

18         PROSPECTIVE JUROR:  Yes.

19         MR. SCHECHTER:  What borough?

20         PROSPECTIVE JUROR:  Street Crime Unit.

21    But he's in another bureau.

22         MR. SCHECHTER:  Anyone else?

23         PROSPECTIVE JUROR:  No.

24         MR. SCHECHTER:  And, does he have ever

25    discuss with you his work?

```
1                        PROCEEDINGS
2              PROSPECTIVE JUROR:  No.
3              MR. SCHECHTER:  And, you would have no
4    problem looking at him in the eye and saying
5    the same thing?
6              PROSPECTIVE JUROR:  Right, I wouldn't
7    have a problem.
8              MR. SCHECHTER:  Anyone else?
9              PROSPECTIVE JUROR:  Sidebar?
10             THE COURT:  Step up.
11             (There was discussion at the bench.)
12             MR. SCHECHTER:  Does anyone else want
13   to say anything?  Thank you all.
14             THE COURT:  I have one other question.
15   Those who were prior jurors, you ma'am, you
16   sir, and you, were you sequestered during
17   the course of the deliberations in any way?
18             PROSPECTIVE JUROR:  Yes.
19             THE COURT:  Did you have a problem with
20   that?  You had plenty of notice?
21             PROSPECTIVE JUROR:  No.
22             THE COURT:  Any of you think you might
23   have a problem with if you had to be
24   sequestered overnight while deliberating?
25             PROSPECTIVE JUROR:  I would.
```

1       PROCEEDINGS

2           THE COURT:  If you got notice of it?

3           PROSPECTIVE JUROR:  I guess I'd -- I

4       definitely would.  I would have a problem.

5           THE COURT:  What problem?

6           PROSPECTIVE JUROR:  I have a wife that

7       is ill at home.

8           THE COURT:  There is no one that can

9       take care of her?  If you were told in

10      advance, like one night, if you are

11      deliberating late at night, you felt, you

12      know, you needed a rest?

13          PROSPECTIVE JUROR:  If push came to

14      shove, probably, but I would be

15      uncomfortable.

16          THE COURT:  What about you?

17          PROSPECTIVE JUROR:  Would it involve

18      weekends?

19          THE COURT:  No, no weekends, no.  No

20      holidays, no weekends.  Is that okay then?

21          PROSPECTIVE JUROR:  In more than one

22      night?

23          THE COURT:  Probably one night, that's

24      all.

25          PROSPECTIVE JUROR:  Okay.

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 112 of 157 PageID #: 692

1    PROCEEDINGS

2         THE COURT:  And you would get notice in

3    advance as to what to bring.

4         PROSPECTIVE JUROR:  Okay.

5         THE COURT:  Counsel, let's go to the

6    chambers.

7         (The following occurred in chambers.)

8         THE CLERK:  First count, challenge

9    answer for cause by the People?

10        MR. KESSLER:  Number thirteen is off,

11   Robert Hubert.  I was informed he did

12   service jury duty last year.  He's not

13   eligible for this panel.

14        THE COURT:  Any objection?

15        MR. SCHECHTER:  No.

16        MR. KESSLER:  I move for cause Miss

17   Alvarado, who has a problem with the English

18   language.  Juror number eight, Mr. Bohlig,

19   indicated he had problems with his

20   girlfriend, who had an attack at one time.

21   Juror number --

22        THE COURT:  Wait a minute.  Let's do it

23   one at a time.

24        MR. KESSLER:  Okay.

25        THE CLERK:  Selina Alvarado.

1       PROCEEDINGS

2           MR. SCHECHTER:  No objection.

3           THE COURT:  Okay.

4           MR. SCHECHTER:  She didn't understand

5       half the stuff.

6           THE CLERK:  Juror number eight, John

7       Bohlig.

8           MR. SCHECHTER:  His girlfriend was a

9       rape victim by her husband.  He specifically

10      said he doesn't know whether that will

11      affect him or not on one of my last

12      questions to him --

13          MR. KESSLER:  That's my understanding.

14          THE COURT:  All right.  Both of you

15      agree on that, I'll allow it.

16          THE CLERK:  Next?

17          MR. KESSLER:  Juror number eleven,

18      Mr. Micalev, indicated he has a religious

19      problem with sitting in judgment over

20      another human being.

21          THE COURT:  Yes.  He specifically said

22      he couldn't judge anybody.

23          MR. KESSLER:  Juror number twelve,

24      Mr. Crotty, indicated he could not be fair

25      and impartial.  That was to your Honor's

1    PROCEEDINGS

2    questioning of the juror.

3         THE COURT:  Yes.

4         MR. KESSLER:  And, I think that's --

5    last, Miss Fittinger, I couldn't even get to

6    rehabilitate here.

7         THE COURT:  That's true.  She said her

8    daughter traveled on a train.

9         MR. KESSLER:  I didn't understand it,

10   but I believe those are all for-cause

11   challenges.

12        THE COURT:  All right.  Mr. Schechter?

13        MR. SCHECHTER:  No objection.

14        THE CLERK:  Cause by defense?

15        MR. SCHECHTER:  Number three,

16   Mr. Delegatte, who said he didn't think he

17   could be fair and impartial.

18        THE COURT:  He said he could be fair

19   and impartial.

20        MR. KESSLER:  He said that during your

21   questioning.

22        THE COURT:  No, on the questionnaire.

23        MR. SCHECHTER:  Number nine,

24   Miss Weinstock.  She originally said she

25   couldn't be fair and impartial.  There was a

1  PROCEEDINGS

2  little bit of rehab but at the end when I

3  said if she feel more comfortable siding

4  with the victim of a rape, she said yes.

5  THE COURT:  All right, I'll allow it.

6  MR. SCHECHTER:  Your Honor, I don't

7  know, Miss Arena never answered any

8  questions to you.  I don't know if that per

9  se would be cause.

10  THE COURT:  She had a speech

11  impediment.  But she stated in answer to

12  your question when she had to deliberate

13  could she be a fair juror, by both of you, I

14  believe.

15  MR. SCHECHTER:  Yes.  That's for cause.

16  THE CLERK:  Peremptory challenges

17  challenge by the People at this time?

18  MR. KESSLER:  Just the paralegal.

19  That's the only peremptory I have, everyone

20  else is fine.

21  THE CLERK:  One peremptory.  Any

22  peremptory by the defense at this time?

23  MR. SCHECHTER:  Juror number two, juror

24  number four, and juror number -- I challenge

25  Duryea.

1    PROCEEDINGS

2         THE CLERK:  Four is Ortiz-Rosenbaum,

3    and number --

4         MR. SCHECHTER:  Ten.

5         THE CLERK:  Harry Siegel.  Defense used

6    three.  That leaves us one, two, three,

7    four.  Mr. Jose Camacho, juror number one,

8    number two, Eileen San Felice, number three,

9    Richard Barrett, and number four will be

10   Roseanne Arena.  Jose Camacho, Eileen San

11   Felice, Richard Barrett, Roseanne Arena

12   remain seated.  Are the four jurors

13   acceptable?

14        MR. KESSLER:  Yes.

15        MR. SCHECHTER:  Yes.

16        (The following occurred in open court.)

17        (Four jurors were sworn for the final

18   panel.)

19        THE COURT:  All right.  Those four of

20   you who were selected, come back tomorrow at

21   9:30.  You are excused.

22        THE CLERK:  Cheryl Searington

23   S-E-A-R-I-N-G-T-O-N.  C-H-E-R-Y-L.

24        Alice Hanley, H-A-N-L-E-Y.  First name

25   Alice.  Sally Dimisa, D-I-M-I-S-A, first

87

1                    PROCEEDINGS

2          name Sally.  Anna Mildred Serrano,

3          S-E-R-R-A-N-O.  N-E-G, S-H-U-H-W-E-U.

4          Jerome Lynch.  L-Y-N-C-H.  Charon Jessel,

5          J-E-S-S-E-L, first name C-H-A-R-O-N.  James

6          Nealon, N-E-A-L-O-N, James.  Fay Dookwah,

7          D-O-O-K-W-A-H, first name F-A-Y.

8               Angela Sherman.  Grace Diazvilla,

9          D-I-A-Z-V-I-L-L-A, first name Grace.  Karen

10         Harris.  Noel Wilson, N-O-E-L, first name.

11         Christopher Spardel, S-P-A-R-D-E-L.  Lucy

12         Shiuh, S-H-I-U-H, Lucy.

13              THE COURT:  Ladies and gentlemen,

14         answer the questions as the other jurors

15         gave us, the number of the question, first

16         sentence of a specific answer, the last.

17              PROSPECTIVE JUROR:  One, thirty six.

18         Number two, Briarwood, Queens.  Number

19         three, office manager.  Number four,

20         divorced.  Five, two years college.  Six,

21         not applicable.  Seven, no.  Eight, no.

22         Nine, no.  Ten, no.  Eleven, no.  Twelve,

23         no.  Thirteen, no.  Fourteen, no.  Fifteen,

24         no, sixteen, no.

25              THE COURT:  Thank you.

1          PROCEEDINGS

2          PROSPECTIVE JUROR:  Number one, 57.

3     Number two, Bellerose.  Number three,

4     secretary.  Four, married.  Five, twelve

5     years.  Six, sheet metal mechanic, auto

6     mechanic.  Seven, yes.  About four years

7     ago, it was a civil suit.  Eight, no.  Nine,

8     no.  Ten, no.  Eleven, yes.  Twelve, no.

9     Thirteen, no.  Fourteen, no.  Fifteen, no.

10    Sixteen, yes.

11         PROSPECTIVE JUROR:  Number one,

12    nineteen.  Number two, Queens, Whitestone.

13    Number three, full-time student.  Four, I'm

14    not married, I'm single.  Five, I have my

15    associates' degree.  Six, no, doesn't apply.

16    Number seven, no.  Number eight, yes.

17    Number nine, yes.  Ten, no.  Eleven, no.

18    Twelve, no.  Thirteen, no.  Fourteen, no.

19    Fifteen, no.  Sixteen, yeah.

20         THE COURT:  Thank you.

21         PROSPECTIVE JUROR:  Number one, thirty

22    seven.  Number two, Briarwood.  Three,

23    jewelry company.  Number four, married.

24    Five, high school.  Six, three children,

25    nine, six and one.  Seven, no.  Eight, no.

1          PROCEEDINGS

2    Nine, no.  Ten, no.  Eleven, no, twelve, no.

3    Thirteen, no.  Fourteen, no.  Fifteen, no.

4    Sixteen, no.

5          THE COURT:  Thank you.

6          PROSPECTIVE JUROR:  Number one, 32.

7    Number two, ozone Park.  Number three, a

8    legal assistant.  Four, single.  Five,

9    college degree.  Six, not applicable.

10   Seven, no.  Eight, yes.  Nine, yes.  Ten,

11   no.  Eleven, yes.  Twelve, yes.  Thirteen,

12   no.  Fourteen, no.  Fifteen, no.  Sixteen,

13   no.

14         PROSPECTIVE JUROR:  One, 42.  Two,

15   Flushing.  Three, housewife.  Four, married.

16   Five, college.  Six, computer assistant, and

17   my son is in high school.  Seven, no.

18   Eight, no.  Nine, no.  Ten, no.  Eleven,

19   yes.  Twelve, no.  Thirteen, no.  Fourteen,

20   no.  Fifteen, no.  Sixteen, I think so.

21         THE COURT:  Thank you.  Next.

22         PROSPECTIVE JUROR:  Number one, 54.

23   Number two, Jamaica.  Three, retired.  Four,

24   divorced.  Five, high school.  Six, kids,

25   one lives in California. Number seven, no.

1               PROCEEDINGS

2     Eight, no.  Nine, no.  Ten, no.  Eleven, no.

3     Twelve, no.  Thirteen, no.  Fourteen, no.

4     Fifteen, yes.  Sixteen, yes.

5          PROSPECTIVE JUROR:  Number one,

6     nineteen.  Number two, Queens.  Number

7     three, full-time student.  Number four,

8     single.  Number five, pursuit of bachelor's.

9     Six, does not apply.  Seven, no.  Eight,

10    yes.  Nine, no.  Ten, no.  Eleven, no.

11    Twelve, no.  Thirteen, I might.  Fourteen,

12    no.  Fifteen, no.  Sixteen, no.  I believe

13    so.

14         THE COURT:  Next.

15         PROSPECTIVE JUROR:  Number one, thirty

16    nine.  Number two, Astoria.  Number three,

17    plumber.  Number four, divorced.  Number

18    five, two-year associate's degree.  Number

19    six, does not apply.  Seven, no.  Number

20    eight, yes.  Number nine, yes.  Number ten,

21    yes.  Number eleven, yes.  Number twelve,

22    no.  Number thirteen, no.  Fourteen, no.

23    Fifteen, yes.  Sixteen, yes.

24         THE COURT:  Thank you.  Next, please.

25         PROSPECTIVE JUROR:  Number one, thirty

PROCEEDINGS

1

2    five.  Number two, Richmond Hill.  Number

3    three, security officer.  Four, married.

4    Five, high school.  Number six, husband is a

5    security officer, my two kids are in school.

6    Number seven, no.  Number eight, no.  Number

7    nine, yes.  Number ten, no.  Number eleven,

8    no.  Number twelve, no.  Number thirteen,

9    no.  Number fourteen, no.  Fifteen, no.

10   Sixteen, yes.

11        THE COURT:  Thank you.  Next please.

12        PROSPECTIVE JUROR:  Number one, 42.

13   Number two, Queens.  Three, high school

14   teacher.  Four, married.  Five, master's

15   plus.  Six, married, kids in elementary and

16   junior high school.  Seven, yes, twenty

17   years ago, civil case.  Eight, yes.  Nine,

18   yes.  Ten, no.  Eleven, yes.  Twelve, no.

19   Thirteen, no.  Fourteen, no.  Fifteen, no.

20   Sixteen, yes.

21        THE COURT:  Thank you.  Next, please.

22        PROSPECTIVE JUROR:  Number one, 54.

23   Number two, Queens.  Number three, work in a

24   hotel.  Number four, divorced.  Waitress.

25   Five, secondary education in Ireland.

1          PROCEEDINGS

2      Number six, my daughter's a model.  Number

3      seven, no.  Number eight, no.  Nine, yes.

4      Ten, yes.  Eleven -- number ten, no.  Number

5      eleven, yes.  Number twelve, no.  Thirteen,

6      no.  Fourteen, no.  Fifteen, no.  Sixteen,

7      definitely no.

8          PROSPECTIVE JUROR:  Number one, 34.

9      Number two, Rosedale Queens.  Number three,

10     police communications.  Four, single.

11     Number five, three years of college.  Six,

12     no.  Seven, yes, seven years ago, civil

13     service case.  Number eight, yes.  Number

14     nine, no.  Number ten, no.  Number eleven,

15     no.  Number twelve, yes, new York City

16     Police Department.  Number thirteen, no.

17     Fourteen, no.  Fifteen, no.  Sixteen, yes.

18         THE COURT:  Thank you.

19         PROSPECTIVE JUROR:  Number one, 30.

20     Number two, Jamaica.  Number three, manager

21     of production company.  Number four, single.

22     Number five, high school grad.  Six, two

23     daughters, eleven and thirteen.  Number

24     seven, no.  Eight, no.  Nine, no.  Ten, no.

25     Eleven, no.  Twelve, no.  Thirteen, no.

1          PROCEEDINGS

2      Fourteen, no.  Fifteen, no.  Sixteen, yes.

3          PROSPECTIVE JUROR:  Number one,

4      nineteen.  Number two, Jamaica.  Three,

5      construction.  Number four, single.  Five,

6      one year of college.  Six, doesn't apply.

7      Seven, no.  Number eight, no.  Nine, no.

8      Ten, no.  Eleven, yes.  Twelve, no.

9      thirteen, no.  Fourteen, no.  Fifteen, no.

10     Sixteen, yes.

11         THE COURT:  Thank you.  Next.

12         PROSPECTIVE JUROR:  One, 44.  Two,

13     Forest Hills, Queens.  Number three, lab

14     tech.  Four, married.  Five, yes.  Number

15     six, high school.  Number seven, no.  Number

16     eight, yes.  Number nine, yes.  Number ten,

17     no.  Eleven, no.  Twelve, no.  Thirteen, no.

18     Fourteen, no.  Fifteen, no.  Sixteen, yes.

19         THE COURT:  Thank you.

20         All right.  We are going to recess now

21     until tomorrow morning at 9:30.  Don't

22     discuss the case amongst yourselves or with

23     anyone else.  Don't let anyone discuss the

24     case with you or in your presence, and

25     report to where the court officer tells you

1                      PROCEEDINGS

2        to report at 9:30 sharp tomorrow morning.

3           Those of you who are in the box, please

4        remember exactly where you sitting here so

5        that you can do this expeditiously in the

6        morning.

7           Have a nice evening, see you all

8        tomorrow morning at 9:30.

9           All jurors have left.

10

11    * * * * * * * * * * * * * * * *

12           C E R T I F I C A T I O N

13     CERTIFIED THAT THE FOREGOING IS A TRUE AND

14     ACCURATE TRANSCRIPT OF THE ORIGINAL STENOGRAPHIC

15     MINUTES IN THIS CASE.

16

17             _____

18              Debra Rael
               Senior Court Reporter

19

20

21

22

23

24

25

CA H.
3/9/96                    95

1

2 | SUPREME COURT OF THE STATE OF NEW YORK

3 | COUNTY OF QUEENS:   CRIMINAL TERM:   PART K-25   Copy
   | ----------------------------------------X
4 | THE PEOPLE OF THE STATE OF NEW YORK,
   |                                    Ind. No.
5 |                                    3282-95
   |            -against-
6 |                                    VOIR DIRE
   | HAI GUANG ZHENG,
7 |
   |                    Defendant.
8 | ----------------------------------------X

9 |                          June 26, 1996

10 |                         Criminal Court Building
    |                         125-01 Queens Boulevard
11 |                         Kew Gardens, New York

12 | B E F O R E :
    |          THE HONORABLE STANLEY B. KATZ,
13 |                              Justice, Supreme Court.
    |              (Plus a jury of twelve, plus 4 alternates)
14 | A P P E A R A N C E S :

15 | For the People:
    |          THE HONORABLE RICHARD A. BROWN
16 |          District Attorney, Queens County
    |          By:  SCOTT KESSLER, ESQ,
17 |               Assistant District Attorney

18 |
    | For the Defendant:
19 |          DONALD SCHECTER, ESQ.
    |          10 Cutter Mill Road
20 |          Great Neck, New York

21 |
    | ALSO PRESENT:
22 | YI WAN, Official Mandarin Interpreter

23 |

24 |
    |                    MICHAEL BERMAN, RPR
25 |                    Official Court Reporter

Case 1:16-cv-01166-RJD   Document 8-4   Filed 11/30/16   Page 126 of 157 PageID #: 706

2          (In open court; defendant not present)

3          COURT CLERK:  Case on trial, Zheng Guang Hai.

4          MR. SCHECTER:  Donald Schecter.

5          It's my understanding the defendant is not

6     produced.  I have one matter in AP-6.  I will be

7     back here quarter to 10:00.

8          THE COURT:  What do you mean he's not

9     produced?

10          COURT CLERK:  We are expecting his production

11     very soon.

12          THE COURT:  I really want to start.

13          I expect you back here by quarter to.  Find

14     out if all the jurors are here.

15          MR. KESSLER:  Scott Kessler for the People.

16          COURT CLERK:  3282 of '95, People versus

17     Zheng Guang Hai.

18          THE INTERPRETER:  Zheng Hai Guang.

19          THE COURT:  What is it?

20          MR. SCHECTER:  Zheng Hai Guang.

21          COURT CLERK:  Let the record reflect the

22     presence of the Official Mandarin interpreter, Yi

23     Wan.

24              (Defendant present.)

25          MR. KESSLER:  Scott Kessler.

1

2          (Whereupon, the prospective jury entered the

3      courtroom)

4          THE COURT:  Would you step up a moment,

5      please?

6          (Discussion held at bench off the record)

7          THE COURT:  Good morning, ladies and

8      gentlemen of the jury.

9          PROSPECTIVE JURY PANEL:  Morning.

10         THE COURT:  Now, the attorneys will have an

11     opportunity to talk to you.

12         MR. KESSLER:  Good morning, welcome to an

13     American Court of Law.

14         My name is Scott Kessler.  I'm an Assistant

15     District Attorney.  I work for Richard Brown.

16     I'll be asking you some questions similar to the

17     questions the Judge has already asked you during

18     your questionnaire.  At any time in time I ask a

19     question which you prefer not to speak about in

20     public we can approach the side, as I've been

21     doing with the defense counsel, we can talk about

22     it at private.

23         I know a number of people have indicated that

24     they could not be fair and impartial on this case

25     when it came down to the last question, question

number sixteen.  And, Miss argue ton

PROSPECTIVE JUROR 1:  Yes?

MR. KESSLER:  You were one of first that
stated -- you had indicated you can't be fair and
impartial?

PROSPECTIVE JUROR 1:  Actually, it's yes and
no.  As a woman I don't know if I could be
impartial.

MR. KESSLER:  We don't want rape cases
decided solely by twelve men.  That's not how the
Court system works.

PROSPECTIVE JUROR:  Right.

MR. KESSLER:  Obviously there are certain men
that don't ***leering about it as much as certain
woman, people have daughters, whatever the case.

And we are not looking for twelve people who
say I enjoy hearing about people being raped;
that's not what we are here for.  In our society
there are times when people get raped and they
are entitled to a fair trial by fair jurors who
will decide the case based upon the law and the
evidence and they won't say just because it's
rape I'll find him guilty because I don't like
it.

1

2          On the other hand, they won't say even though

3     he's guilty I don't want to find him guilty

4     because of whatever reason.  That's not within

5     the law.  Okay, so I guess simple question is.  A

6     witness will testify on this stand, talk about an

7     event.  You have to determine whether or not this

8     person is truthful and credible.  If at the end

9     of this case you find this person to be truthful

10    and credible and you believe she was raped and

11    kidnaped and I prove everything I have to prove,

12    do you have any problem standing up and finding

13    this defendant guilty?

14          PROSPECTIVE JUROR 1:  No.

15          MR. KESSLER:  On the other hand, for whatever

16    reason you don't believe I've proven kidnaping or

17    rape, or any of the charges, you believe the

18    defendant is innocent or not guilty, do you have

19    any problem standing up and saying not guilty?

20          PROSPECTIVE JUROR:  No.

21          MR. KESSLER:  You'll let the cards fall as

22    they may, to use the expression, as I may, the

23    cards being the evidence.  That's what you're

24    using.  Any problem with that?

25          PROSPECTIVE JUROR 1:  No.

1
2          MR. KESSLER:  Fair enough.  That's all I ask.
3      Miss Delamata?
4          PROSPECTIVE JUROR:  Hi.
5          MR. KESSLER:  I have been talking to people
6      about -- you had indicated on question number
7      sixteen you couldn't be fair and impartial.  You
8      heard me speak to juror one, does that make
9      sense?
10          PROSPECTIVE JUROR 4:  It makes sense.  If
11      he's here is because he did something or maybe he
12      was in the wrong place at the wrong time.  But if
13      he's here he did something.
14          MR. KESSLER:  Can you listen to the judge's
15      instructions that I have to prove the case beyond
16      a reasonable doubt?
17          PROSPECTIVE JUROR 4:  Yes.
18          MR. KESSLER:  Do you believe in that?
19          PROSPECTIVE JUROR:  Yes.
20          MR. KESSLER:  You're saying you can't follow
21      the judge's instruction on that?
22          PROSPECTIVE JUROR:  I will.
23          MR. KESSLER:  If the Judge tells you the
24      indictment, the evidence heard by the grand jury
25      is not evidence, nothing is evidence until you

1
2          hear it from the witness stand can, you follow

3          that instruction?

4                  PROSPECTIVE JUROR:  Yes.

5                  MR. KESSLER:  At the end of this case if I

6          prove to you the defendant's guilt beyond a

7          reasonable doubt through evidence through

8          witnesses can you stand up and say guilty?

9                  PROSPECTIVE JUROR 4:  Yes.

10                 MR. KESSLER:  If I fail to prove his guilt,

11         you do not believe he's guilty of these charges

12         beyond a reasonable doubt, can you say not

13         guilty?

14                 PROSPECTIVE JUROR:  I don't know because --

15                 MR. KESSLER:  Are you going to find him

16         guilty if he's not guilty?

17                 PROSPECTIVE JUROR:  No.

18                 MR. KESSLER:  You're not that type of person,

19         are you?

20                 PROSPECTIVE JUROR:  No.

21                 MR. KESSLER:  My question is simple.  We are

22         all asking of jurors, if you don't believe he's

23         guilty of these charges beyond a reasonable doubt

24         can you stand up and find him not guilty?

25                 PROSPECTIVE JUROR 4:  Yes.

1           Voir Dire                    102

2           MR. KESSLER:  If you believe he's guilty find

3     him guilty?

4           PROSPECTIVE JUROR:  Yes.

5           MR. KESSLER:  Would you agree that you should

6     decide this case not upon the indictment or not

7     upon anything else but what you hear from this

8     witness stand right in this courtroom; would that

9     make sense to you?

10          PROSPECTIVE JUROR:  Yes.

11          MR. KESSLER:  Can you do that?

12          PROSPECTIVE JUROR:  Yes.

13          MR. KESSLER:  Thanks.  Miss Dimisa?

14          PROSPECTIVE JUROR 3:  Yes?

15          MR. KESSLER:  How are you?

16          PROSPECTIVE JUROR:  Fine.

17          MR. KESSLER:  Understand what I'm getting at?

18          PROSPECTIVE JUROR:  Yeah.

19          MR. KESSLER:  College student?

20          PROSPECTIVE JUROR:  Yes.

21          MR. KESSLER:  Studying?

22          PROSPECTIVE JUROR:  Physical therapy.

23          MR. KESSLER:  Physical therapy, is that in

24     college?

25          PROSPECTIVE JUROR:  Yes.

1          Voir Dire                           103

2          MR. KESSLER:  Studying to be a physical

3      therapist?

4          PROSPECTIVE JUROR:  Yep.

5          MR. KESSLER:  Talking about fair and

6      impartial jurors, deciding it on the facts, the

7      law and the evidence, consider yourself a fair

8      person?

9          PROSPECTIVE JUROR:  For the most part, yeah.

10         MR. KESSLER:  Person comes in here, says

11     certain things, what are you going to look for in

12     that person as to whether or not that person is

13     telling the truth?

14         PROSPECTIVE JUROR:  I have to go by what they

15     say.  You know, they are supposed to tell the

16     truth when they are and that's what I have to

17     believe.

18         MR. KESSLER:  People can lie, people can make

19     mistakes?

20         PROSPECTIVE JUROR:  Correct.

21         MR. KESSLER:  Understand your job as jurors?

22     If someone testifies obviously there's three

23     options, either lying, telling the truth or

24     making a mistake.  Do you think you have the

25     common sense and ability to determine that when

| | |
|---|---|
| 1 | Voir Dire                                        104 |
| 2 | someone testifies in this case? |
| 3 | PROSPECTIVE JUROR:  Yeah. |
| 4 | MR. KESSLER:  If I prove to you the |
| 5 | defendant's guilt beyond a reasonable doubt at |
| 6 | the end of this trial what's your verdict? |
| 7 | PROSPECTIVE JUROR 3:  Guilty. |
| 8 | MR. KESSLER:  If I fail to prove his guilt |
| 9 | beyond a reasonable doubt? |
| 10 | PROSPECTIVE JUROR:  Innocent. |
| 11 | MR. KESSLER:  Not guilty? |
| 12 | PROSPECTIVE JUROR:  Right. |
| 13 | MR. KESSLER:  Any problem with that? |
| 14 | PROSPECTIVE JUROR 3:  No. |
| 15 | MR. KESSLER:  Okay.  What about -- understand |
| 16 | during this trial there may be testimony |
| 17 | concerning rape as one of the charges? |
| 18 | PROSPECTIVE JUROR:  Yes. |
| 19 | MR. KESSLER:  Not pleasant, right? |
| 20 | PROSPECTIVE JUROR:  No. |
| 21 | MR. KESSLER:  Understand as jurors you have |
| 22 | an obligation to listen closely to every part of |
| 23 | the testimony, the part you like and the part you |
| 24 | don't like to hear about, but you have to |
| 25 | evaluate it, understand? |

1

2          PROSPECTIVE JUROR:  Yes.

3          MR. KESSLER:  Can you do that?

4          PROSPECTIVE JUROR 3:  I can try.

5          MR. KESSLER:  That's all I'm asking.  My

6      question is:  Have you ever spoken to anyone

7      about rape before?

8          PROSPECTIVE JUROR:  Yes.

9          MR. KESSLER:  Someone you knew?

10         PROSPECTIVE JUROR:  Yes.

11         MR. KESSLER:  Was it easy for that person to

12     talk about it?

13         PROSPECTIVE JUROR:  To me, yes.

14         MR. KESSLER:  How about strangers?

15         PROSPECTIVE JUROR:  No.

16         MR. KESSLER:  Do you think that a person who

17     comes into a courtroom like this and talks about

18     this to strangers might be nervous?

19         PROSPECTIVE JUROR:  Yes.

20         MR. KESSLER:  You a little nervous talking to

21     me right now?

22         PROSPECTIVE JUROR:  No.

23         MR. KESSLER:  The person you spoke to about

24     being raped before, let me ask you this:  Do you

25     think rape occurs in front of a lot of people?

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 136 of 157 PageID #: 716

1

2      PROSPECTIVE JUROR:  It can.  But I don't

3      think it does.

4          MR. KESSLER:  Let's suppose one witness comes

5      into this courtroom and tells you she was raped,

6      obviously not anyone else in the room at the

7      time.  Do you have any problem convicting someone

8      solely upon the word of that one person if you

9      believe that person?

10         PROSPECTIVE JUROR:  Convict someone on one

11     person's testimony?

12         MR. KESSLER:  Yes.

13         PROSPECTIVE JUROR:  I think it's possible.

14     Depends on what they say.  Depends on their

15     story.  Can't just take one person.

16         MR. KESSLER:  Let me ask you this.  Suppose

17     you're walking down the street and someone points

18     a gun at you, takes your money, you are the only

19     witness to the crime, would you expect the police

20     to arrest that person?

21         PROSPECTIVE JUROR:  Definitely.

22         MR. KESSLER:  Expect the DA's office to

23     prosecute?

24         PROSPECTIVE JUROR:  Yes.

25         MR. KESSLER:  Do you expect a jury to

2      convict?

3              PROSPECTIVE JUROR:  Yes.

4              MR. KESSLER:  That's one person's word.

5              PROSPECTIVE JUROR:  Yes.

6              MR. KESSLER:  Possible to do?

7              PROSPECTIVE JUROR:  Yes.

8              MR. KESSLER:  Would you agree with that, Miss

9      Dookwah?

10             PROSPECTIVE JUROR 10:  Well, not really.

11             MR. KESSLER:  Not crazy about one person's

12     word?  Sorry, I can't hear you.

13             PROSPECTIVE JUROR 10:  I said it depends on

14     the circumstances.

15             MR. KESSLER:  One person comes into this

16     courtroom, let's say, a robbery case.  They tell

17     you I was robbed.  Let's take Miss Dimisa, I'll

18     bother you for one second.  She tells you she was

19     robbed at gunpoint.  She's the witness on the

20     case and says that's person that did it.  You say

21     I can't convict based on her word alone, I need

22     additional things?

23             PROSPECTIVE JUROR 10:  You need additional --

24             MR. KESSLER:  Is that your opinion or is that

25     the law, because the law doesn't require anymore

MB

Voir Dire                                    108

than one.  I want to know if it's in your heart

that you need more than one person's word.

PROSPECTIVE JUROR 10:  I think you need more

than one person's word to get a conviction.

MR. KESSLER:  How about you, Mr. Nealon,

agree with that?

PROSPECTIVE JUROR 9:  I think I'd look for

more evidence to sustain the fact.

MR. KESSLER:  I'm talking about that simple

robbery case.  Someone points a gun, you're the

only person on the street, you later see that

person, you want the police to arrest that person

jurors want more than one person's word.

PROSPECTIVE JUROR 9:  If I filed a complaint

and he was arrested I think I'd pick him out of a

line-up.

MR. KESSLER:  Whatever.  You're the only

person, do you have any problem convicting

somebody based on one person's word if you

believe that person to be truthful and credible?

That's my question.

PROSPECTIVE JUROR 9:  If I believe.

MR. SCHECTER:  Objection, your Honor.  It has

to be proof beyond a reasonable doubt.

THE COURT:  Add reasonable doubt.

MR. KESSLER:  Truthful, credible and you believe them beyond a reasonable doubt.

PROSPECTIVE JUROR 9:  I would have to convict him.

MR. KESSLER:  So, in this case, if a woman comes in here and tells you she was raped, only person in the room at the time with the defendant, and you believe her to be truthful and credible and beyond a reasonable doubt, would you have any problem walking into this courtroom and finding the defendant guilty?

PROSPECTIVE JUROR 9:  Based solely on her word I would say I would have a problem.

MR. KESSLER:  What's your problem with that?

PROSPECTIVE JUROR:  I just said before, people can lie.

MR. KESSLER:  Absolutely.

PROSPECTIVE JUROR:  I hope there would be more evidence for me to -- beyond a reasonable doubt.

MR. KESSLER:  What if the Judge tells you that it's not the -- I could put twenty witnesses on the stand and not prove this case beyond a

reasonable doubt and I could put one witness on

the stand and prove it. It's not the quantity

but the quality of evidence, would you agree with

that statement?

PROSPECTIVE JUROR 9: That's how I was had,

yes.

MR. KESSLER: But you still have a problem

convicting based solely upon the word of one

person?

PROSPECTIVE JUROR: Yeah.

MR. KESSLER: And even though you're robbed

at gunpoint, you're the only person, and you pick

that person out of a line-up, you wouldn't expect

a jury of twelve to convict that person. You

have no problem letting this person free?

PROSPECTIVE JUROR 9: If I picked -- if I got

robbed, I picked the person out in a line-up and

it would be up to the jury to decide. I have

nothing to say about it. If I picked the guy out

I'm perjuring myself putting out an arrest

warrant for him.

MR. KESSLER: I'm trying to reverse it on

you. You have a problem convicting based solely

on one person, but when you're the person robbed

1

2       you would want the police to take action and a

3       jury to believe you, but you don't want someone

4       like you on the jury.  Maybe I'm mistaken.  I'm

5       not really sure.

6            PROSPECTIVE JUROR 9:  Like I said, I have to

7       hear the evidence.

8            MR. KESSLER:  Okay.  Miss Sherman, understand

9       what I'm getting at?

10           PROSPECTIVE JUROR 11:  Yes.

11           MR. KESSLER:  Do you have any problem with

12      that concept, if a witness comes in, tells you I

13      was raped, I was in a room alone and you believe

14      that person to be truthful and credible beyond a

15      reasonable doubt, do you have any problem

16      convicting based solely on her word?

17           PROSPECTIVE JUROR 11:  No.

18           MR. KESSLER:  Miss Diazvilla?

19           PROSPECTIVE JUROR 12:  Definitely.  I have to

20      agree with what she said.

21           THE COURT:  You have to speak up.

22           PROSPECTIVE JUROR 12:  I would agree.

23           MR. KESSLER:  With Miss Sherman?  How about

24      you.

25           PROSPECTIVE JUROR:  I would have to hear both

1
2      sides and I have to hear the other party's.

3      testimony.

4          MR. KESSLER:  The Judge told you the

5      defendant has no burden of proof and they don't

6      have to put on a case.  They don't have to do a

7      thing, rests solely upon me.  At the end of this

8      case you may only hear one side of the story.

9      You have to decide it based upon the evidence you

10     hear here.  Let's suppose this case you don't

11     hear from the other side and you hear one

12     person's testimony.  You believe that person to

13     be truthful and credible; she's the only witness

14     to this rape.  Do you have any problem convicting

15     the defendant based solely on that witness's

16     word?

17         PROSPECTIVE JUROR 13:  If there's only one

18     party involved?

19         MR. KESSLER:  She comes in, tells you I was

20     raped, this is the person that did this.  You

21     believe this person to be truthful and credible

22     beyond a reasonable doubt.  Some people have said

23     I need more than one person's word.  For whatever

24     reason that's not the law, but they feel in their

25     heart of hearts they have a problem with that.

MB

Voir Dire                                    113

There's nothing wrong with that.  But,

unfortunately, that's not the law.  And they may

not be a perfect juror on this case.

      So my question to you is simply, are you one

of those type of people or can you say I can

convict based solely on that one person's word?

      PROSPECTIVE JUROR 13:  With the evidence,

yes, if there's no other witness.  If that's just

one party, yes, by the evidence and their word.

      MR. KESSLER:  You know what I used about

being robbed?

      PROSPECTIVE JUROR:  With me if I was robbed?

Yes.  I would convict that person because I saw

that person and it happened to me.

      MR. KESSLER:  I'm saying could you believe --

      PROSPECTIVE JUROR 13:  With the evidence,

yes.

      MR. KESSLER:  There's other truthful people

out there swell.  Some people may lie.  You have

to judge that in this case.

      PROSPECTIVE JUROR 13:  Right, based on the

evidence and what she says.  Yes.

      MR. KESSLER:  Okay.  Miss Serrano, how are

you?

Case 1:16-cv-01166-RdP Document 8-4 Filed 11/30/16 Page 144 of 157 PageID #: 724

PROSPECTIVE JUROR 5:  Fine.

MR. KESSLER:  I don't want to be repetitive. You know what I'm getting at.  You're a legal assistant?

PROSPECTIVE JUROR:  Yes.

MR. KESSLER:  What kind to corporation or law firm?

PROSPECTIVE JUROR 5:  Law firm.

MR. KESSLER:  What kind of law?

PROSPECTIVE JUROR 5:  Criminal.

MR. KESSLER:  Do you handle criminal matters for them?  Do you ever go to Court?

PROSPECTIVE JUROR 5:  Once.  Basically I serve as a translator.

MR. KESSLER:  Spanish?

PROSPECTIVE JUROR:  Yes.

MR. KESSLER:  You mostly act as an interpreter?

PROSPECTIVE JUROR:  Yes.

MR. KESSLER:  Have you ever acted as an interpreter for people who have been accused of crimes?

PROSPECTIVE JUROR 5:  Yes.

MR. KESSLER:  Do you think that would in any

way affect you in this case?

PROSPECTIVE JUROR 5: I believe the fact that
I work for a law firm I could not be fair and
impartial.

MR. KESSLER: Tell me why?

PROSPECTIVE JUROR: Based on the fact I work
for a law firm I could not be fair and impartial.

MR. KESSLER: Is there a reason? You want to
tell us in private?

THE COURT: Step up.

(Discussion held at bench off the
record)

MR. KESSLER: Mr. Wilson, how are you?

PROSPECTIVE JUROR 14: Fine.

MR. KESSLER: First time as a juror?

PROSPECTIVE JUROR: Yes.

MR. KESSLER: What do you think?

PROSPECTIVE JUROR 14: What do you mean?

MR. KESSLER: How do you think the process is
going so far for you, do you like it?

PROSPECTIVE JUROR 14: It's okay. Kind of
slow but it's all right.

MR. KESSLER: I've been talking about this
concept with some people. Have a problem

Case 1:16-cv-01166-RJD Document 8-4 Filed 11/30/16 Page 146 of 157 PageID #: 726

convicting on one person's word? Do you have a

problem?

PROSPECTIVE JUROR 14: I don't have a problem

with it.

MR. KESSLER: Okay. Have you ever had any

contact with the New York City Police Department?

PROSPECTIVE JUROR 14: No.

MR. KESSLER: Have you had any contact with

the -- have you ever been outside the country,

United States?

PROSPECTIVE JUROR 14: Yeah, I've been

outside the country.

MR. KESSLER: Why I bring it up, some of my

witnesses in this case may need a translator,

they don't speak English as their native

language. And is that going to cause you any

problem at all?

PROSPECTIVE JUROR 14: You mean the

translator?

MR. KESSLER: You'll hear the testimony.

They are going to say it, but unfortunately it

will need to be interpreted into the English

language.

PROSPECTIVE JUROR: I have no problem.

MB

1

2          MR. KESSLER:  If you were to leave this

3     country and be a victim of crime, of another

4     crime, most likely you would need a translator if

5     it came before a juror of their peers?

6          PROSPECTIVE JUROR 14:  Uh-hum.

7          MR. KESSLER:  What about sitting on this

8     case, any reason you can't be fair to both sides?

9          PROSPECTIVE JUROR 14:  No.

10          MR. KESSLER:  Thank you.  Mr. Spardel?

11          PROSPECTIVE JUROR 15:  Yes?

12          MR. KESSLER:  Maybe I didn't hear, you drive

13     a truck?

14          PROSPECTIVE JUROR:  No.

15          MR. KESSLER:  For a living?

16          PROSPECTIVE JUROR:  Construction.

17          MR. KESSLER:  How long have you been doing

18     that?

19          PROSPECTIVE JUROR 15:  Two months.  Just

20     started.

21          MR. KESSLER:  What did you do before that?

22          PROSPECTIVE JUROR:  Student.

23          MR. KESSLER:  What did you study?

24          PROSPECTIVE JUROR:  Education.

25          MR. KESSLER:  We have been talking about a

couple of concepts, any problem with anything I

mentioned so far?

PROSPECTIVE JUROR:  Not at all.

MR. KESSLER:  If I prove to you the

defendant's guilt beyond a reasonable doubt

what's your verdict?

PROSPECTIVE JUROR 15:  Guilty.

MR. KESSLER:  If I fail to prove it?

PROSPECTIVE JUROR:  Not guilty.

MR. KESSLER:  Can you let the cards fall as

they may?

PROSPECTIVE JUROR:  Definitely.

MR. KESSLER:  Suppose you're chosen and one

of the jurors comes up to you and says, you know

what I believe, the District Attorney proved his

case beyond a reasonable doubt, the defendant is

guilty as charged, but when I look over there he

doesn't look like someone who would do something

like this, what would you say to that juror?

PROSPECTIVE JUROR 15:  I don't know

specifically what a criminal looks like.

MR. KESSLER:  Come in all ages?

PROSPECTIVE JUROR:  Basically.

MR. KESSLER:  Race, creed, backgrounds?

1

2        PROSPECTIVE JUROR:  Uh-hum, basically.

3        MR. KESSLER:  Would you agree with me you

4    should not base this case on anyone's looks but

5    on the evidence, make sense?

6        PROSPECTIVE JUROR 15:  Yes.

7        MR. KESSLER:  Miss Hsieh?

8        PROSPECTIVE JUROR 16:  Yes?

9        MR. KESSLER:  How are you?

10       PROSPECTIVE JUROR 16:  Fine.

11       MR. KESSLER:  You work?  You're a housewife?

12       PROSPECTIVE JUROR:  No, I work in the lab.

13       MR. KESSLER:  I thought you were married and

14   your husband works in a lab?

15       PROSPECTIVE JUROR:  Yes.

16       MR. KESSLER:  You're married?

17       PROSPECTIVE JUROR:  Yes.

18       MR. KESSLER:  What does your husband do?

19       PROSPECTIVE JUROR:  He works in the lab.

20       MR. KESSLER:  What type of lab?

21       PROSPECTIVE JUROR:  I run blood tests for a

22   clinical lab.  I have an AOS.

23       MR. KESSLER:  What about you?  Any problem

24   convicting solely upon the testimony of one

25   person if you believe that person to be truthful?

Voir Dire                                    120

PROSPECTIVE JUROR 16:  I don't think I can.

THE COURT:  The Court Reporter can't hear

you.

PROSPECTIVE JUROR 16:  Can I talk in private?

THE COURT:  Step up.

(Discussion held at bench off the record)

MR. KESSLER:  Mr. Lynch, how are you?

PROSPECTIVE JUROR 7:  All right.

MR. KESSLER:  Have you ever been on a jury

before?

PROSPECTIVE JUROR 7:  No.

MR. KESSLER:  First time?

PROSPECTIVE JUROR:  Yes.

MR. KESSLER:  What do you think so far?

PROSPECTIVE JUROR:  I don't know.

MR. KESSLER:  You're not sure?

PROSPECTIVE JUROR 7:  No.

MR. KESSLER:  One of the questions was, can

you be fair and impartial on this case.  What do

you think?

PROSPECTIVE JUROR 7:  Yes.

MR. HAGGERTY:  What makes you believe you can

be fair and impartial?

PROSPECTIVE JUROR 7:  If you proof beyond a

1          Voir Dire                    121

2     reasonable doubt guilt or innocence.

3          MR. KESSLER:  What qualities do you think

4     makes you be a fair person?

5          PROSPECTIVE JUROR 7:  My judgment.

6          MR. KESSLER:  You're how old?

7          PROSPECTIVE JUROR:  Fifty four.

8          MR. KESSLER:  Do you know that fifty four

9     years of common sense that you have behind you,

10    do you think you could use that in deciding this

11    case?

12         PROSPECTIVE JUROR 7:  Yes.

13         MR. KESSLER:  Do you think that's probably

14    the most important thing you bring to this

15    courtroom?

16         PROSPECTIVE JUROR:  Yes.

17         MR. KESSLER:  Thank you.  Any problem with

18    this concept I've been talking about, one person

19    testifying if you believe that persons's

20    truthfulness?  Do you have any problem convicting

21    if I prove it beyond a reasonable doubt?

22         PROSPECTIVE JUROR:  One of the jurors said

23    you have to hear both sides.

24         MR. KESSLER:  I explained it.  Sometimes in a

25    Court of law the defense doesn't have to put on

```
 1                          Voir Dire                   122

 2          any witnesses so you have to base it on one side,

 3          understand what I'm saying?

 4                  PROSPECTIVE JUROR:  Yes.

 5                  MR. KESSLER:  My question is:  If you hear

 6          that one side, say it's one witness, and you

 7          believe that witness to be truthful and credible

 8          and I prove everything I have to through that

 9          witness, do you have any problem convicting

10          solely upon her word alone?

11                  PROSPECTIVE JUROR 7:  Yes.

12                  MR. KESSLER:  You have a problem or you have

13          no problem?

14                  PROSPECTIVE JUROR 7:  I have no problem.

15                  MR. KESSLER:  Terrific.  You can decide this

16          case fairly?

17                  PROSPECTIVE JUROR 7:  Yes.

18                  MR. KESSLER:  Miss Teng?

19                  PROSPECTIVE JUROR 6:  I see --

20                  THE COURT:  Want to step up here, please,

21          ma'am?

22                  (Discussion held at bench off the record)

23                  MR. KESSLER:  Miss Hanley, how are you?

24                  PROSPECTIVE JUROR 2:  Fine, thank you.

25                  MR. KESSLER:  I spoke to everyone but you.
```

Voir Dire                                123

Hope you don't feel bad?  You work as a
secretary, what type of place is that?

    PROSPECTIVE JUROR 2:  Forms distributor.

    MR. KESSLER:  How long have you been doing
that type of work?

    PROSPECTIVE JUROR:  Been working there for
six years.

    MR. KESSLER:  Any problems with the concept
I've been talking about, about convicting someone
based solely on one person's word?

    PROSPECTIVE JUROR 2:  No, I don't have a
problem with that.  I do have a bit of a problem
when you said that he may not get up on the
witness stand.  It seems sort of like unfinished
business.

    MR. KESSLER:  The Judge has told you in the
beginning of this trial that I have the burden of
proof and I must prove the defendant's guilt
beyond a reasonable doubt, that's how this Court
of law works, understand that?

    PROSPECTIVE JUROR 2:  Right.

    MR. KESSLER:  I gave the example yesterday if
I were to shoot someone in front of you twelve
people I would have a trial and be presumed

| | |
|---|---|
| 1 | Voir Dire                                    124 |
| 2 | innocent and the State must prove me guilty |
| 3 | beyond a reasonable doubt; would you agree with |
| 4 | that concept of law? |
| 5 | PROSPECTIVE JUROR: Of course. |
| 6 | MR. KESSLER: The other concept is, the Judge |
| 7 | will tell you the defendant has no burden of |
| 8 | proof. I must prove his guilt, would you agree |
| 9 | with that? |
| 10 | PROSPECTIVE JUROR: I understand it all. |
| 11 | Logically, I'm just saying. |
| 12 | MR. KESSLER: Let me finish. So my last |
| 13 | point is, if you do not hear from the defense |
| 14 | side the Judge will tell you you can't consider |
| 15 | that and you must decide this case based on what |
| 16 | you hear and the facts and the evidence you heard |
| 17 | in this case. Can you follow the Judge's |
| 18 | instructions on the law? |
| 19 | PROSPECTIVE JUROR: Certainly. |
| 20 | MR. KESSLER: That's all it is. He will tell |
| 21 | you what the law is. You may not like it, you |
| 22 | may not agree with some of the law, you may want |
| 23 | it changed. The bottom line is he's the law in |
| 24 | this courtroom. |
| 25 | THE COURT: No, I just tell them what the law |

MB

Voir Dire                                        125

is in this courtroom.  The legislature decides

what the law is.

    MR. KESSLER:  Only thing you have to assure

us, no matter what the Judge tells you the law

is, you will follow it, okay, whether you agree

with it or not, can you do that?

    PROSPECTIVE JUROR 2:  Sure.

    MR. HAGGERTY:  If I prove to you the

defendant's guilt beyond a reasonable doubt,

what's your verdict?

    PROSPECTIVE JUROR:  Guilty.

    MR. KESSLER:  If I fail to prove his guilt

beyond a reasonable doubt?

    PROSPECTIVE JUROR 2:  Not guilty.

    MR. KESSLER:  Great, great.  Okay.  Anyone?

    THE COURT:  I knew you missed him.

    MR. KESSLER:  Mr. Jassal, you're a full-time

student, what type of studies?

    PROSPECTIVE JUROR 8:  Chemistry.

    MR. KESSLER:  You're going for a B.S. in

chemistry?

    PROSPECTIVE JUROR:  Yes.

    MR. KESSLER:  Are you planning any type of

graduate work after that?

PROSPECTIVE JUROR 8:  Possibly.

MR. KESSLER:  Also in chemistry?

PROSPECTIVE JUROR:  Maybe medicine.

MR. KESSLER:  You indicated, I think, the

last question you believed you'd be fair?

PROSPECTIVE JUROR 8:  Yes.  That was due to

another question previously.  I believe it's

number 15, about religion.

MR. KESSLER:  Something about religion?

PROSPECTIVE JUROR:  Had something to do with

the answer of my question.

MR. KESSLER:  There's something in your

religious beliefs that may cause you --

PROSPECTIVE JUROR 8:  I consider myself a

religious person and I hold strict, ethical and

moral values.  They may infringe upon my decision

in this case.

MR. KESSLER:  Okay.  I think I've spoken to

everyone.  Miss Harris, you're an operator for

9-1-1?

PROSPECTIVE JUROR 13:  Yes.

MR. KESSLER:  You receive phone calls from

people?

PROSPECTIVE JUROR 13:  Yes.

1

2              MR. KESSLER:  Dispatch police out?

3              PROSPECTIVE JUROR 13:  Yes.

4              MR. KESSLER:  Did you ever work specifically

5        with the major case division of the New York City

6        Police Department?

7              PROSPECTIVE JUROR 13:  No.

8              MR. KESSLER:  Do you know who they are?  Have

9        you ever heard of them or worked with them?

10             PROSPECTIVE JUROR 13:  No, I just work as a

11        9-1-1 operator.

12             MR. KESSLER:  You don't know anyone in

13        particular in the major case division?

14             PROSPECTIVE JUROR 13:  No.

15             MR. KESSLER:  Anything about your background

16        that would cause you not to be fair and

17        impartial?

18             PROSPECTIVE JUROR 13:  No problem.

19             MR. KESSLER:  The Judge in this case will

20        instruct you, know one is given any more

21        credibility than anyone else.  Someone comes in

22        as a priest, a police officer, they are treated

23        the same as anybody who may be homeless or less

24        educated.

25             PROSPECTIVE JUROR 13:  No problem.