| | |
|---|---|
| 1 | Summation - Defendant          1020 |

2    recovered in the house.  Both females

3    testified that there were at least two guns

4    in the house.  There were two guns during

5    this entire incident.  But two guns were not

6    produced here.  There is only one gun that

7    was allegedly found in that house.  And with

8    that gun we are not even sure that that gun

9    was used during this incident.

10         I submit to you that my client, Zheng

11   Hai Guang, never possessed a gun, never

12   threatened anyone with a gun, and never

13   showed it to either of the females.

14         The two females said that the passenger

15   of the car, Ak Guan, was the one who was the

16   person who had the gun, who pointed it at

17   them when the car was originally stopped near

18   Kennedy Airport.  He was the one who then --

19   when Qin Zheng came to the house, he was the

20   one who then gave the gun to the other guy.

21   My client, Zheng Hai Guang, never possessed a

22   gun and never had a gun.

23         In fact, if you remember, he even

24   testified on cross examination that when he

25   was questioning Qin Zheng about making the

1                    Summation - Defendant              1021

2        phone calls and requesting money, he was

3        threatened with death if he does not continue

4        to partake in this and make those phone calls

5        to request ransom.

6            My client was afraid for his life during

7        this time because he had a gun pointed at him

8        as well as some of the females did.  And

9        that's why he did what he had to do.  And I

10       ask you to consider that when evaluating the

11       testimony of the two females.  There was only

12       one gun found.  If my client had a gun,

13       ladies and gentlemen, he would not have

14       gotten rid of it during this incident.  It

15       would have either been discovered on him in

16       the car or in the house.  It was not.  There

17       was only one weapon that was produced during

18       the course of this trial.

19           Mr. Kessler will tell you, and stand up

20       there and tell you, my client had the gun.

21       There would be another simple way for them to

22       confirm that my client possessed that weapon

23       that was produced here.  Send it to a

24       laboratory for fingerprinting evidence.  Then

25       if that's the gun my client possessed, very

```
 1                  Summation - Defendant          1022
 2        simple, his fingerprints would be on that
 3        gun.
 4.            Ladies and gentlemen, I submit to you,
 5        did you hear any evidence that my client's
 6        fingerprints were on that weapon?  I did not.
 7        Let's remember, your memory controls.  I
 8        submit to you the reason that we did not hear
 9        it is my client's fingerprints were not on
10        that weapon.  The burden is on the People to
11        prove my client guilty beyond a reasonable
12        doubt.  This gives you more reasonable doubt.
13            Now, the People produced this weapon.
14        And you can look at this weapon.  But did you
15        hear testimony from anyone that this was the
16        weapon that was used, shown, and displayed to
17        them?  The two females took the witness stand
18        during the course of this trial.  Neither one
19        of them ever looked at this weapon and said,
20        yes, this was the weapon, the person who held
21        us -- that this was the weapon that was
22        displayed to us.  There was no testimony ever
23        from either of the two females that this was
24        the weapon that was used against them.
25            Well, one can argue you know,
```

1                    Summation - Defendant                1023

2          Mr. Schecter, you stated earlier that 15

3     months have gone by and people's memory may

4     not be that great.  They may not be able to

5     recognize that gun.  I submit to you that's

6     correct, but Detective Banks recovered,

7     allegedly recovered, that gun from that

8     apartment the night of the morning of April

9     2nd.  The two females were allegedly right

10    there by that basement apartment.

11          There's been no testimony, once again

12    from the witness stand, that he showed the

13    weapon to either of the two females, who at

14    that time on April 1st or April 2nd would

15    have been able to say, yes, this was the gun

16    that was used against us.  But, no, there's

17    been no testimony that this was the weapon.

18    Detective Banks never testified that either

19    woman ever identified this weapon as being

20    the one that was used against them.

21          I submit to you, ladies and gentlemen,

22    you cannot speculate this was the weapon.

23    They need real direct evidence pointing to

24    this weapon and saying, yes --

25          MR. KESSLER:  Judge, I object to him

1

2    instructing the jury what they need, what

3    they don't.

4        THE COURT:   Yes, I will instruct the

5    jury.

6        MR. SCHECTER:   I submit to you, ladies

7    and gentlemen, consider that when evaluating

8    the testimony of what occurred here, and

9    remember who the burden is on.   More

10   reasonable doubt, ladies and gentlemen, when

11   you're considering that.

12       The next point that I'd like to go over

13   with you is the allegations of the rape.

14   Now, in the indictment my client is accused

15   of raping each one of the two females.   He's

16   not charged with acting in concert to do

17   these rapes.   They specifically said he is

18   the one who did the rapes.

19       Now, the women could be mistaken about

20   the two weapons allegedly used, that my

21   client had a weapon and the other person had

22   weapons, and only one weapon is recovered.

23   What else could they be confused about?   Now,

24   my client on the witness stand told you that

25   he was insulted by Detective Ng when he said,

1

2    you raped the females. That in his mind the

3    biggest insult of this entire trial is that

4    he was accused of raping these females. And

5    he told you that.

6        With all the remembering that the burden

7    is on the People to prove my client guilty

8    beyond a reasonable doubt, and with all the

9    resources available to the People, it's very

10    simple. Mr. Hickey came in here and said

11    there was spermatozoa and semen found on

12    different parts. What can you do? Very

13    simple. Test it. Test the underwear. Test

14    the spermatozoa. Send it for DNA testing.

15    If it's my client, it's going to come back

16    positive, as being his, you know the genetic

17    traits, and everything will come back that

18    his DNA was found on this. But the People

19    did not do that. They had the burden of

20    proving him guilty beyond a reasonable doubt.

21    They have failed to do that as to these

22    charges.

23        The testing would show conclusively yes

24    or no what my client did or didn't do with

25    the two females. Now, also when dealing with

```
 1                 Summation - Defendant          1026
 2       the medical evidence -- and this all becomes
 3       very crucial, the medical evidence.  This is
 4       what you can really look at, scientific and
 5       medical evidence with the gun, fingerprints.
 6            But Mr. Hickey, the serologist, what
 7       does his report show?  What did he state?  He
 8       said Jin Hao Liu, who was the female who came
 9       from the house, the vaginal smears and
10       vaginal swabs tested negative for
11       spermatozoa, because there was no abuser of
12       her.  He said what tested positive were
13       panties.
14            As to Liu Yan Wu, the female whose
15       husband was Liu Guo Bang who came from China,
16       her vaginal smears tested her -- excuse me,
17       the vaginal swabs tested positive.  Why was
18       that?  She testified she had sexual relations
19       with her husband the day before she came from
20       Los Angeles.  And that is the reason why the
21       vaginal swab of hers tested positive for
22       spermatozoa.  The other female's -- nothing
23       vaginal tested positive for spermatozoa.
24            I submit to you if there had been a
25       rape, Jin Hao Liu's vaginal swab and smear
```

1                    Summation - Defendant        1027

2          would have tested positive for spermatozoa.

3          Then Mr. Hickey did state that the panties

4          tested positive for spermatozoa.

5               Look, ladies and gentlemen, once again

6          what is missing from that, that the panties

7          tested positive?  Did either of the two

8          females during this trial look at either set

9          of panties -- nothing's been produced before

10         you -- and say, these are my panties?  Do we

11         know where those panties were gotten?

12              The People have the burden of proving my

13         client guilty beyond a reasonable doubt.  And

14         ladies and gentlemen, I submit to you as to

15         the panties, it's very simple.  Show the

16         panties to the ladies.  Let them say, these

17         were the panties I was wearing that day.

18         Then you will know it.  Yes, they test

19         positive.  We don't know where these panties

20         came from, or whether they were even the

21         panties the ladies wore from March 31st to

22         April 2nd.  We don't know that because

23         there's been no testimony at this trial from

24         either of those two ladies saying that these

25         are their panties.  And they never saw the

1
2  panties and indicated that these are their
3  panties.
4      Ladies and gentlemen, the People are
5  completely deficient in their burden here of
6  proving the defendant guilty beyond a
7  reasonable doubt as to these charges of rape.
8  I would also submit to you one other thing
9  when dealing with Mr. Hickey's testimony.
10  And the panties would show, allegedly shows
11  spermatozoa.  If you remember what he said
12  when I asked him, the underwear, how long
13  would spermatozoa stay on it.  He said it
14  could stay on it for months and longer.
15      Now, we don't know where -- did he ever
16  testify that the spermatozoa was fresh or
17  new?  He doesn't know when it's from.  This
18  could be from months, months ago.  But that's
19  what the People would have you convicting on.
20  The People must show that Zheng Hai Guang's
21  intent in these two kidnappings was to abduct
22  the females for ransom on two of the counts.
23  He must show you his intent was to abduct the
24  females to terrorize them; on the other
25  count, his intent was to terrorize, it was to

1                      Summation - Defendant                1029

2       abduct them to sexually abuse them.

3              As to the kidnapping charges as to Liu

4       Guo Bang, I submit to you, you heard him

5       testify.  You heard what his descriptions

6       were.  My client was five foot six, when my

7       client is five ten.  You heard his entire

8       testimony.  I submit to you he didn't know

9       what was going on during this entire time.

10             The money was allegedly delivered to 217

11      Henry Street.  My client stated he didn't

12      know -- obviously he didn't know anyone

13      there.  It was Ak Guan and Qin Zheng whose

14      people were located at that address.  They

15      were the ones who were to share in the

16      ransom.  They were the ones to share in the

17      proceeds of this.  My client wasn't to share

18      in the ransom, because he didn't know anyone

19      there.  It was not any of his friends who

20      were there, who were to get the money.  Zheng

21      Hai Guang was never getting any of the

22      proceeds of the kidnapping.

23             Yes, I will tell you something.  He was

24      getting something much more important to him.

25      He was getting to live and spare the lives of

Summation - Defendant                     1030

his family.  That's what he was getting out

of this incident.  But he was not getting

anything from an alleged kidnapping or ransom

or terrorization or rape.  That's what he was

not getting.  He was getting something more

important than money, his life and the life

of his parents.

When evaluating his intent in the

incident, ladies and gentlemen of the jury,

you will see that his intent was not to

collect ransom, terrorize, or sexually abuse

anyone.  His intent was to stay alive and

keep his family alive.

My client took the witness stand.  He

said, ladies and gentlemen of the jury, and

told you what occurred, and the reasons why

he did things that occurred.  He told

Mr. Kessler, this is your chance to get me,

prove me guilty beyond a reasonable doubt.

Ladies and gentlemen, I submit to you that

Mr. Kessler failed to do that when he had the

cross examination of Zheng Hai Guang.  Zheng

Hai Guang's testimony is compelling and

sincere.

1

2          And I ask you, members of the jury, when

3     you go into that jury room listen to all the

4     evidence that was there.  Base your decision

5     on the evidence there.  And if you use this

6     in conjunction with the testimony of my

7     client, you would have but one verdict, and

8     that verdict is not guilty.  Thank you all.

9          THE COURT:  Mr. Kessler.

10          MR. KESSLER:  His testimony was

11     compelling and sincere?  Did you see this man

12     on the witness stand?  That was compelling?

13     That was sincere?  That was a joke.  Okay.

14     He got on the stand and told you a total

15     fabrication.  He was forced to do this

16     kidnapping.  He didn't want to do it.

17          You have got to be kidding me.  Look at

18     the evidence.  The evidence of his guilt in

19     this case is overwhelming.  He was caught at

20     the scene red-handed.  He was caught with his

21     hand in the cookie jar.  What else is he

22     going to say, I was forced to put my hand in

23     the cookie jar?  I never wanted to.  You have

24     got to be kidding me.

25          Look at the evidence.  Look at his words

Summation - People                    1032

1

2    in this case.  At the beginning of this trial

3    I told you the evidence in the case is going

4    to be overwhelming showing his guilt.  I told

5    you in this case, as to the kidnapping, he's

6    caught red-handed.  Not only did he kidnap

7    these two women, he raped them as well.

8         When you look at this case and you look

9    at the evidence with regard to the first

10   count, let's say the kidnapping for ransom,

11   three witnesses testify they were kidnapped

12   at gunpoint from a car service.  The police

13   hear him on the phone asking for the money.

14   The police track down where he is and then

15   see him with his accomplice walking out the

16   door with his two hostages.

17        He kidnapped the women in order to get

18   $15,000.  That's what he demanded.  He's

19   caught at the scene by the police, carrying

20   his two females out the door into his car.

21        The Judge is going to give you the law

22   on kidnapping.  He is going to tell you what

23   I must prove, every single element, all 8 or

24   9 of them.  And he will tell you any legal

25   defenses, anything legal that you must

|   |   |   |
|---|---|---|
| 1 | Summation - People | 1033 |

2      consider.  At no time during his charge will

3      he tell you that he had any legal reason for

4      him as a defense to do this.

5           MR. SCHECTER:  Objection, your Honor.

6           THE COURT:  Sustained.  I will tell the

7      jury --

8           MR. KESSLER:  If you have any doubt

9      whatsoever in your mind for one minute that

10     you think to yourself that he was forced to

11     do this and has a legal defense, all you have

12     to do is write the Judge a note --

13          MR. SCHECTER:  Objection to legal

14     defense.  Objection to the term "legal

15     defense."

16          THE COURT:  Sustained.

17          MR. KESSLER:  If you think for a moment

18     he was forced to do this, and that that is a

19     reason or justification, then all you have to

20     do is write the Judge a letter and say, was

21     this a legal reason based on the evidence?

22          MR. SCHECTER:  Objection.

23          THE COURT:  Objection sustained.

24          The jury will listen to the charge and

25     they will know what the law is.

1

2      MR. KESSLER:  When you listen to the

3   charge, listen very carefully.  And ask

4   yourselves at any point during the charge, is

5   this Judge going to instruct you that based

6   on the testimony here you must consider the

7   defense of duress, that he was forced to do

8   this?

9      MR. SCHECTER:  Objection.

10      THE COURT:  Sustained.

11      Go to something else, Mr. Kessler.

12      MR. KESSLER:  I'm asking you to decide

13   this case on the law and the evidence, not on

14   speculation, okay, not on guesses or whims,

15   based solely on the law and the evidence.

16   When you do that in this case, his intent --

17   Mr. Schecter talked about his intent was not

18   to kidnap these women, not to ask for ransom.

19   That's exactly what his intent was.  He

20   wanted to hold these women in order to gain

21   money for their release.

22      He was an active participant.  He was

23   not a passive participant.  He was an active

24   participant during this kidnapping.  He was

25   one of the two people that were there when

1

2      they were kidnapped initially at the airport.

3           Now, how do you know he is an active

4      participant, not that he is being forced

5      against his will to do this?  Because when he

6      is being recorded and taped, look at the

7      words he uses.  That tells you about his

8      intent.  Look at the words he uses when he

9      doesn't know he is being recorded.

10          Remember this line.  Correct, time is

11     up.  You better hurry or else I will sell or

12     bury them.  He doesn't say, they will sell or

13     bury them.  He says, I will sell or bury

14     them.  That shows you his intent.  He is an

15     active participant in this kidnapping.

16          Another line.  Now don't be clever

17     yourself, or I will kill them.  Again, not

18     they or other people will kill them, I will

19     kill them.

20          Another line.  Now, don't play any

21     foolish games.  If you do anything, I have

22     another person over there, and we will kill

23     them.

24          He is in charge.  He's not being forced

25     against his will.  He's threatening to kill

1
               Summation - People           1036

2
these two women and saying, I have even other

3
people here who will kill them.

4
    Another line he says -- this is the one

5
that really gets me -- in America there is no

6
such thing as they let people go free if they

7
have received the things.

8
    You know, he comes into the country, he

9
tells you, by paying this ransom or

10
something.  And now he is telling these

11
people on the phone about what things are

12
like in America.

13
    You know, he gets cloaked with this

14
presumption of innocence.  He has all these

15
rights, the right to remain silent.  These

16
women, when they walked into our County of

17
Queens, they had certain rights too.  They

18
had a right not to be kidnapped at gunpoint.

19
They had a right not to be taken to a home

20
away from their loved ones and be raped and

21
terrorized.  They have those rights.  He

22
violated those rights.  He kidnapped them.

23
He raped them.  He terrorized them.  He held

24
them at gunpoint.

25
    He put a gun to one of their heads.  He

1          Summation - People          1037

2     threatens their loved ones over the phone.

3     If you don't give me $15,000, I will kill

4     them and bury them.  That's a person who is

5     an active participant, who is looking for

6     money.

7          Look at the words he uses.  Remember one

8     point I asked him, you were concerned about

9     the police listening into this conversation.

10    Well, if he is being forced to do this

11    against his will, what is he worried about?

12    The police want to help them.  He is worried

13    about the police.  And the one thing, that

14    really is the key.  He is worried that some

15    of his money may be robbed, because they're

16    going into a bad neighborhood.  He is worried

17    that some of the money he wanted out of this

18    deal going to be taken by someone else.  This

19    man is an active participant.  He is not

20    passive.  He is not forced to do anything

21    against his will.

22         Mr. Schecter asked him, well, did you

23    ever see this guy Ye Guan do anything to

24    scare you?  Oh, sure, I saw him say insulting

25    words to Qin ones.  That's what he is saying

1

2  that scared him.

3      Direct and cross examination of his

4  statement.  Mr. Schecter spent a lot of time

5  on the defendant's statement.  You know, on

6  direct examination Mr. Schecter said to him,

7  well, did you speak to Detective Ng?  Yeah,

8  he says on direct.  Well, what else did

9  Detective Ng ask you?  He said, what

10 happened?  Then Mr. Schecter says, well, what

11 did you respond?  His response was, I really

12 don't know what happened.  That was it.  Now

13 we go to cross examination.  I asked him the

14 same kind of question.  All of a sudden, when

15 I start asking him questions, now he is

16 saying he wouldn't let me speak.  He really

17 wouldn't allow me to talk whatsoever.

18     When you think about this case, think

19 about those two women that you saw walk into

20 this courtroom and in front of you, 14

21 strangers, stand in this seat, raise their

22 right hand, swear to tell you the truth,

23 speak into this microphone, and tell you

24 about two days of terror for them --

25 repeatedly being raped, repeatedly being

1          Summation - People          1039

2     threatened, forced to speak on the phone.

3          Remember one of them had to speak on the

4     phone.  And I was asking the defendant about

5     that.  They were saying to their loved ones

6     on the phone, he's getting angry.  Listen to

7     what he has to say.  He's getting angry.

8     That is a person who is now upset because

9     this kidnapping is now going for maybe less

10    money than he initially planned.

11         Do you really think it was easy for

12    these two women to come into this courtroom

13    and talk about those rapes?  Think about that

14    for a second.  They have never met any of you

15    before.  They walk through that door.  They

16    take this witness stand.  They sit in this

17    chair and start talking about his penis going

18    into her vagina.  Do you think that's an easy

19    task?  If you think it's easy, try to stand

20    up in a courtroom and describe your last

21    sexual experience; who it was with, exactly

22    what you did.  See how easy that would be for

23    you to do.  And that was a consensual

24    experience with someone you cared for.  This

25    is ten times tougher.

```
 1                    Summation - People              1040

 2              So the bottom line on these women is

 3         they come into this courtroom.  You have to

 4         take their entire testimony and say, is this

 5         a person who I believe and is truthful, or is

 6         this a deceptive liar who is trying to pin a

 7         crime on this defendant?

 8              MR. SCHECTER:  Objection.

 9              MR. KESSLER:  Did he not commit --

10              THE COURT:  What is the objection?

11              MR. SCHECTER:  Deceptive liar.

12              THE COURT:  Well, he is asking the jury

13         to infer that, but use other language

14         Mr. Kessler.

15              MR. KESSLER:  That is your job with

16         these women.  Did they come in here and

17         totally testify falsely about these rapes,

18         meaning the entire incident, or were they

19         telling you the truth?  That's for you to

20         decide.  I submit to you, you know they were

21         telling you the truth, because you got a

22         chance to look at them, to evaluate them.

23              MR. SCHECTER:  Objection.

24              THE COURT:  Sustained.

25              MR. KESSLER:  Ask yourself -- if these
```

Summation - People          1041

1

2     rapes did not really occur and they are

3     making up the entire incident about the

4     rapes, ask yourselves, why would they?  Do

5     you think they get joy coming in here,

6     talking about their vaginas and his penis?

7     Think that's how they get their kicks?  What

8     motivation whatsoever do you have before you

9     that would make you believe they are making

10    up this entire incident about the rapes?

11              MR. SCHECTER:  Objection.

12              THE COURT:  Overruled.

13              MR. KESSLER:  I submit to you, they tell

14    you about them being kidnapped at gunpoint

15    and being held for a day and a half for

16    ransom.  And witnesses corroborate all of

17    that.  The police corroborate that.  Police

18    are listening in on those conversations.

19    They come.  They tell you they're at the

20    airport.  They tell you they were kidnapped

21    at gunpoint, held for over a day and a half.

22    They tell you that this man was one of the

23    kidnappers, that he threatened them, that he

24    was demanding money.

25              All those things are corroborated.  Ten

```
 1                      Summation - People              1042
 2          witnesses testified for the People.
 3          Detective Banks is corroborating the fact
 4          they were being held by this man, cause he
 5          arrests them right at the scene.  Detective
 6          Ng overheard the phone conversations.  Emily
 7          is dealing with him, trying to keep him on
 8          the phone as long as possible, so Detective
 9          Greene and his crew can finally find him and
10          his detectives can finally find where they're
11          being held.  Ask yourselves -- you saw both
12          Liu Yan Wu and Jin Hao Liu testify.  Ask
13          yourselves, were these young, shy, quiet 21
14          year old and 24 year old people, were they
15          manipulative liars who were making up half of
16          this story?
17               MR. SCHECTER:  Objection.
18               THE COURT:  Sustained.
19               MR. KESSLER:  When you talk about some
20          of the other detectives, Mr. Schecter talked
21          about Detective Ng, and that this entire
22          statement is made up.  You know, if Detective
23          Ng is going to sit up on the stand and lie
24          and make up this entire statement the
25          defendant never really said, then why not put
```

1

2    in the rapes?  You know what I mean?  He is

3    already up there lying.  Might as well throw

4    that in.  In for a penny, not in for a pound.

5    I mean, if he is going to risk his career and

6    his job and commit perjury on the stand and

7    make up this entire statement the defendant

8    stated, then why not throw in the rapes too?

9    And by the way, he also said he committed

10    these rapes and he is sorry.

11    If you remember, Detective Ng recognizes

12    not only defendant's voice, but he tells you

13    he didn't really interview the women before

14    he took the statement from the defendant.

15    And he tells you the first time he learns

16    there are three participants is not from the

17    women or something he knows, but he tells

18    him.  He is the first person that tells

19    Detective Ng there are really three people

20    involved in this.  Detective Ng said, I

21    didn't know anything about that before.

22    And you know Detective Greene, I submit

23    he did those scratch notes that he had from

24    the two women.  He says they're gone now, but

25    remember he took those scratch notes and made

1

2    them into a report.  Those aren't missing.

3    And that one page of the report we are

4    talking about of these hundreds of pages,

5    that one page of the report doesn't

6    involve -- I asked him -- anything that

7    happens on March 31st, or April 1st.  It's a

8    small portion that happens after the arrest.

9        I want to talk a little bit about this

10   thing with the fingerprinting and DNA for—

11   just a moment.  You know, this DNA stuff,

12   that's to find people when you have no

13   eyewitnesses, right.  If, for example, all of

14   a sudden someone is raped with someone with a

15   ski mask, you have no idea who it is.  Okay.

16       Now, we can find DNA, but when you have

17   people who aren't masked, who are in broad

18   daylight, who are with these women for a day

19   and a half, they know exactly who raped them.

20   He did.  He raped them.  There is semen in

21   their underwear.  One of the women still has

22   semen in her vagina.  I submit to you based

23   upon that you know these women aren't just

24   fabricating this entire thing about the

25   rapes.  Because, one, there is no reason for

1

2   them to, and two, what is the semen doing in

3   their underwear and in their vagina?  And you

4   know they're correct as to the person who

5   raped them, because he is never wearing a

6   mask.

7          They're with them for two days.  He's

8   caught red-handed at the scene, and both

9   women say the taller one, this man, and one

10  of them points him out in the courtroom, is

11  the one who raped me -- along with his

12  accomplice.

13         Can I just see the lineup photo for one

14  second.

15         There is another point to think about.

16  If you ever think for a moment these women

17  made up this entire rape, one of the women

18  came in here and did not identify the

19  defendant.  Remember that.  Looked around, I

20  don't really see him.  And the defendant

21  testifies on the stand.  And I asked him, by

22  the way, you have changed a little bit in the

23  15 months, haven't you?  Well, you used to

24  have a little beard, your hair is little

25  different.

Summation - People                1046

2    That's what he used to look like.  But

3    you ask yourselves this.  If that woman who

4    did not I.D. him is really making up this

5    entire incident about the rape and is

6    vindictive and wants to get him and convict

7    him for a crime he didn't commit, why not sit

8    here, point him out, and say he did it.  The

9    fact that she didn't I.D. him increases her

10   credibility.

11        MR. SCHECTER:  Objection.

12        THE COURT:  Sustained.  That's for the

13   jury to decide.

14        MR. KESSLER:  Think about it logically

15   for a moment.  If she really wasn't raped and

16   she is trying to pin a crime this defendant

17   did not do, point him out.

18        MR. SCHECTER:  Objection.

19        THE COURT:  Sustained.

20        MR. KESSLER:  She did say that the

21   taller of the two.  And you can see, remember

22   Qin Guang Zheng is number 6.  Defendant is

23   number 5.  You can see, substantially taller.

24   They're standing right next to each other.

25   She did tell you the taller one of the two

1
2    raped her.  She did tell you the taller one
3    was the one in the car driving.  She did tell
4    you the taller one of the two then got --
5    when we were released, was driving and
6    arrested by the police.  So we know it's him.
7         He even admitted himself he was there at
8    that house for those two days.  We are not
9    talking about a stranger.  Think about facts.
10   Think about the law.  Think about the
11   evidence in this case.  When you start
12   thinking about all those things, all these
13   witnesses, okay, piece after piece starts
14   coming together.
15       The evidence is overwhelming showing his
16   guilt.  Three different witnesses to the
17   kidnapping.  Guo Bang Liu, who testifies he
18   was kidnapped.  That's the kidnapping in the
19   second degree the Judge going to charge you
20   with.  Not only was he kidnapped for a short
21   amount of time, the two people, women who
22   were with him, were kidnapped as well.
23       We have ransom demands being heard by
24   the police, by Emily, who testifies she was
25   on the phone.  We have the police track down

1                  Summation - People          1048

2        this cellular phone, and cellular phones were

3        found all over the place; in the apartment,

4        in the car.  They tell you they were being

5        held at gunpoint.  Guns were found in the

6        place.

7           He is guilty of every single crime

8        charged in this indictment.  He kidnapped

9        both women for ransom.  He kidnapped Guo Bang

10      Liu for a short amount of time, and held him

11      against his will.  He raped both women.  He

12      terrorized both women.  Not only is he raping

13      them, his accomplice is raping them.

14          These women were in terror.  He holds a

15      gun to one of their heads and chokes her.

16      She is worried about her husband.  He could

17      care less.  Hold him responsible for his

18      actions.  He is responsible for the rape.

19      Hold him responsible for the rape.  He is

20      responsible for the kidnapping for ransom.

21      Hold him responsible for that.

22          At the end of this case the Judge is

23      going to charge you as to all the law you're

24      to consider in this case.  Your lunch has

25      been ordered.  Have a sandwich.  Discuss this

Jury Charge                    1049

1

2      case.  When you're finished with your lunch,

3      come back into this courtroom and hold the

4      defendant responsible for his actions.

5           MR. SCHECTER:  Objection.

6           THE COURT:  Sustained.  Their lunch

7      hasn't been ordered.

8           MR. KESSLER:  Have lunch.  Talk about

9      this case among yourselves.  Look at all the

10     evidence that's in this case.  When you're

11     finished, come back into this courtroom and

12     find the defendant guilty as to each and

13     every count.  If you do that, you will be

14     giving this defendant ten times more justice

15     than he ever gave the two women for those two

16     days.

17          MR. SCHECTER:  Objection.

18          MR. KESSLER:  I have nothing further.

19     Thank you.

20          THE COURT:  Ladies and gentlemen, you

21     have now heard all the testimony in this

22     case.  You have heard the summations of

23     counsel, and after my instructions to you as

24     to the law involved in this case, you will

25     retire to the jury room for your

1

2    deliberations.

3        And I shall try to simplify the issues

4    for you as much as I can.  I will first give

5    you the general principals of law which are

6    applicable to this and all criminal trials.

7    Then I will analyze the indictment and I'll

8    instruct you with respect to the material and

9    legal principals of law applicable to this

10   particular case, to the crimes involved in

11   this case which the defendant Hai Guang Zheng

12   is charged.

13       I will explain the application of the

14   law to the facts, and then after everything

15   has been submitted to you for your

16   consideration, you will retire to deliberate

17   and render your verdict as to whether the

18   defendant is guilty or not guilty.  I don't

19   intend to summarize the evidence or refer to

20   it to any greater extent than is necessary

21   for my explanation.

22       Now I will state some of these general

23   principals of law applicable to this and all

24   criminal cases.  You have heard them before,

25   but I will repeat them so they will be fresh

1                         Jury Charge                    1051

2       in your mind.  Now, you must accept these

3       principals, whether you agree with them or

4       not.  You have no discretion to depart from

5       the principals of law I will set forth.  For

6       you and I are sitting here together as

7       judges.  You are the judges of the facts.  I

8       am the judge of the law.

9            Now, the first and most important

10      principal for you to remember is that you are

11      the sole and exclusive judges of the facts in

12      this case.  In that capacity you must decide

13      the facts coolly, calmly and deliberately,

14      without fear, favor, prejudice or sympathy.

15      As the sole judge of the facts, it's your

16      sworn duty to decide whether the defendant is

17      guilty or not guilty solely on the evidence

18      admitted during the course of the trial, and

19      to pass judgment on it in determination of

20      all the issues before you.

21           You must not under, any circumstances,

22      indulge in speculation or guesswork, nor are

23      you to consider anything outside of the

24      evidence as you heard it in this courtroom.

25      In other words, don't try to be detectives.

1

2      Don't try to conjecture what you would do or

3      what should have been done or what might have

4      been done or could have been done.

5          Your own recollection, understanding,

6      and evaluation of the facts presented by the

7      evidence at this trial is what controls,

8      regardless of what counsel may have said

9      about the facts or what I may even say about

10     the facts.  Also you're not to consider

11     anything that I have said during the course

12     of the trial, nor any ruling I have made on

13     an objection by counsel, or anything I may

14     say during the course of this charge, as any

15     indication that I have an opinion on this

16     case.  I have none.  I have no power to tell

17     you what the facts are, or that one fact is

18     more important than another fact, or that a

19     witness may be truthful or untruthful.  These

20     are all matters within your own exclusive

21     power as the judges of the facts.

22         You are not bound to accept the

23     arguments of the respective counsel.  If you

24     find that any argument urged by either of

25     them is reasonable and logical based upon the

Jury Charge                    1053

1
2   evidence as you recall it, and is consistent

3   with that evidence, you are free to accept

4   that argument as your own and give it that

5   weight which you deem is advisable.  On the

6   other hand, if you find that any argument or

7   conclusion is not based on the evidence, or

8   that it is unreasonable, illogical, or

9   inconsistent with the evidence, you may

10  disregard that evidence entirely.

11       As to the law of the case, however, you

12  must not set your own conception or

13  preconceived notions of what the law should

14  be.  You must accept the law as I give it to

15  you, without reservation, and you must apply

16  the law as I give it to you for your guidance

17  in determination of the facts in this case.

18       Under our system of juris prudence, all

19  cases in this Court are initiated by way of

20  charges.  The charges are contained in the

21  indictment.  As I have already stated, an

22  indictment is merely a legal form by which a

23  crime is charged.  It is nothing more than an

24  accusation.  It has no evidentiary or

25  probative value whatsoever.  It is not

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jury Charge                    1054

evidence, nor does it prove anything.

Under our system, trials are conducted
by taking the testimony of witnesses who are
examined by the party calling them under oath
directly, and the adverse party then has the
right to cross-examine such witnesses after
the direct examination is complete.  The
sworn testimony elicited both on direct and
cross examination, plus whatever concessions
and stipulations were made during the course
of the trial or any exhibits which are
received and marked in evidence, is all the
evidence that there is in this case.  It is
only on this evidence that you are to make
the final determination of the facts.

Testimony which was stricken from the
record, or exhibits which were marked only
for identification, and the answers of
witnesses which you were instructed to
disregard, which were stricken, are to be
totally disregarded by you.  Each and every
one of you see has within his or her power to
draw proper reasonable and just inferences
from the testimony and to determine the

1
2          probabilities arising from the case after
3          carefully analyzing, weighing, and
4          considering all the testimony of each of the
5          witnesses who has testified during this
6          trial.
7                The defendant is entitled to every
8          inference in his favor which can reasonably
9          be drawn from the evidence.  Where two
10         inferences may be drawn from the evidence,
11         one consistent with guilt and one consistent
12         with innocence, the defendant is entitled to
13         the inference of innocence.  Other
14         considerations that may cross your minds,
15         such as sympathy or prejudice or bias of any
16         kind, are to be completely disregarded by
17         you.
18               Since you are the exclusive judges of
19         the facts, you have a duty to evaluate the
20         testimony.  It's your duty to determine the
21         credible testimony and to disregard any
22         testimony which is not credible.
23               Now, you recall the following witnesses
24         testified before you:  Guo Bang Liu, Jin Hao
25         Liu, Liu Yan Wu, Jin Zho Liu, Dr. Howard

1               Jury Charge             1056

2     Kurtz, Thomas Hickey, Detective Michael

3     Greene, Detective Kevin Streine, Detective

4     Keith Ng, Detective Steven Banks, and the

5     defendant, Hai Guang Zheng.  One of your

6     chief functions is to determine the

7     credibility of the witnesses, because the

8     facts depend upon the testimony of witnesses.

9     You alone have the power to say whether a

10    witness is truthful or untruthful and what

11    weight you should give to his or her

12    testimony.

13         In determining the credibility of any

14    witness, you should apply the same tests that

15    you use in your everyday activities at home

16    or at work, and draw from your life

17    experiences.  For example, you should

18    consider the personality and background of

19    the witness, the demeanor of the witness on

20    the witness stand, the reasonableness or

21    unreasonableness of the testimony, the basis

22    for the testimony, the opportunity that a

23    witness had to observe the situation about

24    which he or she testified, whether the

25    testimony is supported or contradicted by

1

2      other evidence, the interest or lack of

3      interest of the witness in the outcome of the

4      case, the motive to tell the truth or not to

5      tell the truth, the probability or

6      improbability of the testimony, and any other

7      tests which you have in determining whether a

8      witness is or is not telling the truth.

9          You have heard the witnesses in this

10     case; you have heard them examined and

11     cross-examined.  And in deciding this case,

12     you will consider their testimony just as if

13     you had heard it outside of this courtroom.

14     There is no rule that a jury has to adopt any

15     special test to determine credibility.

16         If you find that any witness has

17     willfully testified falsely as to any

18     material fact, the law permits you to

19     disregard the entire testimony of that

20     witness upon the principal that one who

21     testified falsely about one material fact is

22     likely to testify falsely about everything.

23     You are not required, however, to totally

24     disregard the testimony of such a witness.

25     You may accept so much of the testimony that

1                        Jury Charge              1058

2          you believe to be true and you may disregard

3          that portion which you believe to be false.

4          Remember, it's the quality of the testimony

5          that is controlling, not necessarily the

6          number of witnesses that testified for one

7          side or the other, or the quantity of the

8          testimony.

9              As I have said, questions in and of

10         themselves are not evidence.  It's the

11         question plus the answer that constitutes

12         evidence.  Inferences or suggestions

13         contained in a question do not make that a

14         fact when the answer negates the inference or

15         suggestion contained in the question.

16             Whenever any inconsistencies appear in

17         the testimony of a witness, it is your duty

18         to reconcile them, if you are honestly able

19         to do so.  You're not to reject the testimony

20         of any witness arbitrarily.  Whenever you

21         find conflicting testimony which you are not

22         able to reconcile, you may disregard that

23         which you deem exaggerated or mistaken or

24         willfully false and accept only that part

25         which you find you to be true.

1              Jury Charge.                1059

2                   In determining the credibility of any

3         witness, and the weight to be given by you to

4         that testimony, if any, you may consider the

5         interest of the witness in the outcome of the

6         trial.  A witness is an considered an

7         interested witness when, by reason of

8         relationship, friendship, antagonism, or

9         prejudice, in favor of or against one party

10        or the other, his or her testimony in your

11        judgment is in fact biased or likely to be

12        biased toward the side or party that he or

13        she favors.  If you find that any such

14        witness is an interested witness, you should

15        consider such interest in determining the

16        credibility of that testimony and the weight

17        to be given to it.

18                   The defendant testified in this case as

19        a witness in his own behalf.  A defendant is

20        of course an interested witness in the

21        outcome of the case.  You, as jurors, may

22        wish to keep such interest in mind in

23        determining the credibility and the weight to

24        be given to the defendant's testimony.

25                   A disinterested witness, on the other

1

Jury Charge                    1060

2      hand, is one who has no interest in the

3      outcome of the trial, a factor you may wish

4      to consider in determining the credibility

5      and weight of the testimony of such witness.

6      Further, there is no legal presumption that

7      an interested witness is necessarily lying,

8      nor is there any legal presumption that a

9      disinterested witness is necessarily telling

10     the truth.

11         In summary, you should not necessarily

12     reject the testimony of an interested witness

13     merely because of such interest, nor should

14     you accept the testimony of a disinterested

15     witness, merely because of that disinterest.

16         There has been testimony in this case by

17     certain police officers.  You must use the

18     same yardstick in measuring the credibility

19     and value of the testimony given by a police

20     officer that you will use to evaluate the

21     testimony of any other witness.  You must not

22     give it any greater, but not any lesser,

23     probative value, nor greater or lesser weight

24     and credence.  You will weigh the police

25     officer's testimony and credibility just as

Jury Charge                    1061

1
2          you weigh the credibility and the testimony
3          of any other witness.
4              Now, you are not only to consider the
5          testimony of the witnesses, but, in addition,
6          you are to consider any exhibits which have
7          been marked in evidence.  Some of them you
8          have seen during the course of the trial.
9          And should you wish to see the exhibits
10         during your deliberations, you may apply
11         through the foreperson of the jury for
12         permission to do so.  You do that in writing.
13         With respect to those items in evidence, you
14         should consider them and give them the weight
15         and value which you believe they are entitled
16         to in assisting you in determining the facts
17         in this case.
18             Under our system of justice, the
19         defendant in a criminal action is presumed to
20         be innocent until the contrary is proven
21         beyond a reasonable doubt.  That presumption
22         of innocence belongs to and remains with the
23         defendant throughout the trial and is his
24         until such time you, the jury, unanimously
25         agree that by reliable and credible evidence

| | Jury Charge | 1062 |

1

2     his guilt has been established to your

3     satisfaction beyond a reasonable doubt.   If

4     that times comes, the presumption of

5     innocence ceases and is no longer the

6     defendant's.  The burden of proving the

7     defendant's guilt rests at all times upon the

8     prosecution.  The defendant is never obliged

9     to prove his innocence.

10          I will now discuss with you the

11     constitutionally mandated standard of proof

12     in all criminal cases, that of proof of guilt

13     beyond a reasonable doubt.

14          The standard of proof required in every

15     criminal case is proof of guilt beyond a

16     reasonable doubt.  That standard, however,

17     does not require the People to prove the

18     defendant's guilt beyond all doubt, all

19     possibility of doubt, or beyond a shadow of a

20     doubt.  It requires the People prove and

21     establish the defendant's guilt beyond a

22     reasonable doubt.

23          Our law, therefore, requires that before

24     this jury may convict the defendant, each of

25     you must be satisfied that the credible

1

2    evidence is sufficient to convince you beyond

3    a reasonable doubt that the defendant is in

4    fact guilty.  The evidence must satisfy you

5    beyond a reasonable doubt that the defendant

6    is in fact the person who committed the crime

7    or crimes with which he is charged.  The

8    evidence must also establish beyond a

9    reasonable doubt each and every essential

10   element of the crimes charged, as I shall

11   later define such elements for you.

12       What does the law mean when it says or

13   requires proof of guilt beyond a reasonable

14   doubt?  When is a doubt of guilt a reasonable

15   doubt under our law?

16       A doubt of the defendant's guilt, to be

17   a reasonable doubt, must be a doubt for which

18   some reason can be given.  The doubt, to be a

19   reasonable doubt, therefore, must arise

20   because of the nature and quality of the

21   evidence in the case, or from the lack or

22   insufficiency of the evidence in the case.

23   The doubt, to be a reasonable doubt, should

24   be one which a reasonable person acting in a

25   matter of this importance would be likely to

1

2    entertain because of the evidence or because

3    of the lack of evidence or insufficiency of

4    the evidence in the case.

5        A doubt of guilt is not a reasonable

6    doubt if, instead of being based upon the

7    nature and quality of the evidence or

8    insufficiency of the evidence, it is based

9    upon some sort of guess or whim or

10   speculation unrelated to the evidence in the

11   case.  Also, a doubt of guilt is not a

12   reasonable doubt if the doubt is based merely

13   upon sympathy for the defendant or from a

14   mere desire by a juror to avoid doing what he

15   or she may feel is a disagreeable duty.  I

16   therefore repeat -- a doubt of defendant's

17   guilt to be a reasonable doubt must arise

18   either from the nature and quality of the

19   evidence in the case, or from the lack of or

20   insufficiency of the evidence in the case.

21   Therefore, the first duty of each juror is to

22   consider and weigh all the evidence in the

23   case and decide which you believe is credible

24   and worthy of your consideration.

25       The next duty of each juror is to

1               Jury Charge               1065

2     determine whether the juror has, in fact, a

3     reasonable doubt of the defendant's guilt, as

4     that term is defined in our law.   A

5     reasonable doubt, our law says, is an actual

6     doubt, one which you are conscious of having

7     in your mind after having considered all of

8     the evidence in the case.   If, after doing

9     so, you then feel uncertain and not fully

10    convinced of the defendant's guilt, and you

11    are also satisfied that in entertaining such

12    a doubt you are acting as a reasonable person

13    should act in a matter of this importance,

14    then that is a reasonable doubt of which the

15    defendant is entitled to the benefit.

16        I repeat, it is the duty of each juror

17    to carefully review, weigh, and consider all

18    of the evidence in the case.   If, after doing

19    so, you find the People have not proved the

20    defendant's guilt beyond a reasonable doubt,

21    as I have defined that term for you, then you

22    must find the defendant not guilty.   On the

23    other hand, if you are satisfied that the

24    People have proved the defendant's guilt

25    beyond a reasonable doubt, as I have defined

1                        Jury Charge                1066

2         that term for you, then you may find the

3         defendant guilty.

4              In arriving at your verdict, you are not

5         to consider or speculate concerning matters

6         relating to sentence or punishment. Such

7         matters are solely within the province of the

8         Court, as a matter of law. They are for me

9         to decide and must not be permitted to have

10        any consideration or bearing upon whether the

11        defendant is guilty or not guilty. So in

12        your deliberations if anyone brings up the

13        item of punishment or sentence, you tell them

14        what I just said. You're not even to

15        consider it. Your verdict must be devoid of

16        any sympathy, prejudice, or bias.

17             As you are aware, during this trial a

18        statement allegedly to have been made by the

19        defendant, Hai Guang Zheng, to Detective

20        Keith Ng has been admitted into evidence. I

21        now instruct you that even though the

22        statement has been admitted into evidence,

23        and you may become aware of its contents

24        during your deliberations, you must give no

25        weight whatsoever to the statement in

1                    Jury Charge                    1067

2          arriving at your verdict unless you find, in

3          accordance with my instructions, first, that

4          it was a voluntary statement, and second, it

5          was truthful.  Whether a statement is

6          voluntarily made and whether a statement is

7          truthful are both issues of fact for the jury

8          to decide in accordance with the legal

9          definition of those terms.  I instruct you

10         that the burden of proof is upon the People

11         to convince you beyond a reasonable doubt

12         that the statement was voluntarily made and

13         also that the statement was truthful.

14             I further instruct you that if the

15         People fail to establish to your satisfaction

16         beyond a reasonable doubt that the statement

17         was voluntarily made, you must, in arriving

18         at your verdict, disregard it and strike it

19         from your you minds as though you'd never

20         heard it.  You must disregard it even if you

21         believe the statement was in all respects

22         truthful.  Even if the People prove to your

23         satisfaction beyond a reasonable doubt that

24         the statement was voluntarily made, the

25         People must also prove to your satisfaction

1

Jury Charge                    1068

2      beyond a reasonable doubt that the statement

3      was in whole or in part truthful.

4          Now, I will first define for you the

5      term voluntarily made and after that I will

6      tell you what the term truthful means.

7          Why does our law require that a

8      statement must be voluntarily made before a

9      jury is allowed to consider it in arriving at

10     its verdict?  It is because our system of law

11     is an accusatorial system.  Under an

12     accusatorial system, the guilt of a defendant

13     must be established by the People by evidence

14     freely and voluntarily secured.  In simple

15     terms, that means that the People may not

16     prove a defendant's guilt by a statement out

17     of the defendant's own mouth unless such

18     statement was knowingly, freely, and

19     willingly given by the defendant.

20         Therefore, a statement is voluntarily

21     made by the defendant only if it was in fact

22     knowingly, freely, and willingly given by

23     him.  Our law does not specifically define

24     when a statement is voluntarily made.

25     Instead, it defines when a statement is

1         Jury Charge              1069
2    involuntarily made.
3         In general, section 60.45 of the
4    criminal procedure law provides that a
5    statement of the defendant is involuntarily
6    made, and therefore may not be considered by
7    the jury, if it is obtained by the police or
8    by a prosecutor (1) by means of the use of
9    force or by threats of the use of force, or
10   (2) by means of deception, trickery, or
11   projects likely to induce an unwilling
12   statement, or (3) in violation of the
13   defendant's rights under the Constitution of
14   the United States or the State of New York.
15   These constitutional rights include the right
16   to remain silent, the right to the advice and
17   assistance of a lawyer before the defendant
18   answers any questions and gives a statement
19   to the police or prosecutor.
20        In this case, the defendant contends
21   that the defendant's statement was
22   involuntarily made because it was obtained in
23   violation of his constitutional rights.
24   Specifically, the defendant contends his
25   statement was involuntarily made since prior

| | Jury Charge | 1070 |
|---|---|---|

1

2      to making such statement he did not knowingly

3      and intelligently waive his constitutional

4      right to remain silent and his constitutional

5      right to the presence and assistance of

6      counsel before answering any questions.  On

7      the other hand, the People contend that the

8      defendant did knowingly and intelligently

9      waive his constitutional rights.

10          As I instructed you, a statement is

11     voluntarily made if it is given knowingly,

12     freely, and willingly.  In order to assure

13     the statement is knowingly given, the police

14     or prosecutor before asking any questions

15     must advise the defendant of his

16     constitutional rights in words or in

17     substance as follows: (1) that he has the

18     right to remain silent; (2) anything he says

19     to the police may be used against him in a

20     court of law; (3) he has the right to the

21     presence of and advice of a lawyer before he

22     answers any questions; and (4) if he cannot

23     afford a lawyer, one will be appointed for

24     him prior to any questions, if he so desires.

25          Our law provides that before any person

1                        Jury Charge                    1071

2              can be questioned, he must be warned of his

3              right to remain silent and to have the

4              assistance of counsel in such a manner that

5              he fully understands them.  Our law further

6              provides that before a statement is made by a

7              defendant after such warnings are given can

8              be -- let me read that again.

9                   Our law further provides that before a

10             statement made by the defendant after such

11             warnings are given can be voluntarily made,

12             it must be established that the defendant

13             knowingly, freely, and intelligently waived

14             his right to remain silent and waived his

15             right to the assistance of counsel.

16                   The defense in this case contends that

17             the defendant did not knowingly and

18             intelligently waive his constitutional

19             rights.  The People contend that despite his

20             present contention to the contrary, at the

21             time the defendant was advised of his

22             constitutional rights, he did in fact

23             knowingly and intelligently waive his right

24             to remain silent and his right to the

25             assistance of counsel, and that he freely and

Case 1:16-cv-81166-RJD   Document 8-10   Filed 11/30/16   Page 53 of 152 PageID #: 1538

1

2          willingly made the statement in evidence.

3              Since these are disputed facts in issue,

4          whether or not the defendant knowingly and

5          intelligently waived his constitutional

6          rights is a question of fact for the jury on

7          the totality of all the circumstances

8          surrounding the giving of the warnings and

9          the making of the statement in evidence by

10         the defendant.

11             Now, the jury may consider the following

12         circumstances as bearing upon the making of a

13         knowing and intelligent waiver.  The jury may

14         wish to consider whether the police resorted

15         to the use of force, or made threats of the

16         use of force, or sought to instill fear in

17         the defendant.  Proof that the police, in

18         fact, resorted to force or threats of force

19         to instill fear in the defendant is the

20         strongest evidence that the defendant did not

21         make a knowing and intelligent waiver. On the

22         other hand, proof that the police did not use

23         force or threats or force or seek to instill

24         fear, could tend to establish the defendant

25         did make a knowing and intelligent waiver.

1               Jury Charge              1073

2          The jury may also consider whether the

3     police resorted to deception, or trickery, or

4     promises, in order to obtain the statement.

5     Proof that the police resorted to deception,

6     trickery, or promises, would tend to

7     establish that the defendant did not make a

8     knowing and intelligent waiver.  On the other

9     hand, proof that the police did not resort to

10    deception, trickery, or promises, could tend

11    to establish that the defendant did make a

12    knowing and intelligent waiver.

13         You may wish to consider these

14    circumstances, if the proof established were

15    present, in deciding whether or not the

16    defendant made a knowing and intelligent

17    waiver of his constitutional rights.  I

18    instruct you that the defendant has no burden

19    to prove that he did not make a knowing and

20    intelligent waiver.  Instead, the burden is

21    on the People to prove to your satisfaction

22    beyond a reasonable doubt that the defendant,

23    in fact, did make a knowing and intelligent

24    waiver.  If the People failed to prove to

25    your satisfaction beyond a reasonable doubt

Jury Charge                    1074

that the defendant made a knowing and
intelligent waiver of his constitutional
rights, then you must find that the
defendant's statement was involuntarily made.

On the other hand, if you find that the
People have established to your satisfaction
beyond a reasonable doubt that the defendant
knowingly, intelligently, and willfully
waived his constitutional rights, then you
may find that the statement of the defendant
was voluntarily made.  You will then continue
with your deliberations in accordance with my
further instructions.

I instructed you earlier that in
addition to proving that the statement of the
defendant was voluntarily made, the People
are required to prove to your satisfaction
beyond a reasonable doubt that the statement
was truthful.  If you find that the statement
was involuntarily made you must disregard it,
whether or not it was truthful in its
existence.  Only if you are satisfied beyond
a reasonable doubt that the statement was
voluntarily made must you then turn to the

Jury Charge                    1075

consideration of whether it was also
truthful. For just as a jury is instructed
to disregard any testimony of a witness given
during a trial which it finds false, it must
also disregard any statement of a defendant
which it finds to have been false in whole or
in part.

In deciding whether the defendant's
statement is true or false in whole or in
part, you should apply the same test of
credibility you apply in determining whether
the testimony of a witness is false or true.
Are the facts in the statement consistent
with or inconsistent with the facts presented
by the witnesses? Is the defendant's
statement probable or improbable? Does the
defendant have any motive or did he lack any
motive for giving a false statement? These
are some of the tests you should apply.

In reaching your verdict, you may wish
to give weight and consideration only to that
part of the statement you find to be
truthful, and disregard any part you find to
be false.

1            · Jury Charge            1076

2            I summarize briefly my instructions.

3            Before you may give any consideration or

4       any weight to the defendant's statement, the

5       People must satisfy you beyond a reasonable

6       doubt that the statement was voluntarily

7       made, as I defined that term for you.

8            If the People have failed to establish

9       to your satisfaction beyond a reasonable

10       doubt that the statement was voluntarily

11       made, in arriving at your verdict you must

12       disregard the statement as though it had

13       never been received in evidence and as though

14       you had never heard it.  You then must base

15       your verdict solely on the other evidence

16       remaining in the case.

17            If, on the other hand, the People have

18       satisfied you beyond a reasonable doubt that

19       the defendant's statement was voluntarily

20       made, you must then turn to the consideration

21       as to whether the statement of the defendant

22       was truthful as I have determined that, or

23       defined that term for you.  Only if you are

24       satisfied beyond a reasonable doubt that the

25       defendant's statement was both voluntarily

1                    Jury Charge              1077

2          made and truthful may you give consideration

3          and weight to such statement together with

4          all the other evidence in the case in

5          arriving at your verdict.

6              The District Attorney has conceded that

7          the original handwritten notes of Detective

8          Michael Greene, in which he took statements

9          from two of the complaining witnesses, and

10         page 3 of Detective Greene's three-page typed

11         police report, cannot be found.  I instruct

12         you that you may consider that the contents

13         of these missing notes could be unfavorable

14         and inconsistent with or not supportive, or

15         could even contradict his and the

16         complainants' testimony.

17             We will now come to that part of my

18         charge which I will analyze the indictment

19         and I will instruct you with respect to the

20         material legal principals applicable to the

21         crimes with which the defendant is charged in

22         this case.  I will briefly explain the

23         application of the law to the facts on which

24         you will be required to deliberate and render

25         your verdict as to whether the defendant, Hai

1                          Jury Charge                    1078

2          Guang Zheng, is guilty or not guilty.

3                 Again, an indictment is merely a written

4          accusation by a grand jury charging the

5          defendant with the commission of a crime or

6          crimes. It has no probative value and

7          carries with it no implication of guilt, and

8          is not evidence.

9                 Now, with respect to counts 1 through 6,

10         9 and 12 of the indictment, it is important

11         for you to know what acting in concert means.

12         I charge you that section 20 of the penal law

13         of our state, states as follows:

14                When one person engages in conduct which

15         constitutes an offense, another person is

16         criminally liable for such conduct when

17         acting with the mental culpability required

18         for the commission thereof, he solicits,

19         requests, commands, importunes, or

20         intentionally aids such person to engage in

21         such conduct.

22                Now, it can be readily discerned from

23         this statute that any person who does any of

24         those things intentionally, that is,

25         knowingly solicits, requests, commands,

```
1                      Jury Charge              1079

2       importunes, or intentionally aids such person

3       in the commission of a crime, is just as

4       guilty as if he had committed the very crime

5       himself.  He is considered primarily liable

6       under the law to the same extent that the

7       other person is whom he is aiding or

8       abetting.  And the degree or extent to which

9       a defendant may participate in the commission

10      of a crime is immaterial in fixing his

11      responsibility.  It makes no difference what

12      part he played so long as you found he did

13      play a part in the commission of any or all

14      of the crimes charged in the indictment.

15           When two persons act as partners in the

16      commission of a criminal act, the law does

17      not apportion the percentage of guilt which

18      you may attach to either one of them.  So

19      that even though one person may have

20      committed or been responsible for the

21      commission of 99 percent of the acts

22      constituting a crime as charged in the

23      indictment, and the other person may have

24      committed but one percent, as long as you

25      find they were aiding one another, acting
```

1                          Jury Charge                    1080

2          together, acting in concert, in the eyes of

3          the law they are equally guilty with respect

4          to each count in which the defendant is found

5          to be acting in concert.

6              Now, the first count of the indictment

7          reads as follows:  The grand jury of the

8          County of Queens, by this indictment, accuse

9          the defendant of the crime of kidnapping in

10         the first degree committed as follows:

11             The defendant, being aided by another,

12         on or about and between March 31, 1995 and

13         April 2, 1995, in the County of Queens,

14         abducted Liu Yan Wu with intent to compel a

15         third person to pay or deliver money or

16         property as ransom.

17             Section 135.25, subdivision 1, of the

18         penal law of our state, insofar as it is

19         applicable to this case, reads as follows:

20             A person is guilty of kidnapping in the

21         first degree when he abducts another person

22         and when his intent is to compel a third

23         person to pay or deliver money as ransom.

24             The crime of kidnapping, among other

25         things, requires proof of abduction.

1                          Jury Charge                    1081

2              Abduction, as defined by our law, consists of

3         a certain kind of restraint plus specified

4         additional factors.  Let me explain each of

5         these two terms to you.

6              First, according to the law, a person

7         restrains another person when he (A)

8         intentionally and unlawfully restricts such

9         person's movements in such a manner as to

10        interfere substantially with her liberty, (B)

11        by moving her from one place to another, or

12        by confining her either in the place where

13        the restriction commences or in a place to

14        which she has been moved, (C) without

15        consent, and (D) with knowledge that the

16        restriction is unlawful.

17             Next, according to the law, a person

18        abducts another person when he restrains a

19        person with intent to prevent her liberation

20        by either (A) secreting her or holding her in

21        a place where she is not likely to be found,

22        or (B) using or threatening to use deadly

23        physical force.

24             Once again, as I have instructed you,

25        kidnapping requires proof of abduction, and

1              Jury Charge                1082

2·     abduction requires proof of restraint plus

3      the additional factors that I have just

4.     specified.

5        In order for you to find the defendant

6      guilty of this crime, the People are required

7      to prove, from all of the evidence in the

8      case beyond a reasonable doubt, each of the

9      following 8 elements:

10          (1) That on or about and between March

11     31, 1995 and April 2, 1995, in Queens County,

12     the defendant, acting in concert, committed

13     an act, thus restrained Liu Yan Wu's

14     movements in such a manner as to interfere

15     substantially with her liberty.

16          (2) That the defendant, acting in

17     concert, intentionally so restricted Liu Yan

18     Wu's movements.

19          According to the law, a person

20     intentionally restricts another person's

21     movement when his conscious aim or objective

22     is to restrain that person's movements.

23          (3) That at the time he, acting in

24     concert, so restricted Liu Yan Wu's

25     movements, the defendant did so by moving Liu

1                              Jury Charge                    1083

2        Yan Wu from one place to another, or by

3        confining her either in the place where the

4        restriction began, or in the place to which

5        she had been moved.

6              (4) The defendant, acting in concert, so

7        restricted Liu Yan Wu's movements without the

8        consent of Liu Yan Wu.

9              According to the law, a person's

10       movements are restricted without her consent

11       when such is accomplished by physical force,

12       intimidation or deception.

13             (5) That the defendant, acting in

14       concert, unlawfully so restricted Liu Yan

15       Wu's movements.

16             A person acts unlawfully when his act or

17       actions are not authorized by law.

18             (6) That at the time he, acting in

19       concert, so restricted Liu Yan Wu's

20       movements, the defendant knew that such

21       restriction was unlawful.

22             According to the law, a person knows

23       that his restriction of another person's

24       movement is unlawful when he is aware that

25       such restriction is not authorized by law.

1             Jury Charge              1084

2             Therefore, if you find the People have

3        proved to your satisfaction beyond a

4        reasonable doubt each of these 6 elements, as

5        I have just defined them to you, then you

6        must find the defendant -- that the defendant

7        restrained Liu Yan Wu.

8             But I now charge, and I emphasize, that

9        in order for such restraint to constitute the

10       crime of kidnapping in the first degree, you

11       must further find the People have proved to

12       your satisfaction beyond a reasonable doubt

13       the following two additional elements:

14            (7) That the restraint constituted what

15       the law calls abduction; that is, that the

16       defendant, acting in concert, so restrained

17       Liu Yan Wu with intent to prevent her

18       liberation by secreting her or holding her in

19       a place where she was not likely to be found,

20       or by using or threatening to use deadly

21       physical force.

22            According to the law, deadly physical

23       force means physical force which, under the

24       circumstances in which it is used, is readily

25       capable of causing death or serious physical

injury.

(8) That the defendant, acting in concert, so restrained Liu Yan Wu with intent to compel a third person to pay money as ransom.

Ransom is defined as the money, price, or consideration paid or demanded for redemption of a captive person, that is, a payment to secure the release of such person.

Therefore, with respect to count 1 of the indictment, if you find that the People have proved to your satisfaction beyond a reasonable doubt each of these 8 elements, as I have just explained them, the first 6 elements constituting restraint and the last 2 the additional factors which must be proved in order for you to find the defendant guilty of kidnapping in the first degree:

(1) that on or about between March 31, 1995 and April 2, 1995 in Queens County, the defendant, acting in concert, committed an act, thus restricting Liu Yan Wu's movements in such manner as to interfere substantially with her liberty;

1    Jury Charge    1086

2    (2) that the defendant, acting in

3    concert, intentionally so restricted Liu Yan

4    Wu's movements;

5    (3) that at the time he, acting in

6    concert, so restricted Liu Yan Wu's

7    movements, the defendant did so by moving Liu

8    Yan Wu from one place to another, or by

9    confining her either in the place where the

10    restriction began or in a place to which she

11    had been moved;

12    (4) that the defendant, acting in

13    concert, so restricted Liu Yan Wu's movements

14    without the consent of Liu Yan Wu;

15    (5) that the defendant, acting in

16    concert, unlawfully so restricted Liu Yan

17    Wu's movements;

18    (6) that at the time the defendant,

19    acting in concert, so restricted Liu Yan Wu's

20    movements, the defendant knew that such

21    restriction was unlawful;

22    (7) that the restraint constituted what

23    the law calls abduction; that is, the

24    defendant, acting in concert, so restrained

25    Liu Yan Wu with intent to prevent her

1

2       liberation by secreting or holding her in a

3       place she was not likely to be found, or by

4       using or threatening to use deadly physical

5       force; and

6            (8) that the defendant, acting in

7       concert, so restrained Liu Yan Wu with intent

8       to compel a third person to pay or deliver

9       money as ransom, then you must find the

10      defendant guilty of the crime of kidnapping

11      in the first degree under count 1.

12           On the other hand, if you find that the

13      People have failed to prove to your

14      satisfaction beyond a reasonable doubt any

15      one or more of these 8 elements, then you

16      must you find the defendant not guilty of

17      kidnapping in the first degree under count 1.

18           Now, count 2 of the indictment reads as

19      follows:

20           The grand jury of the County of Queens

21      by this indictment accuse the defendant of

22      the crime of kidnapping in the first degree,

23      committed as follows:

24           The defendant, being aided by another,

25      on or about and between March 31, 1995 and

| 1 | Jury Charge                    1088 |

2  April 2, 1995, in the County of Queens,

3  abducted Jin Hao Liu with intent to compel a

4  third person to pay or deliver money or

5  property as ransom.

6  The law with respect to count 2 of the

7  indictment is the exact same law I just gave

8  you with respect to count 1, except that

9  wherever the name of Liu Yan Wu was read in

10  count 1, the name Jin Hao Liu should be

11  substituted in its place under count 2.

12  Now, the third count of the indictment

13  reads as follows:

14  The grand jury of the County of Queens

15  by this indictment, accuse the defendant of

16  the crime of kidnapping in the first degree,

17  committed as follows:

18  The defendant, being aided by another,

19  on or about and between March 31, 1995 and

20  April 2, 1995, in the County of Queens,

21  abducted Liu Yan Wu and restrained Liu Yan Wu

22  for a period of more than 12 hours with

23  intent to violate and abuse Liu Yan Wu

24  sexually.

25  Section 135.25, subdivision 2, of the

| | |
|---|---|
| 1 | Jury Charge                    1089 |

2    penal law of our state, insofar as it is

3    applicable to this count, reads as follows:

4        A person is guilty of kidnapping in the

5    first degree when he abducts another person

6    and when he restrains the person abducted for

7    a period of more than 12 hours with intent to

8    violate or abuse her sexually.

9        The crime of kidnapping, among other

10    things, requires proof of abduction.

11        Abduction, as defined in our law,

12    consists of a certain kind of restraint plus

13    specified additional factors.  And let me

14    explain them again for you, these two terms.

15        First, according to the law, a person

16    restrains another person when he (A)

17    intentionally and unlawfully restricts such

18    person's movements in such manner as to

19    interfere substantially with her liberty, (B)

20    by moving her from one place to another, or

21    by confining her either in the place where

22    the restriction commences or in a place to

23    which she has been moved, (C) without

24    consent, and (D) with knowledge the

25    restriction is unlawful.

1             Jury Charge         1090

2       Next, according to the law, a person

3    abducts another person when he restrains a

4    person with intent to prevent her liberation

5    by either (A) secreting her or holding her in

6    a place where she is not likely to be found,

7    or (B) using or threatening to use deadly

8    physical force.

9       Once again, as I have instructed you,

10   kidnapping requires proof of abduction, and

11   abduction requires proof of restraint plus

12   the additional factors I have just specified.

13      In order for you to find the defendant

14   guilty of this crime, the People are required

15   to prove from all of the evidence in the case

16   beyond a reasonable doubt, each of the

17   following 9 elements:

18      (1) That on or about and between March

19   31, 1995 and April 2, 1995 in Queens County,

20   the defendant, acting in concert, committed

21   an act, thus restricted Liu Yan Wu's

22   movements in such a manner as to interfere

23   substantially with her liberty.

24      (2) That the defendant, acting in

25   concert, intentionally so restricted Liu Yan

1

2   Wu's movements.

3         According to the law, a person

4   intentionally restricts another person's

5   movements when his conscious aim or objective

6   is to restrict that person's movements.

7         (3) That at the time he, acting in

8   concert, so restricted Liu Yan Wu's

9   movements, the defendant did so by moving Liu

10  Yan Wu from one place to another, or by

11  confining her in the place where the

12  restriction began or in a place to which she

13  had been moved.

14        (4) That the defendant, acting in

15  concert, so restricted Liu Yan Wu's movements

16  without the consent of Liu Yan Wu.

17        According to the law, a person

18  restricts -- according to the law, a person's

19  movements are restricted without her consent

20  when such is accomplished by physical force,

21  intimidation, or deception.

22        (5) That the defendant, acting in

23  concert, unlawfully restricted Liu Yan Wu's

24  movements.

25        A person acts unlawfully when his act or

1                  Jury Charge         1092

2   actions are not authorized by law.

3        (6) That at the time he, acting in

4   concert, so restricted Liu Yan Wu's

5   movements, the defendant knew that such

6   restriction was unlawful.

7        According to the law, a person knows his

8   restriction of another person's movements is

9   unlawful when he is aware that such

10  restriction is not authorized by law.

11       Therefore, if you find the People have

12  proved to your satisfaction beyond a

13  reasonable doubt each of these 6 elements, as

14  I have just explained them, then you must

15  find the defendant restrained Liu Yan Wu.

16       But I now charge you, and again I

17  emphasize, in order for such restraint to

18  constitute the crime of kidnapping in the

19  first degree, you must further find the

20  People have proved to your satisfaction

21  beyond a reasonable doubt the following 3

22  additional elements:

23       (7) That the restraint constituted what

24  the law calls abduction; that is, the

25  defendant, acting in concert, so restrained

1                  Jury Charge            1093

2    Liu Yan Wu with intent to prevent her

3    liberation by secreting her or holding her in

4    a place where she was not likely to be found,

5    or by using or threatening to use deadly

6    physical force.

7        According to the law, deadly physical

8    force means physical force which, under the

9    circumstances in which it is used, is capable

10    of using death or other physical injury.

11        (8) That the defendant, acting in

12    concert, so restrained Liu Yan Wu for a

13    period of more than 12 hours.

14        9) That the defendant, acting in

15    concert, so restrained Liu Yan Wu with the

16    intent to violate or abuse her sexually.

17        Therefore, with respect to count 3 of

18    the indictment, if you find that the People

19    have proved to your satisfaction beyond a

20    reasonable doubt each of these 9 elements as

21    I have just explained them, the first 6

22    elements constituting restraint, and the last

23    3 the additional factors which must be proved

24    in order for you to find the defendant guilty

25    of kidnapping in the first degree:

| | | |
|---|---|---|
| 1 | Jury Charge | 1094 |

2     (1) That on or about and between March

3     31, 1995 and April 2, 1995 in the County of

4     Queens, the defendant, acting in concert,

5     committed an act, thus restricting Liu Yan

6     Wu's movements in such manner as to interfere

7     substantially with her liberty;

8     (2) that the defendant, acting in

9     concert, intentionally so restricted Liu Yan

10     Wu's movements;

11     (3) that at the time he, acting in

12     concert, so restricted Liu Yan Wu's

13     movements, the defendant did so by moving Liu

14     Yan Wu from one place to another, or by

15     confining her either in the place where the

16     restriction began or in a place to which she

17     had been removed;

18     (4) that the defendant, acting in

19     concert, so restricted Liu Yan Wu's movements

20     without the consent of Liu Yan Wu;

21     (5) that the defendant, acting in

22     concert, unlawfully so restricted Liu Yan

23     Wu's movements;

24     (6) that at the time he, acting in

25     concert, so restricted Liu Yan Wu's

1                      Jury Charge                1095

2     movements, the defendant knew that such

3     restriction was unlawful;

4          (7) that the restraint constituted what

5     the law calls abduction, that is, the

6     defendant, acting in concert, so retrained

7     Liu Yan Wu with intent to prevent her

8     liberation by secreting her or holding her in

9     a place where she was not likely to be found,

10    or by using or threatening to use deadly

11    physical force;

12         (8) that the defendant, acting in

13    concert, so retrained Liu Yan Wu for a period

14    of more than 12 hours; and

15         (9) that the defendant, acting in

16    concert, so restrained Liu Yan Wu with the

17    intent to violate or abuse her sexually, then

18    you find the defendant guilty of the crime of

19    kidnapping in the first degree under count 3

20    of the indictment.

21         On the other hand, if you find that the

22    People have failed to prove to your

23    satisfaction beyond a reasonable doubt any

24    one or more of these 9 elements, then you

25    must find the defendant not guilty of

kidnapping in the first degree.

Now, the fourth count of the indictment
reads as follows:

The grand jury of the County of Queens
by this indictment, accuse the defendant of
the crime of kidnapping in the first degree
committed as follows:

The defendant, being aided by another,
on or about and between March 31, 1995 and
April 2, 1995 in the County of Queens,
abducted Jin Hao Liu, and restrained Jin Hao
Liu for a period of more than 12 hours with
intent to violate and abuse Jin Hao Liu
sexually.

The law with respect to count 4 is
exactly the same as the law I just gave you
with respect to count 3, except that wherever
the name of Liu Yan Wu was read in count 3,
the name of Jin Hao Liu should be substituted
in its place under count 4.

The fifth count of the indictment reads
as follows:

The grand jury of the County of Queens
by this indictment, accuse the defendant of

the crime of kidnapping in the first degree,

committed as follows:

The defendant, being aided by another,

on or about and between March 31, 1995 and

April 2, 1995 in the County of Queens,

abducted Liu Yan Wu and restrained Liu Yan Wu

for a period of more than 12 hours with

intent to terrorize Liu Yan Wu.

Now, section 135.25, subdivision 2, of

the penal law of our state, insofar as it is

applicable to this count, reads as follows:

A person is guilty of kidnapping in the

first degree when he abducts another person

and when he restrains that person abducted

for a period of more than 12 hours with

intent to terrorize her.

The crime of kidnapping, among other

things, requires proof of abduction, as I

told you before.  And as I told you before,

abduction, as defined by our law, consists of

a certain kind of restraint plus specified

additional factors.  Let me explain these two

terms again.

First, according to the law, a person

1          Jury Charge                1098

2     restrains another person when he (A)

3     intentionally and unlawfully restricts such

4     person's movement in such manner as to

5     interfere substantially with her liberty, (B)

6     by moving her from one place to another, or

7     by confining her either in the place where

8     the restriction commences or in a place to

9     which she has been moved, (C) without

10    consent, and (D) with knowledge the

11    restriction is unlawful.

12         Next, according to the law, again a

13    person abducts another person when he

14    restrains a person with intent to prevent her

15    liberation by either (A) secreting or holding

16    her in a place where she is not likely to be

17    found, or (B) using or threatening to use

18    deadly physical force.

19         Once again, as I have instructed you,

20    kidnapping requires proof of abduction and

21    abduction requires proof of restraint plus

22    the additional factors I have just specified.

23         In order for you to find the defendant

24    guilty of this crime, the People are required

25    to prove from all of the evidence in this

case beyond a reasonable doubt, each of the

following 9 elements:

(1) That on or about and between March

31, 1995 and April 2, 1995 in Queens County,

the defendant, acting in concert, committed

an act, thus restraining Liu Yan Wu's

movements in such a manner as to interfere

substantially with her liberty.

(2) That the defendant, acting in

concert, intentionally so restricted Liu Yan

Wu's movements.

According to the law, again, a person

intentionally restricts another person's

movements when his conscious aim or objective

is to restrict that person's movements.

(3) That at the time he, acting in

concert, so restricted Liu Yan Wu's

movements, the defendant did so by moving Liu

Yan Wu from one place to another, or by

confining her either in the place where the

restriction first began, or in the place to

which she had been moved.

(4) That the defendant, acting in

concert, so restricted Liu Yan Wu's movements

1                       Jury Charge              1100

2     without the consent of Liu Yan Wu.

3          According to the law, a person's

4     movements are restricted without her consent

5     when such is accomplished by physical force,

6     intimidation, and deception.

7          (5) That the defendant, acting in

8     concert, unlawfully so restricted Liu Yan

9     Wu's movements.

10         And a person, again, acts unlawfully

11    when his act or actions are not authorized by

12    law.

13         (6) That at the time he, acting in

14    concert, so restricted Liu Yan Wu's

15    movements, the defendant knew that such

16    restriction was unlawful.

17         Again, according to the law, a person

18    knows that his restriction of another

19    person's movements is unlawful when he is

20    aware that such restriction is not authorized

21    by law.

22         Therefore, if you find the People have

23    proved to your satisfaction beyond a

24    reasonable doubt each of these 6 elements, as

25    I have just explained them, then you must

1        Jury Charge                1101

2    find the defendant restrained Liu Yan Wu.

3        But now I charge you again, and I

4    emphasize, that in order for you to find such

5    restraint to constitute the crime of

6    kidnapping in the first degree, you must

7    further find the People have proved to your

8    satisfaction beyond a reasonable doubt the

9    following 3 additional elements:

10       (7) That the restraint constituted what

11   the law calls abduction; that is, that the

12   defendant, acting in concert, so restrained

13   Liu Yan Wu with intent to prevent her

14   liberation by secreting her or holding her in

15   a place where she was not likely to be found,

16   or by using or threatening to use deadly

17   physical force.

18       According to the law, deadly physical

19   force means physical force which, under the

20   circumstances in which it is used, is readily

21   capable of causing death or other physical

22   injury.

23       (8) That the defendant, acting in

24   concert, so restrained Liu Yan Wu for a

25   period of more than 12 hours.

1

2          (9) That the defendant, acting in

3     concert, so restrained Liu Yan Wu with intent

4     to terrorize her.

5          According to Webster's New College

6     Dictionary, terrorize means to fill with

7     terror or anxiety -- to coerce by threat or

8     violence.

9          Therefore, with respect to count 5 of

10    the indictment, if you find that the People

11    have proved to your satisfaction beyond a

12    reasonable doubt each of these 9 elements as

13    I just explained them, the first 6 elements

14    constituting restraint and the last 3 the

15    additional factors which must be proved in

16    order for you to find the defendant guilty of

17    kidnapping in the first degree:

18         (1) That on or about and between March

19    31, 1995 and April 2, 1995 in Queens County,

20    the defendant, acting in concert, committed

21    an act, thus restricting Liu Yan Wu's

22    movements in such manner as to interfere

23    substantially with her liberty;

24         (2) that the defendant, acting in

25    concert, intentionally so restricted Liu Yan

1

2   Wu's movements;

3        (3) that at the time he, acting in

4   concert, so restricted Liu Yan Wu's

5   movements, the defendant did so by moving Liu

6   Yan Wu from one place to another by confining

7   her either in the place where the restriction

8   began or in a place to which she had been

9   moved;

10        (4) that the defendant, acting in

11   concert, so restricted Liu Yan Wu's movements

12   without the consent of Liu Yan Wu;

13        (5) that the defendant, acting in

14   concert, unlawfully so restricted Liu Yan

15   Wu's movements;

16        (6) that at the time he, acting in

17   concert, so restricted Liu Yan Wu's

18   movements, the defendant knew that such

19   restriction was unlawful;

20        (7) that the restraint constituted what

21   the law calls abduction.  Again, that is, the

22   defendant, acting in concert, so restrained

23   Liu Yan Wu with the intent to prevent her

24   liberation by secreting her or holding her in

25   a place she was not likely to be found, or

1
2    using or threatening to use deadly physical

3    force;

4         (8) that the defendant, acting in

5    concert, so restrained Liu Yan Wu for a

6    period of more than 12 hours; and

7         (9) that the defendant, acting in

8    concert, so restrained Liu Yan Wu with intent

9    to terrorize her, then you must find the

10   defendant guilty of the crime of kidnapping

11   in the first degree under count 5.

12        On the other hand, if you find that the

13   People have failed to prove to your

14   satisfaction beyond a reasonable doubt any

15   one or more of these 9 elements, then you

16   must find the defendant not guilty of

17   kidnapping in the first degree under count 5

18   of the indictment.

19        Count 6 of the indictment reads as

20   follows:

21        The grand jury of the County of Queens

22   by this indictment, accuse the defendant of

23   the crime of kidnapping in the first degree,

24   committed as follows:

25        The defendant, being aided by another,

Jury Charge                    1105

on or about and between March 31, 1995 and

April 2, 1995, in the County of Queens,

abducted Jin Hao Liu and restrained Jin Hao

Liu for a period of more than 12 hours with

intent to terrorize Jin Hao Liu.

The law with respect to count 6 is the

exact same as the law I just gave you with

respect to count 5, except whenever the name

of Liu Yan Wu is read in count 5, the name of

Jin Hao Liu should be substituted in its

place in count 6.

Now, the seventh count of the indictment

reads as follows:

The grand jury of the County of Queens

by this indictment, accuse the defendant of

the crime of rape in the first degree,

committed as follows:

The defendant, on or about and between

March 31, 1995 and April 2, 1995 in the

County of Queens, being male, engaged in

sexual intercourse with Liu Yan Wu, a female,

by means of forcible compulsion.

Section 130.35 of the penal law of our

state, insofar as it is applicable to this

1

2   case, reads as follows:

3        A person is guilty of rape in the first

4   degree when he engages in sexual intercourse

5   with another person by forcible compulsion.

6        In order for you to find the defendant

7   guilty of this crime, the People are required

8   to prove to your satisfaction, beyond a

9   reasonable doubt from all of the evidence in

10   the case, each of the following 3 elements,

11        (1) That on or about and between March

12   31, 1995 and April 2, 1995 in Queens County

13   the defendant engaged in sexual intercourse

14   with Liu Yan Wu.

15        According to the law, sexual intercourse

16   has its ordinary meaning and occurs upon

17   penetration, however slight.  In order to

18   constitute sexual intercourse, penetration

19   need not be deep, nor need there be emission

20   or orgasm.  Any penetration of the penis into

21   the vaginal opening, regarding of the

22   distance or amount of penetration,

23   constitutes an act of sexual intercourse.

24        (2) That the defendant engaged in such

25   sexual intercourse without Liu Yan Wu's

Case 1:16-cv-01166-RJD   Document 8-10   Filed 11/30/16   Page 88 of 152 PageID #: 1573

```
 1
 2     consent.
 3          (3) That the lack of consent of Liu Yan
 4     Wu resulted from the use of forcible
 5     compulsion by the defendant.
 6          According to the law, forcible
 7     compulsion means to compel by either use of
 8     physical force or a threat, express or
 9     implied, which places a person in fear of
10     immediate death or physical injury to
11     herself, or another person, or in fear that
12     she, or another person, will be immediately
13     kidnapped.
14          A person is legally deemed to be
15     forcibly compelled to submit to sexual
16     intercourse when the defendant uses physical
17     force upon them.  However, under the statute,
18     even if no physical force was used, but
19     instead the defendant by a threat, express or
20     implied, places her in fear of immediate
21     death or physical injury to herself or
22     another person, or fear she or another
23     personal will immediately be kidnapped, then
24     the law deems sexual intercourse to be
25     forcibly compelled.
```

1                        Jury Charge              1108

2              Therefore, if you find that the

3         defendant engaged in sexual intercourse with

4         Liu Yan Wu by forcible compulsion, that such

5         sexual intercourse was without Liu Yan Wu's

6         consent.

7              Therefore, with respect to count 7 of

8         the indictment, if you find the that People

9         have proved to your satisfaction beyond a

10        reasonable doubt these 3 elements, as I was

11        just explained them:

12             (1) That on or about and between March

13        31, 1995 and April 2, 1995 in Queens County,

14        the defendant engaged in sexual intercourse

15        with Liu Yan Wu;

16             (2) that the defendant engaged in such

17        sexual intercourse without Liu Yan Wu's

18        consent; and

19             (3) that the lack of consent of Liu Yan

20        Wu resulted from the use of forcible

21        compulsion by the defendant, then you must

22        find the defendant guilty of the crime of

23        rape in the first degree under count 7.

24             On the other hand, if you find the

25        People have failed to prove to your

1

2      satisfaction beyond a reasonable doubt any

3      one or more of these 3 elements, then you

4      must find the defendant not guilty of rape in

5      the first degree under count 7.

6           Count 8 of the indictment reads as

7      follows:

8           The grand jury of the County of Queens

9      by this indictment, accuse the defendant of

10     the crime of rape in the first degree,

11     committed as follows:

12          The defendant, on or about and between

13     March 31, 1995 and April 2, 1995 in the

14     County of Queens, being male, engaged in

15     sexual intercourse with Jin Hao Liu, a

16     female, by means of forcible compulsion.

17          The law with respect to count 8 is

18     exactly the same as I gave you with respect

19     to count 7, except wherever the name of Liu

20     Yan Wu is read in count 7, the name of Jin

21     Hao Liu should be substituted in its place in

22     count 8.

23          The ninth count of the indictment reads

24     as follows:

25          The grand jury of the County of Queens

1

2  by this indictment, accuse the defendant of

3  the crime of kidnapping in the second degree,

4  committed as follows:

5      The defendant, being aided by another,

6  on or about and between March 31, 1995 and

7  April 2, 1995 in the County of Queens,

8  abducted Guo Bang Liu.

9      Section 135.20 of the penal law of our

10  state, insofar as it is applicable in this

11  case, reads as follows:

12      A person is guilty of kidnapping in the

13  second degree when he abducts another person.

14      The crime of kidnapping requires proof

15  of abduction.  Abduction, as defined by our

16  law, again, consists of a certain kind of

17  restrained plus specified additional factors.

18  Let me again explain these two terms.

19      First, according to the law, a person

20  restrains another person when he

21  intentionally and unlawfully restricts such

22  person's movements in such a manner as to

23  interfere substantially with his liberty, (B)

24  by moving him from one place to another, or

25  by confining him either to the place where

Jury Charge                    1111

the restriction commences or in a place where

he has been moved, (C) without consent, and

(D) with knowledge the restriction is

unlawful.

Next, according to the law, a person

abducts another person when he restrains a

person with intent to prevent his liberation

by either (A) secreting or holding him in a

place where he is not likely to be found, or

(B) using or threatening to use deadly

physical force.

Once again, as I have instructed you,

kidnapping requires proof of abduction, and

abduction requires proof of restraint plus

additional factors I have just specified.

In order for you to find the defendant

guilty of this crime, the People are required

to prove from all of the evidence in the case

beyond a reasonable doubt each of the

following 7 elements:

(1) That on or about and between March

31, 1995 and April 2, 1995 in Queens County,

the defendant, acting in concert, committed

an act, thus restricting Guo Bang Liu's

1          Jury Charge              1112

2     movements in such manner as to interfere

3     substantially with his liberty.

4          (2) That the defendant, acting in

5     concert, intentionally so restricted Guo Bang

6     Liu's movements.

7          According to the law, again, a person

8     intentionally restrains another person's

9     movements when his conscious aim or objective

10     is to restrict that person's movements.

11          (3) That at the time he, acting in

12     concert, restricted Guo Bang Liu's movements,

13     the defendant did so by moving Guo Bang Liu

14     from one place to another, or by confining

15     him either in the place the restraining

16     began, or the place he had been moved.

17          (4) That the defendant, acting in

18     concert, so restricted Guo Bang Liu's

19     movements without the consent of Guo Bang

20     Liu.

21          According to the law, again, the

22     defendant knows the restriction of a person's

23     movements is unlawful when he knows such

24     restriction is not authorized by law.

25          Therefore, if you find that the People

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jury Charge                          1113

have proved to your satisfaction beyond a

reasonable doubt, each these 6 elements, as I

have just explained them, then you must find

that the defendant restrained Guo Bang Liu.

But I now charge you again, and I

emphasize again, in order for you to find

such restraint constituted the crime of

kidnapping in the second degree, you must

further find that the People have proved to

your satisfaction beyond a reasonable doubt

the following one additional elemental:

(7) That the restraint constituted what

the law calls abduction; again, that is that

the defendant so restrained Guo Bang Liu with

intent to prevent his liberation by secreting

or holding him in a place he was not likely

to be found, or by using or threatening to

use deadly physical force.

According to the law, deadly physical

force means physical force which, under the

circumstances in which it is used, is readily

capable of causing death or other serious

physical injury.

Therefore, with respect to count 9 of

1          Jury Charge                    1114

2     the indictment, if you find that the People

3     have proved to your satisfaction beyond a

4     reasonable doubt each of these 7 elements, as

5     I have just explained them, the first 6

6     elements constituting restraint, and the last

7     one the additional factor which must be

8     proved in order for you to find the defendant

9     guilty of kidnapping in the second degree:

10         (1) That on or about and between March

11    31, 1995 and April 2, 1995 in Queens County,

12    the defendant, acting in concert, committed

13    an act, thus restricting Guo Bang Liu's

14    movements in such manner as to interfere

15    substantially with his liberty;

16         (2) that the defendant, acting in

17    concert, intentionally so restricted Guo Bang

18    Liu's movements;

19         (3) that at the time he, acting in

20    concert, so restricted Guo Bang Liu's

21    movements, the defendant did so by moving Guo

22    Bang Liu from one place to another, or by

23    confining him either in the place the

24    restriction began or in a place which he had

25    been moved;

1

2          (4) that the defendant, acting in

3    concert, so restricted Guo Bang Liu's

4    movements without the consent of Guo Bang

5    Liu;

6          (5) that the defendant, acting in

7    concert, unlawfully so restricted Guo Bang

8    Liu's movements;

9          (6) that at the time he, acting in

10   concert, so restricted Guo Bang Liu's

11   movements, the defendant knew that such

12   restriction was unlawful; and

13         (7) that the restraint constituted what

14   the law calls abduction; again, that is that

15   the defendant, acting in concert, so

16   restrained Guo Bang Liu with intent to

17   prevent his liberation by secreting him or

18   holding him in a place he was not likely to

19   be found, or by using or threatening to use

20   deadly physical force, then you must find the

21   defendant guilty of the crime of kidnapping

22   in the second degree.

23         On the other hand, if you find that the

24   People have failed to prove your satisfaction

25   beyond a reasonable doubt any one or more of

1

2     these 7 elements, then you must find the

3     defendant not guilty of kidnapping in the

4     second degree.

5             The tenth count of the indictment reads

6     as follows:

7             The grand jury of the County of Queens

8     by this indictment, accuse the defendant of.

9     the crime of sexual abuse in the first

10    degree, committed as follows:

11            The defendant, on or about and between

12    March 31, 1995 and April 2, 1995 in the

13    County of Queens, subjected Liu Yan Wu to

14    sexual contact by touching her breast with

15    his hand by means of forcible compulsion.

16            Section 130.65, subdivision 1, insofar

17    as it is applicable to this case, reads as

18    follows:

19            A person is guilty of sexual abuse in

20    the first degree when he subjects another

21    person to sexual contact by forcible

22    compulsion.

23            In order for you to find the defendant

24    guilty of this crime, the People are required

25    to prove from all the evidence in the case

1

2     beyond a reasonable doubt, each of the

3     following 3 elements:

4          (1) That on or about and between March

5     31, 1995 and April 2, 1995 in Queens County,

6     the defendant intentionally, and not by

7     accident, subjected Liu Yan Wu to sexual

8     contact in that he touched her breast with

9     his hand.

10         According to the law, sexual contact

11    means any intentional touching of the sexual

12    or other intimate part of a person not

13    married to the defendant for the purpose of

14    gratifying sexual desire of either party.  It

15    includes the touching of the actor by the

16    victim, as well as the touching of the victim

17    by the actor, whether directly or through

18    clothing.

19         According to the law, a person

20    intentionally subjects another person to

21    sexual contact when his conscious aim or

22    objective is to subject that person to such

23    sexual contact.

24         (2) That the defendant subjected Liu Yan

25    Wu to sexual contact without the consent or

1                          Jury Charge                    1118

2    acquiescence of Liu Yan Wu.

3            (3) That the lack of consent of Liu Yan

4    Wu resulted from the use of forcible

5    compulsion by the defendant.

6            According to the law, forcible

7    compulsion means to compel by either the use

8    of physical force or a threat, express or

9    implied, which places the person in fear of

10   immediate death or physical injury to

11   herself, or another person, or in fear that

12   she or another person will be immediately

13   kidnapped.

14           A person is legally deemed to have been

15   forcibly compelled to submit to sexual

16   contact when the defendant uses physical

17   force upon her.  However, under the statute,

18   even if no physical force is used, but

19   instead the defendant, by a threat, express

20   or implied, places her in fear of immediate

21   death or physical injury to herself or

22   another person, or fear she or another person

23   will immediately be kidnapped, then the law

24   deems sexual contact to have been forcibly

25   compelled.

1                           Jury Charge                    1119

2              Therefore, if you find the defendant

3      subjected Liu Yan Wu to sexual contact by

4      forcible compulsion, then such sexual contact

5      was without Liu Yan Wu's consent.

6              Therefore, with respect to count 10 of

7      the indictment, if you find that the People

8      have proved to your satisfaction beyond a

9      reasonable doubt each of these 3 elements, as

10     I have just explained them:

11             (1) That on or about and between March

12     31, 1995 and April 2, 1995 in Queens County,

13     the defendant intentionally, and not by

14     accident, subjected Liu Yan Wu to sexual

15     contact, in that he touched her breast with

16     his hand;

17             (2) that the defendant subjected Liu Yan

18     Wu to such sexual contact without the consent

19     or acquiescence of Liu Yan Wu; and

20             (3) that the lack of consent of Liu Yan

21     Wu resulted from the use of forcible

22     compulsion by the defendant, then you must

23     find the defendant guilty of the crime of

24     sexual abuse in the first degree under count

25     10.

1                         Jury Charge            1120

2                    On the other hand, if you find that the

3          People have failed to prove to your

4          satisfaction beyond a reasonable doubt, any

5          one or more of these 3 elements, then you

6          must find the defendant not guilty of sexual

7          abuse in the first degree.

8                    The eleventh count of the indictment

9          reads as follows:

10                   The grand jury of the County of Queens

11         accuse the defendant of the crime of sexual

12         abuse in the first degree, committed as

13         follows:

14                   The defendant, on or about and between

15         March 31, 1995 and April 2, 1995 in the

16         County of Queens, subjected Jin Hao Liu to

17         sexual contact by touching her breast with

18         his hand by means of forcible compulsion.

19                   The law with respect to count 11 is the

20         same exact law as I just gave you with

21         respect to count 10, except whenever the name

22         of Liu Yan Wu was read in count 10, the name

23         of Jin Hao Liu should be substituted in its

24         place in count 11.

25                   The twelfth count of the indictment

1
2    reads as follows:

3         The grand jury of the County of Queens

4    by this indictment, accuse the defendant of

5    the crime of criminal possession of a weapon

6    in the second degree, committed as follows:

7         The defendant, being aided by another,

8    on or about and between March 31, 1995 and

9    April 2, 1995 in the County of Queens,

10   knowingly and unlawfully possessed a loaded

11   firearm, to wit, a firearm, with intent to

12   use same unlawfully against another.

13        The subject matter of this being an

14   armed felony as that term is defined in

15   section 1.20 of the criminal procedure law.

16        Section 265.03 of the penal law of our

17   state, insofar as is applicable to this case,

18   reads as follows:

19        A person is guilty of criminal

20   possession of a weapon in the second degree

21   when he possesses a machine gun or loaded

22   firearm with intent to use the same

23   unlawfully against another.

24        In order for you to find the defendant

25   guilty of this crime, the People are required

1    Jury Charge                    1122

2    to prove to your satisfaction, beyond a

3    reasonable doubt, from all of the evidence in

4    the case beyond a reasonable doubt, each of

5    the following 4 elements:

6    (1) That on or about and between March

7    31, 1995 and April 2, 1995 in Queens County,

8    the defendant, acting in concert, possessed a

9    loaded pistol.

10   According to the law, to possess means

11   to have physical possession or otherwise to

12   exercise dominion or control over tangible

13   property.  Possession of property must be

14   knowing possession; that is the alleged

15   possessor must be aware of his possession of

16   the property.

17   According to the law, a loaded pistol is

18   any pistol loaded with ammunition or any

19   pistol possessed by one who at the same time

20   possesses ammunition which might be used to

21   discharge such pistol.

22   (2) That at the time the defendant,

23   acting in concert, possessed the same

24   knowingly.

25   According to the law, a person possesses

a weapon knowingly when he is consciously

aware he possess such weapon.

(3) That at the time the defendant,

acting in concert, possessed such loaded

pistol, such loaded pistol was operable.

I instruct you a weapon is operable if

by exerting pressure on a trigger, the weapon

is capable of expelling a bullet or other

missile.  A loaded weapon is operable when

the ammunition in the weapon, or separately

possessed, is capable of being fired from the

weapon.

(4) That at the time the defendant,

acting in concert, possessed such loaded

pistol, he possessed the same with intent to

use it unlawfully against another.

According to the law, a person possesses

a weapon with intent to use the same

unlawfully against another person, when his

conscious aim or objective is to use such

weapon to engage in conduct which is

forbidden by law.

Therefore, with respect to count 12 of

the indictment, if you find the People have

proved to your satisfaction beyond a

reasonable doubt each of these 4 elements as

I have just explained them:

(1) That on or about and between March

31, 1995 and April 2, 1995 in Queens County,

the defendant, acting in concert, possessed a

load pistol;

(2) that at the time the defendant,

acting in concert, possessed such loaded

pistol, he possessed the same knowingly;

(3) that at the time the defendant,

acting in concert, possessed such loaded

pistol, such loaded pistol was operable;

(4) that at the time the defendant,

acting in concert, possessed such loaded

pistol, he possessed the same with intent to

use it unlawfully against another, then you

must find the defendant guilty of the crime

of criminal possession of a weapon in the

second degree under count 12.

On the other hand, if you find that the

People have failed to prove to your

satisfaction beyond a reasonable doubt any

one or more of these 4 elements, then you

1
2     must find the defendant not guilty of

3     criminal possession of a weapon in the second

4     degree under count 12.

5          To conduct your deliberations in an

6     orderly fashion, you must have a foreperson.

7     Of course, his or her vote is entitled to no

8     greater weight than that of any other juror.

9          Under our law the juror whose name was

10    first drawn and called must be designated as

11    the foreperson, so that Jose Camacho will act

12    as the foreperson of the jury and will report

13    your verdict to the Court and any other

14    request you have in writing.

15         Your verdict in this case must be

16    unanimous.  That is, all 12 of you must

17    agree, and the verdict will be announced

18    through the foreperson of the jury in

19    writing.

20         Now, to assist you in recording your

21    verdict, we shall furnish you with a verdict

22    sheet, and I'll read that verdict sheet to

23    you now.  The verdict sheet reads as follows:

24         The People -v- Hai Guang Zheng.

25         1.  How do you find the defendant with

1                    Jury Charge              1126

2      respect to the charge of kidnapping in the

3      first degree under count 1?  There is a place

4      for you to indicate guilty or not guilty.

5          2.  How do you find the defendant with

6      respect to the charge of kidnapping in the

7      first degree under count 2?  There is a place

8      for you to indicate guilty or not guilty.

9          3.  How do you find the defendant with

10      respect to the charge of kidnapping in the

11      first degree under count 3?  There is a place

12      for you to indicate not guilty or guilty.

13          4.  How do you find the defendant with

14      respect to the charge of kidnapping in the

15      first degree under count 4?  There is a place

16      for you to indicate guilty or not guilty.

17          5.  How do you find the defendant with

18      respect to the charge of kidnapping in the

19      first degree under count 5?  There is a place

20      for you to indicate guilty or not guilty.

21          6.  How do you find the defendant with

22      respect to the charge of kidnapping in the

23      first degree under count 6?  There is a place

24      for you to indicate guilty or not guilty.

25          7.  How do you find the defendant with

1

2       respect to the charge of rape in the first

3       degree under count 7?  There is a place for

4       you to indicate guilty or not guilty.

5           8.   How do you find the defendant with

6       respect to the charge of rape in the first

7       degree under count 8?  There is a place to

8       indicate guilty or not guilty.

9           9.  How do you find the defendant with

10      respect to the charge of kidnapping in the

11      second degree under count 9.  There is a

12      place to indicate guilty or not guilty.

13          10.  How do you find the defendant with

14      respect to the charge of sexual abuse in the

15      first degree under count 10?  There is a

16      place to indicate guilty or not guilty.

17          11.  How do you find the defendant with

18      respect to the charge of sexual abuse in the

19      first degree under count 11?  There is a

20      place to indicate guilty or not guilty.

21          12.  How do you find the defendant with

22      respect to the charge of criminal possession

23      of a weapon in the second degree under count

24      12?  There is a place for you to indicate

25      guilty or not guilty.

1          Jury Charge                    1128

2.          After you have arrived at a verdict and

3    you have completed the verdict sheet, without

4    revealing the nature of the verdict please

5    just advise the Court first that you have

6    reached a verdict. Again that must be done

7    through the foreperson of the jury.

8          If during the course of your

9    deliberations you wish to have any part of

10   the testimony read back, or if you want any

11   exhibit, or if you have any questions

12   concerning my charge to you or any other

13   question, you must communicate that to me in

14   writing through the foreperson of the jury.

15   If there are any portions of the testimony

16   you want read back to you, please be as

17   specific as possible as to that portion which

18   you want to have read back to you, if any.

19         Now, when you enter the jury room to

20   deliberate, you may find various opinions or

21   conclusions among you. You should make every

22   effort to harmonize the various views

23   expressed, and make every effort to come to

24   an agreement which would speak the truth as

25   far as the facts of the case are concerned.

```
1                    Jury Charge              1129
2       You must not go into the jury room with a
3       closed mind and decline to discuss the
4       evidence with them.  It's important for each
5       of you to keep an open mind to the arguments
6       advanced by the others.  The verdict must be
7       the verdict of each juror and not a mere
8       acquiescence in the conclusion of the others.
9       However, you do not have to surrender your
10      conscientiously held beliefs in order to
11      justify your conclusion by reason.
12          All I'm saying is that you should not
13      close your minds so as to prejudice the
14      conclusions to be arrived at without
15      listening to the arguments of your fellow
16      jurors.  I am certain each of you is
17      interested in coming to a fair, just, and
18      honest decision.
19          I ask you, to the best of your ability,
20      to apply common sense and good judgment and
21      to be impartial and fair in your judgment.
22      And don't let any sympathy or prejudice sway
23      your minds in any way in analyzing the
24      testimony.  Decide this case on the evidence
25      under the law as I give it to you.
```

```
 1                        Jury Charge              1130

 2              Just stay there for one moment.

 3              Counsel, step up.

 4              (The following took place at sidebar.)

 5              THE COURT:   Are there any exceptions to

 6         the charge?

 7              MR. KESSLER:   No.

 8              MR. SCHECTER:   Your Honor, my only

 9         exception is when you were dealing with the

10         lost or missing police report, the only

11         thing -- you gave them what would be commonly

12         referred to as a negative inference charge.

13         I'm requesting, because these were notes

14         taken of the complaining witnesses, that

15         their testimony be excluded and the testimony

16         of the Police Officer Greene, Detective

17         Greene, your Honor, or dismiss the

18         indictments.

19              THE COURT:   I already denied that

20         application.

21              MR. SCHECTER:   I'm excepting to that

22         part of the charge.

23              THE COURT:   Any additional requests to

24         charge other than those already made?

25              MR. SCHECTER:   Your Honor, when you were
```

1                       Jury Charge              1131

2          dealing with the question of my client's

3          statement, one of the statements he also

4          stated was he never made the statement.  And

5          as such, whether -- dealing as to the

6          truthfulness of the statement -- I would ask

7          the language you used in the pattern jury

8          charges as to whether defendant claimed he

9          never made a statement be included in the

10         terms that was included in there.

11             THE COURT:  Your request to Mr. Tivin

12         was limited --

13             MR. SCHECTER:  I also at the end told

14         him I wanted that in there.

15             MR. TIVIN:  No, you didn't.

16             MR. SCHECTER:  Whether I told him, I'm

17         requesting it.

18             THE COURT:  What do you want me to tell

19         them?  If they believe he never made the

20         statement, to totally disregard --

21             MR. SCHECTER:  I'm asking you to charge

22         it.

23             THE COURT:  Is that what you want me to

24         tell them?

25             MR. SCHECTER:  I'm asking you read that.

1                    Jury Charge              1132

2              THE COURT:  Get me the charge.

3              MR. SCHECTER:  Your Honor, I was under

4         the impression I did --

5              THE COURT:  I specifically asked him.

6         You didn't.  If you want it, I will read it.

7         I appreciate it in the future.  What do you

8         want to do with the alternate jurors?

9              MR. SCHECTER:  If they want to stay for

10        lunch, whatever, but once the jury starts

11        deliberating, I will not put them in.  So has

12        lunch been ordered for them?

13             THE COURT:  No.  They have a long day

14        ahead of them.  It's not even 12:15.  When I

15        let them go, I will order lunch.

16             (The following took place in open

17        court.)

18             THE COURT:  Ladies and gentlemen, I have

19        been requested to read another portion of the

20        law to you.  We are getting it.  I will read

21        it.  Then we'll continue.  Be patient a few

22        minutes.

23             (Pause in the proceeding.)

24             Ladies and gentlemen, with respect to

25        the statement made by -- alleged to have been

1

2    made by the defendant to Detective Ng, the

3    defendant contends that he never made the

4    statement attributed to him by Detective Ng.

5    The People contend the defendant did in fact

6    make the statement attributed to him by

7    Detective Ng.

8         Whether or not the defendant, in fact,

9    made the statement attributed to him, is a

10   question of fact for the jury to decide, to

11   be decided by you on the basis of all of the

12   evidence in the case.  I instruct you the

13   defendant has no burden to prove he didn't

14   make the statement.  The burden of proof to

15   establish the defendant did make the

16   statement is on the People.

17        The People must prove this fact to your

18   satisfaction beyond a reasonable doubt.  If

19   the People fail to prove to your satisfaction

20   beyond a reasonable doubt that the defendant

21   did in fact make the statement, you must then

22   in arriving at a verdict disregard the

23   statement as though it was never made and

24   admitted in evidence, as though you'd never

25   heard it.  You must then arrive at your

```
1                        Proceedings              1134

2         verdict solely on the basis of all of the

3         evidence, the other evidence admitted in the

4         case.

5              Are there any other requests or

6         exceptions?

7              MR. SCHECTER:  No.

8              THE COURT:  Keep the alternate jurors

9         separate from the regular jurors.

10             As soon as the regular jurors commence

11        their deliberations, advise me, please.

12             (The sworn jury left the courtroom.)

13             (The alternate jurors remained in the

14        courtroom.)

15             THE COURT:  Jury deliberating?

16             COURT OFFICER:  Yes.

17             THE COURT:  Counsel, you want to step

18        up.

19             (The following took place at sidebar.)

20             THE COURT:  I'm going to discharge the

21        alternates.

22             MR. SCHECTER:  Yes.

23             (The following took place in open

24        court.)

25             THE COURT:  Ladies and gentlemen,
```

1
Proceedings                    1135

2      alternate jurors, the 12 regular jurors have

3      started their deliberations, and counsel have

4      stipulated you can be discharged.  I want to

5      thank you.  It's because we have alternate

6      jurors like you who are willing to serve --

7      it's hard being an alternate juror, feeling

8      you might not deliberate in the case.  If any

9      of the regular jurors had become ill or

10     incapacitated during the course of the trial,

11     you would have had to step in during the

12     course of the trial.  You have contributed

13     substantially to the orderly procedure of the

14     trial.  I'm going to discharge you now from

15     your service.  I want to thank you for your

16     service on behalf of the State of New York

17     and County of Queens, and you're free to go

18     about your business.

19          (The alternates jurors left the

20     courtroom.)

21          THE COURT:  Counsel, will you stipulate

22     concerning the evidence?

23          MR. SCHECTER:  Your Honor, everything

24     except -- or the medical record.

25          MR. KESSLER:  Yes.

| | |
|---|---|
| 1 | Proceedings                    1136 |

2      THE COURT:  Go through there.  See what

3    should be excised.  I don't want any delays

4    if the jury asks for the evidence.

5      MR. SCHECTER:  I would just like to

6    speak to him for a few moments.

7      THE COURT:  You can take the defendant.

8    Keep him up here.

9      (Pause in the proceeding.)

10      (All parties are present.)

11      THE COURT:  Have you agreed on the

12    evidence?

13      MR. KESSLER:  No.  It looks like your

14    Honor is going to have to make a decision.

15      THE COURT:  Both of you stay around the

16    courtroom.  Don't leave the area of the

17    courtroom.  So if they ask for evidence, you

18    will both be here and I'll be able to rule.

19      MR. SCHECTER:  All right.

20      (A recess was taken.)

21      THE CLERK:  Case on trial.  Let the

22    record reflect the defendant, official

23    Mandarin interpreter, and A.D.A. Kessler is

24    present.  The jury is deliberating at this

25    moment.

Proceedings                    1137

1

2        THE COURT:  I have asked the counselors

3    to agree on a stipulation as to the evidence

4    in the case.   There are two hospital records

5    in evidence.   The People, I believe, urge

6    that the history in the hospital record

7    should be admitted into evidence.

8    Defendant's counsel says that it's hearsay.

9        MR. SCHECTER:  Yes.

10        THE COURT:  Do you want to make a

11    statement?

12        MR. KESSLER:  What I'm saying with

13    regard to the history, well, it's under the

14    history section.   I think everyone is in

15    agreement, any statement in the hospital

16    record that is for the purposes of diagnosis

17    and treatment is admissible in the hospital

18    record.   While I agree the portions about

19    their statements regarding the history of

20    them being abducted at JFK with two men is

21    not relevant for the purposes of diagnosis

22    and treatment, because the doctor really

23    doesn't have to treat the patient based on

24    the abduction, or how many men or where they

25    were, he does have to treat the women based

1                    Proceedings            1138

2      on where she was penetrated; vaginally,

3      orally, or rectally.  So I would ask the

4      section regarding the fact that she -- in the

5      hospital record where it says, no oral or

6      vaginal penetration, that particular portion

7      be allowed in.

8          The other thing, the only other note

9      regarding that one page is primary diagnosis

10     or description, alleged sexual assault.

11     That's just the doctor's diagnosis based upon

12     the statements from the patient.  The other

13     thing I'm asking to be deleted regarding it

14     was the fact one of the women was pregnant at

15     the time of the rape.  And I ask that be

16     deleted from the record.  That's because

17     that's in is not, obviously not for any

18     purpose of diagnosis and treatment.

19         MR. SCHECTER:  Your Honor, the doctor

20     was here.  He did not testify as to what he

21     made his diagnosis based upon.  May have been

22     that.  May have been based on the physical

23     examination he gave to the females.  We don't

24     know what he is -- or we are speculating, or

25     Mr. Kessler is speculating those are the

Proceedings                    1139

1

2    statements.   He is paid to make his

3    diagnosis.   There is no testimony to that.

4    As such, we cannot say what it was.   I'm

5    objecting to that part coming in.

6         THE COURT:   I'm going to rule the

7    history is inadmissible as hearsay.   There's

8    been no testimony by the doctor, who was on

9    the stand, as to what portion, if any, was

10   necessary for treatment and diagnosis, but

11   his primary diagnosis, description, is

12   admissible.

13        So we will excise the histories in both

14   those records.

15        MR. KESSLER:   We will excise the

16   secondary diagnosis as the woman being

17   pregnant.

18        MR. SCHECTER:   No objection.

19        THE COURT:   There being no objection,

20   that may be excised.   Is there anything else

21   in there?

22        MR. KESSLER:   No.

23        MR. SCHECTER:   No.

24        THE COURT:   Okay.   Everything is in

25   evidence except for Defendant's A and B, and

| | |
|---|---|
| 1 | Proceedings      1140 |
| 2 | 3 and 4, the rape kits. So you agree |
| 3 | everything else can be brought to the jury, |
| 4 | if they request it. |
| 5 | MR. SCHECTER: Yes. |
| 6 | MR. KESSLER: Yes. |
| 7 | THE COURT: Both of you agree to that. |
| 8 | If the jury wants any evidence, please |
| 9 | notify me. I will give them the evidence |
| 10 | based upon the stipulation of counsel. |
| 11 | MR. SCHECTER: Your Honor, I told |
| 12 | Mr. Chin where I will be. I gave him my |
| 13 | beeper number plus the different Parts. |
| 14 | THE COURT: Where do you intend to be? |
| 15 | MR. SCHECTER: I have a matter in |
| 16 | K-14 -- |
| 17 | THE COURT: I want you here within five |
| 18 | minutes. |
| 19 | (A recess was taken.) |
| 20 | (Court Exhibits 1 and 2 marked.) |
| 21 | THE CLERK: Case on trial, 3282 of '95, |
| 22 | People -v- Hai Guang Zheng. Defendant is |
| 23 | present along with the official Mandarin |
| 24 | interpreter, Yi Wan. Defense counsel and |
| 25 | Assistant District Attorney are present. The |

1                    Proceedings            1141

2    sworn jurors are in the jury room.

3           THE COURT:  All right.  We received two

4    notes from the jury.  The first one, which I

5    have marked Court Exhibit 1, reads as

6    follows:  We'd like to see the following

7    evidence:  1.  Defendant's statement.  2.

8    Four pictures.  3.  Officer Greene's report,

9    DD5.

10          Pursuant to the agreement between

11   counsel, I sent them in the defendant's

12   statement without the Miranda part, just the

13   statement, and the four pictures.  I don't

14   believe there was a DD5 in evidence.  So that

15   I didn't send them.

16          The next one is Court Exhibit 2:  1.  The

17   testimony of the two female victims, the part

18   dealing with the rape charges.  2.  The

19   results of the medical test serology rape

20   victim results.

21          The court reporter indicates she has

22   that testimony.  Are you ready for the

23   readback?

24          MR. SCHECTER:  Your Honor, as to the

25   first part, there will be direct and cross

| | Proceedings | 1142 |

2   examination.

3       MR. KESSLER:  Judge, the only thing I

4   would say, I don't understand how the Court

5   gave the jury three parts and not the fourth

6   part of the defendant's --

7       THE COURT:  Because they specifically

8   asked for the defendant's statement.

9       MR. KESSLER:  I understand.  Part of

10  that statement, your Honor, is his signature

11  is on the first page.

12      THE COURT:  They didn't ask for the

13  Miranda warnings.  That's what I gave them.

14  That's what I'm ruling they asked for.  They

15  want anything else, they will ask for it.

16      Would you bring the jurors in, please.

17      Just because you introduce it as a

18  four-page exhibit, doesn't make it part of

19  the statement.

20      (The jury entered the courtroom.)

21      THE CLERK:  Counsel, do you waive the

22  formal reading of the roll?

23      MR. KESSLER:  So waived.

24      MR. SCHECTER:  So waived.

25      THE CLERK:  The record will reflect the

1    Proceedings                    1143

2    12 sworn jurors in the jury box.

3         THE COURT:  All right, ladies and

4    gentlemen, we have your two notes.  The first

5    note stated you would like to see the

6    following evidence:  defendant's statement

7    and four pictures and Officer Greene's report

8    DD5.  I provided you with defendant's

9    statement and the four pictures.  There is no

10   DD5 in evidence.

11        Okay, and then you asked for the

12   testimony which I have marked as Court

13   Exhibit 2, the testimony of the two female

14   victims, the part dealing with the rape

15   charges, and the result of the medical test

16   serology rape kit.

17        The court reporter will read that back

18   to you.

19        (The court reporter read back the

20   requested testimony.)

21        THE COURT:  Was the readback sufficient

22   for your deliberation at this point?  If not,

23   you can ask for further readbacks.

24        (The jury left the courtroom.)

25        (A recess was taken.)

1                        Proceedings              1144

2                  (Court Exhibit 3 marked.)

3            THE CLERK:  Case on trial, 3283 of '95.

4       People -v- Hai Guang Zheng.  Defendant is

5       present along with the official Mandarin

6       interpreter Yi Wan.  Attorney Schecter,

7       A.D.A. Kessler are present.  The sworn jurors

8       are in the deliberating room.

9            THE COURT:  We have a third note from

10      the jury, which I have marked Court Exhibit

11      3.  It states:  We would like to hear the

12      testimony of the second female victim leading

13      to the point where could not identify the

14      defendant.  Please speak slow.

15           Do you have that portion of the

16      testimony?

17           MR. KESSLER:  Judge, for the record, are

18      we beginning with direct testimony and ending

19      with the portion --

20           THE COURT:  They want the testimony of

21      the second female victim leading to the point

22      where she cannot identify the defendant.

23           MR. KESSLER:  So my question is are we

24      beginning the direct and leading to -- I

25      don't know what they mean by leading to.

1                        Proceedings              1145

2               THE COURT:  What I'm going to have her

3        read -- when you said to the witness, look in

4        the front of the courtroom.  Look at the

5        front, the question.  And then you can go on.

6        She says, he is not here, or something like

7        that.  That's what is leading up to that

8        testimony.  And I'll tell the jury if they

9        want any further testimony, they're free to

10       ask for it.

11              MR. KESSLER:  Just to --

12              THE COURT:  You will be able to -- you

13       want me to start with the beginning of the

14       testimony?

15              MR. KESSLER:  I think leading up to that

16       point.

17              THE COURT:  That's what I interpret.

18              MR. KESSLER:  With regard to the second

19       note, I would like to put on the record where

20       the jury indicated about the fact they want

21       to hear testimony involving the rape, it

22       appears the court reporter only read those

23       portions that involved the defendant's penis

24       entering the vagina of the complaining

25       witness.  That's not rape.  The rape

1                    Proceedings              1146

2        occurred --

3              THE COURT:  If that's not rape, what is

4        rape?

5              MR. KESSLER:  Rape is force.  Rape is

6        forcibly putting the penis into the vagina.

7        When you say that's not rape, that's what you

8        just read to the jury, the rape involving

9        force.  So there is testimony in the record

10       about how a defendant put a gun to one of

11       their heads.  That's rape.  That's force.

12       That should be read to the jury.

13             THE COURT:  I told the jury if they

14       needed any other testimony read to them, they

15       can ask for it.

16             Bring the jurors out, please.

17             (The jury entered the courtroom.)

18             THE CLERK:  Counsels, you waive the

19       formal reading of the roll of the jurors?

20             MR. KESSLER:  So waived.

21             MR. SCHECTER:  So waived.

22             THE CLERK:  The record reflect 12 sworn

23       jurors now in the jury box.

24             THE COURT:  The presence of all the

25       parties.

```
 1                      Proceedings              1147
 2            Ladies and gentlemen, we have your third
 3       note, which I have marked Court Exhibit 3.
 4       And it reads:  We would like to hear the
 5       testimony of the second female victim leading
 6       to the point where could not identify the
 7       defendant.  Please speak slow.
 8            The court reporter will read it to you
 9       slowly.
10            (The court reporter read back the
11       requested testimony.)
12            THE COURT:  Is that sufficient?  Is
13       there other testimony you want to hear?  If
14       there is other testimony you want to hear,
15       please step outside and a note what you want
16       to hear.
17            (The jury left the courtroom.)
18            (A recess was taken.)
19            THE CLERK:  Case on trial, 3282 of '95,
20       People -v- Hai Guang Zheng.  Defendant is
21       present along with official Mandarin
22       interpreter Yi Wan, counsel Schecter, A.D.A.
23       Kessler.  The sworn jurors are in the jury
24       room.
25            THE COURT:  We have Court Exhibit number
```

```
 1                        Proceedings              1148

 2         4, which states:  We would like to hear the

 3         entire testimony of the second female victim,

 4         up to and including the part dealing with the

 5         identification of the defendant.

 6              Bring in the jury.  Make that a court

 7         exhibit.

 8              It doesn't say you have to speak slowly.

 9              (Court Exhibit 4 marked.)

10              (The jury entered the courtroom.)

11              THE CLERK:  All parties present.

12              Counselors, you waive the formal reading

13         of the roll of the jurors?

14              MR. KESSLER:  So waived.

15              MR. SCHECTER:  So waived.

16              THE CLERK:  Let the record reflect 12

17         sworn jurors in the jury box.

18              THE COURT:  Ladies and gentlemen, your

19         last note has been marked Court Exhibit 4.

20         It reads:  We would like to hear the entire

21         testimony of the second female victim, up to

22         and including dealing with the identification

23         of the defendant.

24              (The court reporter read back the

25         requested testimony.)
```

Proceedings                    1149

1
2          THE COURT:  Is that the testimony you
3     were looking for?  Yes.  If you need any
4     other, you may ask for it.
5               (The jury left the courtroom.)
6               (A recess was taken.)
7               (Court Exhibit 5 marked.)
8          THE CLERK:  Case on trial, 3282 of '95,
9     People -v- Hai Guang Zheng.  Defendant is
10    present with Mandarin interpreter Yi Wan,
11    counsel Schecter, and A.D.A. Kessler.  The
12    sworn jurors are in the jury room.
13         THE COURT:  We have a Court Exhibit 5
14    from the jury:  We have reached a verdict on
15    all counts.
16         Bring the jury in, please.
17              (The jury entered the courtroom.)
18         THE CLERK:  All parties are present.
19         Counsel, you waive the formal reading of
20    the roll of the jurors?
21         MR. KESSLER:  So waived.
22         MR. SCHECTER:  So waived.
23         THE CLERK:  Mr. Foreman, sir, has the
24    jury reached a verdict?
25         JURY FOREPERSON:  Yes, we have.

| | |
|---|---|
| 1 | Proceedings 1150 |
| 2 | THE CLERK: Show that to the Judge. |
| 3 | Okay. Will the jury please rise. |
| 4 | Defendant, defense counsel, please rise. |
| 5 | Under indictment 3282 of '95, the People |
| 6 | of the State of New York against Hai Guang |
| 7 | Zheng. Mr. Foreman, we will go one at a |
| 8 | time. Under count number 1, how do you find |
| 9 | the defendant with respect to the charge of |
| 10 | kidnapping in the first degree? |
| 11 | JURY FOREPERSON: Guilty. |
| 12 | THE CLERK: Count 2. How do you find |
| 13 | the defendant with respect to the charge of |
| 14 | kidnapping in the first degree? |
| 15 | JURY FOREPERSON: Guilty. |
| 16 | THE CLERK: Count number 3. How do you |
| 17 | find the defendant with respect to the charge |
| 18 | of kidnapping in the first degree? |
| 19 | JURY FOREPERSON: Not guilty. |
| 20 | THE CLERK: Count number 4. How do you |
| 21 | find the defendant with respect to the charge |
| 22 | of kidnapping in the first degree? |
| 23 | JURY FOREPERSON: Not guilty. |
| 24 | THE CLERK: Count number 5. How do you |
| 25 | find the defendant with respect to the charge |

```
1                        Proceedings                1151

2       of kidnapping in the first degree?

3               JURY FOREPERSON:  Guilty.

4               THE CLERK:  Count number 6.  How do you

5       find the defendant with respect to the charge

6       of kidnapping in the first degree?

7               JURY FOREPERSON:  Guilty.

8               THE CLERK:  Count number 7.  How do you

9       find the defendant with respect to the charge

10      of rape in the first degree?

11              JURY FOREPERSON:  Guilty.

12              THE CLERK:  Count number 8.  How do you

13      find the defendant with respect to the charge

14      of rape in the first degree?

15              JURY FOREPERSON:  Guilty.

16              THE CLERK:  Count number 9.  How do you

17      find the defendant with respect to the charge

18      of kidnapping in the second degree?

19              JURY FOREPERSON:  Guilty.

20              THE CLERK:  Count number 10.  How do you

21      find the defendant with respect to the charge

22      of sexual abuse in the first degree?

23              JURY FOREPERSON:  Guilty.

24              THE CLERK:  Count number 11.  How do you

25      find the defendant with respect to the charge
```

```
 1                    Proceedings              1152

 2      of sexual abuse in the first degree?

 3              JURY FOREPERSON:  Guilty.

 4              THE CLERK:  Count number 12.  How do you

 5      find the defendant with respect to the charge

 6      of criminal possession of a weapon in the

 7      second degree?

 8              JURY FOREPERSON:  Guilty.

 9              THE CLERK:  Please be seated.  Thank

10      you.

11              Harken to your verdict as it now stands

12      recorded.  Under indictment number 3282 of

13      '95, the People of the State of New York

14      against Hai Guang Zheng, under count number

15      1, kidnapping in the first degree, you say

16      you find the defendant guilty.  Count number

17      2, kidnapping in the first degree, you say

18      you find the defendant guilty.  Count number

19      3, kidnapping in the first degree, you say

20      you find the defendant not guilty.  Count

21      number 4, you say you find the defendant --

22      kidnapping in the first degree, you find the

23      defendant not guilty.  Count number 5,

24      kidnapping in the first degree, you say you

25      find the defendant guilty.  Count number 6,
```

1               Proceedings               1153

2       kidnapping in the first degree, you say you

3       find the defendant guilty.   Count number 7,

4       rape in the first degree, you say you find

5       the defendant guilty.   Count number 8, rape

6       in the first degree, you say you find the

7       defendant guilty.   Count number 9, kidnapping

8       in the second degree, you say you find the

9       defendant guilty.   Count number 10, sexual

10      abuse in the first degree, you say you find

11      the defendant guilty.   Count number 11,

12      sexual abuse in the first degree, you say you

13      find the defendant guilty.   And count number

14      12, criminal possession of a weapon in the

15      second degree, you say you find the defendant

16      guilty.

17          So say you all?

18          THE JURY:   Yes.

19          MR. SCHECTER:   Your Honor, could we

20      approach for one moment?

21          THE COURT:   Yes.

22          (The following took place at sidebar.)

23          MR. SCHECTER:   Your Honor, I would ask,

24      your Honor, to have them go back to

25      deliberate.   I believe the verdict as for the

1                          Proceedings                1154

2          3rd and 4th count of not guilty, those being

3          I believe with intent to violate and abuse

4          the two females sexually, to be completely

5          inconsistent and repugnant with the verdict

6          of rape in the first degree, where they have

7          found them guilty of raping the two females.

8                  THE COURT:  The question is when they

9          kidnapped them did they intend to sexually

10         abuse them.  They found they didn't do it

11         when they kidnapped them before, but after

12         they kidnapped them and had them, they raped

13         them, so.

14                 MR. SCHECTER:  Respectfully except.

15                 THE COURT:  I so decline.

16                 (The following took place in open

17         court.)

18                 THE CLERK:  Mr. Schecter, would you like

19         the jury polled?

20                 MR. SCHECTER:  Please.

21                 THE CLERK:  Okay, jurors.  Under

22         indictment 3282 of '95, the People of the

23         State of New York -v- Hai Guang Zheng.  Under

24         count number 1 you say you find the --

25         kidnapping in the first degree, you say you

1                    Proceedings              1155

2        find the defendant guilty.  Count number 2,

3        kidnapping in the first degree, you say you

4        find the defendant guilty.  Count number 3,

5        kidnapping in the first degree, you say you

6        find the defendant not guilty.  Count number

7        4, kidnapping in the first degree, you say

8        you find the defendant not guilty.  Count

9        number 5, kidnapping in the first degree, you

10       say you find the defendant guilty.  Count

11       number 6, kidnapping in the first degree, you

12       say you find the defendant guilty.  Count

13       number 7, rape in the first degree, you say

14       you find the defendant guilty.  Count number

15       8, rape in the first degree, you say you find

16       the defendant guilty.  Count number 9,

17       kidnapping in the second degree, you say you

18       find the defendant guilty.  Count number 10,

19       sexual abuse in the first degree, you say you

20       find the defendant guilty.  Count number 11,

21       sexual abuse in the first degree, you say you

22       find the defendant guilty.  Count number 12,

23       criminal possession of a weapon in the second

24       degree, you say you find the defendant

25       guilty.

1                        Proceedings                    1156

2              Juror number 1, is that your verdict?

3              JUROR #1:  Yes.

4              THE CLERK:  Juror number 2, is that your

5         verdict?

6              JUROR #2:  Yes.

7              THE CLERK:  Juror number 3, is that your

8         verdict?

9              JUROR #3:  Yes, it is.

10             THE CLERK:  Juror number 4, is that your

11        verdict?

12             JUROR #4:  I guess it is.

13             THE CLERK:  Juror number 5, is that your

14        verdict?

15             JUROR #5:  Yes.

16             THE CLERK:  Juror number 6, is that your

17        verdict?

18             JUROR #6:  Yes.

19             THE CLERK:  Jury number 7, is that your

20        verdict?

21             JUROR #7:  Yes.

22             THE CLERK:  Jury number 8, is that your

23        verdict?

24             JUROR #8:  Yes.

25             THE CLERK:  Jury number 9, is that your

1                         Proceedings                    1157

2          verdict?

3                    JUROR #9:   Yes.

4                    THE CLERK:   Juror number 10, is that

5          your verdict?

6                    JUROR #10:   Yes.

7                    THE CLERK:   Juror number 11, is that

8          your verdict?

9                    JUROR #11:   Yes.

10                   THE CLERK:   Juror number 12, is that

11         your verdict?

12                   JUROR #12:   Yes.

13                   THE CLERK:   The jury has been polled and

14         the verdict is unanimous.

15                   THE COURT:   You want to reserve any

16         motions?

17                   MR. SCHECTER:   I will reserve motions

18         until the day of sentence.

19                   THE COURT:   Ladies and gentlemen, I will

20         excuse you now with the thanks of the Court

21         and the thanks of the people of the State of

22         New York and the County of Queens.   It's only

23         because we have people like you who are

24         willing to give of your time to sit as jurors

25         in cases like this that eventually these

1                          Proceedings                    1158

2          cases are resolved.  I also told the

3          alternate jurors the same thing.

4              With the thanks of the Court you're

5          discharged.  And go back to do your ordinary

6          business and we will give you your diplomas

7          and the thanks of the Court.  You're excused.

8              (The jury left the courtroom.)

9              THE COURT:  Date for sentencing.

10             THE CLERK:  It's three weeks.

11             THE COURT:  Three weeks I will be on

12         vacation.

13             THE CLERK:  Okay.  Mr. Zheng, please

14         stand up, sir.  How old are you, sir?

15             THE DEFENDANT:  27.

16             THE CLERK:  Date of birth?

17             THE DEFENDANT:  March 27, '68.

18             THE CLERK:  Where were you born, sir?

19             THE DEFENDANT:  Fuchow, China.

20             THE INTERPRETER:  F-U-C-H-O-W.

21             THE CLERK:  What is your home address

22         here?

23             THE INTERPRETER:  I really cannot make

24         out his Chinese pronunciation into the

25         English.

<table>
<tr><td>1</td><td>Proceedings</td><td>1159</td></tr>
</table>

1                 Proceedings                 1159

2         THE COURT:  The question is what is his

3 address.

4         THE CLERK:  Where does he live?

5         THE INTERPRETER:  I cannot make out his

6 Chinese pronunciation for the English street.

7 90th Street.  That's what he said.

8         THE CLERK:  I can see what is listed in

9 the file, Judge.

10         Are you a citizen of the United States,

11 sir?

12         THE DEFENDANT:  No.

13         THE CLERK:  Does he have a green card?

14         THE DEFENDANT:  No.

15         THE CLERK:  No green card.

16         THE DEFENDANT:  No.

17         THE CLERK:  And his true name is Hai

18 Guang Zheng.

19         THE DEFENDANT:  Yes.

20         THE CLERK:  We will need a date for

21 sentencing, Judge.

22         THE COURT:  How is the week of August

23 12th?

24         MR. SCHECTER:  The 15th.  That would be

25 convenient.

```
 1                    Proceedings              1160

 2              THE COURT:  The 15th is good.  You want

 3         to reserve your motions?

 4              MR. SCHECTER:  Yes, I will reserve my

 5         motions for that day.

 6              THE COURT:  Defendant is remanded.

 7              MR. SCHECTER:  Your Honor, the one

 8         motion I did make right after the verdict was

 9         rendered.  All the other motions I will

10         reserve.

11              THE COURT:  Yes.

12              THE CLERK:  8/15.  Remand defendant.

13              THE COURT:  Yes.  The verdict sheet is

14         marked Court Exhibit 6.  Make it part of the

15         court file.

16              (Court Exhibit 6 marked.)

17              *    *    *    *    *    *    *

18    CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT

19              _____Debra Dunn_____
                      Debra Dunn
20              Official Court Reporter

21

22

23

24

25
```

1
1161

2 ## INDEX TO WITNESSES

| 3 For the People | Direct | Cross | Redirect |
|---|---|---|---|
| 4 Greene | 699 | 717/776/797 | 820 |
| Banks | 724 | 752 | |
| 5 Streine | 793 | | |
| Ng | 825 | 840 | 874 |

| 6 For the Defendant: | Direct | Cross |
|---|---|---|
| 7 Zheng | 897 | 917 |

8

9 ## INDEX TO EXHIBITS

| 10 For the People: | Identification | Evidence |
|---|---|---|
| 11 5. & 6. Photos | 712 | 714 |
| 7. & 8. Photos | 715 | 716 |
| 12 9. Envelope with phone | 732 | 735 |
| 10. Gun | 737 | 744 |
| 13 11. Cellular phone | 745 | 748 |
| 12.A.-D. Statement | 832 | 834 |

14

| 15 For the Defendant: | Identification |
|---|---|
| A. Warrant | 785 |
| 16 B. Criminal Court Complaint | 789 |

17

18

19

20

21

22

23

24

25

C o P Y    1
3/9/96

1

2    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF QUEENS : CRIMINAL TERM: PART K-25
3    ----------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK    : Indictment No.
4                                             3282/95
              -against-                     :
5
     HAI GUANG ZHENG,                       : KIDNAP 1
6
                         Defendant.         : Sentence
7    ----------------------------------------X
                         125-01 Queens Boulevard
8                        Kew Gardens, New York 11415

9                        August 15, 1996

10   B E F O R E:

11              HONORABLE STANLEY KATZ

12                       Justice

13   A p p e a r a n c e s:

14              HONORABLE RICHARD A. BROWN
                   District Attorney - Queens County
15                 125-01 Queens Boulevard
                   Kew Gardens, New York 11415
16                 BY: SCOTT KESSLER, ESQ.
                   Assistant District Attorney
17

18              DONALD SCHECHTER, ESQ.
                   Attorney for the Defendant
19                 Ten Cutter Mill Road
                   Great Neck, New York 11021
20
     ALSO PRESENT:
21        Yi Wan, Mandarin Interpreter

22              *         *         *

23                   KARYN S. GUTKIN
                     Senior Court Reporter
24

25

kg

1          Sentence - H. Zheng

2          COURT CLERK: This is calendar six,

3     Indictment number 3282 of '95, People versus

4     Hai Guang Zheng.

5          Bring out Hai Guang Zheng first.

6          COURT CLERK: Let the record also reflect

7     the presence of the official Mandarin

8     interpreter.

9          THE INTERPRETER: Yi Wan.

10          (Whereupon, the defendant enters the

11     courtroom.)

12          COURT CLERK: Good afternoon.  For the

13     record, what is your name.

14          THE DEFENDANT: Pardon me?

15          COURT CLERK: What is your name, sir?

16          THE DEFENDANT: Hai Guang Zheng.

17          COURT CLERK: Your appearances, counsels.

18          MR. SCHECHTER: Donald Schechter, Ten

19     Cutter Mill Road, Great Neck, New York.

20          MR. KESSLER: Scott Kessler, for the People

21     of the State of New York.

22          COURT CLERK: Thank you.

23          THE COURT: This case is on for

24     sentencing.  Are both sides ready for

25     sentence?

kg

3

Sentence - H. Zheng

1

2      MR. SCHECHTER: Your Honor, I had reserved

3  my motions at the end of the trial till today.

4      THE COURT: Yes.

5      MR. SCHECHTER: Your Honor, at this time,

6  after reviewing all the testimony and evidence

7  and the jurors' verdict, I asked you to set

8  aside the verdicts, as the verdicts were

9  against the weight of the evidence, especially

10  as to the kidnapping counts, the rape counts,

11  the sexual abuse counts and the criminal

12  possession of a weapon in the second degree

13  count.

14      As to the weapon count, your Honor, there

15  was never any showing that that was the weapon

16  that was used, your Honor, nobody ever

17  identified it.

18      As to the kidnapping counts, your Honor,

19  there was no showing that there was any intent

20  to compel a third person to pay/deliver money

21  or property for ransom by my client or anyone

22  acting in concert, on the first two counts.

23      Or on the intent to violate or abuse

24  either of the two women in the third or fourth

25  counts.

kg

4

Sentence - H. Zheng

That he never intended to terrorize the
two females under the amended fifth and sixth
counts.

Your Honor, and as such, as to the rape,
your Honor, I believe the evidence was also
insufficient.  I ask you to overturn the
verdicts.

THE COURT: Mr. Kessler?

MR. KESSLER: Yes, your Honor.  I rely on
the arguments that I made at the time of
defense counsel's motions at the end of my
case and at the end of the entire case.

I believe there is sufficient evidence to
convict the defendant, based on the verdicts,
of each and every count on the indictment; the
jury came back with all ten.

And I rely on the statements with respect
to the witnesses with regard to that.

THE COURT: Your motion is denied.

MR. SCHECHTER: Exception taken.

THE COURT: Other than that, you're ready
for sentence?

MR. SCHECHTER: Yes.

MR. KESSLER: Yes.

kg

5

Sentence - H. Zheng

THE COURT: You move the case for sentence?

MR. KESSLER: I move the indictment before the Court for sentencing, at this time.

THE COURT: That's Indictment 3282 of '95.

MR. KESSLER: That's correct.

THE COURT: Does anybody want to say anything before I impose sentence?

MR. KESSLER: Yes, People would like to be heard regarding sentencing.

THE COURT: Yes?

MR. KESSLER: With regard to sentencing in this case, the defendant has been convicted of a total of 12 separates counts before a jury.

With regard to the overall acts of this defendant, your Honor, these acts of kidnapping two women from the airport, taking these two women and repeatedly raping them, holding them for over a 24-hour period, holding them for ransom, is one of the most heinous crimes that you can possibly have in this county.

These women were terrorized by the defendant's actions. One of the counts that

kg

6

Sentence - H. Zheng

1   the jury convicted the defendant of was

2   kidnapping with intent to terrorize.

3   The women were taken as they flew in our

4   county's airport at Kennedy. Their car was

5   cut off, and at that point in time the

6   defendant and another accomplice took these

7   two women and one of their husbands at

8   gunpoint.

9   During that period of time, they demanded

10   documents from the women. And at that point

11   in time, the defendant knew, in fact, he had

12   kidnapped the wrong people - he had planned on

13   kidnapping someone else - and that point in

14   time came before these women were ever raped,

15   terrorized for 24 hours.

16   This defendant knew he had kidnapped the

17   wrong people. Instead of letting them go, he

18   held these women. Took the husband of one of

19   these women and dropped him off in an area of

20   Brooklyn and demanded that he call him and in

21   return have an amount of $30,000 for the

22   release of these two women.

23   The women were then taken to a location in

24   Queens County where they were held against

kg

7

Sentence - H. Zheng

their will at gunpoint for almost two days.
Phone calls were being made back and forth by
this defendant to the family, and during those
phone calls he threatened to kill the women if
the money was not paid.

So not only was he aware that he had
kidnapped the wrong people, not only did he
take the family and separate the two.  A point
in time comes where he starts making phone
calls to the victims' family, telling the
family that he will kill both women.

He goes to another extreme now, he has
these two women in his apartment, he is
demanding money, and now he goes and rapes
both women.

The jury in this case, your Honor, came
back with four separate A-1 felonies-- I'm
sorry, four separate A-1 felonies.

The only A-1 felonies that they did not
come back with was the kidnapping with intent
to sexually abuse.  I had spoken to the jury
afterwards, and it was their understanding
that they didn't feel at the time the
defendant kidnapped these women it was their

8

1       Sentence - H. Zheng

2       intent to sexually abuse them, but it was an

3       afterthought.

4           Based on the fact that he has been

5       convicted of kidnapping in the first degree

6       with intent to demand a random, the first

7       count in this indictment, on Liu Yan Wu, on

8       the first count, the People would ask for a

9       sentence of 25 years to Life, pursuant to the

10      fact that it is an A-1 felony.

11          The second count he has been convicted on

12      was kidnapping with regard to the woman named

13      Jin Hao Liu, which is a separate and distinct

14      kidnapping.

15          The case law, under my understanding under

16      the People versus Diaz, which is at 210 AD2d

17      249, holds that the imposition of consecutive

18      sentencing was proper, since the kidnapping of

19      the two complainants were two separate acts

20      arising from the same set of circumstances.

21          So it's my understanding, based upon the

22      case law, this Court has the opportunity to

23      sentence the defendant on consecutive acts,

24      since they were two separate women.  So I

25      would ask for a consecutive sentence on the

kg

9

1          Sentence - H. Zheng

2     second count of 25 years to Life.

3          With regard to the counts of kidnapping

4     with intent to terrorize, the defendant stands

5     convicted of the two women that I mentioned

6     before with those counts.  That is based upon

7     the defendant's actions of raping the women,

8     holding them without ransom, having separated

9     them from the one woman's husband.

10          It appears, your Honor, that that count

11     would have to run concurrently, since that is

12     an overall act that defendant was committing

13     throughout the course of this transaction.  So

14     the People would ask for a sentence of 25

15     years to Life, to run concurrently on both of

16     those counts, with the kidnapping with intent

17     to terrorize.

18          THE COURT: Which counts were those, is

19     that five and six?

20          MR. KESSLER: That would be correct.

21          THE COURT: Go ahead.

22          MR. KESSLER: With regard to the seventh

23     and eighth counts, which is rape in the first

24     degree, based upon the jury's verdict, your

25     Honor, it appears that the jury believed that

kg

10

1       Sentence - H. Zheng

2       the defendant's intent at the time of

3       kidnapping them was not to rape them, it

4       appears that this was, in fact, an

5       afterthought.

6           It is a separate and totally distinct act

7       by the defendant.  It is not an element of any

8       other crime he has been convicted for, it's a

9       separate and distinct act.  The defendant

10      should not benefit from that by having

11      concurrent time on that.

12          Based upon the facts before this Court,

13      the People would ask for the maximum sentence

14      of eight and a third to 25 years, for each of

15      the two women, to run consecutive to each

16      other and to run consecutive to the total of

17      25 or 50 to Life that was on the first and

18      second counts.

19          With regard to the kidnapping in the

20      second degree, that act was regarding another

21      separate complainant, Guo Bang Liu, who was

22      the husband of one of the other two

23      complainants.

24          Again, that is a separate person and a

25      separate act, that's a Class B felony, in

kg